IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT ANCHORAGE

Della Kamkoff, John Andrew, Kayla Birch, Rose
Carney, Tereresa Ferguson, Zoya Jenkins, Troy
Fender, Rhonda Conover, Autumn Elianna, and
Natalia Moroz, on behalf of themselves and all
those similarly situated,

)
)
)
)

Plaintiff(s),

)
)

vs.

)
)
)

RECEIVED

JAN 30 2023

Attorney General's Office
Juneau

Heidi Hedberg, in her official capacity as Commissioner
of the Alaska Department of Health,

)
)

Defendant(s).

)
)
)

CASE NO. 3AN- 23 - 04259 CI

**SUMMONS AND
NOTICE TO BOTH PARTIES
OF JUDICIAL ASSIGNMENT**

To Defendant: Heidi Hedberg, in her official capacity as commissioner of the Alaska Department of Health

You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at 825 W. 4th Ave., Anchorage, Alaska 99501 within 20 days* after the day you receive this summons. In addition, a copy of your answer must be sent to the plaintiff's attorney or plaintiff (if unrepresented) __Northern Justice Project, LLC_____, whose address is:
__406 G Street, Suite 207; Anchorage, AK 99502_____

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and any future changes to your mailing address and telephone number. You may use court form *Notice of Change of Address / Telephone Number* (TF-955), available at the clerk's office or on the court system's website at https://public.courts.alaska.gov/web/forms/docs/tf-955.pdf to inform the court. - OR - If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

NOTICE OF JUDICIAL ASSIGNMENT

TO: Plaintiff and Defendant

You are hereby given notice that:

[✓] This case has been assigned to Superior Court Judge __Ramgren_____
and to a magistrate judge.

[ ] This case has been assigned to District Court Judge _____.

CLERK OF COURT

1/20/23
Date

By: _____
Deputy Clerk

I certify that on _1/20/23_ a copy of this Summons was [ ] mailed [✓] given to
[ ] plaintiff [✓] plaintiff's counsel along with a copy of the
[ ] Domestic Relations Procedural Order [ ] Civil Pre-Trial Order
to serve on the defendant with the summons.
Deputy Clerk _____

* The State or a state officer or agency named as a defendant has 40 days to file its answer. If you have been served with this summons outside the United States, you also have 40 days to file your answer.

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
*Jordan Berger (New York Bar No. 5847827)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org
Email: berger@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700 (telephone)
(619) 699-2701 (fax)
Email: christopher.young@dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634)
**DLA PIPER LLP (US)**
1415 L Street, Suite 270
Sacramento, CA 95814-3976
(916) 930-3200 (telephone)
(916) 930-3201 (fax)
Email: micah.chavin@us.dlapiper.com

FILED in the TRIAL COURTS
State of Alaska Third District

**JAN 20 2023**

Clerk of the Trial Courts
By_____Deputy

**RECEIVED**

JAN 30 2023

Attorney General's Office
Juneau

CLASS ACTION COMPLAINT
*Della Kamkoff et. al. v. Heidi Hedberg*
Page 1 of 47

*Bethany M. Bunge (Tex. Bar No. 24120730)
**DLA Piper LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
(713) 425-8400 (telephone)
(713) 425-8401 (fax)
Email: bethany.bunge@us.dlapiper.com

FILED in the TRIAL COURTS
State of Alaska Third District

**JAN 20 2023**

Clerk of the Trial Courts
By_____Deputy

**RECEIVED**

**JAN 30 2023**

Attorney General's Office
Juneau

*pro hac vice to be filed

**Attorneys for Plaintiffs**

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated, | Case No. 3AN-23- 04259CI |
| *Plaintiffs,* | **CLASS ACTION COMPLAINT** |
| v. | |
| Heidi Hedberg, in her official capacity As Commissioner of the Alaska Department of Health. | |
| *Defendant.* | |

## PRELIMINARY STATEMENT

1.      John Andrew, Kayla Birch and Rose Carney are going hungry. Zoya Jenkins,

Theresa Ferguson and Ronda Conover can't get enough to eat or feed their families. Troy Fender,

Nataliia Moroz, Della Kamkoff and Autumn Ellanna are trying to figure out how to get food when

prices are high and resources nonexistent. Like thousands of other Alaskans, these ten individuals

struggle to eat because immense delays and chaos at the Alaska Department of Health ("DOH")

Case 3:23-cv-00044-SLG   Document 7-27   Filed 03/13/23   Page 3 of 48

have prevented them from accessing Supplemental Nutrition Assistance Program ("SNAP") benefits, which they need to buy food.

2.     Following copious press attention and criticism, the head of the Division of Public Assistance at the Alaska Department of Health stepped down on January 9, 2023, leaving unresolved the massive backlog of unprocessed SNAP cases that has left thousands of Alaskans without critical food assistance in the coldest months of the year.[1]

3.     Defendant Heidi Hedberg ("Defendant") has subjected thousands of Alaskans to ongoing hunger and continues to do so. Defendant persistently fails to process SNAP applications and issue eligibility determinations within the time frames required by law, to ensure that SNAP applicants can file an application on the first day they contact the Department of Health ("DOH"), and to provide interpretation and translation services to people with limited English proficiency. Defendant's operational failures violate the federal SNAP Act, the United States Constitution, and the Alaska Constitution.

4.     Plaintiffs bring this action on behalf of themselves and three proposed classes of similarly situated low-income Alaskans seeking preliminary and permanent injunctive relief and declaratory relief requiring Defendant to: (1) timely process new and recertification SNAP applications and render SNAP eligibility determinations to eligible households; (2) provide applicants with written notice of delays in processing their application that convey corresponding fair hearing rights; (3) provide applicants with written notice of their eligibility for assistance; (4) provide interpretation services and translated written materials to SNAP applicants and recipients;

---

[1] Claire Stremple, *Alaska's State Public Assistance Director Is No Longer in Her Post Following News of Months-Long Wwaits for Food Stamps*, Alaska Pub. Media (Jan. 10, 2023), https://alaskapublic.org/2023/01/10/alaskas-state-public-assistance-director-no-longer-in-job-following-food-stamp-backlog.

and (5) ensure that SNAP applicants can make an application for benefits on the date of their first contact with DOH.

**JURISDICTION**

5.      Jurisdiction over this action is conferred upon this Court by Alaska Stat. § 22.10.020(c) and (g).

6.      Venue is proper under Alaska Stat. § 22.10.030 and Alaska Rule of Civil Procedure 3(c).

7.      This action is brought under 42 U.S.C. § 1983 to redress the deprivation of federal statutory and constitutional rights.

**PARTIES**

8.      Plaintiff Della Kamkoff resides in Anchorage, Alaska.

9.      Plaintiff John Andrew resides in Marshall, Alaska.

10.     Plaintiff Kayla Birch resides in Petersburg, Alaska.

11.     Plaintiff Rose Carney resides in Wasilla, Alaska.

12.     Plaintiff Tereresa Ferguson resides in Anchorage, Alaska.

13.     Plaintiff Zoya Jenkins resides in Bethel, Alaska.

14.     Plaintiff Troy Fender resides in Wasilla, Alaska.

15.     Plaintiff Rhonda Conover resides in Palmer, Alaska.

16.     Plaintiff Autumn Ellanna resides in Nome, Alaska.

17.     Plaintiff Nataliia Moroz resides in Delta Junction, Alaska.

18.     Defendant Heidi Hedberg is the Commissioner of the Alaska Department of Health, the state agency responsible for, inter alia, administering the SNAP program in Alaska and

ensuring compliance with federal law relating to SNAP. *See* Alaska Stat. § 47.25.975.[2] This suit is brought against her in her official capacity.

## CLASS ALLEGATIONS

19.     Plaintiffs bring this action pursuant to Rule 23(a) and 23(b)(2) of the Alaska Civil Rules on behalf of three separate but overlapping classes consisting of:

> a. **An Untimely Eligibility Class**, represented by Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Nataliia Moroz and Rhonda Conover, comprised of all Alaska residents who since January 20, 2021 have applied, are applying, or will apply for SNAP benefits through an initial application or an application for recertification and did or will not receive an eligibility determination within the legally required timeframes;
>
> b. **A Right to File Class**, represented by Autumn Ellanna, comprised of all Alaska residents who since January 20, 2021, were or will be denied the right to file a SNAP application the first time they contact the agency; and
>
> c. **A Language Access Class**, represented by Nataliia Moroz, comprised of all Alaska residents with limited English proficiency who since January 20, 2021, did or will not receive application materials or vital eligibility documents in their primary language and/or access to oral interpretation services, as required by the SNAP Act.

20.     The classes are so numerous that joinder of all members is impracticable.

---

[2] The DOH was previously a part of Department of Health and Social Services (DHSS), but became a separate Department on July 1, 2022. *See* Alaska Exec. Order No. 121, (Jan. 18, 2022) https://www.akleg.gov/PDF/32/EO/exor0121.pdf.

21. Thousands of people in Alaska apply for SNAP benefits each month, and each month thousands more must recertify their eligibility.

22. Furthermore, the classes as defined include future members, making joinder of all members impracticable at this time.

23. According to data maintained by the Food and Nutrition Service of the United States Department of Agriculture ("FNS"), 112,611 persons in Alaska received SNAP as of September 2022.[3]

24. In total, more than 27,000 new applications for SNAP were filed with DOH from November 2021 through October 2022.[4]

25. DOH has possession and control of all relevant records.

26. There are common questions of fact and law concerning whether the failures in Defendant's SNAP operations deprived members of all classes access to SNAP benefits.

27. There are numerous questions of fact and law common to each class concerning whether Defendant fails timely to provide eligibility determinations and issue SNAP benefits, whether Defendant fails to ensure that Alaskans can submit an application for SNAP on the first day that they contact the agency, and whether Defendant fails to provide translation and interpretation services to Alaskans with limited English proficiency.

28. The individuals seeking to represent the classes present claims that are typical of the claims of the classes given that the named Plaintiffs and absent members of the classes did not have their applications processed in a manner so as to ensure timely receipt of SNAP, could not

---

[3] *Supplemental Nutrition Assistance Program: Number of Persons Participating (Data as of December 9, 2022)*, FNS (Dec. 9, 2022), https://www.fns.usda.gov/sites/default/files/resource-files/29SNAPcurrPP-12.pdf.

[4] *Monthly Caseload & Benefit Summary*, DEP'T OF PUB. ASSISTANCE (Nov. 21, 2022), http://dpaweb.hss.state.ak.us/files/reports/Csld&BeneSumm.pdf.

file an application upon first contacting DOH, or did not receive necessary interpretation services or written document translations.

29.     Declaratory and injunctive relief are appropriate with respect to the classes as a whole because Defendant has acted on grounds applicable to the classes.

30.     The named plaintiffs are adequate class representatives.

31.     The named plaintiffs and the proposed classes are represented by the Northern Justice Project, LLC, the National Center for Law and Economic Justice, and DLA Piper LLP, whose attorneys are experienced in class action litigation and will adequately represent the classes.

## STATUTORY AND REGULATORY SCHEME

### *Overview*

32.     Congress established the federally funded, state-administered Food Stamp Program in 1964 to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." Pub. L. No. 88-525, § 2, 78 Stat. 703 (codified at 7 U.S.C. § 2011). In order to "alleviate . . . hunger and malnutrition," Congress enacted the Food Stamp Program to "permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." *Id.*

33.     Effective October 1, 2008, the federal Food Stamp Program was renamed the Supplemental Nutrition Assistance Program ("SNAP") pursuant to the Food and Nutrition Act of 2008. Pub. L. No. 110-246, §§ 4001-02, 122 Stat. 1651, 1853-60.

34.     The federal government provides funding to the states for 100% of all SNAP benefits and at least 50% of the states' administrative cost to operate the program. 7 U.S.C. §§ 2013(a), 2019, 2025(a); 7 C.F.R. §§ 277.1(b), 277.4.

35.     Each state must designate a single state agency responsible for administering SNAP and complying with federal statutory and regulatory requirements. 7 U.S.C. § 2020(a), (d), and (e); 7 C.F.R. § 271.4(a). The state agency's responsibilities include the certification of eligible applicant households and the issuance of SNAP benefits to those households. 7 U.S.C. § 2020(a)(1), (e).

36.     Alaska participates in SNAP and also refers to benefits obtained through the program as "Food Stamps."[5]

37.     DOH is Alaska's single state agency responsible for administering SNAP in compliance with federal statutes and FNS regulations. Alaska Stat. §§ 47.25.975, 47.25.980.

### *Initial Application, Interview, and Eligibility Verification Process*

38.     Federal law requires that SNAP benefits "be furnished to all eligible households who make application for such participation." 7 U.S.C. § 2014(a).

39.     A SNAP household consists of all individuals who live together and purchase and prepare the majority of their meals together.  7 C.F.R. § 273.1(a).

40.     To apply for the SNAP Program, an individual must file an application with their name, address, and signature. 7 U.S.C. § 2020 (e)(2)(B)(iv); 7 C.F.R. § 273.2(c)(3)(i); Alaska SNAP Program Manual § 601.

41.     DOH must allow applicants to file SNAP applications the same day they contact the local social services office. 7 U.S.C. § 2020 (e)(2)(B)(iii); 7 C.F.R. § 273.2(c)(2)(i).

42.     In Alaska, SNAP applications are to be available in person, via phone from a DOH employee, or via a DOH-contracted fee agent.[6] *See* 7 C.F.R. § 272.7.

---

[5] SNAP and Food Stamps are terms used interchangeably throughout this Complaint.
[6] Fee agents are individuals with whom DOH contracts to assist individuals who live in communities that do not have a local DOH office. *See* 7 C.F.R. § 272.7(c).

43.    DOH is required to make information regarding SNAP requirements and procedures generally available and must explain to SNAP applicants their rights and responsibilities concerning eligibility for benefits. 7 C.F.R. §§ 272.5(b)(2), 273.2(a)(1), (e)(1).

44.    To receive SNAP, an applicant household must complete an interview. 7 C.F.R. § 273.2(e).

45.    DOH must schedule an interview for all applicant households who are not interviewed on the day they submit their applications and must schedule all interviews as promptly as possible to ensure eligible households receive an opportunity to participate within 30 days after the application is filed. 7 C.F.R. § 273.2(e)(3); *see also* Alaska SNAP Manual § 601-3(A).[7]

46.    For applicants who are not able to be interviewed on the day they submit an application, DOH policy requires the caseworker to provide a date and time for an interview appointment, and requires documentation that such information was provided to the applicant. Alaska SNAP Manual § 601-3(E).

47.    DOH may conduct interviews required in connection with determining eligibility at the local social services office, other mutually acceptable location, or by telephone under specified circumstances. 7 C.F.R. § 273.2(e). Interviews may also be conducted by DOH-contracted fee agents for those applicants who reside in a community without a local DOH office. 7 C.F.R. § 272.7(d)(4)(iii); Alaska SNAP Manual § 601-3(C).

48.    If a SNAP applicant household misses a scheduled interview, DOH must notify the household that the household is responsible for rescheduling the interview. 7 C.F.R. § 273.2(e)(3).

---

[7] The Alaska SNAP Manual can be found at
http://dpaweb.hss.state.ak.us/manuals/fs/fsp.htm#t=title_page_alaska_fsp_manual.htm.

49.     If the household contacts the administering agency within the 30-day period following submission of the application, the administering agency must reschedule the interview. Even if the household fails to appear for the first scheduled interview, the administering agency may not deny a household's application prior to the 30th day after an application is filed. 7 C.F.R. § 273.2(e)(3).

50.     If the household contacts DOH within the 30-day application processing period, DOH must schedule a second interview. 7 C.F.R. § 273.2(e)(3).

51.     If the household requests a second interview during the 30-day application processing period and is determined eligible, DOH must issue prorated benefits from the date of application. 7 C.F.R. § 273.2(e)(3).

52.     In Alaska alone, federal regulations permit postponement of the SNAP interview until after the household is certified for benefits in the interest of making SNAP more widely available. 7 C.F.R. § 272.7(d)(6).

53.     DOH must give each household at the time of application a notice of the verification requirements that the household must meet. 7 U.S.C. § 2020(e)(3). The notice must inform the household of the agency's responsibility to assist the household in obtaining verification provided the household is cooperating with the agency. 7 C.F.R. § 273.2(c)(5); *see also* 7 C.F.R. § 273.2(f)(5). And DOH must give households at least 10 days to provide the required verification. 7 C.F.R. § 273.2(f).

### *Timely Processing Requirements for Initial Applications*

54.     DOH must provide ongoing SNAP benefits to eligible applicants no later than 30 days after the date of application. 7 U.S.C. § 2020(e)(3); 7 C.F.R. §§ 273.2(a), (g)(1); 7 C.F.R. § 274.2(b).

55.     Certain households qualify for expedited processing, including those with very low income and liquid resources, those whose housing costs exceed the sum of their income and liquid resources, and certain migrant and seasonal worker households. 7 U.S.C. § 2020(e)(9); 7 C.F.R. § 273.2(i)(1). DOH must affirmatively identify households eligible for expedited service at the time the household requests assistance. 7 U.S.C. § 2020(e)(9); 7 C.F.R. § 273.2(i)(2).

56.     DOH must provide expedited issuance of SNAP benefits to these eligible households no later than the seventh day following the date an application is filed, following verification of the applicant's identity through a collateral contact or readily available documentary evidence, and after making reasonable efforts to verify certain other eligibility factors. *See* 7 U.S.C. § 2020(e)(9); 7 C.F.R. § 273.2(f)(1), (i)(1) & (4). The applicant's identity must be verified, but the issuance of food stamps within the required seven days cannot be delayed solely due to lack of verification of other eligibility factors, e.g., household residency, income, or liquid resources. 7 C.F.R. § 273.2(i)(4)(i).

57.     It is not sufficient for DOH to process an application and find a household eligible within the relevant statutory deadline. The applicant must have an opportunity to participate no later than 30 calendar days following the date the application was filed. An opportunity to participate consists of providing households with an active EBT card and PIN, and benefits that have been posted to the household's EBT account and are available for spending. *See* 7 C.F.R. § 274.2(b).

58.     For those applications that DOH is delayed in processing, DOH must send a written notice to households informing the household that its application has not been completed, is still being processed, and conveying the household's right to request a fair hearing if they are aggrieved. 7 C.F.R. § 273.10(g)(1)(iii); *see also* 7 U.S.C. § 2020(e)(10); 7 C.F.R. § 273.15(a).

59.     DOH must document the dates that applications are filed by recording the dates of receipt at the local social services offices. The length of time the agency has to deliver SNAP benefits is calculated from the dates the applications are received by the Department. 7 C.F.R. § 273.2(c)(1).

### *Recertification Application Processing and Timeliness*

60.     In order to continue to receive SNAP benefits, recipients must complete a recertification application prior to the end of the recipient's certification period. 7 U.S.C. 2020(e)(4); Alaska SNAP Manual § 604-2.

61.     Prior to the end of a household's certification period, DOH must provide households with a Notice of Expiration ("NOE") containing the date the certification period expires and the date by which a household must submit an application in order to receive uninterrupted benefits. *See* 7 C.F.R. § 273.14(b)(1); 7 U.S.C. § 2020(e)(4). For applicants who have been certified for three months or longer, DOH policy requires the agency to send the NOE approximately 45 days before the end of the certification period. Alaska SNAP Manual § 604-1(B).

62.     DOH must meet timeliness requirements when processing recertification applications.

63.     If an eligible household submits their application no later than 15 days prior to the end of its existing certification period, DOH must provide the household's SNAP allotment no later than one month after the household receives its last allotment issued pursuant to the prior certification. *See* 7 U.S.C. § 2020(e)(4); 7 C.F.R. § 273.14(d); Alaska SNAP Manual § 604-2(B)(1).

Case 3:23-cv-00044-SLG   Document 7-27   Filed 03/13/23   Page 13 of 48

64.     Caseworkers have 30 days to process a recertification submitted between the 16th of the month and the end of the month. Alaska SNAP Manual § 604-2(B).

65.     When DOH is delayed in processing a recertification application, the agency must send a delay notice conferring fair hearing rights as described in paragraph 58. *See also* 7 C.F.R. § 273.10(g)(1)(iii); *see also* 7 U.S.C. § 2020(e)(10); 7 C.F.R. § 273.15(a).

66.     SNAP households must be interviewed at least once every 12 months as part of the recertification process. *See* 7 C.F.R. § 273.14(b)(3); Alaska SNAP Manual § 601-3(A).

67.     Recertification interviews must be scheduled "so that the household has at least 10 days after the interview in which to provide verification before the certification period expires." 7 C.F.R. § 273.14(b)(3)(iii); *see also* Alaska SNAP Manual § 604-2(C).

68.     DOH must also provide the household with a notice of required verification and the due date for such verification and give the household at least 10 days to provide the required information. 7 C.F.R. § 273.14(b)(4).

69.     A household whose eligibility is not determined by the end of its current certification period due to the time period allowed for submitting missing verification shall receive an opportunity to participate, if eligible, within five working days after the household submits the missing verification. *Id.*

### Delayed Processing Requirements

70.     If a state agency does not determine a household's eligibility for SNAP benefits or "provide an opportunity to participate" within 30 days following the date the application was filed, the state agency must determine the cause of the delay. 7 C.F.R. § 273.2(h)(1).

71.     If the household failed to complete the application form, the state agency "must have offered, or attempted to offer, assistance in its completion." 7 C.F.R. § 273.2(h)(1)(i)(A).

72. If the household failed to appear for an interview, the state agency "must notify the household that it missed the scheduled interview and that the household is responsible for rescheduling a missed interview." Upon being contacted within the 30-day processing period, the state agency then must schedule a second interview and comply with additional notice requirements set forth in 7 C.F.R. § 273.2(h).

73. If the state agency does not comply with the aforementioned requirements in paragraphs 70, the processing delay is deemed to be the fault of the state agency. *See* 7 C.F.R. § 273.2(h)(1)(ii). The state agency must then: (i) take immediate action to correct those delays that it caused, (ii) notify the household "by the 30th day following the date the application was filed that its application is being held pending," (iii) "notify the household of any action it must take to complete the application process," and (iv) the agency must "not deny the application if it caused the delay," except in limited circumstances. 7 C.F.R. § 273.2(h)(3)(i).

74. Households that are found to be eligible during the second 30-day period are entitled to retroactive benefits. 7 C.F.R. § 273.2(h)(3)(ii).

### *Language Access Requirements*

75. The SNAP Act and its implementing regulations contain language access provisions that require DOH to provide "appropriate bilingual personnel and printed materials in the administration of the program" in parts of the State in which a substantial number of members of low-income households speak a language other than English. 7 U.S.C. § 2020(e)(1)(B).

76. The information, certification materials (including, but not limited to, the SNAP application form, change report form, and notices to the household), and staff or interpreters that DOH is required to provide is based on the estimated total number of low-income households in a

Case 3:23-cv-00044-SLG   Document 7-27   Filed 03/13/23   Page 15 of 48

project area that speak the same non-English language (a single-language minority). *See* 7 C.F.R. §§ 272.4(b), 272.5(a) & (b)(2).

77.     DOH must monitor and develop estimates of the number of low-income single-language minority households, both participating and not participating in the program, for each project area and certification office by using census data and knowledge of project areas and areas serviced by certification offices. 7 C.F.R. § 272.4(b)(6).

78.     DOH must also provide bilingual certification materials and bilingual staff or interpreters in each individual certification office that provides service to an area containing approximately 100 single-language minority low-income households. "Single-language minority" refers to households which speak the same non-English language and which do not contain adult(s) fluent in English as a second language. "Certification materials" include the Food Stamp application form, change report form, and notices to households." 7 C.F.R. § 272.4(b).

## **FACTUAL ALLEGATIONS**

### *DOH's Administration of the SNAP Program*

79.     DOH'S Division of Public Assistance ("DPA") administers the State's SNAP Program.

80.     DOH utilizes one 28-page application form for all of the public assistance programs it administers.

81.     Paper copies of the application form can be obtained in the lobbies of district offices.

82.     Applicants for SNAP can call the Virtual Contact Center ("VCC") to request a paper copy of the application be sent through the mail.

Case 3:23-cv-00044-SLG   Document 7-27   Filed 03/13/23   Page 16 of 48

83.     DOH's website indicates "[a]pplications can be submitted telephonically through the Virtual Contact Center (VCC) or in paper."

84.     In late 2022, DOH posted a copy of the application document to the agency website. The form is now available to download and print.  The form is available in English, Spanish, Tagalog, Russian, Korean and Hmong.

85.     Many low-income households lack capacity to print a 28-page document.

86.     No interactive online application is available to any person who cannot print the 28-page form.

87.     For Alaskan SNAP applicants who cannot print a 28-page form, SNAP application documents are often very difficult to access due to lack of geographic access to offices, office closures, and excessive phone wait times.

### In Person Offices

88.     DOH maintains eleven district offices throughout the State where SNAP applicants and recipients can file initial or recertification applications.

89.     In early 2020, DOH closed all district offices to the public due to the COVID-19 pandemic.

90.     Currently, DOH's website states that physical offices are open daily from 9am to 3pm for "limited services."

91.     The same website also says that offices are open Tuesday through Thursday from 9am to 4pm.

92.     Moreover, for those offices that are "open," only the lobbies are accessible, meaning that clients can drop off paperwork, but in-person assistance is widely variable between

locations. Even for Alaskans who can physically reach an office, in-person interviewing, application assistance, or information about submitted applications is often not available.

93.　District offices may also close without posted notice or warning to SNAP applicants and recipients who are looking for help.

94.　Some hub cities in rural areas that had previously served areas of the State proximate to substantial indigenous communities no longer have any physical offices. DOH closed offices in Sitka and Kotzebue. Village residents who previously used those offices now require two plane rides and a two-day trip to reach a DOH office in person.

<em>Submitting Applications</em>

95.　Completed SNAP applications may be submitted via mail, fax, email, direct secure messaging (requiring a DSM account), or drop boxes in district office lobbies.[8] DOH does not provide an online application submission system in spite of state law directing it to do so. Alaska Stat. § 47.25.980(a)(4).

96.　Once an applicant files a SNAP application, the application must be registered in DOH's computer system. DOH staff do not begin processing the application until it is registered.

97.　Applications submitted via drop boxes at the district office are frequently not registered for several days to several weeks.

98.　DOH also does not confirm receipt of applications submitted via email or in drop boxes, nor do DOH staff reliably respond to email communications inquiring about application documents.

---

[8] DOH's website indicates that an application can also be submitted through a fee agent. However, the fee agent then submits the application to DOH through email or one of these other means.

Case 3:23-cv-00044-SLG   Document 7-27   Filed 03/13/23   Page 18 of 48

99.   DOH maintains the VCC, a single toll-free number through which applicants and recipients for many programs may contact the agency.

100.   Due to the remote geography of much of the state and frequent office closures, the VCC is often the only way for Alaskans to contact the DOH.

101.   DOH directs applicants to contact the VCC if they need assistance to complete their application, have questions about the status of their application, want to request a paper application be sent in the mail, need to replace a benefit card, or for any other inquiry. Notably, applicants must also contact the VCC to complete the required interview for SNAP benefits. However, the availability of assistance via the VCC is sporadic and applicants must wait hours to reach a worker, if they are able to speak with one at all.

<em>Interviews</em>

102.   It is currently impossible to get an interview on the same day as an application is filed.

103.   While DOH's own regulations contemplate the use of fee agents to complete interviews in more remote areas, many rural communities have no fee agent, and the capacity of fee agents is inconsistent.

104.   Instead, DOH schedules all applicants for an interview appointment through the VCC and mails out interview notices containing the date and time of the interview.

105.   For rural residents, the interview notice often arrives after the scheduled interview, causing them to miss their interviews through no fault of their own.

106.    DOH does not call applicants to complete their interviews at the date and time of their appointment. Instead, on the appointed date, the applicant must call the VCC and follow phone tree prompts for a "confirmed scheduled interview."

107.    The appointment dates and times specified on the interview notices are a fiction. Applicants are not reliably connected to a worker at their appointment time. Instead, they must wait in the VCC queue, regardless of their appointment time.

108.    DOH encourages applicants to call into the VCC at least one hour prior to the VCC opening at 9:00 am so they may queue for the interview regardless of what time the interview is scheduled.

109.    Many applicants wait in the queue for their interview for several hours or more, regardless of their assigned timeslot. Some applicants are never connected to a DOH worker.

110.    The VCC has an option to request a callback, but DOH's follow up on these requests are unscheduled and unpredictable. The callback may never come.

111.    If the applicant misses a callback, DOH considers it a "missed interview."

112.    If the applicant misses a callback, the applicant must dial into the VCC and wait in the queue again.

113.    DOH often fails to respond to requests for callbacks.

### *Processing*

114.    Applicants who call the VCC to inquire about the status of their pending applications or recertifications wait on hold in queue for hours and, should they ultimately speak with a DOH worker, are told to "wait their turn" for processing.

115.    DOH does not issue the notice of delayed processing, conferring fair hearing rights, as required by federal law and state policy. *See* ¶¶ 58, 65, supra.

Case 3:23-cv-00044-SLG   Document 7-27   Filed 03/13/23   Page 20 of 48

116.    SNAP applicants have no recourse in the face of illegal application processing delays. They must simply wait an indefinite amount of time to receive essential food benefits.

117.    Despite the strict statutory and regulatory timeliness requirements outlined in paragraphs 54-69 herein, DOH systematically fails to process SNAP applications and recertifications and issue SNAP benefits to eligible households in a timely manner.

118.    DOH's own data demonstrates ongoing noncompliance with federal law requiring the timely processing of SNAP applications.

119.    Initial SNAP applications in Alaska are timely processed only 52.9% of the time.[9]

120.    Expedited application timely processing is even worse at 40.6%.[10]

121.    Recertification applications are timely processed only 30.5% of the time.[11]

122.    These failures have been of longstanding duration. Since Fiscal Year 2021, the DOH's data indicates persistent failure to process timely initial applications, expedited applications, and recertifications. As shown below, in 2021, DOH's timely processing rate for initial applications was 61.5%, for expedited applications was 71.4%, and for recertifications was 53.7%. For the current fiscal year, the Defendant's processing rate does not reach even 60% in any category.[12]

| Type of application | SFY21 | SFY22 | SFY23YTD |
|---|---|---|---|
| Expedited | 71.4% | 82.6% | 40.6% |
| Initial | 61.5% | 78.9% | 52.9% |
| Recertification | 53.7% | 68.0% | 30.5% |

---

[9] *Alaska DHSS–Division of Public Assistance Internal Performance Measures: Year-to-Date Performance*, DEP'T OF PUB. ASSISTANCE (Dec. 22, 2022), http://dpaweb.hss.state.ak.us/files/reports/DPA_All_Measures_YTD.pdf.

[10] *Id.*

[11] *Id.*

[12] *Alaska DH&SS–Division of Public Assistance Internal Performance Measures: Historic Performance*, DEP'T OF PUB. ASSISTANCE (Nov. 21, 2022), http://dpaweb.hss.state.ak.us/files/reports/DPA_All_Measures_YTD.pdf.

123. A May 7, 2018 report from the Alaska Ombudsman concluded after a systemic investigation that the Defendant's "Division of Public Assistance does not meet mandated timelines for processing applications and recertifications for program benefits [including SNAP] as required by state and federal law."[13] The Department of Public Assistance did not object to these findings.[14]

124. DOH's longstanding pattern of noncompliance with timeliness requirements has wrought a devastating impact on plaintiffs and members of the plaintiff class.

### *DOH's Failure to Comply with Language Access Requirements*

125. DOH systematically fails to comply with the language access provisions set forth in the SNAP Act and its implementing regulations.

126. Data prepared by the federal Department of Justice in 2015 based upon mapping surveys in five areas of the State indicate that more than 33,000 individuals in Alaska identified as limited English Proficient or as speaking English less than very well. The most prevalent languages identified were: Tagalog, Spanish, Korean, Hmong and a combined category for Native American/Indigenous languages.[15]

127. The Anchorage School District serves 43,000 students and provides demographic and language information as to their student population on the District website. According to their data, 20% of families in the Anchorage School District speak a language other than English at

---

[13] Ombudsman Investigation Division of Public Assistance Department of Health & Social Services Public Report J2018-0001 at 6; *see also id.* at 3-6.
[14] *Id.* at 6.
[15] *2015 Alaska Mapping LEP Populations in Your Community-Number by County*, Dept. of Justice, https://www.lep.gov/node/521

Case 3:23-cv-00044-SLG   Document 7-27   Filed 03/13/23   Page 22 of 48

home. The most commonly spoken languages in the district include Spanish, Hmong, Samoan, Filipino, and Korean.[16]

128. In 2007, the Alaska Native Language Center at the University of Alaska collected data on the number of people speaking various Alaska Native Languages and found that over 14,000 Alaskans speak a Native Language.[17]

129. For the first time, in late 2022, after posting the downloadable copy of the English-language application form on the DOH's website, DOH made available for download translated copies of the application form in Spanish, Tagalog, Russian, Korean, and Hmong. A limited number of other forms in the same languages are also available online. These include a change reporting form, an eligibility review form, a fair hearing request form, an information brochure about benefits from DOH and two SNAP informational pamphlets. DOH does not provide any notices in languages other than English.

130. These few translated written materials do not meet DOH's legal obligation to provide translated written information and interpretation services to Alaskan SNAP applicants and recipients with limited English proficiency. 7 C.F.R. § 272.4(b), 7 C.F.R. § 272.5(b)(2) and 7 U.S.C. § 2020(e)(1)(B).

131. DOH does not provide any written SNAP materials in any Alaskan Native Language.

132. Applicants can indicate that they speak a language other than English on their SNAP application form, but DOH usually does not provide translated written materials and vital

---

[16] *Anchorage School District: Our District*, ANCHORAGE SCH. DIST., https://www.asdk12.org/aboutasd/.

[17] *Dena'ina: Population and Speaker Statistics*, ALASKA NATIVE LANGUAGE CTR., https://www.uaf.edu/anlc/languages-move/pop.php.

documents even when provided with information regarding an applicant's language access needs.

133. If a SNAP recipient has their benefits reduced or terminated, DOH provides notice only in English, including to applicants and recipients who have alerted DOH that they need a spoken-language interpreter or document translation.

134. District offices, if they are open, routinely fail to provide bilingual personnel or interpretation services. Instead, they improperly rely on the family and friends of SNAP applicants for translation and interpretation.

135. DOH fails to provide adequate interpretation services through the VCC.

136. The VCC's recorded message and phone tree changes on a daily basis. Some days, the VCC offers alternative language options, and some days it does not.

137. When language options are available, they are: a menu in Spanish, a menu in Tagalog, or an interpreter for any other language.

138. When the option for any other language is selected, the caller must navigate all options in English and describe their need for an interpreter in English.

139. If a SNAP applicant can navigate the English language voice response system, and if they can request an interpreter in English, the applicant is connected with an external translation service. This connection is unstable and routinely drops either the interpreter or the client from the call.

140. The VCC does not provide interpretation services in any Alaskan Native language.

141. On the "Foreign Language Support" page of DOH's website, there is a list of "most frequently used languages," each with a direct line to an interpreter for that language. Not a single one of the nine phone numbers worked as of the date this Complaint is made.

142.    Defendant has failed to produce estimates of the number of low-income single-language minority households for each project area and certification office, even though this process is required by law. DOH has not conducted a language survey or gathered data necessary to identify the single-language minority populations they are legally required to identify and serve. 7 C.F.R. §272.4(b)(6). Nor has Defendant adopted single-language minority population estimates produced by another source, as the regulation also permits. *Id.*

143.    In January 2020, the Department of Health and Social Services ("DHHS"), the precursor agency to DOH, entered into a voluntary compliance agreement with the Civil Rights Division of the Food and Nutrition Service of the United States Department of Agriculture to address deficiencies identified in a program access review conducted by FNS in July and August of 2018.

144.    The compliance concerns specifically identified that the state agency had failed to make information and materials accessible to persons with limited English proficiency (LEP), provided vital documents impacting program participation only in English, failed to conduct an assessment to determine the language needs of the eligible populations, and permitted use of minor children and family members as interpreters.

145.    DHHS agreed to develop and implement a written plan to ensure compliance with applicable federal laws and regulations within specified time frames.

146.    DOH has yet to remedy the issues FNS identified.

147.    This continuing and persistent noncompliance with federal law has effectively barred many single-language minority low-income households from obtaining SNAP benefits to which they are entitled, in violation of Federal law.

## FACTS OF INDIVIDUAL NAMED PLAINTIFFS

### *Plaintiff Della Kamkoff*

148.    Plaintiff Della Kamkoff meets all of the statutory requirements to qualify for SNAP. The only barrier to her receipt of SNAP benefits is Defendant's failure to timely process her recertification application.

149.    Ms. Kamkoff lives with her husband and their four minor children. Her children are 2, 9, 11, and 14.

150.    Ms. Kamkoff has received SNAP off and on since April 2020. She last received SNAP in October 2022.

151.    Ms. Kamkoff did not receive a notice of expiration of her SNAP benefits nor a recertification packet by mail.

152.    At the beginning of November, Ms. Kamkoff called the DOH to find out why she had not received her SNAP benefits. She was able to use the automated service to check the status of her application. The automated service informed her that her SNAP benefits had been terminated.

153.    Throughout November 2022, Ms. Kamkoff and her husband each called the VCC multiple times to find out why their benefits had been terminated. Every time they called, there were long wait times of at least an hour. On one occasion, Ms. Kamkoff waited for an hour before her call was disconnected.

154.    In the middle of November 2022, Ms. Kamkoff went to the SNAP office in Anchorage. She was not able to speak to anyone because the office was closed. She took a new application off the wall, filled it out, and submitted it in the drop box.

155.    On November 28, 2022, Ms. Kamkoff spoke to Carrie Huck from the Alaska Food Bank. Ms. Huck directed her to file a recertification application for her benefits.

156.    On November 28, 2022, Ms. Kamkoff submitted a recertification application through Ms. Huck.

157.    On December 12, Ms. Kamkoff received a notice from the DOH with information about how to check on the status of her application through the VCC.

158.    Without SNAP, Ms. Kamkoff is not able to buy enough food to feed her family.

159.    Ms. Kamkoff has received some Alaskan Native food from her family when they come into town.

160.    She has also been going to the Salvation Army foodbank twice a month to pick up food.

161.    Occasionally the F.I.S.H. program also delivers food to her home.

162.    On December 25, 2022, Ms. Kamkoff tried to go to the Salvation Army for dinner. The Salvation Army did not have any food. Fortunately, one of her Facebook friends was able to donate a ham to her family for dinner.

### *Plaintiff John Andrew*

163.    Plaintiff John Andrew meets all of the statutory requirements to qualify for SNAP. The only barrier to his receipt of SNAP benefits is Defendant's failure to timely process his recertification application.

164.    Mr. Andrew lives with his three adult sons and his 8-year-old daughter. His 16-year-old daughter also lives with him sometimes.

165.    Mr. Andrew is the only person in his household who is currently employed. He earns $32,000 per year as a transportation director.

166.     Mr. Andrew does not have access to reliable transportation. His ATV is not operational, and he cannot afford to have it repaired.

167.     Mr. Andrew had been receiving SNAP benefits for the past 26 years until the end of October 2022. He has never previously had any issues receiving SNAP benefits.

168.     Mr. Andrew submitted his recertification application to DOH on October 11, 2022.

169.     On October 11, 2022, Mr. Andrew called the VCC. He requested a call back. DOH called him back about five hours later to confirm that they had received his recertification application. They also informed him that the interview requirement would likely be waived.

170.     Mr. Andrew called the VCC four to five additional times since he submitted his application. Each time, the person answering calls for the VCC confirmed that they received his application. Mr. Andrew was also informed that there were thousands of applications to be processed and very few case workers.

171.     Mr. Andrew cannot visit a DPA office in person. The nearest office to his home is approximately 100 miles away in Bethel, Alaska. He would need to take a plane to get there, which would be very expensive.

172.     Mr. Andrew and his children have now been without their SNAP benefits for more than two months.

173.     Without SNAP, he and his family cannot afford healthy food and do not have enough food.

### *Plaintiff Kayla Birch*

174.     Plaintiff Kayla Birch meets all of the statutory requirements to qualify for SNAP. The only barrier to her receipt of SNAP benefits is Defendant's failure to timely process her recertification application.

Case 3:23-cv-00044-SLG   Document 7-27   Filed 03/13/23   Page 28 of 48

175.    Ms. Birch is a single mother to her two sons. Her sons are 14 and 16 years old.

176.    Ms. Birch works part time. She is not able to work full time due to her medical issues. Her annual income is $18,000 per year.

177.    Ms. Birch began receiving SNAP benefits in May 2022.

178.    Ms. Birch submitted her recertification application in or about September 2022.

179.    Ms. Birch has not received her SNAP benefits since September 2022.

180.    Ms. Birch has not heard anything from DOH since she submitted her recertification paperwork.

181.    Every time Ms. Birch called the VCC until December 12, 2022, her phone call was disconnected after approximately two hours.

182.    During the week of December 12, 2022, Ms. Birch called the VCC and chose the option to receive a callback. When the worker from the VCC called her back, the worker told Ms. Birch her recertification application was received on October 3, 2022 but she had to continue to wait in line for her benefits. She was also told that another employee would call her to schedule an interview.

183.    Ms. Birch has not received any other communication from DOH since the December callback.

184.    Ms. Birch lives over 100 miles from the nearest DOH office. She would have to take a plane to visit a DOH office. A round trip ticket would cost her over $400.

185.    Ms. Birch and her sons have been struggling since losing their SNAP benefits.

186.    Ms. Birch usually only eats one meal per day to ensure her sons can have more food throughout the day.

187.   Since October, Ms. Birch and her sons have largely lived off of the deer meat that she hunted.

188.   Ms. Birch does not have enough food to pack her sons' lunch for school. She is sometimes able to give them enough money for the paid school lunch. Other times their teenage friends take them off campus and buy them lunch.

189.   On one occasion, Ms. Birch was able to receive help from the Salvation Army.

190.   Ms. Birch and her sons were also able to eat on Thanksgiving and Christmas due to the generosity of their friends.

191.   Without SNAP, Ms. Birch cannot afford to buy fresh produce. She uses her limited income to purchase premade microwavable meals to feed her and her sons.

192.   Ms. Birch has had to prioritize using her limited income for buying food. As a result, she has been late to pay her electric, cell phone and internet bills.

### *Plaintiff Rose Carney*

193.   Plaintiff Rose Carney meets all of the statutory requirements to qualify for SNAP. The only barrier to her receipt of SNAP benefits is Defendant's failure to timely process her recertification application.

194.   Ms. Carney is permanently disabled and receives federal Supplemental Security Income benefits.

195.   Ms. Carney has received SNAP benefits for the last seven years.

196.   Ms. Carney is the only person in her SNAP household.

197.   Ms. Carney submitted her recertification application for SNAP on or about October 29, 2022 at the Wasilla DOH office.

198.   October 2022 was the last month that Ms. Carney received SNAP benefits.

Case 3:23-cv-00044-SLG   Document 7-27   Filed 03/13/23   Page 30 of 48

199. Ms. Carney tried to visit the Wasilla DOH office on a Monday in November to find out the status of her SNAP benefits. The office was closed.

200. Ms. Carney has tried to call the VCC many times to get an update on her application. Each time she called the VCC, she reached an automated message directing her to call a different number.

201. Ms. Carney met a DOH employee in November 2022 when she went to the Joy Lutheran Church Food Bank. The employee checked on the status of her application and confirmed that her application had been submitted.

202. Ms. Carney has now been without SNAP benefits for over two months.

203. Without SNAP, Ms. Carney struggles to buy the food she needs to survive.

204. She is currently using the money she would ordinarily spend on other necessities such as gas, toilet paper, and laundry detergent to pay for food.

205. Ms. Carney has also been relying on different food banks to get enough food. She usually gets a monthly box of food from the Palmer Food Bank. Some months she has not been able to pick up the food because the roads are covered in snow.

206. Ms. Carney is also a volunteer at the Harvest Christian Fellowship Food Bank. Sometimes she is also able to get food from them when she is volunteering.

207. Although Ms. Carney prefers to eat vegetables and other healthy foods, she is currently surviving primarily on beans and potatoes as this is all that she can afford.

### *Plaintiff Tereresa Ferguson*

208. Plaintiff Tereresa Ferguson meets all of the statutory requirements to qualify for SNAP. The only barrier to her receipt of SNAP benefits is Defendant's failure to timely process her recertification application.

209. Ms. Ferguson lives with her husband and four children. Her children are 17, 15, 13, and 11 years old.

210. The family does not currently have any income. They have been using the money they received from last year's Permanent Fund Dividend to cover their rent and electricity.

211. Ms. Ferguson occasionally receives a little money from her sister when she watches her daughter. Ms. Ferguson's husband also tries to do odd jobs in the community to make a little money.

212. Ms. Ferguson received SNAP for the last 3 years.

213. Around November 15, 2022, Ms. Ferguson submitted her SNAP recertification application to DOH via the drop box at the Anchorage office.

214. Ms. Ferguson has not received any notification about the status of her application.

215. Ms. Ferguson has tried to call the VCC multiple times to get updates on her application.

216. She has never been able to speak to anyone at the VCC despite waiting on hold for up to 45 minutes.

217. Ms. Ferguson's sister brings meals over to feed Ms. Ferguson's family a few times a week.

### *Plaintiff Zoya Jenkins*

218. Plaintiff Zoya Jenkins meets all of the statutory requirements to qualify for SNAP. The only barrier to her receipt of SNAP benefits is Defendant's failure to timely process her recertification application.

219. Ms. Jenkins lives with her husband and two daughters. Her daughters are 15 years old and 1 year old.

Case 3:23-cv-00044-SLG   Document 7-27   Filed 03/13/23   Page 32 of 48

220.    Ms. Jenkins is currently unemployed and interviewing for a new job. In 2022, she made $21,000.

221.    Ms. Jenkins has received SNAP benefits for approximately the last ten years.

222.    She has not received SNAP benefits since September 2022.

223.    She submitted her recertification application by both fax and e-mail on September 23, 2022.

224.    In October 2022, she tried to call the VCC. She was given the option for a callback. No one ever returned her call.

225.    Ms. Jenkins also e-mailed DOH in October 2022 to check on the status of her SNAP application. Approximately a month later, DOH responded and stated they would send her a letter if they needed anything else. Ms. Jenkins has not heard anything further from DOH.

226.    Ms. Jenkins also tried to visit the Bethel District Office in either late October or early November. The door to the office was locked. Nobody answered the door.

227.    Ms. Jenkins has also tried to call the Bethel office but no one answered her calls.

228.    Without SNAP, Ms. Jenkins cannot buy enough food for her family.

229.    Ms. Jenkins and her husband regularly skip meals to ensure they have enough food for the children.

230.    The only store that Ms. Jenkins can shop at is the Alaska Commercial Company.

231.    Buying all meat, except chicken, is really expensive at the Alaska Commercial Company. One steak cost approximately $20.

232.    Other food items are also very expensive. For example, a gallon of milk is about $14 and a small jar of mayonnaise is about $8.

233.    Ms. Jenkins's parents sometimes give her meat and fish to help them get by.

Case 3:23-cv-00044-SLG   Document 7-27   Filed 03/13/23   Page 33 of 48

## Plaintiff Troy Fender

234.    Plaintiff Troy Fender meets all of the statutory requirements to qualify for SNAP. The only barrier to his receipt of SNAP benefits is Defendant's failure to timely process his recertification application.

235.    Mr. Fender lives with his girlfriend in his RV.

236.    Mr. Fender is currently unemployed. He has no income.

237.    He has been living off of his savings which he earned from being a truck driver.

238.    He first applied for SNAP in April 2022.

239.    In April 2022, he submitted his SNAP application through the drop box at the Matsu District Office in Wasilla.

240.    He never heard anything after submitting his application.

241.    In October 2022, Mr. Fender tried to apply for SNAP again by handing his application directly to a worker at the Matsu District Office.

242.    He again did not hear anything after submitting his application.

243.    In November 2022, Mr. Fender went back to the Matsu District Office to check on the status of his application.

244.    He almost left without talking to someone because the office appeared empty. The lights were dim and it seemed like there was no one there. Eventually, an employee came out and was able to verify that his application had been submitted and was currently pending. The employee encouraged him to "be patient."

245.    He has not heard anything else about his application.

246.    Without SNAP, Mr. Fender is not able to buy enough food.

Case 3:23-cv-00044-SLG   Document 7-27   Filed 03/13/23   Page 34 of 48

247.     It costs approximately $300 per month for Mr. Fender to heat his RV. He has had to decide whether to prioritize buying the diesel fuel for heat or food.

248.     He has also been relying on foodbanks and the good will of his family to survive.

### *Plaintiff Rhonda Conover*

249.     Plaintiff Rhonda Conover meets all of the statutory requirements to qualify for SNAP. The only barrier to her receipt of SNAP benefits is Defendant's failure to timely process her recertification application.

250.     Ms. Conover lives in one room of an extended family member's home with her 12-year-old daughter, 4-year-old son, and 2-year-old daughter. The father of her children also lives with them.

251.     With the assistance of a representative from the Alaska Food Bank, Ms. Conover applied for SNAP on December 14, 2022.

252.     Ms. Conover is eligible for expedited issuance of her SNAP benefits.

253.     She does not have any money nor any income at this time.

254.     Ms. Conover has not heard anything from DOH since she applied.

255.     Ms. Conover has tried to call the VCC approximately 15 times since she applied. She was able to leave about a dozen messages. Other times she was disconnected before she was given that option.

256.     On January 3, 2023, Ms. Conover e-mailed DOH to try to get a status update on her benefits.

257.     DOH has not returned her phone calls or e-mail.

258.     Without SNAP, Ms. Conover is not able to buy enough food to feed her family.

259. Ms. Conover has been relying on the generosity of her extended family to give her food.

260. Ms. Conover's family regularly skips meals due to not having enough to eat.

### *Plaintiff Autumn Ellanna*

261. Plaintiff Autumn Ellanna meets all of the statutory requirements to qualify for SNAP. The only barrier to her receipt of SNAP benefits is Defendant's failure to timely process her recertification application.

262. Ms. Ellanna lives with her 3-year-old daughter in a home with her parents and her younger brother.

263. In November 2022, Ms. Ellanna helped her father fill out his SNAP recertification application.

264. The only communication he received about the SNAP application was a written request for additional verification documents.

265. In the beginning of January 2022, her mother and father went to the Nome District Office to find out the status of the family's SNAP application. The worker informed them that their case had been closed due to missing the deadline for submitting additional pay stubs.

266. The family still has not received written notice of the denial of the recertification.

267. Her parents asked the worker for help while at the Nome District Office.

268. Instead of helping them, the worker directed them to apply for General Assistance at the Eskimo Community Center.

269. Ms. Ellanna decided to try to apply for SNAP separately on behalf of herself and her daughter.

270. On January 13, 2023, Ms. Ellanna called the VCC to ask for help with her application.

271. After waiting for approximately an hour to speak to someone, she reached a VCC employee who told her they would not help her over the phone. The only option they gave her was to have a SNAP application mailed or e-mailed to her.

272. Without SNAP, Ms. Ellanna is not able to buy enough food to feed herself and her young daughter.

273. When she called the VCC, she only had s $5.01 in her bank account. She is required to leave this money in her bank account or they will close her account.

274. On January 17, 2023, she went to the Nome District Office at 1:45pm to submit her paper application. She had to submit it via the drop box because the office was closed.

275. She purchases all of the food for her and her daughter using her WIC benefits. They mainly survive on cereal and eggs.

276. Sometimes Ms. Ellanna has to ask one of her other relatives for some money for food to feed her daughter.

### *Plaintiff Nataliia Moroz*

277. Plaintiff Nataliia Moroz meets all of the statutory requirements to qualify for SNAP. The barriers to her receipt of SNAP benefits are Defendant's failure to timely process his recertification application and to provide her access to the program in Russian.

278. Ms. Moroz lives with her husband and two minor children. One of her children is 1 year old and the other is 3 years old.

279. Ms. Moroz's family currently does not have any income.

280. Ms. Moroz and her family began receiving SNAP in May 2022.

281. On September 4, 2022, Ms. Moroz received a notice of expiration and recertification packet in the mail. The notice indicated that she needed to submit her recertification application by September 5, 2022.

282. On or around September 13, 2022, an extended family member submitted Ms. Moroz's recertification application to the dropbox at the Fairbanks District Office.

283. At the end of October 2022, Ms. Moroz visited the Fairbanks office to check on the status of her application. An employee in the office told her to keep waiting.

284. On January 10, 2022, Ms. Moroz returned to the Fairbanks District Office. She was informed her application was still pending and that she had to keep waiting.

285. Ms. Moroz's primary language is Russian.

286. She is not comfortable speaking in English.

287. She uses translation features on her phone to read and write in English.

288. Ms. Moroz's husband is also not comfortable speaking in English.

289. Ms. Moroz's uncle's wife sometimes provides informal support in navigating the SNAP application process in English.

290. Ms. Moroz's uncle's wife helped Ms. Moroz to fill out her SNAP application in May 2022 and with her recertification application in September 2022 as the document was only in English.

291. She has also called the VCC two times to find out the status of Ms. Moroz's application since Ms. Moroz cannot navigate the English language prompts on the VCC.

292. On her May 2022 application, Ms. Moroz indicated English was not her first language. She said that she was not comfortable reading and writing in English.

293. Ms. Moroz cannot use the VCC due to her limited understanding of English.

294. Ms. Moroz also had difficulties communicating with the DOH representatives when she went to the Fairbanks office because there was not an interpreter present.

295. Ms. Moroz has never received any notices or other information about her SNAP benefits in Russian.

296. Without SNAP, Ms. Moroz is not able to buy enough food to feed her family.

## STATEMENT OF CLAIMS

### FIRST CLAIM (SNAP ACT-TIMELY PROCESSING)

297. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as if fully restated herein.

298. Defendant causes Plaintiffs irreparable harm by the prevalent failure to process initial and recertification applications for SNAP within the times frames mandated by federal law, in violation of 7 U.S.C. § 2020(e)(3), (4), and (9), and implementing regulations, at 7 C.F.R. §§ 273.2(a)(2), (g)(1), (i)(2), (i)(3)(i) and, 273.14 and 7 U.S.C. § 2014(a).

### SECOND CLAIM (SNAP ACT-RIGHT TO APPLY)

299. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as if fully restated herein.

300. Defendant causes Plaintiffs irreparable harm by the prevalent failure to ensure that Alaskans can submit an application for SNAP on the first day that they contact the agency, in violation of 7 U.S.C. § 2020(e)(2)(B) and implementing regulations at 7 C.F.R § 273.2(c).

### THIRD CLAIM (SNAP ACT-LANGUAGE ACCESS)

301. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as if fully restated herein.

Case 3:23-cv-00044-SLG   Document 7-27   Filed 03/13/23   Page 39 of 48

302.    Defendant causes Plaintiffs irreparable harm by the prevalent failure to provide interpretation services, bilingual personnel, or translated written certification materials necessary for SNAP participation, in violation of 7 U.S.C. § 2020(e)(1)(B), 7 C.F.R. § 272.4(b) and 7 C.F.R. § 272.5(b)(2).

## FOURTH CLAIM (SNAP ACT-NOTICE OF DELAYED PROCESSING)

303.    Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as if fully restated herein.

304.    Defendant causes Plaintiffs irreparable harm by the prevalent failure to provide written notice and opportunity to request a fair hearing to SNAP applicants whose eligibility was not determined within legally mandated timeframes, in violation of 7 U.S.C. § 2020(e)(10) and implementing regulations 7 C.F.R. §§ 273.2(h)(3), 273.2(h)(4), 273.10(g)(1)(i)-(iii), and 273.15(a).

## FIFTH CLAIM (FEDERAL PROCEDURAL DUE PROCESS)

305.    Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as if fully restated herein.

306.    Defendant causes Plaintiffs irreparable harm by the prevalent failure to provide timely and adequate written notice of eligibility or delayed processing for SNAP benefits and deprives Plaintiffs of access to a fair hearing to raise disputes concerning eligibility and delayed processing, in violation of the Due Process clause of the 14th Amendment to the Constitution, made actionable by 42 U.S.C. § 1983.

307.    Defendant deprives Plaintiffs of fair access to SNAP benefits through use of a systemically inaccessible Virtual Contact Center, failure to timely render eligibility determinations, failure to provide required notice of delayed processing, and subjecting otherwise

eligible individuals to arbitrary deprivation of SNAP benefits in violation of the Due Process Clause of the 14th Amendment to the Constitution, made actionable by 42 U.S.C. § 1983.

## SIXTH CLAIM (STATE PROCEDURAL DUE PROCESS)

308. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as if fully restated herein.

309. Defendant causes Plaintiffs irreparable harm by the prevalent failure to provide timely and adequate written notice of eligibility or delayed processing for SNAP benefits and deprives Plaintiffs of access to a fair hearing to raise disputes concerning eligibility and delayed processing, in violation of the Due Process clause of Article I, Section 7 of the Alaska Constitution.

310. Defendant causes Plaintiffs irreparable harm by the prevalent failure to provide verbal interpretation or written translation of SNAP eligibility notices that confer fair hearing rights in violation of the due process clause of Article I, Section 7 of the Alaska Constitution.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and the class they represent as to all counts and:

    A.    Assume jurisdiction over this matter.

    B.    Certify three separate but overlapping classes of plaintiffs consisting of:

        1.  **An Untimely Eligibility Class**, represented by Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Nataliia Moroz and Rhonda Conover comprised of all Alaska residents who since January 20, 2021 have applied, are applying, or will apply for SNAP benefits through an initial application

or an application for recertification and did or will not receive an eligibility determination within the legally required timeframes;

2. **A Right to File Class**, represented by Autumn Ellanna, comprised of all Alaska residents who since January 20, 2021 were or will be denied the right to file a SNAP application the first time they contact the agency; and

3. **A Language Access Class**, represented by Nataliia Moroz, comprised of all Alaska residents with limited English proficiency who since January 20, 2021 did or will not receive application materials or vital eligibility documents in their primary language and/or access to oral interpretation services, as required by the SNAP Act.

C.   Declare that Defendant has:

1. Violated the SNAP Act and its implementing regulations by failing to timely process initial applications for SNAP benefits; failing to provide required eligibility notices, including notice of delayed processing conveying fair hearing rights; and failing to issue SNAP benefits to those eligible within the time frames required by law pursuant to 7 U.S.C. §§ 2014(a), 2020(e)(3), and implementing regulations, 7 C.F.R. §§ 273.2(a)(2),(g)(i), and 273.10(g)(1).

2. Violated the SNAP Act and its implementing regulations by failing to timely process those applications for SNAP benefits entitled to expedited processing; failing to provide required eligibility notices,

including notice of delayed processing conveying fair hearing rights; and failing to issue SNAP benefits to those eligible within the time frames required by law pursuant to 7 U.S.C. §§ 2014(a), 2020(e)(9), and implementing regulations, 7 C.F.R. §§ 273.2(a)(2), (i)(2), (i)(3)(i), and 273.10(g)(1).

3. Violated the SNAP Act and its implementing regulations by failing to timely process recertification applications for SNAP benefits; failing to provide required eligibility notices, including notice of delayed processing conveying fair hearing rights; and failing to issue SNAP benefits to those eligible within the time frames required by law pursuant to 7 U.S.C. §§ 2014(a), 2020(e)(4), and implementing regulations, 7 C.F.R. §§ 273.2(a)(2), 273.10(g)(2), and 273.14.

4. Violated the SNAP Act and its implementing regulations by failing to allow households to apply for SNAP on the first day they contact the agency to be unlawful pursuant to 7 U.S.C. § 2020(e)(2)(B)(iii) and 7 C.F.R. § 273.2(c)(1)(iii);

5. Violated the SNAP Act and its implementing regulations by failing to translate necessary written notices, program informational materials, and provide verbal interpretation, to be unlawful pursuant to 7 U.S.C. § 2020(e)(1)(B), 7 C.F.R. §§ 272.4(b) and 272.5(b)(2).

6. Violated the Due Process Clause of the 14th Amendment to the Constitution by failing to issue timely and adequate written notice of

eligibility or delayed processing and access to a fair hearing; and ensure a fair eligibility process is available to SNAP applicants and recipients

7. Violated the Due Process Clause of Article I, Section 7 of the Alaska Constitution by failing to issue timely and adequate written notice of eligibility or delayed processing and access to a fair hearing; and failing to provide timely interpretation or written translation of SNAP notices conferring fair hearing rights.

D.   Preliminarily enjoin Defendant to:

1. Allow applicants for SNAP to apply on the first day of contact with DOH by:

(a) Reopening and maintaining in-person DOH resource center operations sufficient to comply with the requirements of 7 U.S.C. § 2014(a) and 7 U.S.C. § 2020(e)(2)(B) of the SNAP Act and make face-to face interviews available to any applicant requesting one, consistent with the requirements of 7 C.F.R. § 273.2(e)(2);

(b) Checking agency drop boxes, mail, email and fax machines daily as necessary to ensure that SNAP applications are registered on the date they are submitted to the agency, consistent with the requirements of 7 C.F.R. § 273.2(c)(1)(iv);

(c) Accepting SNAP applications by telephone through the Virtual Contact Center as represented on the DOH website;

2. Provide required verbal interpretation services and written translations of certification materials to SNAP applicants and recipients by:

    (a) Conducting a language access survey or otherwise determining the number of low-income single-language minority households for project areas and certification offices in accordance with 7 C.F.R. § 272.4(b)(6) within 3 months of this Court's issuance of a preliminary injunction;

    (b) Modifying the Virtual Contact Center voice-response prompts to ensure that all callers are immediately asked if they require service in a language other than English and enable prompts for direct access to interpreter services;

    (c) Ensuring that interpretation telephone numbers identified on the DOH website are functional and staffed to receive calls from individuals with limited English Proficiency;

    (d) Providing written inserts with all vital documents related to SNAP eligibility determinations that inform applicants and recipients of the availability of verbal interpretation upon request within 3 months of this Court's issuance of a preliminary injunction, including mailings to Plaintiff Moroz;

    (e) Prominently posting information based upon relevant language access survey information advising applicants and recipients how to access interpreter services in all DOH offices;

3. Promptly processing SNAP applications and recertifications now pending beyond legally mandated-processing timeframes during the pendency of the litigation, and on an ongoing basis as well, and provide written notice and opportunity to request a fair hearing to those SNAP applicants who applications are not processed within the mandated timeframes, including individually Named Plaintiffs;

E.  Permanently enjoin Defendant to:

1. Permit all SNAP applicants to file applications on the first day they contact the DOH;

2. Provide language-appropriate written application and certification materials, vital eligibility documents, and legal notices, as well as access to interpreters or bilingual staff as needed, to ensure that new and recertifying households can participate fully in SNAP regardless of their primary language;

3. Process initial SNAP applications and applications for recertification, render eligibility determinations, and provide written notice and opportunity to request a fair hearing within legally mandated timeframes; and

F.  Award Plaintiffs litigation costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and Alaska Rule of Civil Procedure 82(a).

G.  Grant such other, further, or different relief as this Court may deem just and proper.

DATED this 20th day of January, 2023 at Anchorage, Alaska.

/s/ Nicholas Feronti

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
*Jordan Berger (New York Bar No. 5847827)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org
Email: berger@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700 (telephone)
(619) 699-2701 (fax)
Email: christopher.young@dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634)
**DLA PIPER LLP (US)**

1415 L Street, Suite 270
Sacramento, CA 95814-3976
(916) 930-3200 (telephone)
(916) 930-3201 (fax)
Email: micah.chavin@us.dlapiper.com


*Bethany M. Bunge (Tex. Bar No. 24120730)
**DLA Piper LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
(713) 425-8400 (telephone)
(713) 425-8401 (fax)
Email: bethany.bunge@us.dlapiper.com

*Attorneys for Plaintiffs*