USDA United States Department of Agriculture

Food and
Nutrition
Service

1320 Braddock Place
Alexandria, VA
22314

DATE: August 2, 2023

SUBJECT: Supplemental Nutrition Assistance Program (SNAP) – Updated Guidance for Improving State Agency Application Processing Timeliness Rates: Standardizing the Escalation Process

TO: All SNAP State Agencies
All Regions

The purpose of this memorandum is to advise State agencies on the steps the Food and Nutrition Service (FNS) will take to monitor and engage State agencies with poor Supplemental Nutrition Assistance Program (SNAP) initial application processing timeliness (APT) rates. This memo replaces guidance from the memorandum dated March 18, 2016, Guidance for Improving State Timeliness Rates and Standardizing the Escalation Process.

Low APT rates have a real and significant impact on eligible households who struggle to put food on the table while their SNAP applications are stalled. Delays in receiving benefits are especially detrimental to households entitled to expedited service, who are most in need of immediate food assistance. While households may turn to food banks or other resources in times of hardship, SNAP remains one of our country's strongest defenses against hunger. State agencies are required to operate the program in a manner that ensures all eligible applicants are certified to receive benefits in a timely fashion. Timely application processing an essential element of good customer service and ensures households have access to essential nutrition assistance.

The Food and Nutrition Act of 2008 (the FNA), requires that households have the opportunity to participate in SNAP within 7 days for expedited cases and 30 days for regular cases. While States agencies are required to process all SNAP applications within the timelines provided in the statute, FNS considers an APT rate of 95 percent and above acceptable performance.

FNS has long monitored APT rates as part of its oversight responsibility to ensure State agency compliance with SNAP program requirements under 7 CFR 275.3. FNS has also required corrective action when State agencies or FNS have identified deficiencies in APT. In 2014 and again in 2016, FNS streamlined and formalized its escalation process to identify poor performing State agencies and promote significant improvements in State agencies with APT rates falling below 90 percent on the upper bound of the 95 percent confidence interval.

For many reasons, including the suspension of certain Quality Control (QC) requirements in response to the COVID-19 public health emergency (PHE), FNS has lacked available data to follow the escalation process over recent years. FNS recognizes that the PHE presented unique circumstances for our State agency

USDA is an Equal Opportunity Provider, Employer and Lender

partners, which resulted in poor timeliness across the nation. While FNS' previous escalation procedures provided a standardized process to address poor timeliness, they did not provide for or envision circumstances regarding the technical assistance and flexibility required as State agencies exit from the unprecedented COVID-19 pandemic and continue to face staffing and technology issues. Accordingly, FNS is revising its escalation procedures to better reflect the current realities on the ground.

The updated escalation procedures, effective October 1, 2023, build in some flexibility for FNS to engage State agencies when APT rates fall below acceptable performance while maintaining a standardized process. Updates to the escalation procedures include engaging in technical assistance earlier, setting State agency-specific benchmarks for improvement, and data validation of State agency-generated APT data.

While the process outlined in this memo serves to standardize escalation procedures, FNS may deviate from this process when a State agency's APT rate is particularly egregious, or because of other circumstances in the State agency, such as a large backlog or major systems issues. In these cases, FNS may proceed directly to the process under 7 CFR 276.4(d). In addition, the suggested actions or requirements at each step of the escalation procedures are only examples; individual State agencies may be directed to follow alternative processes.

In order to appropriately target State agencies with chronic timeliness issues, FNS will deviate from the escalation procedures and immediately proceed to an APT CAP when a State agency has a FNS QC APT rate below 85 percent for the two most recent consecutive quarters available as of October 1, 2023.

State agencies with questions should contact their Regional Office representatives.

MARGARET JOHNSTON
Digitally signed by MARGARET JOHNSTON
Date: 2023.08.02 17:32:09 -04'00'

Moira Johnston
Acting Director, Program Development Division
Supplemental Nutrition Assistance Program

Attachment

## Guidance for Improving State Agency Application Processing Timeliness Rates: Standardizing the Escalation Process

The purpose of this memorandum is to update the guidance provided to State agencies on the steps the Food and Nutrition Service (FNS) will take to improve Supplemental Nutrition Assistance Program (SNAP) initial application processing timeliness (APT) rates. This memo replaces guidance from the memorandum dated March 18, 2016, Guidance for Improving State Timeliness Rates and Standardizing the Escalation Process.

While the process outlined in this memo serves to standardize escalation procedures, note that FNS may deviate from this process when a State agency's APT rate is particularly egregious, or because of other circumstances in the State agency such as a large backlog or major systems issues. In these cases, FNS may proceed directly to the process under 7 CFR 276.4(d). In addition, the suggested actions or requirements at each step of the escalation procedures are only examples; individual State agencies may be directed to follow alternative processes.

**What is Application Processing Timeliness?**

The Food and Nutrition Act of 2008 (the FNA), as amended, requires that households have the opportunity to participate in SNAP, defined as having been certified with access to their benefit allotment, within 7 days for expedited cases and within 30 days for regular cases. Per Federal regulations at 7 CFR 274.2(b), an opportunity to participate consists of two parts. First, households must have an active Electronic Benefits Transfer (EBT) card and personal identification number (PIN). Second, benefits must be posted to the household's EBT account and are available for use.

**How is Application Processing Timeliness Measured?**

FNS measures timeliness of initial SNAP application processing three ways: 1) the FNS Application Processing Timeliness (APT) rate, ("FNS APT Rate") 2) the State agency timeliness rate ("State APT rate"), and 3) the Certification Section of the FNS Program and Budget Summary Statement, Part B-Program Activity Statement (FNS-366B). In addition to these measures, FNS also regularly monitors State agency timeliness through management evaluation reviews, advocate and client complaints, and other modes of information gathering.

The FNS APT rate is calculated from the Quality Control (QC) active case sample and derived by dividing the number of initial SNAP applications approved within the 7- or 30-day processing requirement for a given period of time by the total number of applications approved within that same time period and multiplying by 100 percent.

$$\textbf{FNS APT Rate} = \frac{\#\text{ Applications Approved Timely of QC Sample}}{\text{Total Applications Approved of QC Sample}} \times 100$$

FNS calculates a 95 percent confidence interval surrounding the FNS APT rate point estimate to account for differences in the size of the QC samples. The upper bound of the confidence interval, rather than the point estimate, is used to identify and monitor timeliness[1]. **If the upper bound of the confidence interval is below 90 percent, the State agency is required to take corrective action.**

FNS publishes quarterly timeliness data for each State agency. Quarterly data represents a rolling 6-month average and has a lag of approximately 4 months between the time the data is collected and its publication. Nonetheless, the data can be effective in flagging timeliness problems, particularly because in many cases timeliness issues develop and persist over time. FNS combines the reviewed cases and publishes an annual FNS APT rate for each State agency in July of each year. This annual FNS APT rate reflects the State agency's timeliness from the previous fiscal year.

For more information on the FNS APT rate, please reference the memorandum dated June 2, 2017, Clarification on the Three Ways Initial SNAP Application Processing Timeliness is Measured.

In addition to the FNS APT rate from the QC sample, State agencies may also generate their own APT rate. State APT rates provide a reasonable approximation to the FNS APT rate and are often more readily available than the FNS APT rate. If the entirety of the sampling universe is utilized for the State APT rates, the direct estimate will be used in place of the upper bound of the confidence interval. The State Agency Timeliness Data Protocol outlines how to calculate the State APT rate.

Poor Timeliness Escalation Procedure: The 5-Step Approach

The FNA requires State agencies to provide all eligible applicants with timely benefits. FNS considers an APT rate of 95 percent and above acceptable performance. State agencies are subject to the escalation procedures, described below, when their FNS APT rates fall below 90 percent.

Step 1: Pre-escalation and Identification
Step 2: APT CAP
Step 3: Advance Warning Letter
Step 4: Formal Warning Letter
Step 5: Sanction Administrative Funding

[1] The FNS APT rate in the context of corrective action throughout this document refers to the upper bound of the 95 percent confidence interval of the estimated sample APT rate calculated from available State agency data.

*Escalation Procedures Rollout*

In order to appropriately target State agencies with chronic timeliness issues, State agencies with an FNS APT rate below 85 percent for the two most recent consecutive quarters available as of October 1, 2023, will immediately proceed to Step 2. State agencies where the most recent quarter of APT data is between 85-90 percent, as of October 1, 2023, will follow Step 1.

**Step 1: Pre-escalation and Identification**

FNS may use the FNS annual or quarterly APT rate to initiate the escalation process. The first time a State agency has a FNS APT rate below 90 percent on a QC quarterly or annual report, FNS will inform the State agency and offer technical assistance to identify the root cause(s) of poor timeliness and methods to improve timeliness. If the State agency's FNS APT rate falls below 90 percent for a second consecutive quarter, FNS will request an initial timeliness-specific corrective action plan (APT CAP).

While two consecutive quarters below 90 percent indicates a trend of poor performance, FNS also recognizes that large drops in timeliness between quarters warrants immediate attention. FNS reserves the right to immediately engage in the escalation procedures and request an APT CAP for any State agency whose timeliness falls below 80 percent in a single quarter. FNS will not use State agency-generated timeliness data to initiate the APT escalation process. However, the State agency can use their own timeliness data to demonstrate progress towards the achievement of benchmarks throughout the escalation process. If a State agency wishes to use their own timeliness data, it must use the State Agency Timeliness Data Protocol to pull and analyze timeliness data for their entire caseload. FNS will validate State agency data using procedures outlined in the Data Validation section of the Protocol.

In addition to FNS and State APT data, FNS may also rely on other valid sources of information to capture the most current picture of timeliness. This additional information, such as backlog data, findings from an EBT management evaluation (ME) or other ME, and advocate or media reports will assist FNS in providing technical assistance to the State agency.

**Step 2: APT CAP**

When a State agency has a FNS APT rate below 90 percent for two consecutive quarterly reports (or, as of October 1, 2023, the two most recent quarterly reports show a rate below 85 percent), FNS will require the State agency to create or update an APT CAP. The request will outline the minimum requirements that the State agency must include in its APT CAP. FNS expects to see continuous improvement in timeliness rates. If a State agency fails to make sufficient progress towards benchmarks within the APT CAP, State agencies may be escalated.

*Benchmarks*

FNS will set the benchmark(s) and associated timeframes through review of current and historical APT data including the State agency's history of APT CAPs. The benchmarks will require a State agency to improve its APT rate by a certain percentage every set number of months.

Benchmarks may include:
- Achieving an intermediary APT rate (e.g., 90 percent),
- Improving an APT rate by a certain percentage, or
- Clearing a backlog in new applications or expedited applications by a specified date.

**The minimum benchmark for improvement shall be at least 5 percentage points every 6 months.** When setting benchmarks, FNS will consider realistic progress that a State agency can make within a specified timeframe taking into consideration current State agency initiatives.

*Corrective Action Plan*

State agencies must follow the processes described in 7 CFR 275.16 and 7 CFR 275.17 when planning for and creating an APT CAP. FNS can provide technical assistance to the State agency in identifying the root cause(s) of the timeliness problem and in identifying steps the State agency can take to address the root cause(s). For example, FNS can facilitate calls with the State agency's systems, policy, and integrity personnel. These calls can be used to share information and best practices from State agencies with recent improvements or sustained high timeliness performance; discuss waivers and State options that may assist timeliness; and provide consultation on business process reengineering (BPR).

FNS will review the APT CAP and provide feedback on any necessary improvements. Once the APT CAP is acceptable, FNS will inform the State agency in writing.

With the submission of its initial APT CAP, the State agency may present FNS with State agency-calculated timeliness data following the State Agency Timeliness Data Protocol for the preceding 6 months to demonstrate how recent actions may have improved timeliness. The State agency-calculated data may help to support activities that the State agency will include in the APT CAP and may guide FNS in its review of the APT CAP. Regardless, FNS will require as part of the CAP at minimum, monthly APT rate data calculated by the State agency using the State Timeliness Agency Data Protocol. FNS will review this data to ensure the State agency collects it in accordance with the State Agency Timeliness Data Protocol and other applicable standards.

**State agencies must submit ongoing updates to their APT CAP to FNS by May 1 and November 1 of each year.** These updates should include specific progress made with each activity outlined in the State agency's APT CAP and any effect on its APT rate that the

activity has made. FNS will review each State agency's update and may adjust milestones to encourage progress towards an APT rate of 95 percent. FNS will communicate any new or adjusted benchmarks in its response to each APT CAP update.

*Release from APT CAP*

FNS will release the State agency from the APT CAP when the State agency has a FNS APT rate of 95 percent for two consecutive quarterly reports or State agency data following the State Timeliness Agency Data Protocol validated by FNS shows an APT rate of 95 percent for 6 consecutive months. If there is a significant discrepancy between the FNS and State APT rates where one rate falls below 95 percent, FNS will investigate further prior to releasing the State agency. FNS will send the State agency a letter releasing the State agency from the APT CAP.

**Step 3: Advance Warning Letter**

When a State agency fails to meet benchmarks set by FNS through the APT CAP process, or refuses to engage in the APT CAP process, FNS will send an Advance Warning Letter in accordance with 7 CFR 276.4(d)(1). This letter will alert the State agency it is at risk of receiving a Formal Warning Letter if it does not meet the benchmarks outlined in the Advance Warning Letter by the specified timeframe. FNS expects to see continuous improvement in timeliness rates. If a State agency fails to progress to the satisfaction of FNS, FNS may escalate to Formal Warning. FNS may also issue a Formal Warning Letter without first issuing an Advance Warning Letter to expedite the escalation procedure after noncompliance or lack of progress during the APT CAP stage.

*Benchmarks*

FNS will set the benchmark(s) and associated timeframes through review of APT data and current circumstances. Refer to Benchmarks under Step 2 for details.

**State agencies that previously refused to engage in the APT CAP process must submit an APT CAP to FNS within 30 calendar days of receipt of the Advance Warning Letter.**

*Revised Corrective Action Plan*

**State agencies that failed to meet benchmarks of their APT CAP must revise their APT CAP and submit it to FNS within 30 calendar days of receipt of the Advance Warning Letter.** The revised APT CAP must specifically indicate which previous activities were ineffective and why. It must also specify which activities will continue (and how the State agency will adjust the activity to be effective) and any new activities that the State agency plans to implement. FNS will review the revised APT CAP and provide feedback and guidance to the State agency. FNS will accept the APT CAP when it is to FNS's satisfaction. FNS can provide technical assistance to the State agency to refine and help identify new

activities targeting the timeliness problem. For example, FNS can send "call for action" letters to State agency leadership or provide State agency exchange funds to support sharing of best practices between State agencies.
For details on initial APT CAPs including the use of State agency-calculated timeliness data, please refer to Corrective Action Plan under Step 2.

During this stage, FNS will work closely with the State agency and will require progress reports towards the specified benchmarks. These progress reports will include monthly updates, at a minimum, on the State APT rate using the procedures specified in the State Agency Timeliness Data Protocol. FNS will also meet with State agencies monthly, at a minimum, to review data and progress reports and discuss any additional action or technical assistance needed.

*Release from the APT CAP and Escalation*

FNS will release the State agency from the APT CAP and escalation procedures when the State agency has a FNS APT rate of 95 percent for two consecutive quarterly reports or State agency data following the State Agency Timeliness Data Protocol validated by FNS shows an APT rate of 95 percent for 6 consecutive months. FNS will send the State agency a letter closing the Advance Warning and releasing the State agency from the APT CAP and escalation procedures.

**Step 4: Formal Warning Letter**

When a State agency fails to progress to the satisfaction of FNS through the Advance Warning process, FNS will send a Formal Warning Letter in accordance with 7 CFR 276.4(d)(2). FNS may also issue a Formal Warning Letter without first issuing an Advance Warning Letter to expedite the escalation procedure after noncompliance with the APT CAP. FNS will alert the State agency that it is at risk of having Federal funds suspended, disallowed, or both if it does not meet the benchmarks outlined in the Formal Warning Letter by the specified timeframe. The letter will document the amount of Federal funds that will be suspended or disallowed (or an estimate if the actual amount is not available) if the APT issue is escalated further.

*Benchmarks*

FNS will set the benchmark(s) and associated timeframes through review of APT data and current circumstances. Refer to Revised Corrective Action Plan under Step 2 for details on revising the APT CAP. Refer to Benchmarks under Step 2 for details.

*Revised Corrective Action Plan*

**The State agency must revise its APT CAP and submit it to FNS within 30 calendar days of receiving the Formal Warning Letter.** FNS can provide technical assistance to the

State agency, such as holding meetings between FNS leadership and State agency leadership. During this stage, FNS will work closely with the State agency and will determine the frequency of communication (e.g. monthly or weekly) with State agencies to review State APT rates, metrics and progress towards meeting APT CAP benchmarks, and tailor any additional action or TA provided to State agencies' needs.

*Release from APT CAP and Escalation*

FNS will release the State agency from the APT CAP and escalation procedures when the State agency has a FNS APT rate of 95 percent for two consecutive quarterly reports or State agency data following the State Agency Timeliness Data Protocol validated by FNS shows an APT rate of 95 percent for 6 consecutive months. FNS will send the State agency a letter closing the Formal Warning and releasing the State agency from the APT CAP and escalation procedures.

**Step 5: Sanction Administrative Funding**

If a State agency fails to submit a satisfactory APT CAP within 30 calendar days of receiving the Formal Warning letter, or fails to achieve the commitments in its APT CAP by the dates specified in the APT CAP, FNS will take action to suspend or disallow Federal funds afforded to the State agency (7 CFR 276.4(e)).

Policy Implementation Date

This policy will be effective October 1, 2023. FNS will use the most recent FNS quarterly APT data with a rolling 6-month average APT rate to begin escalation procedures. See *Escalation Procedures Rollout* for more information.

# State Agency Timeliness Data Protocol

This data protocol provides State agencies guidance on how to gather certification data to generate their own APT rate. State APT rates can often be calculated and made available more readily than the FNS APT rate.

This protocol uses the entire universe of State agency SNAP cases for a given period of time instead of a sample of case files like the FNS APT rate. If the entirety of sampling universe is utilized for the State APT rates, the direct estimate will be used in place of the upper bound of the confidence interval. The State APT rate also includes applications pended due to missing verifications, whereas such cases are excluded from the FNS APT rate. Lastly, the APT rate includes an estimation of the length of time it takes to load benefits on an EBT card once the household is approved, whereas the FNS APT rate directly measures this amount of time and includes it in the number of processing days.

Using certification data instead of reviewing sampled cases during a case file review allows the State agency to generate a timely APT rate that can be used by the State agency and FNS to track progress and determine if corrective action strategies have the intended impact on the State agency's APT performance. FNS will validate State agency-generated APT rates by following the procedures outlined in the Data Validation section of this Protocol.

State APT Rate Formula

A State agency calculates the State APT rate by dividing the number of SNAP applications approved within the 7 or 30-day processing requirement by the total number of applications approved within a specified timeframe.

$$\textbf{State APT Rate} = \frac{\#\text{ Applications Approved Timely}}{\text{Total Applications Approved}} \times 100$$

Definitions

**# of Applications Approved Timely:** Within a specified timeframe, the number of SNAP initial applications subject to the 7-day processing requirements that were certified to receive benefits by the 7th day from the date of application plus the number of SNAP initial applications subject to the 30-day processing requirements that were certified to receive benefits by the 30th day from the date of application.

**Date of Application:** The date the State agency receives a SNAP initial application with the minimum requirement of a name, address and signature of the applicant or authorized representative.

**Date of Certification:** The date the State agency certifies a SNAP initial application for SNAP.

**Date of Issuance:** The date that SNAP benefits are available for a certified SNAP initial applicant to use.

**Opportunity to Participate:** An applicant certified for SNAP must receive an active EBT card, EBT PIN and have their benefits posted to their EBT card for use by the 30th day or 7th day for applicants that meet expedited service criteria. While actual case files are used to accurately determine opportunity to participate for QC purposes, this protocol uses a universe of certification data pulled from an eligibility system where all factors needed to determine Opportunity to Participate may not be readily available. For this reason, *the Date of Issuance will be used as a reasonable proxy for Opportunity to Participate in this data protocol*.

**Properly Pended for Missing Verification (Properly Pended):** A SNAP initial application that is pended on the 30th day from the date of application because the applicant has not submitted required verification requested by the State agency and the State agency has assisted, notified, and provided sufficient time for the actions outlined in 7 CFR 273.2(h)(1)(i). SNAP initial applications properly pended (for applicant delay in providing verification) are excluded from the FNS APT Rate. An approved SNAP initial application that is pended for any other reason is **not** excluded from the FNS APT rate and therefore considered untimely. While actual case files are used to accurately determine if an application was properly pended due to a client's delay in providing verification for QC purposes, this protocol uses a universe of certification data pulled from an eligibility system where all factors needed to determine properly pended are unlikely to be available. For this reason, this protocol will **not** adjust for properly pended applications.

**SNAP Initial Application:** An application to receive benefits from SNAP, including multi-program applications where the applicant has identified SNAP, from an applicant not currently receiving SNAP from the State agency. Applications submitted within 30 days after the end of the certification period should be treated as an application for recertification and is not included in the APT rate.

**SNAP Recertification Application:** An application to continue receiving benefits from SNAP from an applicant currently receiving SNAP from the State agency or from an applicant whose certification period expired within the last 30 days from date of application.

**State APT Rate:** Application Processing Timeliness (APT) rate is the percent of a State agency's certified initial SNAP applications approved within 7 or 30-day SNAP statutory processing requirements.

**Total Applications Approved:** Within a specified timeframe, the total number of SNAP initial applications, including those applications that make up the "# of Applications Approved Timely."

Gathering and Analyzing the Data

**Data Pull: Send with first submission of State APT data and when requested by FNS**

- Collect the following data elements for any SNAP initial

application with a *Date of Certification* within [month] [year] from the eligibility system:

- Case Number
- Date of Application
- Expedited Indicator
- Date of Certification
- Date of Issuance

**Data Analysis**

- Determine Expedited Timeliness:
  - For records with an expedited indicator, determine the number of days from the Date of Application to the Date of Issuance. If the number of days is less than or equal to 7, flag as timely. If not, flag as untimely.
- Determine Regular Timeliness:
  - For records without an expedited indicator, determine the number of days from the Date of Application to the Date of Issuance. If the number of days is less than or equal to 30, flag as timely. If not, flag as untimely.
- Determine # of Applications Approved Timely:
  - Count the number of records flagged as timely.
- Determine Total Applications Approved:
  - Count the number of records flagged as both timely and untimely.

**Calculate APT Rate**

- Divide the # of Applications Approved Timely by the Total Applications Approved. Multiply this number by 100 to get that month's APT rate.

**Example State Agency Data Pull**

All applications with a certification date within the month of April 2023.

*Determine Timeliness (columns in red)*

| Case Number | Date of Application | Expedited Indicator | Date of Issuance | # of Days | Timely? |
|---|---|---|---|---|---|
| 2345678 | 4/1/2023 | | 5/1/2023 | 30 | Yes |
| 3456789 | 3/25/2023 | | 4/10/2023 | 16 | Yes |
| 4567890 | 4/5/2023 | x | 4/8/2023 | 3 | Yes |
| 5678901 | 3/5/2023 | | 4/5/2023 | 31 | No |
| 7890123 | 2/17/2023 | | 4/17/2023 | 59 | No |
| 8901234 | 4/3/2023 | x | 4/11/2023 | 8 | No |

*Determine Numerator and Denominator*

Number of applications approved timely = 3 (Numerator)
Total number of applications approved = 6 (Denominator)

*Calculate APT Rate*

APT Rate = 3/6 x 100 = 50%

*Monthly Timeliness Rate*

For a monthly timeliness rate, the data for the numerator and denominator will be those applications approved within a month regardless of the date of application.

For example, if the State agency approved 10,000 applications in May and 9,000 of those approved applications were approved by the 7 or 30-day processing requirement, the State agency's APT rate would be 90 percent (9,000 divided by 10,000 = 0.90 x 100 = 90.00 percent).

*6-Month Timeliness Rate*

For a 6-month timeliness rate, the data for the numerator and denominator will be those applications approved over the 6-month period regardless of the date of application.

For example, if the State agency approved 150,000 applications between January and June and 100,000 of those approved applications were approved by the 7 or 30-day processing requirement, the State agency's APT rate would be 67 percent (100,000 divided by 150,000 = .6667 x 100 = 66.67 percent).

*Data Provided to FNS*

The State agency should provide FNS with the numerator and denominator for each month along with the calculated rate in Excel format.

For example: For a monthly timeliness rate, the State agency would submit the following report:

| | March |
|---|---|
| Approved Timely | 13,456 |
| Total Approved | 25,678 |
| **Rate** | **52.40%** |

For a 6-month timeliness rate, the State agency would submit the following report:

| | March | April | May | June | July | August | **Total** |
|---|---|---|---|---|---|---|---|
| Approved Timely | 13,546 | 12,980 | 15,691 | 15,908 | 16,023 | 14,307 | **88,455** |
| Total Approved | 25,678 | 26,871 | 25,487 | 25,558 | 24,601 | 25,866 | **154,061** |
| | | | | | | **6-month rate:** | **57.42%** |

When applicable, the State agency should submit reports that are broken down by county, region, or district/local office in order to better pinpoint areas of concern within the State agency.

## Data Validation

The protocol below outlines how FNS will take steps to validate State agency data pulled under the State Agency Timeliness Data Protocol.

*Tier one data validation*

After a State agency's first data submission using the State Agency Timeliness Data Protocol, FNS must assess the methodology the State agency is using to pull the timeliness data to make sure the State agency is using the protocol correctly. Some examples of questions to ask include:

- Does the data pull contain the entire caseload?

- What field is the State agency using to determine the application date?
- What indicator is the State agency using to determine expedited?
- What field is the State agency using to determine the certification date?
- Is the issuance date from the EBT system or eligibility system?
- Can FNS replicate the State APT rate from the data provided?

FNS must work with the State agency to clear any discrepancies noted during tier one data validation until FNS can consistently replicate the State APT rate.

*Tier two data validation*

FNS must complete this tier of validation before releasing a State agency from an APT CAP and the escalation procedures if using the State APT rate as the data source for release *and* the data is inconsistent (+/- more than five percent) with the FNS APT for the same timeframe.

FNS should review enough cases (20-30) to confirm the State agency system is coding timeliness correctly. These cases need to be representative of each action type (e.g., timely expedited, untimely expedited, timely regular, untimely regular). FNS should select cases in an unbiased way, such as using a systematic random sample. The review consists of confirming the case record data for the sampled cases matches the information in the State Agency Data Pull for the following items:

- Case Number
- Date of Application
- Expedited Indicator
- Date of Certification
- Date of Issuance

FNS should address any errors identified with the State agency to resolve the State agency reported APT discrepancy for the sampled cases and similar cases. Once identified errors are resolved FNS should review an additional sample to confirm resolution.

Error Analysis (optional)

FNS may choose to conduct an error analysis at any time to help identify root causes of a State agency's poor APT rate. This will allow FNS to provide informed technical assistance and to confirm State agency corrective action initiatives are appropriate. Error analysis is not to validate the State agency QC decision for timeliness, or the State agency system timeliness coding, but to identify the reason the actions are untimely. While not all-inclusive, some common reasons include:

- File date entered incorrectly,
- Failed to identify eligibility for expedited benefits,

- Failed to properly pend for missing verification,
- Untimely issuance (processed timely but client does not have access to benefits), or
- Started action too late to process timely. Note: This is a good indicator of workload management and/or staffing issues.

*Error Analysis of QC "Untimely"*

This review is most beneficial just before, or when first requesting a corrective action plan from the State agency. Additional information from the State agency is unnecessary when using QC cases for the review. FNS should review QC cases with Item 68. Timeliness of Application Processing (Expedited and 30-Day Requirement) coded "Not timely" to identify the reason the actions are untimely and common error trends the State should address in their corrective action plan.

*Error Analysis of State Agency Data Pull "Untimely"*

This review is beneficial when the State agency has made little or no timeliness improvement for six or more months after implementation of their corrective action plan. FNS should review enough untimely cases from the State Agency Data Pull to identify the reason the actions are untimely and common error trends the State agency still needs to address. The sample should only include untimely cases with expedited and regular actions represented proportionally. FNS should select cases in an unbiased way, such as using a systematic random sample. The size of the sample can vary based on historical knowledge of State agency timeliness trends and the scope of the current timeliness issues. For example, FNS may select and review an initial sample of 30-50 untimely actions which clearly identify error trends. However, if no trends emerge from the initial sample, an additional sample may help identify the common error trends the State agency needs to address.

# Alaska SNAP Backlog/Unwinding Plan

April 10, 2023

Alaska, in response to the backlog on SNAP applications and recertifications, and in preparation for the unwinding of the public health emergency, is taking action to implement the following mitigation strategies.

## Hiring staff:

Since January the Division has been aggressively recruiting for eligibility technicians to fill vacant permanent positions and new long-term non-permanent positions. We have hired 71 staff. The Division has entered a contract to support our Virtual Contac Center (VCC). Through this contract we can bring on an additional 75 staff to support answering calls coming into the VCC thus allowing our merit staff to move from the VCC to processing cases. A FY23 fast-track supplemental budget includes funding for an additional 30 long-term non-permanent positions. The supplemental passed both the House and Senate floor and is awaiting transmittal to the Governor.

## Implementing Business Process Redesign (BPR) Principle:

While Alaska had adopted BPR the implementation of those principles was not followed. The result is what we see today with the backlog. The state contracts with Change & Innovation Agency (C!A) to assist with the business process redesign (BPR) and reimplementing the workflow process for tracking/processing of eligibility work. BPR will streamline work processes and allow the Division to get back to first contact resolution.

### BPR principle

If applied correctly BPR will ensure the Division is:

- Meeting a customer’s needs at their first contact (First Contact Resolution) eliminates unnecessary customer interactions.
- Fewer customer interactions free up staff time.
- Freeing up staff time fuels the agency’s ability to reduce cycle time.
- Pending cases for verification adds days to decision and results in additional customer contacts and case touches. Reducing verification to those required by program rules, making uses of electronic verification sources, and making collateral contacts allows for faster case processing and reduces days to decision.
- Reducing rework, duplicative work, handoffs, batching work, and bottlenecks in the process allows staff to process cases in less time.
- Customers have different needs – one size / approach does not fit all. Provide multiple avenues for them to receive services.
- Use real time data to make decisions.

- Using consistent practices is designed to improve policy adherence and allow additional time for quality work.

## Dedicate Teams:

In consultation with C!A and data from C!A's workflow management system, Current™, Division Leadership has restructured the workflow teams to address 3 specific priorities. The data generated through Current™ can identify the appropriate staffing pattern to meet the goals of each of these teams.

Backlog Team: This team has a lead worker who has experience in managing staff. All staff on this team are highly qualified in multi programs, thus reducing the transaction time and unnecessary handoffs for processing the cases. They will be using data to set goals and stay on track to reduce and eliminate the current backlog.

Staffing pattern: 30 dedicated staff

Backlog queues Current™ : 4 queues – backlog application, backlog recertification, backlog change, backlog verification.

Current Work Team: The lead worker for this team has experience in workflow management. The team lead will use data to track the current work and set goals for the team. This team is responsible for keeping all current work processed timely so that the backlog does not grow. C!A has helped several states eliminate their backlog and they refer to this method as the sandwich method. If this team is up to date with their work and able to pull additional work from Current™, they will be tasked to assist with the backlog.

Staffing pattern: 79 dedicated staff

Current work queues in Current™: application, recertification, change, verification, and input for email, fax, mail and office drop box.

Medicaid Unwinding Team: The lead worker for this team has extensive experience with all Medicaid programs. She, along with a team supervisor, will be responsible for compliance with the State's Mitigation plan. She will use data from Current™ to set goals and meet regularly with department leadership to ensure we remain in compliance with unwinding rules/mitigation plan. This team's staffing pattern reflects the volume of work that the state is planning for within the State's Mitigation plan. As staff are hired at the Division they will go through an expedited training on one single program, Medicaid. Focusing on single program provides the Division the ability to bring on well trained staff in a shorter period.

Staffing pattern: 21 initial 2 months. Adding and additional 30 over the following 4 months. New 30 staff will be trained in single program, Medicaid.

Unwinding queues Current™: Medicaid specific queue and Long-Term Care Adult Disabled Medicaid cases (not in Current™).

## Training:

### Expanding training capacity:

Using technology, the Division has expanded the training capacity. Prior to March 2023, the Division could only hire and train one cohort (up to 14 individuals) at a time. The Division is now able to hire and train 2 cohorts (up to 15 individual each) at the same time.

### Medicaid Training:

In March 2023, all staff are receiving Medicaid refresher training. The Medicaid Unwinding team and other staff, as necessary, are receiving additional training to ensure they are in compliance with Medicaid Rules and the State's Mitigation plan.

### Business Process Redesign:

Starting in April 2023, eligibility technicians and managers will be retrained in the business process model to fully implement First Contact Resolution (FCR).

### Training Redesign:

Implementation of training plan to focus on a single program. Alaska historically required all staff to know all programs. To bring on additional staff to do the work of redeterminations for Medicaid, the Division is focusing training only one program, Medicaid. This will allow those new staff to become experts in that single program in a more timely fashion.

| Deficiency/Identified Root Cause | Corrective Action Strategies | Description | Implemenation | Status | Lead(s) | Metric(s) Evaluation Measure(s) | *FNS National Office Comments* | FNS WRO Comments | State Response |
|---|---|---|---|---|---|---|---|---|---|
| ***Application Processing Backlog and Timeliness*** | | | | | | | | | |
| **1. Unanticipated volume of recertification applications received in August 2022.**<br><br>Beginning with 08.2022 benefits Alaska reimplemented SNAP certifications after the expiratoin of the extended cerification waiver that had been in place.<br><br>Pre pandemic we would receive aproximately 2500 recertifications each month, however in the first month after reimplementation we received over 8000 recertification applications.<br><br>**2. Lack of staffing resources.**<br><br>In FY22 116 positions were eliminated from the division's budget.<br><br>Anticipated efficiencies that would have allowed us to absorb these cuts, were not able to be implemented due to the cyberattack.<br><br>We are facing difficulty attracting qualified applicants to fill vacancies. Our current vacancy rate is 14.4%.<br><br>**3. Early Issuance of the Alaska Permanent Fund Dividend (PFD) Payment.**<br><br>Permanent fund dividends are normally paid in October each year. In 2022 Alaska issued an enegy relief payment to be paid with the PFD. To get the relief to Alaskans the PFD/energy relief was issued in September 2022. SNAP cases receiving PFD payments required special handling to process Hold Harmless payments to replace SNAP benefits lost do to receipt of the PFD.<br><br>**4. 2021 Cyberattack**<br><br>The division continues to be impacted by the March 2021 cyberattack including:<br><br>Redirection of IT resources to resolve the immediate response to the cyberattack<br><br>Lack of IT resources to resolve ancillary impacts related to batch jobs<br><br>Delays in security office issuing clearance for systems changes due to enhanced security evaluation | Implementation of 12 Month Cerifications (excluding Elderly/Disabled households) | DPA is implementing the Food and Nutrition Service (FNS) option to change our SNAP certification periods from six months to 12 months for all SNAP households except those in which all household members are elderly or disabled and have no earned income. These household will require a periodic report every six months. | Planned:<br>March 2023 - testing<br>May-June 2023 - training<br>June 1, 2023 - full implementation | On schedule. | Lydia Luchini | Track application "churn". Track the closure notice to determine how many cases are being closed due to failure to respond to the interim report.<br><br>Evaluate how many cases closed due to failing to return the interim report, reapply within three months. | *In the meantime, AK extended all (last benefit month equal to) January, February, March, and April recetifications an additional six months without FNS approval.* | AK submitted the major change request to FNS. FNS NO stated this is not considered a major change however, they are approved to move to 12 and 24 month certification periods.<br>Results of the March testing phase and what action will AK be taking in the month of April? | Policy, procedures and training will be devoloped in early April. Staff training will be completed mid-late April. 12 Month certifications will be implemented in May 2023 effecting June 2023 benefits. |
| | Implementation of 24 Month Certifications for for Elderly/Disabled households | Household members who are elderly or disabled and have no earned income will continue to be certified for 24 months with a periodic report required every 12 months. | Planned:<br>March 2023 - testing<br>May-June 2023 - training<br>June 1, 2023 - full implementation | On schedule. | Lydia Luchini | Track application "churn". Track the closure notice to determine how many cases are being closed due to failure to respond to the interim report.<br><br>Evaluate how many cases closed due to failing to return the interim report, reapply within three months. | *In the meantime, AK extended all (last benefit month equal to) January, February, March, and April recetifications an additional six months without FNS approval.*<br><br>*As we discussed at 3/29 meeting, this belongs with the deficiency above. This is really another piece of implementation of certification period changes. It looks like someone has combined these into deficiency #1 which makes more sense.* | The corrective action does not fit the deficiency. | Note: As discussed in the 03/31 meeting the strategies listed in column B the strategies to address the overall deficiency "Applicaiton Backlog and Timeliness". The items listed in column A are the identified root causes. The strategies and root cause are indpendent.<br><br>The strategy is separated because it impacts different populations and may be implemented on a different timeline.<br><br>Policy, procedures and training will be devoloped in early April. Staff training will be completed mid-late April. 24 Month certifications will be implemented in May 2023 effecting June 2023 benefits. |
| | Assign dedicated staff to processing backlog | We have a dedicated team of 30 eligibility staff focused on processing backlogged SNAP. These staff are journey level ETs.<br><br>Once PCG is fully operational in VCC coverage, current VCC staffing resources will be reassigned to current work to eliminate backlog growth. PCG will not determine eligibility, but only complete tasks approved through the Major Change Notification approval.<br><br>We are currenlty developing a dedicated team to process current work to also minimize more cases aging into backlog. | Implemented 12.2022<br><br>PCG is anticipated to be fully operational no later than 04.24.203 | On going | Rebecca McGraw<br>Linda Coger | Monitoring backlog/caseload reports.<br><br>Monitoring in current.<br><br>Monitor transaction times to ensure remaining on task.<br><br>Target is to reduced the overall backlog at least 3% week over week. | *More details on total staff and their training levels is still pending as requested 02/24/23.*<br><br>State Response:<br><br>Current tenure of Eligibility Technician 2s (129 staff)<br>< 6 months: 16<br>6 months - 1 year: 6<br>1 - 3 years: 40<br>3 - 7 years: 49<br>> 7 years: 18 | How many positions are currently vacant and has DPA been able to reinstate any of the 116 eliminated positions?<br>How many VCC staff are being phased in at a time?<br>What measures has DPA taken to start attracting qualified applicants?<br>What is the plan for the dedicated team to process current work? Has this already began, how many staff are on this team?<br>Are there any established metrics AK is using when monitoring transaction times to remain on task?<br>Please provide an estimated timeframe on when the backlog will be eliminated. | Current vacant Positions: 90<br><br>Eliminated positions reinstated: 20<br><br>Using technology, the Division has expanded the training capacity. Prior to March 2023, the Division could only hire and train one cohort (up to 14 individuals) at a time. The Division is now able to hire and train 2 cohorts (up to 15 individual each) at the same time.<br><br>Alaska has developed recruitment videos to try to attract applicants:<br>Jeremy<br>https://vimeo.com/808021101<br>Cynthia<br>https://vimeo.com/808020802<br><br>Backlog Team: This team has a lead worker who has experience in managing staff. All staff on this team are highly qualified in multi programs, thus reducing the transaction time and unnecessary handoffs for processing the cases. They will be using data to set goals and stay on track to reduce and eliminate the current backlog.<br>Staffing pattern: 30 dedicated staff<br>Backlog queues Current™ : 4 queues – backlog application, backlog recertification, backlog change, backlog verification.<br><br>Current Work Team: The lead worker for this team has experience in workflow management. The team lead will use data to track the current work and set goals for the team. This team is responsible for keeping all current work processed timely so that the backlog does not grow. C!A has helped several states eliminate their backlog and they refer to this method as the sandwich method. If this team is up to date with their work and able to pull additional work from Current™, they will be tasked to assist with the backlog.<br>Staffing pattern: 79 dedicated staff<br>Current work queues in Current™: application, recertification, change, verification, and input for email, fax, mail and office drop box.<br><br>If any single processing time reaches 90 minutes, supervisors reach out to the staff member to inquire on the reason.<br><br>Barring any additional unforseen issues Alaska anticipates the SNAP backlog will be cleared by July 31, 2023. |
| | Increase staffing | DPA is actively recruiting permanent and long term-non perm staff to fill vacancies. The SY23 Governor supplemental budget includes funds for 30 additional LTNP Eligibility Technicians (and contracts to support the staff).<br><br>We have hired the following since 2/2/23:<br>•9 permanent ET 2s<br>•3 permanent ET 1s (3 more starting next week)<br>•3 LTNP ET 1s<br><br>Currently we are recruiting the following positions:<br>•2 LTNP ET 1 posting closed, awaiting candidate list, for Fairbanks and Homer<br>•5 LTNP ET 1 postings that close this week and next week for the other locations (Juneau, Ketchikan, Nome, Wasilla and Anchorage)<br>•Work Services EST 2, awaiting candidate list<br>•ET 2 and ET 1 prior posting still awaiting final hires on the last of the candidates – once received we will repost for the current vacancies | Recruitment has been ongoing as vacancies occur.<br><br>Training capacity allows onboarding of 30 staff at a time through two cohorts of 15 staff. | On going | Jeannie Young<br>Jason Burke | Tracking average number of staff pulling work from the workload management tool.<br><br>Looking to increase overall processing capacity with the introduction of each training cohort. | *Acronym list would be beneficial to better understand the positions discussed.*<br><br>State Response:<br>ET 1 - Eligibility Technician 1 (admin staff)<br><br>ET 2 - Eligibility Technician 2 (eligibility workers)<br><br>LTNP - Long-term non- permanent | The corrective action does not fit the deficiency. It is not clear what the deficiency is and how it is effecting the backlog. | The deficiency identified is the Application Backlong and Timeliness. Everything in column A is the identified root cause of the deficiency. The strategies to resolve the Backlog and Timeliness issues are listed in colmun B information related to the strategy are in columns C-G |

**Exhibit 2, Page 4 of 6**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | New eligibility system | We agree replacement of Alaska's eligibility system has been the top priority IT project for the division since 2015. There have been various stalls in the project due to IT programming resources and a cyberattack in 2021. | SNAP module implementation 2026 | On going<br><br>This is a link to the project plan. Individuals wanting to view the plan will need to create a free Mural Account to access.<br><br>https://app.mural.co/t/dhssalaska0106/m/dhssalaska0106/1576183680860/c1682951c77a41f29cb684cff893ff837f70b084? | Tracy Mack | Specific measurements will be determined when work begins on the SNAP module | *Project plan is very high level concept at this point.* | Are IT staff still working to address cyberattack issues? Please provide a written summary of the project plan. | Most components related to system impact of the cyberattack have been resolved. Outstanding impacts include the ability to generate QC samples. The cyberattack impact is still significant to the Backlog and Timeliness issues because the attack derailed the work that was being done to modernize and replace our eligibility system causing significant delay in reaching planned milestones.<br><br>Summary of project plan:<br><br>Milestone 1 Increment 5 and 6 are planned be completed by June 30, 2022.<br><br>Milestone 2 will commence in autumn of 2023 with an estimated timeline of 18 months. It includes:<br>•Move of all non-MAGI Medicaid programs (that follow) from the Eligibility Information System (EIS) mainframe to the modern, cloud based system.<br>oAged, Blind and Disabled Medicaid<br>oLong Term Care Medicaid<br>oWaiver Medicaid Categories<br>oAdditional Medicaid Categories (title IV-E, RPTC, MAGI spousal support)<br>•Establishment of applications and status information screens through a simple, online web portal<br><br>Milestone 3 includes the migration of the Supplemental Nutrition Assistance Program (SNAP) from the EIS mainframe. Objectives include:<br>•Eligibility information enterable in a streamlined user-aligned way for both workers and applicants.<br>•Applications as well as status information are available online in a simple web portal.<br>•Data availability for program tracking and program outcome measurement.<br>•Automated asset and income verification from known data sources at initial application (from our AVS-EVS system, currently a manual worker process).<br>•System automatically issues EBT cards for approved clients.<br><br>Milestone 4 and 5 includes migration of Temporary Assistance for Needy Families (TANF) program and remaining state-only programs, and improvements to worker experiences.<br>•Additional automation<br>•Data availability for additional reporting and data analysis<br>•TANF program migration from mainframe system<br><br>Once migration is completed the division will decommission the mainframe system for eligibility. |
| | Self-service portal | A self-service portal is part of the requirements for the overall eligibility system replacement. | SNAP module implementation 2026 | On going<br><br>This is a link to the project plan. Individuals wanting to view the plan will need to create a free Mural Account to access.<br><br>https://app.mural.co/t/dhssalaska0106/m/dhssalaska0106/1576183680860/c1682951c77a41f29cb684cff893ff837f70b084? | Tracy Mack | Specific measurements will be determined when work begins on the SNAP module | *Project plan is very high level concept at this point.* | Please provide a written summary of the project plan as it relates to the self-service portal. | Please see above |
| ***Program Access Challenges*** | | | | | | | | | |
| **1. Lack of staffing resources.**<br><br>In FY22 116 positions were eliminated from the division's budget.<br><br>Anticipated efficiencies that would have allowed us to absorb these cuts, were not able to be implemented due to the cyberattack.<br><br>We are facing difficulty attracting qualified applicants to fill vacancies. Our current vacancy rate is 14.4%. | Utilize non-merit staff for Virtual Contact Center (VCC) | DPA contracted with PCG to provide contracted staff to answer VCC calls. These non-merit staff will not be able to make eligibility determinations, however other services such as accepting change of addresses, reissuing EBT cards and providing client information regarding their cases will continue to be provided. (18 month contract) | Begins: March 2023<br>Full Implemenation: April 24, 2023 | On schedule. | Jamie Moore | Effectiveness of the strategy will be determined by the amount of increase in processing capacity gained by freeing up merit staff to process cases. | *This will also be monitored with quarterly reporting for the Major Change.* | This should be combined with the VCC staffing challenges above. | This strategy is corrective action for Program Access Challenges. The items above row 12 are related to Application Processing Backlog and Timeliness. Some strategies are will impact both areas.<br><br>Alaska is developing a staffing plan with PCG to expand the VCC hours to<br>7:00am - 7:00pm M-F<br>9:00am - 2:00 Sat |
| | Expand Lobby and VCC Hours | Currently all DPA lobbies are open to the public Tuesday through Thursday, 9:00am to 4:00pm. We plan to reopen to a full Monday through Friday 9:00 to 4:00 by June 01, 2023. | Additional ET 1 staff are being onboarded to implement lobby hour changes by June 01, 2023. | Continuously evaluated as new staff onboard | Tom Bybee | DPA currently tracks number of clients served in the lobby daily and for what purpose.<br><br>Monitor ability to increase service capacity | *Why are offices not open normal business hours M-F? Why will it take so long to phase in additional hours?* | What is the staged approach? How many staff is needed before additional days can be added?<br>Can AK consider longer hours and staggering staff schedules to accommodate for clients? | Offices are not currently open due to staffing shortages.<br><br>Based on current staffing and training progress, Alaska anticipates opening Lobbys from M-F 9:00am to 4:00pm effective no later than 06.01.2023<br><br>Alaska is developing a staffing plan with PCG to expand the VCC hours to<br>7:00am - 7:00pm M-F<br>9:00am - 2:00 Sat |
| | Online Application | Alaska has received FNS approval for our proposed on-line application on. Implementation of the on-line application is contingent upon the completion of a current IT project that is moving our platform from a server-based system to a Cloud based solution. | Planned:<br>October - December 2023 | Currently in the security plan development phase. | Rebecca McGraw | Analyse usage data.<br><br>Survey clients through the ME process | *AK will need to prepare for potential increase in applications.*<br><br>*Will this only be initial applications or will recertification applications be online as well?* | Update after 3/29/23 IM & AK call: At this time this project is currently on hold for TA with Innovative Management (IM). It will be 3+ months until project will proceed due to security agreement delays. Once this project is up and running again AK is to reach out to FNS NO to reconvene meetings with AK, IM, FNS WRO and FNS NO. AK states this is still a priority project. In the meantime, WRO will meet to have AK demo the online application, periodic report and any e-notices (if available) during the FY23 ME. | |
| | Online Periodic Report | Clients will have the option to submit their periodic report online. | Planned:<br>October - December 2023 | Currently in the security plan development phase. | Rebecca McGraw | Analyse usage data.<br><br>Survey clients through the ME process | *May not be ready in time for first few months of periodic reports. This could impact client's ability to provide a timely periodic report.* | See response above | |
| | myAlaska access application | Investigating providing access to our on-line SNAP application through myAlaska. This will allow clients to see SNAP applications they have filed, along with providing electronic notifications via text or email about their status. | After December 2023 | Implementation to take place after release of on-line application. | Rebecca McGraw | Analyse usage data.<br><br>Survey clients through the ME process | | See response above | |

**Exhibit 2, Page 5 of 6**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Chat/Voice bots for VCC | Introducing chat bots and voice bots through our VCC. This will allow clients to self-serve and will direct them to the information they are seeking. | After December 2023 | Research phase | Rebecca McGraw | Analyse usage data.<br><br>Survey clients through the ME process | See response above | |

***Payment accuracy***

Deleted from this CAP per FNS Request during 03.31.2023 TA meeting - refer to 6% CAP

United States Department of Agriculture

Food and Nutrition Service

Western Region

90 Seventh St.
Suite 10-100
San Francisco, CA 94103

February 9, 2023

Heidi Hedberg
Commissioner Designee
Alaska Department of Health
3601 C Street, Suite 902
Anchorage, AK 99503

Dear Commissioner Hedberg:

Thank you for engaging with the Food and Nutrition Service (FNS) to address the urgent challenges in the operation of the Supplemental Nutrition Assistance Program (SNAP) in Alaska. This letter is to reiterate FNS' grave concerns about the Alaska Division of Public Assistance's (DPA) administration of SNAP, to stress the urgency of the current situation and to request Alaska submit a corrective action plan (CAP) to outline steps the State will take to resolve the issues as quickly as possible.

We appreciate the meeting held on January 12, 2023, to discuss these important issues and the continued discussion and partnership between the FNS' Western Regional Office (WRO) and the DPA. The attachment contains a summary of our recent call with some of the solutions currently planned for implementation by DPA. In addition, we have listed some possible solutions also discussed on the recent call to help alleviate some of the issues. As we discussed, we remain concerned that the current challenges DPA is facing in administering SNAP as evidenced by a large backlog, timeliness, program access issues are preventing DPA from meeting the critical food needs of needy Alaskans.

**Application Processing Backlog and Timeliness Concerns:** Based on State reported data, advocate and media reports, and client complaints to FNS, FNS understands that DPA currently has extensive processing backlogs, which are causing multiple-month delays for applicant and current SNAP households to receive their benefits. DPA is not following the fundamental requirements set by the Food and Nutrition Act of 2008 concerning its responsibility to process initial and recertification applications within certain timeframes. According to DPA data provided to FNS on January 5, 2023, the State has a backlog of approximately 19,000 total initial and recertification applications pending, 15,000 of which were received over 30 days ago. FNS also understands from advocates and other sources that the State is failing to provide expedited service to households as required by law for applicant households with little to no income and resources.

Moreover, upon review of the most recent Recertification Timeliness data issued by FNS, data shows that Alaska has a 41.67 percent processing rate, which means nearly 60 percent of clients' recertifications are not processed timely. Although this information is from a very small sample size, this is consistent with reports regarding SNAP benefit processing and reflective of analysis from the Region. Additionally, DPA reported a 40 percent timeliness rate for recertifications in August 2022.


USDA is an Equal Opportunity Provider, Employer, and Lender.

Such a low timeliness rate for applications for recertification directly conflicts with application processing statutory and regulatory provisions that protect a low-income household's right to receive nutrition assistance benefits in a timely manner.

Due to these critical concerns, FNS is requiring the State take corrective action to address the backlog and timeliness deficiencies. Based on DPA's current operations, FNS has several recommendations that prioritize solutions to improve the application backlog. Due to the critical nature of the situation, FNS requests that DPA consider each option thoroughly.

- FNS recommends that DPA consider lengthening their certification periods from 6 months to 12 months for most households and from 12 months to 24 months for households with members who are elderly or have a disability. FNS believes such an effort will decrease the current workload but will require the State to begin processing periodic reports.

- FNS recommends that DPA revise or stop using the "Change Report" form. DPA does not have "Change Reporting", therefore this form is not required for SNAP, however since the form is in production, when the agency receives the form, the changes must be acted upon creating additional unnecessary work for staff.

- FNS recommends that DPA assign dedicated staff to work through the backlog and other staff to maintain the current workload so that the current workload does not continue to be part of the backlog.

FNS stands ready to discuss these options and provide technical assistance as the State considers the above suggestions.

**Program Access Challenges:** FNS has heard concerns from current SNAP participants, multiple advocacy organizations, and news articles regarding untimely benefit issuance, long wait times, office closures, and limited services. One of the key issues that has been identified is the Virtual Contact Center (VCC).

The VCC's current model of answering calls and collecting information for a call back is contributing to the number of repeat callers since it is taking time to receive a call back, and even longer to receive their benefits. FNS recommends that DPA utilize all workers staffing the VCC to provide a "one touch" resolution for all callers. This will allow for current callers to complete what is needed on their case to receive SNAP benefits, and allow for the issuance of Emergency Assistance (EA) on cases that are still part of the EA backlog.

FNS also recommends that the VCC is staffed 5 days a week, and that the University Center is open and providing full services Monday through Friday, also following the "one touch" resolution model. This will provide more consistent customer service and assist with case backlog.

**Additional Long-Term Recommendations:** In addition to some of the recommendations provided above, we believe that updating the State agency's outdated eligibility system will greatly improve the application process, the customer experience, and access to SNAP benefits. FNS recommends a priority should be placed on updating or replacing the eligibility system. We also ask that the corrective action plan include the strategy for securing needed State investments to address the long-term sustainability of SNAP, such as, funding included in the Governor's FY2024 Proposed budget and/or legislative proposals that address the long-term solutions.

In addition, FNS recommends that the system updates include the following modifications:

- The implementation of an online SNAP application to provide clients with an additional means to apply for benefits beyond paper applications.
- A "call back" feature allowing callers to opt for a worker to call them back within a certain timeframe so that they do not have to remain on hold during longer wait times,
- Implementation of a "self-service" portal so that clients can receive answers to case status questions and thereby reduce the number of phone calls entering the VCC.
- Implementation of an electronic notice (eNotice) process which will allow clients to be notified in a more timely and efficient manner.

**Data Reporting**: As noted above, monitoring of timeliness and application backlogs is critical. Obtaining quantitative data about how many SNAP applications for initial certification and recertification are untimely and unprocessed is a critical first step for corrective action planning and implementation. Without this data, the State will struggle to take strategic actions to fight the backlog such as reallocating staff, adjusting processes, or requesting waivers that may effectively streamline processing for a temporary period. Moreover, without quantitative data, the State cannot monitor the effect of corrective actions or demonstrate progress to FNS. FNS recommends that the State develop a system to monitor timeliness and application backlogs.

**Payment Accuracy:** Finally, FNS remains concerned about the State's high Payment Error Rate (PER) and Case and Procedural Error Rate (CAPER). The most recent State-reported data show that the State has the highest reported PER in the nation at 57.08% and a very high State-reported CAPER, at 53.15%. These rates are unacceptable. The State must address error rates and identify actions that address both timeliness and accuracy whenever possible.

**Required Actions:** Based on the issues raised in this letter, DPA is required to submit the following to FNS:

- Corrective Action Plan (CAP) outlining how the State will address the various deficiencies highlighted in this letter within 14 days of the date of this letter.

The plan must include deadlines for resolution of each deficiency, names of the individuals responsible for implementing each corrective action and plans for monitoring and evaluating the effectiveness of each action.

- Quantitative data concerning the backlog within 7 days of this letter, prior to submitting the CAP. To support DPA in its efforts to compile this data, FNS is providing a template that DPA can use as a model which has been helpful for other similarly situated States. FNS will reach out to DPA to provide technical assistance on this issue and to answer questions about the attached example spreadsheet, which should be submitted weekly going forward.

- Major change template for any of DPA's permanent office closures and the VCC.

While we appreciate the efforts you have taken to date to address this crisis, we remain concerned that this is not a temporary problem. Given that much more needs to be done to ensure low-income households receive benefits in a timely manner, I have requested my team set up weekly calls with the DPA Director and program staff to offer support and to receive updates on progress. In addition, we will set up an on-going monthly call with you to ensure AK is on track with its corrective actions.

FNS is committed to working with you to better serve Alaskans in need. FNS stands ready to provide technical assistance to DPA and work together to explore additional policy options and programmatic solutions to improve SNAP operations. We plan to visit the State soon to provide this technical assistance. As you explore these issues, please contact Charles Tobin at Charles.Tobin@usda.gov, or (415) 407-8728 should you have additional questions or concerns.

Sincerely,

JESUS MENDOZA

Digitally signed by JESUS MENDOZA
Date: 2023.02.09 08:19:03 -08'00'

Jesus Mendoza, Jr.
Regional Administrator
Western Region

cc: Charles Tobin, FNS WRO
Libby Albert, FNS WRO
Young Ihm, FNS WRO
Jackie Bourne, FNS WRO
Rachel Page, FNS WRO
Tim English, FNS NO
Emily Ricci, AK DHSS
Tama Carson, AK DPA

WRO File Code: SNAP/400/Program Oversight/MiscStateInfo/Alaska

Attachment: Summary of DPA Strategies Discussed on January 12, 2023

- DPA agreed to lengthen certification periods. DPA is currently interviewing contactors to hire COBOL programmers and expects to have this completed by March/April of 2023. We encourage DPA to prioritize the IT solutions as this will tremendously assist with the backlog.

- DPA agreed that the VCC, staffed by DPA merit staff, is contributing to the current backlog and is working to procure a contract with Public Consulting Group to hire Non-Merit staff to run the VCC and provide the maximum allowable functions permitted by regulations. PCG will run the VCC for 18 months, then train DPA merit staff to fully operate the VCC. FNS will assist with the review of the PCG contract as well as ensure expeditious review of the Non-Merit staff approval.

- Office closures have been reported to FNS as a barrier to program access. FNS received reports that the following offices have been closed: Muldoon, C St., Gamble, Sitka, Homer, and Nome. DPA confirmed that the Sitka, Homer, and Nome offices are open for business, however offices are small and not able to open at times due to staffing and worker safety concerns. DPA is working to hire and staff these offices. DPA has not confirmed details regarding the Muldoon, C St., and Gamble office closures.

- DPA indicated that they are working on the implementation of an online SNAP application to provide clients with an additional means to apply for benefits beyond paper applications.

**Alaska SNAP Backlog Summary**

| | % of change from Previous week | 2023-04-27 | 2023-04-20 | 2023-04-13 | 2023-04-06 | 2023-03-30 | 2023-03-23 | 2023-03-16 | 2023-03-09 | 2023-03-02 | 2023-02-23 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total SNAP Backlog** | -4% | 10,128 | 10,598 | 10,713 | 11,070 | 11,788 | 12,010 | 12,265 | 12,680 | 13,293 | 14,106 |
| **Recertifications** | -30% | 769 | 1,098 | 1,153 | 1,679 | 2,338 | 2,841 | 3,266 | 3887 | 4755 | 5601 |
| **Applications** | -1% | 9,359 | 9,500 | 9,560 | 9,391 | 9,450 | 9,169 | 8,999 | 8793 | 8538 | 8505 |
| | | | | | | | | | | | |
| **Oldest Recert** | | Dec-22 | Sep-22 | Oct-22 | Aug-22 | Aug-22 | Sep-22 | Oct-22 | Oct-22 | Oct-22 | Oct-22 |
| **Oldest Application** | | Aug-22 | Aug-22 | Aug-22 | Sep-22 | Jul-22 | Sep-22 | Aug-22 | Aug-22 | Aug-22 | Aug-22 |

| Application Received Date | Expedites | Non-Expedites | Total |
|---|---|---|---|
| 03/20/23 - 03/26/2023 | 288 | 207 | 495 |
| 03/27/23 - 04/02/2023 | 321 | 236 | 557 |
| 04/03/2023 - 04/09/2023 | 309 | 235 | 544 |
| 04/10/2023 - 04/16/2023 | 323 | 266 | 589 |
| 04/17/2023 - 04/24/2023 | 349 | 274 | 623 |

**Excludes applications registered more than a few days after they were received.*



**Backlog Applications/Recertifications** - ***Updated 04/27/2023***

| Program | 000 to 30 days | 031-45 days | 046-60 days | 061-90 days | 091-120 days | 121-150 days | 151-180 days | 181-210 days | 211-240 days | 241-270 days | 271-300 days | 301-330 days | 331-360 days | over 360 days | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Food stamps (applications, expedites & recertifications)** | 235 | 715 | 642 | 1667 | 2144 | 2242 | 1469 | 755 | 258 | 1 | - | - | - | - | **10,128** |
| *Food Stamps (Expedite)* | *235* | *292* | *207* | *510* | *483* | *516* | *511* | *6* | - | - | - | - | - | - | *2,760* |
| *Food Stamps (Recertifications)* | - | *1* | *1* | *2* | *163* | *602* | - | - | - | - | - | - | - | - | *769* |
| *Food Stamps (non-Expedite Applications)* | - | *422* | *434* | *1,155* | *1,498* | *1,124* | *958* | *749* | *258* | *1* | - | - | - | - | *6,599* |

| SNAP Recertification Backlog* - *April 27, 2023* | |
|---|---|
| **Recertification Received Month** | **Apr 2023** |
| **CY2022** | |
| May 2022 | - |
| Jun 2022 | - |
| Jul 2022 | - |
| Aug 2022 | - |
| Sep 2022 | - |
| Oct 2022 | - |
| Nov 2022 | - |
| Dec 2022 | 765 |
| **CY2023** | |
| Jan 2023 | 1 |
| Feb 2023 | 1 |
| Mar 2023 | 2 |
| **Total Recert Backlog*** | **767** |

**Data last updated: 04/27/2023*

*Data Source: EIS*

| SNAP Recertification Backlog* by Report Month | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Recertification Received Month** | **AUG 2022** | **SEP 2022** | **OCT 2022** | **NOV 2022** | **DEC 2022** | **JAN 2023** | **FEB 2023** | **Mar 2023** | **Apr 2023** |
| **CY2022** | | | | | | | | | |
| May 2022 | 2 | 2 | - | - | - | - | - | - | - |
| Jun 2022 | 356 | 139 | 8 | - | - | - | - | - | - |
| Jul 2022 | 133 | 2,149 | 1,040 | 442 | 58 | 2 | - | - | 1 |
| Aug 2022 | - | 7 | 2,595 | 2,429 | 2,061 | 845 | 16 | - | 1 |
| Sep 2022 | - | - | 764 | 2,733 | 2,501 | 2,291 | 419 | - | 1 |
| Oct 2022 | - | - | - | 1 | 2,951 | 2,760 | 2,375 | 533 | - |
| Nov 2022 | - | - | - | - | - | 2,980 | 2,765 | 2,211 | 345 |
| Dec 2022 | - | - | - | - | - | 226 | 2,483 | 2,153 | 1,758 |
| **CY2023** | | | | | | | | | |
| Jan 2023 | - | - | - | - | - | - | - | 8 | 6 |
| Feb 2023 | - | - | - | - | - | - | - | - | 16 |
| Mar 2023 | - | - | - | - | - | - | - | - | 2 |
| **Total Recert Backlog*** | **491** | **2,297** | **4,407** | **5,605** | **7,571** | **9,104** | **8,058** | **4,905** | **2,130** |

*SNAP Backlog Definition: Recertifications (excludes new applications) unworked > 30 days*

**Data is pulled on the first of the report month.*

*Data last updated: 04/01/2023*

*Data Source: EIS*




Nov 2022
Dec 2022
CY2023
Jan 2023
Feb 2023
Mar 2023


Total SNAP Recertification Backlog by Month
10,000
9,000
8,000
7,000
6,000
5,000
4,000
3,000
2,000
1,000
0
Total Recert Backlog*
AUG 2022
SEP 2022
OCT 2022
NOV 2022
DEC 2022
JAN 2023
FEB 2023
Mar 2023
Apr 2023

| SNAP Application Backlog* - *April 27, 2023* | |
|---|---|
| **Application Received Month** | **Apr 2023** |
| **CY2022** | |
| May 2022 | - |
| Jun 2022 | - |
| Jul 2022 | - |
| Aug 2022 | 1 |
| Sep 2022 | 296 |
| Oct 2022 | 741 |
| Nov 2022 | 1,714 |
| Dec 2022 | 1,523 |
| **CY2023** | |
| Jan 2023 | 2,115 |
| Feb 2023 | 1,512 |
| Mar 2023 | 1,257 |
| Apr 2023 | 200 |
| **Total Application Backlog*** | **9,359** |

**Data last updated: 04/27/2023*

*Data Source: EIS*

| SNAP Application Backlog* by Report Month | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Application Received Month** | **AUG 2022** | **SEP 2022** | **OCT 2022** | **NOV 2022** | **DEC 2022** | **JAN 2023** | **FEB 2023** | **Mar 2023** | **Apr 2023** |
| **CY2020** | | | | | | | | | |
| Oct 2020 | - | - | - | - | 1 | - | - | - | - |
| **CY2022** | | | | | | | | | |
| Apr 2022 | 1 | - | - | - | - | - | - | - | |
| May 2022 | 36 | 4 | 1 | - | - | - | - | - | - |
| Jun 2022 | 206 | 44 | 5 | - | - | - | - | - | - |
| Jul 2022 | 119 | 399 | 220 | 122 | 78 | 12 | - | - | - |
| Aug 2022 | - | 310 | 1,548 | 1,210 | 1,068 | 844 | 346 | 41 | 1 |
| Sep 2022 | - | - | 697 | 2,071 | 1,735 | 1,336 | 1,069 | 752 | 400 |
| Oct 2022 | - | - | - | 547 | 2,227 | 1,953 | 1,663 | 1,334 | 905 |
| Nov 2022 | - | - | - | - | 643 | 2,784 | 2,453 | 2,154 | 1,897 |
| Dec 2022 | - | - | - | - | - | 494 | 2,139 | 1,876 | 1,676 |
| **CY2023** | | | | | | | | | |
| Jan 2023 | - | - | - | - | - | - | 210 | 2252 | 2293 |
| Feb 2023 | - | - | - | - | - | - | - | 227 | 1684 |
| Mar 2023 | - | - | - | - | - | - | - | - | 603 |
| **Total Application Backlog*** | **362** | **757** | **2,471** | **3,950** | **5,752** | **7,423** | **7,880** | **8,636** | **9,459** |

*SNAP Backlog Definition: Application (excludes recertifications) unworked > 30 days or expedite applications unworked > 7 days*

**Data is pulled on the first of the report month.*

*Data last updated: 04/01/2023*

*Data Source: EIS*




1000
500
0
AUG 2022
SEP 2022
OCT 2022
NOV 2022
DEC 2022
JAN 2023
FEB 2023
Mar 2023
Apr 2023
Oct 2020
Apr 2022
May 2022
Jun 2022
Jul 2022
Aug 2022
Sep 2022
Oct 2022
Nov 2022
Dec 2022
Jan 2023
Feb 2023
Mar 2023


Total SNAP Application Backlog by Month
10,000
9,000
8,000
7,000
6,000
5,000
4,000
3,000
2,000
1,000
0
Total Application Backlog*
AUG 2022
SEP 2022
OCT 2022
NOV 2022
DEC 2022
JAN 2023
FEB 2023
Mar 2023
Apr 2023

## Backlog Applications/Recertifications - *Updated 04/20/2023*

| Program | 000 to 30 days | 031-45 days | 046-60 days | 061-90 days | 091-120 days | 121-150 days | 151-180 days | 181-210 days | 211-240 days | 241-270 days | 271-300 days | 301-330 days | 331-360 days | over 360 days | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Food stamps (applications, expedites & recertifications)** | 319 | 827 | 637 | 1837 | 2198 | 2422 | 1422 | 723 | 212 | 1 | - | - | - | - | **10,598** |
| *Food Stamps (Expedite)* | *319* | *323* | *170* | *557* | *490* | *531* | *431* | *5* | - | - | - | - | - | - | ***2,826*** |
| *Food Stamps (Recertifications)* | - | - | - | *3* | *357* | *736* | - | *1* | *1* | - | - | - | - | - | ***1,098*** |
| *Food Stamps (non-Expedite Applications)* | - | *504* | *467* | *1,277* | *1,351* | *1,155* | *991* | *717* | *211* | *1* | - | - | - | - | ***6,674*** |

| SNAP Recertification Backlog* - *April 20, 2023* | |
|---|---|
| **Recertification Received Month** | **Apr 2023** |
| **CY2022** | |
| May 2022 | - |
| Jun 2022 | - |
| Jul 2022 | - |
| Aug 2022 | - |
| Sep 2022 | 1 |
| Oct 2022 | 1 |
| Nov 2022 | 3 |
| Dec 2022 | 1,090 |
| **CY2023** | |
| Jan 2023 | 1 |
| Feb 2023 | 2 |
| Mar 2023 | - |
| **Total Recert Backlog*** | **1,098** |

**Data last updated: 04/13/2023*

*Data Source: EIS*

| SNAP Recertification Backlog* by Report Month | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Recertification Received Month** | **AUG 2022** | **SEP 2022** | **OCT 2022** | **NOV 2022** | **DEC 2022** | **JAN 2023** | **FEB 2023** | **Mar 2023** | **Apr 2023** |
| **CY2022** | | | | | | | | | |
| May 2022 | 2 | 2 | - | - | - | - | - | - | - |
| Jun 2022 | 356 | 139 | 8 | - | - | - | - | - | - |
| Jul 2022 | 133 | 2,149 | 1,040 | 442 | 58 | 2 | - | - | 1 |
| Aug 2022 | - | 7 | 2,595 | 2,429 | 2,061 | 845 | 16 | - | 1 |
| Sep 2022 | - | - | 764 | 2,733 | 2,501 | 2,291 | 419 | - | 1 |
| Oct 2022 | - | - | - | 1 | 2,951 | 2,760 | 2,375 | 533 | - |
| Nov 2022 | - | - | - | - | - | 2,980 | 2,765 | 2,211 | 345 |
| Dec 2022 | - | - | - | - | - | 226 | 2,483 | 2,153 | 1,758 |
| **CY2023** | | | | | | | | | |
| Jan 2023 | - | - | - | - | - | - | - | 8 | 6 |
| Feb 2023 | - | - | - | - | - | - | - | - | 16 |
| Mar 2023 | - | - | - | - | - | - | - | - | 2 |
| **Total Recert Backlog*** | **491** | **2,297** | **4,407** | **5,605** | **7,571** | **9,104** | **8,058** | **4,905** | **2,130** |

*SNAP Backlog Definition: Recertifications (excludes new applications) unworked > 30 days*

**Data is pulled on the first of the report month.*

*Data last updated: 04/01/2023*

*Data Source: EIS*




Nov 2022
Dec 2022
CY2023
Jan 2023
Feb 2023
Mar 2023


Total SNAP Recertification Backlog by Month
10,000
9,000
8,000
7,000
6,000
5,000
4,000
3,000
2,000
1,000
0
Total Recert Backlog*
AUG 2022
SEP 2022
OCT 2022
NOV 2022
DEC 2022
JAN 2023
FEB 2023
Mar 2023
Apr 2023

| SNAP Application Backlog* - *April 20, 2023* | |
|---|---|
| **Application Received Month** | **Apr 2023** |
| **CY2022** | |
| May 2022 | - |
| Jun 2022 | - |
| Jul 2022 | - |
| Aug 2022 | 1 |
| Sep 2022 | 349 |
| Oct 2022 | 768 |
| Nov 2022 | 1,761 |
| Dec 2022 | 1,554 |
| **CY2023** | |
| Jan 2023 | 2,165 |
| Feb 2023 | 1,559 |
| Mar 2023 | 1,160 |
| Apr 2023 | 183 |
| **Total Application Backlog*** | **9,500** |

**Data last updated: 04/20/2023*

*Data Source: EIS*

| SNAP Application Backlog* by Report Month | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Application Received Month** | **AUG 2022** | **SEP 2022** | **OCT 2022** | **NOV 2022** | **DEC 2022** | **JAN 2023** | **FEB 2023** | **Mar 2023** | **Apr 2023** |
| **CY2020** | | | | | | | | | |
| Oct 2020 | - | - | - | - | 1 | - | - | - | - |
| **CY2022** | | | | | | | | | |
| Apr 2022 | 1 | - | - | - | - | - | - | - | |
| May 2022 | 36 | 4 | 1 | - | - | - | - | - | - |
| Jun 2022 | 206 | 44 | 5 | - | - | - | - | - | - |
| Jul 2022 | 119 | 399 | 220 | 122 | 78 | 12 | - | - | - |
| Aug 2022 | - | 310 | 1,548 | 1,210 | 1,068 | 844 | 346 | 41 | 1 |
| Sep 2022 | - | - | 697 | 2,071 | 1,735 | 1,336 | 1,069 | 752 | 400 |
| Oct 2022 | - | - | - | 547 | 2,227 | 1,953 | 1,663 | 1,334 | 905 |
| Nov 2022 | - | - | - | - | 643 | 2,784 | 2,453 | 2,154 | 1,897 |
| Dec 2022 | - | - | - | - | - | 494 | 2,139 | 1,876 | 1,676 |
| **CY2023** | | | | | | | | | |
| Jan 2023 | - | - | - | - | - | - | 210 | 2252 | 2293 |
| Feb 2023 | - | - | - | - | - | - | - | 227 | 1684 |
| Mar 2023 | - | - | - | - | - | - | - | - | 603 |
| **Total Application Backlog*** | **362** | **757** | **2,471** | **3,950** | **5,752** | **7,423** | **7,880** | **8,636** | **9,459** |

*SNAP Backlog Definition: Application (excludes recertifications) unworked > 30 days or expedite applications unworked > 7 days*

**Data is pulled on the first of the report month.*

*Data last updated: 04/01/2023*

*Data Source: EIS*




1000
500
0
AUG 2022
SEP 2022
OCT 2022
NOV 2022
DEC 2022
JAN 2023
FEB 2023
Mar 2023
Apr 2023
Oct 2020
Apr 2022
May 2022
Jun 2022
Jul 2022
Aug 2022
Sep 2022
Oct 2022
Nov 2022
Dec 2022
Jan 2023
Feb 2023
Mar 2023


Total SNAP Application Backlog by Month
10,000
9,000
8,000
7,000
6,000
5,000
4,000
3,000
2,000
1,000
0
Total Application Backlog*
AUG 2022
SEP 2022
OCT 2022
NOV 2022
DEC 2022
JAN 2023
FEB 2023
Mar 2023
Apr 2023

| Backlog Applications/Recertifications - *Updated 04/13/2023* | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Program | 000 to 30 days | 031-45 days | 046-60 days | 061-90 days | 091-120 days | 121-150 days | 151-180 days | 181-210 days | 211-240 days | 241-270 days | 271-300 days | 301-330 days | 331-360 days | over 360 days | |
| **Food stamps (applications, expedites & recertifications)** | 520 | 755 | 712 | 2808 | 2094 | 1839 | 1201 | 658 | 125 | 1 | - | - | - | - | **10,713** |
| *Food Stamps (Expedite)* | *520* | *251* | *214* | *512* | *508* | *602* | *276* | *4* | - | - | - | - | - | - | ***2,887*** |
| *Food Stamps (Recertifications)* | - | *2* | *1* | *929* | *220* | - | *1* | - | - | - | - | - | - | - | ***1,153*** |
| *Food Stamps (non-Expedite Applications)* | - | *502* | *497* | *1,367* | *1,366* | *1,237* | *924* | *654* | *125* | *1* | - | - | - | - | ***6,673*** |

| **SNAP Recertification Backlog* - *April 13, 2023*** | |
|---|---|
| **Recertification Received Month** | **Apr 2023** |
| **CY2022** | |
| May 2022 | - |
| Jun 2022 | - |
| Jul 2022 | - |
| Aug 2022 | - |
| Sep 2022 | - |
| Oct 2022 | 1 |
| Nov 2022 | 4 |
| Dec 2022 | 1,145 |
| **CY2023** | |
| Jan 2023 | 1 |
| Feb 2023 | 2 |
| Mar 2023 | - |
| **Total Recert Backlog*** | **1,153** |

**Data last updated: 04/13/2023*

*Data Source: EIS*

| **SNAP Recertification Backlog* by Report Month** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Recertification Received Month** | **AUG 2022** | **SEP 2022** | **OCT 2022** | **NOV 2022** | **DEC 2022** | **JAN 2023** | **FEB 2023** | **Mar 2023** | **Apr 2023** |
| **CY2022** | | | | | | | | | |
| May 2022 | 2 | 2 | - | - | - | - | - | - | - |
| Jun 2022 | 356 | 139 | 8 | - | - | - | - | - | - |
| Jul 2022 | 133 | 2,149 | 1,040 | 442 | 58 | 2 | - | - | 1 |
| Aug 2022 | - | 7 | 2,595 | 2,429 | 2,061 | 845 | 16 | - | 1 |
| Sep 2022 | - | - | 764 | 2,733 | 2,501 | 2,291 | 419 | - | 1 |
| Oct 2022 | - | - | - | 1 | 2,951 | 2,760 | 2,375 | 533 | - |
| Nov 2022 | - | - | - | - | - | 2,980 | 2,765 | 2,211 | 345 |
| Dec 2022 | - | - | - | - | - | 226 | 2,483 | 2,153 | 1,758 |
| **CY2023** | | | | | | | | | |
| Jan 2023 | - | - | - | - | - | - | - | 8 | 6 |
| Feb 2023 | - | - | - | - | - | - | - | - | 16 |
| Mar 2023 | - | - | - | - | - | - | - | - | 2 |
| **Total Recert Backlog*** | **491** | **2,297** | **4,407** | **5,605** | **7,571** | **9,104** | **8,058** | **4,905** | **2,130** |

*SNAP Backlog Definition: Recertifications (excludes new applications) unworked > 30 days*

**Data is pulled on the first of the report month.*

*Data last updated: 04/01/2023*

*Data Source: EIS*




Nov 2022
Dec 2022
CY2023
Jan 2023
Feb 2023
Mar 2023


Total SNAP Recertification Backlog by Month
10,000
9,000
8,000
7,000
6,000
5,000
4,000
3,000
2,000
1,000
0
Total Recert Backlog*
AUG 2022
SEP 2022
OCT 2022
NOV 2022
DEC 2022
JAN 2023
FEB 2023
Mar 2023
Apr 2023

| SNAP Application Backlog* - *April 13, 2023* | |
|---|---|
| **Application Received Month** | **Apr 2023** |
| **CY2022** | |
| May 2022 | - |
| Jun 2022 | |
| Jul 2022 | - |
| Aug 2022 | 1 |
| Sep 2022 | 364 |
| Oct 2022 | 797 |
| Nov 2022 | 1,819 |
| Dec 2022 | 1,602 |
| **CY2023** | |
| Jan 2023 | 2,234 |
| Feb 2023 | 1,613 |
| Mar 2023 | 972 |
| Apr 2023 | 158 |
| **Total Application Backlog*** | **9,560** |

**Data last updated: 04/13/2023*

*Data Source: EIS*

| SNAP Application Backlog* by Report Month | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Application Received Month** | **AUG 2022** | **SEP 2022** | **OCT 2022** | **NOV 2022** | **DEC 2022** | **JAN 2023** | **FEB 2023** | **Mar 2023** | **Apr 2023** |
| **CY2020** | | | | | | | | | |
| Oct 2020 | - | - | - | - | 1 | - | - | - | - |
| **CY2022** | | | | | | | | | |
| Apr 2022 | 1 | - | - | - | - | - | - | - | |
| May 2022 | 36 | 4 | 1 | - | - | - | - | - | - |
| Jun 2022 | 206 | 44 | 5 | - | - | - | - | - | - |
| Jul 2022 | 119 | 399 | 220 | 122 | 78 | 12 | - | - | - |
| Aug 2022 | - | 310 | 1,548 | 1,210 | 1,068 | 844 | 346 | 41 | 1 |
| Sep 2022 | - | - | 697 | 2,071 | 1,735 | 1,336 | 1,069 | 752 | 400 |
| Oct 2022 | - | - | - | 547 | 2,227 | 1,953 | 1,663 | 1,334 | 905 |
| Nov 2022 | - | - | - | - | 643 | 2,784 | 2,453 | 2,154 | 1,897 |
| Dec 2022 | - | - | - | - | - | 494 | 2,139 | 1,876 | 1,676 |
| **CY2023** | | | | | | | | | |
| Jan 2023 | - | - | - | - | - | - | 210 | 2252 | 2293 |
| Feb 2023 | - | - | - | - | - | - | - | 227 | 1684 |
| Mar 2023 | - | - | - | - | - | - | - | - | 603 |
| **Total Application Backlog*** | **362** | **757** | **2,471** | **3,950** | **5,752** | **7,423** | **7,880** | **8,636** | **9,459** |

*SNAP Backlog Definition: Application (excludes recertifications) unworked > 30 days or expedite applications unworked > 7 days*

**Data is pulled on the first of the report month.*

*Data last updated: 04/01/2023*

*Data Source: EIS*




1000
500
0
AUG 2022
SEP 2022
OCT 2022
NOV 2022
DEC 2022
JAN 2023
FEB 2023
Mar 2023
Apr 2023
Oct 2020
Apr 2022
May 2022
Jun 2022
Jul 2022
Aug 2022
Sep 2022
Oct 2022
Nov 2022
Dec 2022
Jan 2023
Feb 2023
Mar 2023


Total SNAP Application Backlog by Month
10,000
9,000
8,000
7,000
6,000
5,000
4,000
3,000
2,000
1,000
0
Total Application Backlog*
AUG 2022
SEP 2022
OCT 2022
NOV 2022
DEC 2022
JAN 2023
FEB 2023
Mar 2023
Apr 2023

**Backlog Applications/Recertifications** - ***Updated 04/06/2023***

| Program | 000 to 30 days | 031-45 days | 046-60 days | 061-90 days | 091-120 days | 121-150 days | 151-180 days | 181-210 days | 211-240 days | 241-270 days | 271-300 days | 301-330 days | 331-360 days | over 360 days | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Food stamps (applications, expedites & recertifications)** | 491 | 748 | 872 | 2083 | 3178 | 2076 | 994 | 591 | 37 | 0 | 0 | 0 | 0 | 0 | **11,070** |
| *Food Stamps (Expedite)* | *491* | *203* | *343* | *511* | *475* | *635* | *125* | *1* | 0 | 0 | 0 | 0 | 0 | 0 | ***2,784*** |
| *Food Stamps (Recertifications)* | - | *4* | *2* | *1* | *1,485* | *186* | *1* | - | - | - | - | - | - | - | ***1,679*** |
| *Food Stamps (non-Expedite Applications)* | - | *541* | *527* | *1,571* | *1,218* | *1,255* | *868* | *590* | *37* | - | - | - | - | - | ***6,607*** |

| SNAP Recertification Backlog* - *April 06, 2023* | |
|---|---|
| **Recertification Received Month** | **Apr 2023** |
| **CY2022** | |
| May 2022 | |
| Jun 2022 | - |
| Jul 2022 | - |
| Aug 2022 | 1 |
| Sep 2022 | - |
| Oct 2022 | - |
| Nov 2022 | 48 |
| Dec 2022 | 1,623 |
| **CY2023** | |
| Jan 2023 | 1 |
| Feb 2023 | 3 |
| Mar 2023 | 3 |
| **Total Recert Backlog*** | **1,679** |

**Data last updated: 04/06/2023*

*Data Source: EIS*

| SNAP Recertification Backlog* by Report Month | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Recertification Received Month** | **AUG 2022** | **SEP 2022** | **OCT 2022** | **NOV 2022** | **DEC 2022** | **JAN 2023** | **FEB 2023** | **Mar 2023** | **Apr 2023** |
| **CY2022** | | | | | | | | | |
| May 2022 | 2 | 2 | - | - | - | - | - | - | - |
| Jun 2022 | 356 | 139 | 8 | - | - | - | - | - | - |
| Jul 2022 | 133 | 2,149 | 1,040 | 442 | 58 | 2 | - | - | 1 |
| Aug 2022 | - | 7 | 2,595 | 2,429 | 2,061 | 845 | 16 | - | 1 |
| Sep 2022 | - | - | 764 | 2,733 | 2,501 | 2,291 | 419 | - | 1 |
| Oct 2022 | - | - | - | 1 | 2,951 | 2,760 | 2,375 | 533 | - |
| Nov 2022 | - | - | - | - | - | 2,980 | 2,765 | 2,211 | 345 |
| Dec 2022 | - | - | - | - | - | 226 | 2,483 | 2,153 | 1,758 |
| **CY2023** | | | | | | | | | |
| Jan 2023 | - | - | - | - | - | - | - | 8 | 6 |
| Feb 2023 | - | - | - | - | - | - | - | - | 16 |
| Mar 2023 | - | - | - | - | - | - | - | - | 2 |
| **Total Recert Backlog*** | **491** | **2,297** | **4,407** | **5,605** | **7,571** | **9,104** | **8,058** | **4,905** | **2,130** |

*SNAP Backlog Definition: Recertifications (excludes new applications) unworked > 30 days*

**Data is pulled on the first of the report month.*

*Data last updated: 04/01/2023*

*Data Source: EIS*




Nov 2022
Dec 2022
CY2023
Jan 2023
Feb 2023
Mar 2023


Total SNAP Recertification Backlog by Month
10,000
9,000
8,000
7,000
6,000
5,000
4,000
3,000
2,000
1,000
0
Total Recert Backlog*
AUG 2022
SEP 2022
OCT 2022
NOV 2022
DEC 2022
JAN 2023
FEB 2023
Mar 2023
Apr 2023

| **SNAP Application Backlog* - *April 6,, 2023*** | |
|---|---|
| **Application Received Month** | **Apr 2023** |
| **CY2022** | |
| May 2022 | - |
| Jun 2022 | - |
| Jul 2022 | - |
| Aug 2022 | - |
| Sep 2022 | 369 |
| Oct 2022 | 821 |
| Nov 2022 | 1,867 |
| Dec 2022 | 1,658 |
| **CY2023** | |
| Jan 2023 | 2,269 |
| Feb 2023 | 1,643 |
| Mar 2023 | 764 |
| **Total Application Backlog*** | **9,391** |

**Data last updated: 04/06/2023*

*Data Source: EIS*

**SNAP Application Backlog* by Report Month**

| **Application Received Month** | **AUG 2022** | **SEP 2022** | **OCT 2022** | **NOV 2022** | **DEC 2022** | **JAN 2023** | **FEB 2023** | **Mar 2023** | **Apr 2023** |
|---|---|---|---|---|---|---|---|---|---|
| **CY2020** | | | | | | | | | |
| Oct 2020 | - | - | - | - | 1 | - | - | - | - |
| **CY2022** | | | | | | | | | |
| Apr 2022 | 1 | - | - | - | - | - | - | - | |
| May 2022 | 36 | 4 | 1 | - | - | - | - | - | - |
| Jun 2022 | 206 | 44 | 5 | - | - | - | - | - | - |
| Jul 2022 | 119 | 399 | 220 | 122 | 78 | 12 | - | - | - |
| Aug 2022 | - | 310 | 1,548 | 1,210 | 1,068 | 844 | 346 | 41 | 1 |
| Sep 2022 | - | - | 697 | 2,071 | 1,735 | 1,336 | 1,069 | 752 | 400 |
| Oct 2022 | - | - | - | 547 | 2,227 | 1,953 | 1,663 | 1,334 | 905 |
| Nov 2022 | - | - | - | - | 643 | 2,784 | 2,453 | 2,154 | 1,897 |
| Dec 2022 | - | - | - | - | - | 494 | 2,139 | 1,876 | 1,676 |
| **CY2023** | | | | | | | | | |
| Jan 2023 | - | - | - | - | - | - | 210 | 2252 | 2293 |
| Feb 2023 | - | - | - | - | - | - | - | 227 | 1684 |
| Mar 2023 | - | - | - | - | - | - | - | - | 603 |
| **Total Application Backlog*** | **362** | **757** | **2,471** | **3,950** | **5,752** | **7,423** | **7,880** | **8,636** | **9,459** |

*SNAP Backlog Definition: Application (excludes recertifications) unworked > 30 days or expedite applications unworked > 7 days*

**Data is pulled on the first of the report month.*

*Data last updated: 04/01/2023*

*Data Source: EIS*




0
AUG 2022
SEP 2022
OCT 2022
NOV 2022
DEC 2022
JAN 2023
FEB 2023
Mar 2023
Apr 2023
Oct 2020
Apr 2022
May 2022
Jun 2022
Jul 2022
Aug 2022
Sep 2022
Oct 2022
Nov 2022
Dec 2022
Jan 2023
Feb 2023
Mar 2023


Total SNAP Application Backlog by Month
10,000
9,000
8,000
7,000
6,000
5,000
4,000
3,000
2,000
1,000
0
Total Application Backlog*
AUG 2022
SEP 2022
OCT 2022
NOV 2022
DEC 2022
JAN 2023
FEB 2023
Mar 2023
Apr 2023

| | |
|---|---|
| **From:** | Etheridge, Deb J (DOH) |
| **To:** | Harrison, Lael (LAW); Nelson, Justin D (LAW) |
| **Cc:** | Dablemont, Tracie L (DOH); Stovall, Rebecca L (DOH) |
| **Subject:** | FW: Update on Alaska"s Progress and Compliance with FNS Requirements |
| **Date:** | Wednesday, August 2, 2023 3:54:34 PM |

FYI

**From:** Etheridge, Deb J (DOH)
**Sent:** Wednesday, August 2, 2023 3:24 PM
**To:** Tobin, Charles - FNS <Charles.Tobin@usda.gov>; Bourne, Jacqueline - FNS <jacqueline.bourne@usda.gov>; Frisk, Rachel - FNS <Rachel.Frisk@usda.gov>; Johnston, Margaret (Moira) - FNS <moira.johnston@usda.gov>; Noble, John (David) - FNS <john.noble@usda.gov>; sawnee.anderson@usda.gov; Thompson, Cheryle - FNS <Cheryle.Thompson@usda.gov>
**Cc:** Carson, Tama D (DOH) <tama.carson@alaska.gov>; Dablemont, Tracie L (DOH) <tracie.dablemont@alaska.gov>; Luchini, Lydia (DOH) <lydia.luchini@alaska.gov>; Lumbab, Reuben F (DOH) <reuben.lumbab@alaska.gov>
**Subject:** Update on Alaska's Progress and Compliance with FNS Requirements

Dear FNS,

I hope this email finds you well. I wanted to take a moment to express Alaska's appreciation for the invaluable support we have received from FNS as we diligently work towards making necessary corrections and achieving compliance. As we move forward, I want to provide a written follow-up to ensure that we fully understand the guidance and expectations regarding the "old" SNAP application backlog and "new" SNAP backlog. By "old" backlog I mean the backlog existing in April, 2023 and by "new" backlog I mean cases that are falling into backlog since end of May, 2023.

To give you a clear overview of our progress, I have included a table that illustrates the initial and backlog numbers as of July 27, 2023.

**Alaska SNAP Backlog Summary**

**Initial SNAP Backlog - Applications and Recertifications received before April 01, 2023**

Backlog Defininition: SNAP Applications and Recerts >30 days (regular) and Seven days (Expedite)

| | 2023.02.23* | Current Outstanding Cases 7/27/2023 | Number of cases processed through report date | Number of Cases worked since previous report date | Average Number of cases worked per week | Percentage of Backlog Cleared through report date |
|---|---|---|---|---|---|---|
| **Total Number of Outstanding Cases** | 14,106 | 4,538 | 9,568 | 572 | 435 | 68% |
| **Recertifications** | 5601 | 0 | 5,601 | n/a | **Initial Recert Backlog Cleared 05.18.23** | |
| **Applications** | 8505 | 4,538 | 3,967 | 572 | | |

**Start of weekly reporting*

Alaska has implemented several effective strategies to address our backlog and ensure compliance. One significant change has been the establishment of dedicated teams of eligibility staff. Drawing upon C!A's (Change Innovation Agency) insights and utilizing data from C!A's workflow management system, Current™, our Division Leadership has restructured the workflow teams with a focus on three specific priorities. Here's an outline of the staffing restructure:

1. Backlog Team: This team, led by an experienced supervisor, comprises highly qualified staff with expertise in multiple programs. By reducing transaction time and unnecessary handoffs, they aim to process cases efficiently, using data-driven approaches to set and achieve goals for reducing and ultimately eliminating backlog.

2. Current Work Team: Under the leadership of a workflow management expert, this team ensures that all current work is processed promptly to prevent the backlog from growing. Following the "sandwich method" introduced by C!A, if the team successfully stays up to date with their work, they will assist the backlog team as needed.

3. Medicaid Unwinding Team: Led by an experienced staff member well-versed in Medicaid programs, this team, along with a supervisor, is responsible for compliance with the State's Mitigation plan. They use data from Current™ to set goals and regularly meet with department leadership to ensure adherence to unwinding rules and the mitigation plan.

Furthermore, we have taken additional steps to improve efficiency, such as adding more merit staff, hiring non-merit staff for our Virtual Contact Center, and expanding our training capacity.

The backlog team is now focusing on processing "old" SNAP backlog applications in chronological order, starting from the oldest identified backlog applications as of April, 2023. To maintain our timeframes for current SNAP recertifications, the backlog team has been periodically (at least twice per month) assigned to work on current recertifications that were "falling" into the new backlog.

Based on the guidance and expectations provided by FNS during our face-to-face meeting, we understand that it is crucial that Alaska achieves full compliance and clears our "old" backlog before submitting the Corrective Action Plan on August 28th.

Therefore, FNS has requested that we refrain from diverting the backlog team's focus to process current applications and recertifications "falling" into the backlog. Instead, both the backlog team and the current work team should intermittently (or at least twice per month) concentrate on clearing the “old” backlog by August 28, 2023. FNS has acknowledged that this may lead to the formation of a “new” backlog and delays in timely determinations.

At present, we are processing approximately 140 cases per business day, with the goal of clearing the "old" backlog by August 28th. To expedite progress, I have authorized overtime, and the team lead is actively encouraging staff to sign up for additional hours. We commit to providing weekly reports, and during these meetings, we will discuss the data and our efforts towards achieving our goal.

We are proud of the hard work put forth by our team to address the backlog, and the progress made thus far. Please let us know if you can confirm that our understanding of the guidance and expectations aligns with FNS's perspective.

Thank you for your continued support and understanding as we work together towards compliance and improved efficiency.

Best regards,

*Deb*

**Deb Etheridge** | Director
Division of Public Assistance, Alaska Department of Health
P.O. Box 110640 | Juneau, AK 99811-0640
907.465.2680 (office)
Deb.etheridge@alaska.gov

**Deb Etheridge** | Director
Division of Public Assistance, Alaska Department of Health
P.O. Box 110640 | Juneau, AK 99811-0640
907.465.2680 (office)
Deb.etheridge@alaska.gov

**From:** Johnston, Margaret (Moira) - FNS
**To:** Etheridge, Deb J (DOH)
**Cc:** Carson, Tama D (DOH); Dablemont, Tracie L (DOH); Luchini, Lydia (DOH); Lumbab, Reuben F (DOH); Tobin, Charles - FNS; Bourne, Jacqueline - FNS; Frisk, Rachel - FNS; Anderson, Shawnee - FNS; Wrightsman, Stephanie - FNS; Thompson, Cheryle - FNS; Noble, John (David) - FNS; Ihm, Young - FNS
**Subject:** RE: Update on Alaska"s Progress and Compliance with FNS Requirements
**Date:** Friday, August 4, 2023 11:25:43 AM
**Attachments:** image001.jpg

---

**CAUTION:** This email originated from outside the State of Alaska mail system. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hello Deb,

Thank you and your entire team for the time and transparency you afforded us during the week of July 17. FNS came away with a much better understanding of the situation Alaska is facing, the efforts you are undertaking, and the progress you have made to clear the backlog of applications and implement proper quality control (QC) procedures. We appreciate that you and your staff understand the gravity of the situation and that you are open to making changes to advance progress. We also recognize and appreciate all the work Alaska is doing to get SNAP benefits to eligible households.

Thank you, also, for the summary below. As I mentioned, FNS would like to set up a call next week to follow up on its visit and learn about progress and emerging issues. In the meantime, we would like to respond to a few points included in your email to correct a misunderstanding about timeframes and to reiterate FNS' expectations regarding regulatory compliance.

- From the note below, it appears that Alaska is working to clear the old backlog (applications received through April) by the end of August. For the record, FNS advised you in our meeting on July 20, 2023, that it expects Alaska to clear the old backlog by the end of September 2023, not August 2023. The reason for this is because Alaska's interview waiver expires September 30, 2023. Alaska will need to resume interviews, beginning October 1, 2023, which will add to application processing times. FNS fully supports and encourages Alaska to clear the old backlog by the end of August 2023. However, it also recognizes that these older applications are likely to be more complicated and difficult to resolve.

- During our visit, FNS, Alaska, and C!A staff brainstormed ideas for clearing the backlog. FNS noted that, while Alaska had different teams tackling different types of cases, the team working the old backlog had an average of 10 staff a day, due to absenteeism and to the fact that Alaska diverted many of these staff daily to work on other applications. FNS advised Alaska to increase staff capacity for working the old backlog. FNS encouraged Alaska to stop diverting staff from the backlog team and to commit to having a team that consistently works the old backlog. Alaska shared that it had already accrued a new backlog, and expressed concern that it may increase if the backlog team does not assist with current applications. FNS expects Alaska to continue to work all applications (old backlog and current work) and to strive to meet application processing standards. FNS expects that, once Alaska clears the old backlog, the backlog team will turn its attention to clearing any new backlog accrued since the dedicated teams were created in April 2023.

  FNS also encouraged Alaska to consider other strategies, such as leveraging staff from other teams, programs or agencies, or holding "production days" where *all* staff just work the old backlog, or even mandating overtime (though Alaska expressed concern about mandating overtime due to impact on morale). In our next call, FNS would like to hear from you whether Alaska implemented any of these or other strategies and what the impacts have been.

- During the visit, Alaska advised FNS that it continued to implement a "simplified process" for working cases that conflicts with the regulatory requirements for verifying information and pending cases. FNS had included this as a finding in its management evaluation (ME) report sent June 28, 2023, and informed Alaska that it must stop this practice immediately. In our discussion with you on Thursday, July 20, FNS advised you that Alaska must stop using the simplified process and come into compliance with the regulations no later than 60 days after the date of the ME report, or August 28.

Again, thank you for being conscientious and for taking steps to address the application processing issues in Alaska and coming into compliance with regulations. FNS is hopeful that these efforts will avert the need to implement the warning process. In the meantime, we look forward to talking with you next week.

Moira

Moira Johnston
*she/her/hers*
Director
Program Development Division
Supplemental Nutrition Assistance Program
Food and Nutrition Service, U.S. Department of Agriculture
703-305-2515
Moira.johnston@usda.gov

SNAPtoSkills_logo

*Helping SNAP Participants Find Jobs*
USDA | Food and Nutrition Service

**From:** Etheridge, Deb J (DOH) <deb.etheridge@alaska.gov>
**Sent:** Wednesday, August 2, 2023 7:24 PM
**To:** Tobin, Charles - FNS <Charles.Tobin@usda.gov>; Bourne, Jacqueline - FNS <jacqueline.bourne@usda.gov>; Frisk, Rachel - FNS <Rachel.Frisk@usda.gov>; Johnston, Margaret (Moira) - FNS <moira.johnston@usda.gov>; Noble, John (David) - FNS <john.noble@usda.gov>; sawnee.anderson@usda.gov; Thompson, Cheryle - FNS <Cheryle.Thompson@usda.gov>
**Cc:** Carson, Tama D (DOH) <tama.carson@alaska.gov>; Dablemont, Tracie L (DOH) <tracie.dablemont@alaska.gov>; Luchini, Lydia (DOH) <lydia.luchini@alaska.gov>; Lumbab, Reuben F (DOH) <reuben.lumbab@alaska.gov>
**Subject:** Update on Alaska's Progress and Compliance with FNS Requirements

Dear FNS,

I hope this email finds you well. I wanted to take a moment to express Alaska's appreciation for the invaluable support we have received from FNS as we diligently work towards making necessary corrections and achieving compliance. As we move forward, I want to provide a written follow-up to ensure that we fully understand the guidance and expectations regarding the "old" SNAP application backlog and “new” SNAP backlog. By “old” backlog I mean the backlog existing in April, 2023 and by “new” backlog I mean cases that are falling into backlog since end of May, 2023.

To give you a clear overview of our progress, I have included a table that illustrates the initial and backlog numbers as of July 27, 2023.

**Alaska SNAP Backlog Summary**

**Initial SNAP Backlog - Applications and Recertifications received before April 01, 2023**

Backlog Definintion: SNAP Applications and Recerts >30 days (regular) and Seven days (Expedite)

| | 2023.02.23* | Current Outstanding Cases 7/27/2023 | Number of cases processed through report date | Number of Cases worked since previous report date | Average Number of cases worked per week | Percentage of Backlog Cleared through report date |
|---|---|---|---|---|---|---|
| **Total Number of Outstanding Cases** | 14,106 | 4,538 | 9,568 | 572 | 435 | 68% |
| **Recertifications** | 5601 | 0 | 5,601 | n/a | **Initial Recert Backlog Cleared 05.18.23** | |
| **Applications** | 8505 | 4,538 | 3,967 | 572 | | |

**Start of weekly reporting*

Alaska has implemented several effective strategies to address our backlog and ensure compliance. One significant change has been the establishment of dedicated teams of eligibility staff. Drawing upon C!A's (Change Innovation Agency) insights and utilizing data from C!A's workflow management system, Current™, our Division Leadership has restructured the workflow teams with a focus on three specific priorities. Here's an outline of the staffing restructure:

1. Backlog Team: This team, led by an experienced supervisor, comprises highly qualified staff with expertise in multiple programs. By reducing transaction time and unnecessary handoffs, they aim to process cases efficiently, using data-driven approaches to set and achieve goals for reducing and ultimately eliminating backlog.

2. Current Work Team: Under the leadership of a workflow management expert, this team ensures that all current work is processed promptly to prevent the backlog from growing. Following the "sandwich method" introduced by C!A, if the team successfully stays up to date with their work, they will assist the backlog team as needed.

3. Medicaid Unwinding Team: Led by an experienced staff member well-versed in Medicaid programs, this team, along with a supervisor, is responsible for compliance with the State's Mitigation plan. They use data from Current™ to set goals and regularly meet with department leadership to ensure adherence to unwinding rules and the mitigation plan.

Furthermore, we have taken additional steps to improve efficiency, such as adding more merit staff, hiring non-merit staff for our Virtual Contact Center, and expanding our training capacity.

The backlog team is now focusing on processing “old” SNAP backlog applications in chronological order, starting from the oldest identified backlog applications as of April, 2023. To maintain our timeframes for current SNAP recertifications, the backlog team has been periodically (at least twice per month) assigned to work on current recertifications that were "falling" into the new backlog.

Based on the guidance and expectations provided by FNS during our face-to-face meeting, we understand that it is crucial that Alaska achieves full compliance and clears our “old” backlog before submitting the Corrective Action Plan on August 28th. Therefore, FNS has requested that we refrain from diverting the backlog team's focus to process current applications and recertifications "falling" into the backlog. Instead, both the backlog team and the current work team should intermittently (or at least twice per month) concentrate on clearing the “old” backlog by August 28, 2023. FNS has acknowledged that this may lead to the formation of a “new” backlog and delays in timely determinations.

At present, we are processing approximately 140 cases per business day, with the goal of clearing the "old" backlog by August 28th. To expedite progress, I have authorized overtime, and the team lead is actively encouraging staff to sign up for additional hours. We commit to providing weekly reports, and during these meetings, we will discuss the data and our efforts towards achieving our goal.

We are proud of the hard work put forth by our team to address the backlog, and the progress made thus far. Please let us know if you can confirm that our understanding of the guidance and expectations aligns with FNS's perspective.

Thank you for your continued support and understanding as we work together towards compliance and improved efficiency.

Best regards,

*Deb*

**Deb Etheridge** | Director
Division of Public Assistance, Alaska Department of Health
P.O. Box 110640 | Juneau, AK 99811-0640
907.465.2680 (office)
Deb.etheridge@alaska.gov

**Deb Etheridge** | Director
Division of Public Assistance, Alaska Department of Health
P.O. Box 110640 | Juneau, AK 99811-0640
907.465.2680 (office)
Deb.etheridge@alaska.gov

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

**United States Department of Agriculture**

Food and Nutrition Service

Western Region

90 Seventh St.
Suite 10-100
San Francisco, CA
94103

October 5, 2023

Heidi Hedberg, Commissioner
Alaska Department of Health and Social Services
3601 C Street, Suite 902
Anchorage, AK 99503

Dear Commissioner Hedberg:

The Food and Nutrition Service (FNS) monitors Supplemental Nutrition Assistance Program (SNAP) Application Processing Timeliness (APT) rates as part of its oversight responsibility to ensure State agency compliance with requirements under the Food and Nutrition Act of 2008 (the Act). Federal law requires that households have the opportunity to participate in SNAP within 7 days for expedited cases and 30 days for regular cases. While State agencies are required to process all SNAP applications within the timelines provided in the statute, FNS considers an APT rate of 95 percent and above acceptable performance.

FNS recognizes the challenges States have faced after the unprecedented COVID-19 pandemic, however, low APT rates have a real and significant impact on eligible families who struggle to put food on the table. Timely application processing is paramount to customer service and meeting families' nutrition needs. FNS recently revised the escalation process to identify noncompliance with the statutory requirements and to promote significant improvements in State agencies with APT rates falling below 90 percent of the upper bound of the confidence interval.[1]

While there is insufficient data to determine an FNS Quality Control (QC) APT rate, FNS is aware based on State-reported data, advocate, and media reports that Alaska has extensive processing backlogs causing multiple-month delays for applicant households to receive benefits. On February 9, 2023, FNS issued Alaska a letter outlining application processing backlog and timeliness concerns regarding not following the fundamental requirements set by the Act concerning the responsibility to process applications within certain timeframes. FNS' Management Evaluation and Technical Assistance visits to the State in November 2022, and May and July of 2023 also confirmed application processing timeliness concerns.

Alaska has a Corrective Action Plan that outlines efforts to reduce the SNAP backlog, which impacts application processing timeframes. FNS provides regular technical assistance to the State on the CAP. While the State reports ongoing backlog data, FNS

[1] The FNS APT rate in the context of corrective action throughout this letter refers to the upper bound of the 95 percent confidence interval of the estimated sample APT rate calculated from available State agency data. For more information on the revised escalation procedures, see FNS' August 3, 2023, memorandum, SNAP - Updated Guidance for Improving State Agency Application Processing Timeliness Rates: Standardizing the Escalation Process.


USDA is an Equal Opportunity Provider, Employer, and Lender.

also requires State-reported timeliness data in order to better monitor the CAP initiatives and understand the State's current performance.

Within 30 calendar days, the State agency must present FNS with State agency-calculated timeliness data following the State agency Timeliness Data Protocol (the Protocol) for the preceding 6 months to demonstrate how recent actions may have improved timeliness. FNS will review the data and work with the State to update corrective actions in the existing CAP to improve timeliness. FNS will require as part of the CAP weekly APT rate data calculated by the State agency using the Protocol and will review this data to ensure the State agency collects it in accordance with the Protocol and other applicable standards. Ongoing, the State agency must submit the APT rate data with the weekly backlog data.

FNS expects to see measurable outputs that will help the State agency progress towards 95 percent timeliness for SNAP application processing. Once FNS receives the APT rate data, FNS will work with the State agency to set benchmark(s) and associated timeframes for improvement. FNS will take into consideration current State agency initiatives and review current and historical APT data when determining benchmarks. If FNS fails to see measurable progress, an advance warning may be issued in accordance with 7 CFR 276.4.

FNS is committed to working with Alaska to ensure SNAP access is provided in accordance with statutory timeframes. FNS will continue to provide technical assistance as needed to support your ongoing efforts to come into compliance with Federal application processing requirements. If you have any questions, please contact Jackie Bourne at jacqueline.bourne@usda.gov, or (415) 293-3717.

Sincerely,

JESUS MENDOZA

Digitally signed by JESUS MENDOZA
Date: 2023.10.05 16:29:22 -07'00'

Jesus Mendooza, Jr.
Regional Administrator
Supplemental Nutrition Assistance Program
Western Region

cc: Tama Carson, DOH
Charles Tobin, FNS WRO
Stephanie Wrightsman, FNS WRO
Jackie Bourne, FNS WRO

WRO File Code: SNAP\400 - Program Oversight (Ops Branch)\Misc State Info\AK\CAP