TREG TAYLOR
ATTORNEY GENERAL
Lael A. Harrison (Alaska Bar No. 0811093)
Senior Assistant Attorney General
Department of Law
 P.O. Box 110300
Juneau, AK 99811-0300
Telephone: 907.465.3600
Facsimile: 907.465.3019
Email: lael.harrison@alaska.gov

Justin D. Nelson (Alaska Bar No. 1102007)
Assistant Attorney General
Alaska Department of Law
100 Cushman Street, Suite 400
Fairbanks, AK 99701
Telephone: (907) 451-2811
Facsimile: (907) 451-2846
Email: justin.nelson@alaska.gov

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>Heidi Hedberg, in her official capacity as Commissioner of the Alaska Department of Health,<br><br>    Defendant. | Case No.: 3:23-cv-00044-SLG |

# RESPONSE IN SUPPORT OF MOTION TO STAY

**I.     INTRODUCTION: What makes this case challenging is the facts, not the law.**

Although SNAP application processing deadlines are straightforward and do not require technical expertise, crafting a remedy for the SNAP backlog does. That is where this Court would benefit from FNS's expertise. Despite its utmost efforts for almost a year, DPA does not yet have the capacity to both resolve the backlog and stay current on incoming applications. How to maximally deploy the resources DPA does have available now, how to build those resources going forward, and how to measure DPA's progress toward compliance are complex, technical questions requiring policy choices and nuanced interpretation of federal law and regulation. FNS has engaged with DPA on a granular level for months, including numerous on-site visits, regular data reporting and regular meetings, giving both general advice and specific direction to DPA on all these topics.[1] FNS has recently initiated a process of gathering data to make significant decisions regarding how to measure DPA's application processing timeliness and what benchmarks to set for DPA to come into compliance. This Court should wait until FNS has made those decisions before embarking on litigation over a preliminary injunction.

---

[1] This is in stark contrast to *Rosado v. Wyman*, 397 U.S. 397 (1970), cited by the plaintiffs, in which the District Court "made considerable effort to learn the views" of the federal Department of Health, Education, and Welfare, but it "determined to remain aloof." *Id.* at 407.

*Della Kamkoff et. al. v. Heidi Hedberg*                                          Case No.: 3:23-cv-00044-SLG
RESPONSE IN SUPPORT OF MOTION TO STAY                                     Page 2 of 11
Case 3:23-cv-00044-SLG   Document 23   Filed 12/11/23   Page 2 of 11

## II. Staying the case is most efficient.

Application of primary jurisdiction is based on four factors:

> (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.[2]

The plaintiffs provide no real analysis of these factors, except to assert that this issue does not require expertise to resolve. The plaintiffs focus instead on efficiency, which is a critical consideration in whether to apply the doctrine where these four factors are met.[3] They assert that this Court has authority to resolve this issue and there is nothing be gained by waiting. But the cases that the plaintiffs cite in support of this Court's authority to enter a preliminary injunction actually demonstrate why a stay would be efficient here.[4] These cases demonstrate that these situations are not "straightforward" or "require[] little technical expertise," as the plaintiffs assert.[5] The cases that the plaintiffs cite involved contentious and challenging litigation, over the many of the same topics that the State expects FNS to address over the next few months when amending DPA's CAP.[6]

---

[2] *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 760 (9th Cir. 2015).

[3] *Id.*

[4] The State does not contend that this Court lacks the power to enter an injunction against it—the doctrine of primary jurisdiction applies when a Court has jurisdiction over a situation *also* entrusted by law to an administrative agency. *Id.*

[5] Opposition to Motion to Stay (Dec. 4, 2023, Dkt. 22) at 12.

[6] *Id.* at 22 n. 49.

*Della Kamkoff et. al. v. Heidi Hedberg*  Case No.: 3:23-cv-00044-SLG
RESPONSE IN SUPPORT OF MOTION TO STAY  Page 3 of 11
Case 3:23-cv-00044-SLG   Document 23   Filed 12/11/23   Page 3 of 11

Of the cases the plaintiffs cite, only one actively involved FNS. In that case, *Harley v. Lyng,* the court entered its injunction after FNS had already established its own monitoring program, and the Court deferred to FNS on the specifics.[7] There, the plaintiffs sued FNS as well as the state agency, and entered into a consent decree with FNS setting out FNS's role in monitoring the state agency's compliance with the SNAP Act.[8] The court entered its preliminary injunction against the agency after entry of this consent decree and stated:

> federal officials [have] acknowledged their duty to supervise the rehabilitation of [the] food stamp delivery system, including a monitoring program. So long as this program is carried out, the executive branch will be accorded primary responsibility for enforcing the law.[9]

Further, in response to the plaintiffs' demand for specific monitoring procedures, the court said: "given FNS's primary responsibility to oversee the [agency's] food stamp program, such procedures ought to be designed and controlled by FNS unless plaintiffs demonstrate that FNS's monitoring is ineffective."[10] Thus, that case supports the State's position that this Court should wait until FNS has updated DPA's CAP before taking up the plaintiffs' motion for preliminary injunction.

In two other cases cited by the plaintiffs, the courts' injunctions ultimately set the types of benchmarks that the State expects FNS to set in the upcoming months, further

---

[7]   *Harley v. Lyng*, 653 F.Supp. 266 (E.D. Penn. 1986).

[8]   *Id.* at 269.

[9]   *Id.* at 278.

[10]  *Id.* at 279.

*Della Kamkoff et. al. v. Heidi Hedberg*　　　　　　　　　　　　　　　Case No.: 3:23-cv-00044-SLG
RESPONSE IN SUPPORT OF MOTION TO STAY　　　　　　　　　　　　Page 4 of 11
Case 3:23-cv-00044-SLG   Document 23   Filed 12/11/23   Page 4 of 11

illustrating the value of waiting on FNS. In the decision in *Booth v. McManaman* cited by plaintiffs, the court did not actually enter a preliminary injunction but stated:

> The Court hereby directs the parties to meet with [a] Magistrate Judge [] within one week from the date of this Order for the purpose of addressing the scope and terms of the preliminary injunction to be issued by this Court. Thereafter, the parties shall submit to the Court a proposed form of injunction within thirty (30) days from the date of this Order.[11]

The actual injunction entered two months later is attached to this reply as Exhibit A. It sets out the type of timeliness benchmarks that DPA expects FNS to set over the coming months. The injunction ultimately issued in *Robertson v. Jackson*, also cited by the plaintiffs, contained similar benchmarks.[12] These cases illustrate why it is more efficient to wait and coordinate with FNS than to litigate these kinds of benchmarks from scratch.

In two other cases, after entry of the preliminary injunctions cited by the plaintiffs, litigation continued for years over technical questions of whether the agency was in compliance, how to measure compliance, and what would be required to bring the agency into compliance. In *Reynolds v. Giuliani,* the court issued an injunction in January of 1999 laying out the standards the City of New York ultimately had to meet and requiring the City to submit a corrective action plan to reach those standards.[13] The parties then litigated the corrective action plan for several months before the court issued an order in

---

[11] *Booth v. McManaman*, 830 F.Supp.2d 1037, 1045 (D. Hawaii 2011).

[12] *Robertson v. Jackson*, 766 F.Supp. 470, 480 (E.D. Va. 1991).

[13] *Reynolds v. Giuliani*, 35 F.Supp.2d 331 (S.D.N.Y. 1999).

*Della Kamkoff et. al. v. Heidi Hedberg*　　　　　　　　　　　　Case No.: 3:23-cv-00044-SLG
RESPONSE IN SUPPORT OF MOTION TO STAY　　　　　　　　Page 5 of 11
Case 3:23-cv-00044-SLG　Document 23　Filed 12/11/23　Page 5 of 11

May of that year.[14] A year later, the court determined that the City's reporting of its progress was incomplete and unreliable, and ordered an audit of the program.[15] The parties continued to litigate through to trial, and the court entered final judgment seven years after the complaint was originally filed.[16] Similarly, according to a later decision in the case, *M.K.B. v. Eggleston* remained unresolved six years after entry of the preliminary injunction cited by the plaintiffs, with the parties engaging in contentious litigation over the meaning of the injunction and whether the agency was in compliance.[17]

These cases illustrate the value of taking time early in the litigation to craft a lasting, functional solution. Entering preliminary injunctions in these cases is not a simple matter of ordering the agency to comply with the law, but a lengthy process of crafting the same types of corrective action plans that FNS is presently crafting for DPA.[18] Dovetailing with FNS actions now is likely to save time both on the front end and on the

---

[14] *Reynolds v. Giuliani*, 43 F.Supp.2d 492 (S.D.N.Y. 1999).

[15] *See Reynolds v. Giuliani,* 506 F.3d 183, 188-89 (2d Cir. 2007).

[16] *See id.* at 189 (reciting that trial court issued final judgment in December of 2005).

[17] *See M.K.B. v. Eggleston*, Not Reported in F.Supp.2d, 2012 WL 20531 (S.D.N.Y. 2012).

[18] In another case cited by plaintiffs, *Haskins v. Stanton*, 621 F. Supp. 622 (N.D. Ind. 1985) the Court did not actually enter a preliminary injunction but rather ordered the state agency to submit a corrective action plan in 60 days. There are no later reported decisions indicating what happened after that.

*Della Kamkoff et. al. v. Heidi Hedberg*            Case No.: 3:23-cv-00044-SLG
RESPONSE IN SUPPORT OF MOTION TO STAY            Page 6 of 11
Case 3:23-cv-00044-SLG    Document 23    Filed 12/11/23    Page 6 of 11

back end, decreasing the likelihood of further litigation after resolution of the preliminary injunction motion.[19]

The plaintiffs are correct that this Court could issue a preliminary injunction "subject to modification" based on later FNS action.[20] But that would be deeply inefficient. This Court would have to consider voluminous data and argument on all the same technical topics that FNS has been investigating and monitoring for almost a year, and then make difficult decisions about the same topics that FNS is currently considering, only to issue an order that would be subject to modification in the likely event that FNS reaches different conclusions than this Court. The more efficient plan is to wait on FNS's decisions, and then litigate the plaintiffs' preliminary injunction motion with that valuable information in hand.

### III.     FNS action caused the current dispute over whether DPA complied with the terms of the second stipulation to stay.

The plaintiffs allege that DPA did not comply with the terms of the Second Stipulation to Stay. DPA disagrees, but that is beside the point. The point is that this disagreement was caused by FNS's directives to DPA after entry of the stipulation. This disagreement further highlights the importance of coordinating this litigation with FNS's actions to avoid future disputes.

---

[19]     The remaining case cited by the plaintiffs did not actually enter a preliminary injunction. *See Robidoux v. Kitchel* 876 F. Supp. 575 (D. Vt. 1995) (entering summary judgment in favor of the plaintiffs without addressing a remedy).

[20]     Opposition to Motion to Stay (Dec. 4, 2023, Dkt. 22) at 16.

*Della Kamkoff et. al. v. Heidi Hedberg*        Case No.: 3:23-cv-00044-SLG
RESPONSE IN SUPPORT OF MOTION TO STAY        Page 7 of 11
Case 3:23-cv-00044-SLG   Document 23   Filed 12/11/23   Page 7 of 11

When the parties entered into the Second Stipulation to Stay in May of 2023, the existing SNAP backlog (both applications and recertifications) stood at 10,598 cases.[21] DPA agreed that it would have "cleared at least 50% of the *current* total SNAP backlog" by October 20, 2023.[22] There is no dispute that, by October 20, 2023, DPA had cleared *all* of those 10,598 cases, but had developed a new backlog of "younger" cases. The plaintiffs assert that, because the total number of cases in backlog was more than 50% of 10,598 on October 20, DPA was out of compliance.[23] It is DPA's position that the Stipulation to Stay only addressed the 10,598 cases in backlog as of the date of the stipulation. But, regardless, what matters for purposes of this motion is *why* this situation arose. As detailed in the Motion for Stay, the reason was FNS's directive to DPA to clear the pre-existing backlog at the expense of falling behind on current work. FNS's decision not to extend its waiver of applicant interviews and to require DPA to resume verifying SNAP applicant income had also lengthened application processing times by the end of October. By waiting until FNS has updated DPA's CAP, this Court may avoid this type of dispute arising in future.

---

[21] Second Stipulation for Stay (May 2, 2023, Dkt. 12) at 5.

[22] *Id.* (emphasis added).

[23] Opposition to Motion to Stay (Dec. 4, 2023, Dkt. 22) at 7.

*Della Kamkoff et. al. v. Heidi Hedberg*                              Case No.: 3:23-cv-00044-SLG
RESPONSE IN SUPPORT OF MOTION TO STAY             Page 8 of 11
Case 3:23-cv-00044-SLG    Document 23    Filed 12/11/23    Page 8 of 11

**IV.** **This Court should stay the right-to-file and language access claims with the timeliness claims.**

The plaintiffs correctly note that they brought two other categories of claims in addition to their timeliness claims: right-to-file claims and language access claims. But DPA has already taken all the actions the plaintiffs asked this Court to order DPA to take in their motion for preliminary injunction with regards to their right-to-file claims. The plaintiffs' Motion for preliminary injunction asks this Court to order that DPA re-open office lobbies sufficient to allow Alaskans to submit SNAP applications on the same day they contact DPA, to register applications as of the date received by the agency, and to accept SNAP applications telephonically on the Virtual Contact Center.[24] As stated in the Motion to Stay, DPA has re-opened all office lobbies Monday-Friday, has continued to register SNAP applications as of the date received, and has resumed accepting SNAP applications telephonically on the VCC.[25] Furthermore, DPA has staffed the VCC with contractors thereby reducing the wait time for callers. So, at this time there does not appear to be any urgent need to litigate the plaintiffs' motion for preliminary injunction on their right-to-file claims.

As for the plaintiffs' language access claims, the plaintiffs are correct that those are not part of the FNS CAP process. Regardless of how this Court ultimately resolves those claims, DPA has a healthy and active language access program, so this is also not a

---

[24] *See* Motion for Preliminary Injunction (Feb. 2, 2023) at p. 3, ¶1 (filed in Alaska Superior Court case no. 3AN-23-04259CI).

[25] *See* Motion for Stay (Nov. 9, 2023, Dkt. 17) at pp. 17-18, ¶¶ 2, 7, 9, 10, 12.

*Della Kamkoff et. al. v. Heidi Hedberg*     Case No.: 3:23-cv-00044-SLG
RESPONSE IN SUPPORT OF MOTION TO STAY     Page 9 of 11
Case 3:23-cv-00044-SLG   Document 23   Filed 12/11/23   Page 9 of 11

matter requiring urgent attention. This Court and the plaintiffs may review the publicly available information regarding DPA's language access for SNAP applicants and recipients for this reassurance.[26] Ultimately, it would be most efficient to litigate those claims concurrently with all claims in this matter, and this Court should stay those claims along with the timeliness and right-to-file claims for efficiency's sake. However, it would also be possible for this Court to bifurcate the language access claims for separate litigation if this Court chooses.

## V. CONCLUSION: DPA is doing everything possible to resolve the backlog.

DPA is striving with constant dedication to resolve the backlog and keep current work current. FNS is directly and actively involved. This is not a situation where all that stands between DPA and resolving the backlog is an order from this Court to change some specific policy or practice. What DPA needs, this Court unfortunately cannot give. An order from this Court will not cause more qualified people to apply for DPA vacancies; it will not speed up the training time for new hires; it will not upgrade

---

[26] Every page of DPA's web presence has a "language help" icon taking users here: https://health.alaska.gov/dpa/Pages/languages/default.aspx. This gives operational numbers to call for interpretation services in Spanish, Russian, Korean, Hmong, Tagalog, Samoan, Burmese, Chinese and Somali, as well as a link to the full list of languages offered for interpretation services, found here: https://www.lep.gov/sites/lep/files/media/document/2022-06/i-speak-booklet.pdf. Every page also contains a link for "Foreign Language Materials" taking users here: http://dpaweb.hss.state.ak.us/node/156. This page has SNAP application forms, eligibility review forms, change forms, fair hearing request forms, and other informational materials translated into Spanish, Tagalog, Russian, Korean and Hmong. The only plaintiff alleging a violation of SNAP Act language access provisions is Russian-speaking. *See* Complaint (Jan. 20, 2023) at pp. 36-38 ¶¶277-296.

*Della Kamkoff et. al. v. Heidi Hedberg*  Case No.: 3:23-cv-00044-SLG
RESPONSE IN SUPPORT OF MOTION TO STAY  Page 10 of 11
Case 3:23-cv-00044-SLG   Document 23   Filed 12/11/23   Page 10 of 11

outdated technology. Crafting a practical, lasting solution to the SNAP backlog will be a complex and technically challenging process, and this Court should allow FNS to bring their expertise to bear on it in the first instance.

DATED: December 11, 2023.

                                                    TREG TAYLOR
                                                  ATTORNEY GENERAL

By: /s/*Lael A. Harrison*
Lael A. Harrison
Alaska Bar No. 0811093
Senior Assistant Attorney General
Alaska Department of Law

By: /s/*Justin D. Nelson*
Justin D. Nelson
Alaska Bar No. 1102007
Assistant Attorney General
Alaska Department of Law

*Attorneys for Defendant*

Certificate of Service
I certify that on December 11, 2023, true and correct copies of the foregoing Response in Support of Motion to Stay were served on the parties via the CMECF electronic filing system:

/s/*Justin D. Nelson*
Justin D. Nelson, Assistant Attorney General

*Della Kamkoff et. al. v. Heidi Hedberg*      Case No.: 3:23-cv-00044-SLG
RESPONSE IN SUPPORT OF MOTION TO STAY      Page 11 of 11
Case 3:23-cv-00044-SLG    Document 23    Filed 12/11/23    Page 11 of 11