Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700 (telephone)
(619) 699-2701 (fax)
Email: christopher.young@us.dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634)
**DLA PIPER LLP (US)**
1415 L Street, Suite 270
Sacramento, CA 95814-3976
(916) 930-3200 (telephone)
(916) 930-3201 (fax)
Email: micah.chavin@us.dlapiper.com

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 1 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 1 of 34

*Bethany M. Bunge (Tex. Bar No. 24120730)
**DLA Piper LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
(713) 425-8400 (telephone)
(713) 425-8401 (fax)
Email: bethany.bunge@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

*appearing pro hac vice

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Della Kamkoff, John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>Heidi Hedberg, in her official capacity As Commissioner of the Alaska Department of Health.<br><br>*Defendant*. | Case No. 3:22-cv-00044-SLG<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION** |

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 2 of 34
Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 2 of 34

## I.  PRELIMINARY STATEMENT

Ten named plaintiffs filed this lawsuit because they desperately needed food. One plaintiff declared: "I am starving in my own home."[1] Another plaintiff tried to feed her three-year-old child with "$5.01 in the bank and no cash at home."[2] Others sacrificed necessities like gas or toilet paper or heating fuel.[3]

This suffering was needless. Every plaintiff was eligible for Supplemental Nutrition Assistance Program ("SNAP") benefits,[4] which would have let them buy the food that they so desperately needed. And every plaintiff had applied for those SNAP benefits. However, the defendant, the State of Alaska Department of Health ("DOH"), deprived the plaintiffs of their benefits by subjecting them to lengthy—and unlawful—processing delays.[5]

Federal law requires that DOH process SNAP applications within certain deadlines.[6] Yet DOH admits that the plaintiffs' applications "remained pending" beyond the deadlines due to "agency delay."[7] For some, these "agency delays" lasted for many hungry months.[8]

---

[1] ECF No. 7-10 at ¶ 40.

[2] ECF No. 7-1 at ¶ 31.

[3] ECF No. 7-7 at ¶ 16; ECF No. 7-9 at ¶ 9.

[4] ECF No. 27 at ¶¶ 148, 163, 174, 193, 208, 218, 234, 249, 261, 277.

[5] *Id.*; ECF Nos. 7-1, 7-2, 7-3, 7-4, 7-5, 7-6, 7-7, 7-8, 7-9, 7-10.

[6] As detailed below, DOH typically must provide SNAP benefits to an eligible household within 30 days of an application. 7 U.S.C. § 2020(e)(3). For households with especially limited finances, the deadline is 7 days. *Id.* § 2020(e)(9). A similar deadline to the 30-day limit also governs applications to "recertify" benefits. 7 C.F.R. § 273.14(c)(2), (d).

[7] ECF No. 27 at ¶¶ 148, 163, 174, 193, 208, 218, 234, 249, 277.

[8] *See, e.g.*, ECF No. 7-9 at ¶¶ 5–8; ECF No. 7-4 at ¶¶ 8–10.

DOH also failed to give the plaintiffs notice about the processing delay or an opportunity to challenge the delay in a fair hearing,[9] in clear violation of federal law related to notice and fair hearings,[10] as well as constitutional due process.

Beyond the named plaintiffs, these failures afflicted thousands of their fellow class members.[11] By DOH's admission, the delays and backlog are an ongoing "crisis" spanning several years.[12] In fact, in the months before the plaintiffs filed this case, DOH performance dropped precipitously; it timely processed 53% of initial applications, 41% of expedited applications, and 30% of recertifications.[13] By January 2023, DOH had a backlog of thousands of applications and recertifications.[14] At the same time, DOH failed to give these hungry people notice of their fair hearing rights and information about the delays.[15]

At the outset of this case, the plaintiffs tried to collaborate with DOH to fix these problems. The plaintiffs agreed to two stays of this litigation, the latter of which required

---

[9] ECF No. 27 at ¶ 115 (admitting that DOH sends no notice about its "agency delays").

[10] 7 C.F.R. § 273.10(g)(1)(iii); 7 U.S.C. § 2020(e)(10); 7 C.F.R. § 273.15(a).

[11] This Court certified an "Untimely Eligibility Class" of "all Alaska residents who since January 20, 2021, have applied, are applying, or will apply for SNAP benefits through an initial application or an application for recertification and did not or will not receive an eligibility determination within the legally required time frames." ECF No. 15 at 1.

[12] ECF No. 21 at 9. As one of many examples of the long history of this crisis, in state fiscal year ("SFY") 2017 (July 2016 – June 2017), DOH timely processed just 51.5% of recertifications. Declaration of Nicholas Feronti in Support of Plaintiff's Renewed Motion for Preliminary Injunction ("Renewed Feronti Decl.") at ¶ 11 (citing Exhibits 4–5).

[13] ECF No. 7-13 at 70 (concerning the period of July 1, 2022 through November 2022).

[14] ECF No. 21 at 10.

[15] ECF No. 27 at ¶ 115.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 4 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 4 of 34

DOH to commit to specific actions aimed at better administering SNAP and cutting its backlog by thousands of applications, which DOH managed to do for a limited time.[16] This collaboration fizzled in late 2023 when DOH violated the requirements of the second stay and allowed its backlog to again grow.[17] The most substantial reason for the renewed SNAP processing backlog was, by DOH's own admission, the reinstated mandatory eligibility interviews for all cases at the direction of the federal Food and Nutrition Service ("FNS").[18]

DOH continues to fail to process SNAP applications in a timely manner. Recently, named plaintiffs Zoya Jenkins and Rose Carney again faced unlawful delays when they attempted to recertify the same SNAP benefits that were also illegally delayed last year.[19] From July 1, 2023 through December 2023, DOH timely processed just 25.7% of initial applications, 46.2% of expedited applications, and 21.2% of recertifications.[20] So, this "crisis" endures. Like the named plaintiffs, many more Alaskans are starving in their own homes, trying to feed their kids with pocket change, and skipping meals—all while waiting for DOH to find a durable remedy to its SNAP processing problems.

---

[16] ECF No. 6; ECF No. 12.

[17] DOH promised to shrink its backlog from 10,598 applications in May 2023 to 5,299 applications by October 2023. ECF No. 12 at 5. However, in December 2023, DOH stated that its backlog had grown back to 12,000 applications. ECF No. 22 at 7 n.27.

[18] Eric Stone, *A New SNAP Backlog Leaves 12,000 Alaskans Waiting for Food Stamps*, Alaska Pub. Media (Dec. 6, 2023), https://alaskapublic.org/2023/12/06/a-new-snap-backlog-leaves-12000-alaskans-waiting-for-food-stamps.

[19] Declaration of Zoya Jenkins at ¶¶ 6–14; Declaration of Rose Carney at ¶¶ 5–13.

[20] Renewed Feronti Decl. at ¶ 12 (citing Exhibit 5).

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 5 of 34

Accordingly, the plaintiffs now seek a preliminary injunction focused on two issues. First, this Court should order DOH to process all pending and future SNAP applications within legally mandated deadlines. Second, this Court should order DOH to provide written notice to any household whose SNAP application is not timely processed and provide those households with an opportunity to challenge the delay in a fair hearing.

The factors governing preliminary injunctive relief under Fed. R. Civ. P. 65 strongly favor the plaintiffs. First, the plaintiffs are likely to succeed on the merits of these claims, as DOH's delays and its failure to provide notice or opportunity for fair hearings about delays demonstrably violate federal law and constitutional due process. Second, the class members, which include indigent people from across Alaska, will be irreparably harmed if DOH continues to deny them the right to timely decisions on their application for SNAP benefits—benefits they need to subsist—or the notice and opportunity to challenge the delay in a fair hearing. Third, the balance of equities and the public interest favor ordering DOH to meet well-established legal requirements to ensure that hungry Alaskans receive food without delay. Absent preliminary injunctive relief, thousands will needlessly remain hungry while they wait for DOH to unscramble operations, render outstanding eligibility determinations, and issue the SNAP benefits and notices to which the plaintiffs are entitled.

## II.  RELEVANT LAW

### A.  The SNAP Act (7 U.S.C. § 2011 *et seq.*)

Originally enacted in 1964, the SNAP Act is intended to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 6 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 6 of 34

households."[21] The federal government fully funds SNAP benefits, as well as at least 50% of a state's costs to administer SNAP.[22]

"A state is free not to participate in the scheme of cooperative federalism established under the [SNAP Act], but if it decides to join, it must comply with federal requirements"[23] and administer the program "in accordance with their own state's Food Stamp Plan."[24]

Accordingly, as the agency that administers SNAP in Alaska,[25] DOH must comply with the SNAP Act. This means DOH must provide SNAP benefits "to all eligible households" who apply.[26] To be eligible, a household's net income may not exceed 130% of the Alaska Poverty Standard and its financial resources generally may not exceed $2,750.[27] Recipients may only use SNAP benefits to buy food at approved retail stores.[28]

---

[21] 7 U.S.C. § 2011. The federal Food Stamp Act was renamed the Food and Nutrition Act of 2008 ("SNAP Act") in 2008. Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, §§ 4001–02, 122 Stat. 1853 (2008).

[22] 7 U.S.C. §§ 2013(a), 2019, 2025(a); 7 C.F.R. §§ 271.2, 277.1(b), 277.4.

[23] *Reynolds v. Giuliani*, 506 F.3d 183, 201–02 (2d Cir. 2007) (Straub, J., concurring) (internal quotation marks and citation omitted); *see also Withrow v. Concannon*, 942 F.2d 1385, 1386 (9th Cir. 1991) ("A state's participation [in SNAP] is optional, but participating states must comply with federal requirements."); *Gonzalez v. Pingree*, 821 F.2d 1526, 1528 (11th Cir. 1987) (noting that "Title 7 U.S.C. § 2020(e)(9) speaks in imperative, not merely permissive, terms" and that SNAP benefits are "a matter of statutory entitlement").

[24] *Robertson v. Jackson*, 766 F. Supp. 470, 471 (E.D. Va. 1991) (citing 7 C.F.R. §272.2(b)).

[25] ECF No. 27 at ¶ 18.

[26] 7 U.S.C. § 2014(a).

[27] *Id.* § 2014(c), (g); *Supplemental Nutrition Assistance Program (SNAP)*, Alaska Dep't of Health, https://health.alaska.gov/dpa/Pages/SNAP/default.aspx.

[28] 7 U.S.C. § 2013(a).

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 7 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 7 of 34

## B. The SNAP Act's requirements for processing SNAP applications

DOH must allow households to apply for SNAP benefits on the first day that they contact their local office during office hours.[29] Indeed, when a household first expresses interest in SNAP benefits or even just concerns about food insecurity,[30] DOH must "encourage" the household to file a SNAP application that same day.

DOH's receipt of a SNAP application triggers processing deadlines. For a typical initial SNAP application, DOH must render an eligibility determination "to any eligible household not later than thirty days following its filing of an application."[31] This deadline is the outer limit; DOH is supposed to provide SNAP benefits "as soon as possible."[32] Before the deadline, DOH must also interview the applicant, either on the day of application or by scheduling an interview "as promptly as possible" to ensure the household can timely receive SNAP benefits.[33]

---

[29] *Id.* § 2020(e)(2)(B)(iii); 7 C.F.R. § 273.2(c)(1)(iii), (c)(2)(i).

[30] 7 C.F.R. § 273.2(c)(2)(i).

[31] 7 U.S.C. § 2020(e)(3) ("The State plan of operation . . . shall provide . . . (3) that the State agency shall thereafter promptly determine the eligibility of each applicant. . . so as to complete certification of and provide an allotment retroactive to the period of application to any eligible household not later than thirty days following its filing of an application[.]")

[32] 7 C.F.R. § 273.2(g)(1) ("Normal processing standard — (1) Thirty-day processing. The State agency shall provide eligible households that complete the initial application process an opportunity to participate (as defined in § 274.2(b)) as soon as possible, but no later than 30 calendar days following the date the application was filed . . . .").

[33] *Id.* § 273.2(e)(3) ("The State agency must schedule an interview for all applicant households who are not interviewed on the day they submit their applications. To the extent practicable, the State agency must schedule the interview to accommodate the needs of

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 8 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 8 of 34

For some households with particularly low incomes and resources,[34] DOH must provide SNAP benefits on an expedited basis, which is "no later than 7 days after the date of application."[35] DOH must screen applications "as they are filed," to determine whether applicants may be eligible for such expedited processing.[36] Also, to satisfy these deadlines, DOH must not only approve a household to receive benefits but must also post those benefits to the household's Electronic Benefits Transfer ("EBT") card for immediate use.[37]

### C. The SNAP Act's requirements for processing recertifications

When DOH approves a household for SNAP benefits, it does so for a "certification period," whereby a household will receive benefits every month for a specified period of months.[38] For a household to continue receiving SNAP benefits after the certification

---

groups with special circumstances, including working households. The State agency must schedule all interviews as promptly as possible to insure eligible households receive an opportunity to participate within 30 days after the application is filed.").

[34] Expedited SNAP benefits are available to households: (a) with very low gross income and liquid resources (less than $150 per month and no more than $100, respectively); (b) with combined gross income and liquid resources that are less than the monthly household rent or mortgage, and utilities; and (c) those constituting destitute migrant or seasonal farmworker households. 7 U.S.C. § 2020(e)(9); 7 C.F.R. § 273.2(a)(2), (i)(1).

[35] 7 U.S.C. § 2020(e)(9) ("The State plan of operation . . . shall provide . . . (9) that the State agency shall— (A) provide benefits no later than 7 days after the date of application to any household which [qualifies for expedited benefits]"); 7 C.F.R. § 273.2(i)(3)(i).

[36] 7 C.F.R. § 273.2(i)(2). Also, while DOH must verify the *identity* of applicants it screens as eligible for expedited benefits, it cannot delay issuing benefits past seven days due to a lack of verification of other factors like income or resources. *Id.* § 273.2(i)(4)(i).

[37] *Id.* § 274.2(b).

[38] *Id.* § 273.10(f). For example, a state may approve certain households to receive benefits every month over a certification period of 24 months. *Id.* § 273.10(f)(1).

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 9 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 9 of 34

period, it must "recertify" its eligibility.[39] Before a household's certification period ends,[40] DOH must provide a Notice of Expiration containing, *inter alia*, the date that the certification period expires and the date by which a household must submit a new application in order to continue receiving benefits without interruption.[41]

Once a household applies for recertification, DOH must meet federally mandated deadlines. If an eligible household submits a recertification application by the 15th day of the last month of its certification period,[42] DOH must continue to provide the household with SNAP benefits after the certification period and must provide those benefits within 30 days or "by the household's normal issuance cycle in the month following the end of its current certification period."[43] If the household's application for recertification period is

---

[39] 7 U.S.C. § 2020(e)(4).

[40] 7 C.F.R. § 273.14(b)(1)(i). The precise time that DOH must provide a household with a Notice of Expiration varies based on the certification period. *Id.* If the certification period was for a month or two, DOH must provide the notice at the time of certification. *Id.* For longer certification periods, DOH must provide the notice before the first day of the last month of the certification period, but not before the first day of the next-to-last-month. *Id.*

[41] *Id.* § 273.14(b)(1)(ii).

[42] 7 C.F.R. § 273.14(c). Further, if a household files for recertification with fewer than 15 days left in a certification period, or even after the certification period, it may still be considered a recertification. *Id.* § 273.14(e).

[43] 7 C.F.R. § 273.14(d) ("Timely processing. (1) Households that were certified for one month or certified for two months in the second month of the certification period and have met all required application procedures shall be notified of their eligibility or ineligibility. Eligible households shall be provided an opportunity to receive benefits no later than 30 calendar days after the date the household received its last allotment. (2) Other households that have met all application requirements shall be notified of their eligibility or ineligibility by the end of their current certification period. In addition, the State agency shall provide

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 10 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 10 of 34

delayed beyond what would have been the first month of the new certification period and fault lies with the state agency, the household's benefits must be prorated based on the date of the recertification application. The agency must also provide benefits back to the date that the household's certification period would have renewed absent the agency's error.[44]

### D. The SNAP Act's Requirements for Notice of Delayed Processing and Fair Hearing Rights

Whenever DOH fails to process a SNAP application on time, it must send a "written notice which informs the household that its application has not been completed and is being processed."[45] DOH also must provide the opportunity for a fair hearing to any household aggrieved by any DOH action that affects its participation in SNAP.[46]

_____

households that are determined eligible an opportunity to participate by the household's normal issuance cycle in the month following the end of its current certification period.").

[44] _Id._ § 273.14(e)(3).

[45] _Id._ § 273.10(g)(1)(iii) ("Certification notices to households. (1) Initial applications. State agencies shall provide applicants with one of the following [three] written notices as soon as a determination is made, but no later than 30 days after the date of the initial application: . . . (i) Notice of eligibility . . . (ii) Notice of denial . . . (iii) Notice of pending status. If the application is to be held pending because some action by the State is necessary to complete the application process, as specified in § 273.2(h)(2), or the State agency has elected to pend all cases regardless of the reason for delay, the State agency shall provide the household with a written notice which informs the household that its application has not been completed and is being processed. . . .").

[46] 7 U.S.C. § 2020(e)(10) ("The State plan of operation . . . shall provide . . . (10) for the granting of a fair hearing and a prompt determination thereafter to any household aggrieved by the action of the State agency under any provision of its plan of operation as it affects the participation of such household in the supplemental nutrition assistance program . . ."); 7 C.F.R. § 273.15(a) ("Availability of hearings. Except as provided in § 271.7(f), each State agency shall provide a fair hearing to any household aggrieved by any action of the State agency which affects the participation of the household in the Program.").

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
_Della Kamkoff et. al. v. Heidi Hedberg_; Case No.: 3:23-cv-00044-SLG
Page 11 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 11 of 34

## III. RELEVANT FACTS

Without SNAP benefits, the named plaintiffs and other impacted class members either could not obtain food or made painful sacrifices to obtain food. Even a small glimpse into their experiences illustrates the harms and interests at stake for thousands of individual class members. At the time this matter was filed in 2023:

- Zoya Jenkins (ECF No. 7-10) a mother of two, and an Alaska Native, lived in Bethel. She was between jobs, struggling to pay rent, and had just around $100 in cash and $100 in the bank. She faced high prices, like $14 for a gallon of milk. She applied for a recertification of SNAP benefits but suffered because of agency delay. Without SNAP, she sometimes ate only once a day to ensure her children had food. She noted: "Some days, my husband starves himself for the whole day until I finally can convince him to eat."

- Troy Fender (ECF No. 7-9) an unemployed 62-year-old man, lived in an RV in Wasilla. He applied twice for SNAP benefits but suffered due to agency delay. In the interim, he "had to make difficult decisions including deciding whether to use the limited funds [he had] left towards diesel fuel for heat or food."

- Tereresa Ferguson (ECF No. 7-8) lived in Anchorage with her husband and four children. She had no income or savings. She applied for a recertification of SNAP benefits but suffered from agency delay. In the interim, she was not even able to travel to the food bank because gas was too expensive.

- Rhonda Conover (ECF No. 7-6) lived in Palmer with her three children, with no income and no car. She applied for SNAP benefits but suffered from agency delay. In the interim, her family "regularly skip[ped] meals."

- Autumn Ellanna (ECF No. 7-1) an Alaska Native, lived in Nome. She waited an hour on the phone to apply for SNAP benefits, only for DOH to incorrectly tell her that she had to go to an office and apply in-person. When she made the trek in to the SNAP office, she found that it was closed. Once finally able to apply for SNAP benefits, she suffered from agency delay. At that time, she was trying to feed her three-year-old daughter with "$5.01 in the bank and no cash at home."

- John Andrew (ECF No. 7-3), a father of five, and an Alaska Native, lived in Marshall. He applied for recertification of SNAP benefits but suffered from agency delay. He had to decide whether to pay for his family's housing or water and sewer, or to instead purchase food. He also skipped meals entirely.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 12 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 12 of 34

A year later, the harms continue. Over the past year, the plaintiffs' counsel has assisted approximately 300 SNAP households, members of the Untimely Eligibility Class, in obtaining critical food assistance by seeking individual relief informally from DOH.[47]

Thousands of Alaskans who applied for SNAP benefits had similar experiences.[48] And DOH's own data shows that, for years before this lawsuit was filed, the agency persistently failed to timely process SNAP applications for thousands of Alaskans:[49]

| | SFY 2015 | SFY 2016 | SFY 2017 | SFY 2018 | SFY 2019 | SFY 2020 | SFY 2021 | SFY 2022 |
|---|---|---|---|---|---|---|---|---|
| Timely Processing of Expedited Apps | 67.1% | 82.4% | 72.8% | 79.7% | 87.0% | 92.9% | 71.4% | 82.6% |
| Timely Processing of Initial Apps | 69.4% | 80.0% | 74.9% | 86.9% | 91.5% | 92.6% | 61.5% | 78.9% |
| Timely Processing of Recertifications | 65.4% | 76.5% | 51.5% | 68.4% | 80.9% | 92.0% | 53.7% | 68.0% |

Then, in the months leading up to the filing of this lawsuit, DOH's SNAP processing rates plummeted. From July 1, 2022, through November 2022, DOH timely processed just 53% of initial applications, 41% of expedited applications, and 30% of recertifications.[50] Meanwhile, the SNAP participation rates tracked by FNS, which show the number of people who receive SNAP monthly, dropped substantially.[51] In July 2022, 97,915 persons

---

[47] Renewed Feronti Decl. at ¶ 7.

[48] ECF No. 27 at ¶ 21.

[49] Renewed Feronti Decl at ¶ 11 (citing Exhibits 4–5). Also, in May 2018, the Alaska Ombudsman concluded that DOH violated processing deadlines. ECF No. 27 at ¶ 123.

[50] ECF No. 7-13 at 70.

[51] Renewed Feronti Decl. at ¶ 9.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 13 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 13 of 34

received SNAP in Alaska.[52] By September 2022, only 69,824 persons participated in SNAP in Alaska.[53] In December 2022, there were only 38,161 persons participating in SNAP in Alaska,[54] less than half of what the total caseload had been only 6 months earlier.

Sharp declines in application processing timeliness continued even after this lawsuit was filed. For all of State Fiscal Year ("SFY") 2023, and for the first six months of SFY 2024, DOH remained unable bring their processing rates back into any semblance of compliance with legally mandated timeframes:[55]

|  | SFY 2023 | SFY 2024 reporting from February 27, 2024 (concerning July 1, 2023 through December 2023) |
|---|---|---|
| Timely Processing of Expedited Apps | 42.4% | 46.2% |
| Timely Processing of Initial Apps | 34.4% | 25.7% |
| Timely Processing of Recertifications | 19.3% | 21.2% |

Application backlog data that was provided to FNS by DOH similarly reflects these ongoing processing delays.[56] Indeed, in the months after this case was filed, DOH reduced and then yet again accumulated a backlog of thousands of overdue and unprocessed SNAP applications:[57]

---

[52] *Id.* (citing Exhibit 2).

[53] *Id.*

[54] *Id.*

[55] *Id.* at ¶ 12 (citing Exhibit 5).

[56] *Id.* at ¶ 10 (citing Exhibit 3).

[57] *Id.*

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 14 of 34

| | 2/23/23 | 4/13/23 | 5/25/23 | 7/6/23 | 8/17/23 | 9/21/23 | 11/2/23 |
|---|---|---|---|---|---|---|---|
| Total Overdue of All SNAP Apps | 14,106 | 10,713 | 8,456 | 7,214 | 6,377 | 7,601 | 10,736 |
| Overdue Expedited Apps | 2,322 | 2,887 | 1,791 | 510 | 365 | 538 | 1,039 |
| Overdue Initial Apps | 6,183 | 6,673 | 6,588 | 6,566 | 4,175 | 3,309 | 3,787 |
| Overdue Recertifications | 5,601 | 1,153 | 77 | 138 | 1,837 | 3,754 | 5,910 |

The August 17, 2023 backlog tracker indicated that the backlog of overdue recertification cases had been cleared.[58] The September 7, 2023 backlog tracker indicated that the backlog of overdue new applications was substantially cleared.[59] However, both of these reports also revealed that a burgeoning number of outstanding cases, still in need of processing, were not counted in the "backlog tracker" because they came to the agency on or after April 1, 2023. Instead, these cases were placed in a "new backlog."

DOH's backlog tracker data did not show all overdue cases in a single metric. There was a pre-April 1, 2023 backlog and a post-April 1 2023 backlog. DOH's declaration that it "cleared the backlog"[60] is much less compelling in this context: It had cleared *one* of *two* backlogs, namely, the pre-April 2023 backlog with a static number of cases.

This backlog data also shows the severity of processing delays. For instance, despite the 7-day deadline for expedited issuance of SNAP benefits to eligible households, 1,665

---

[58] *Id.*

[59] *Id.*

[60] *Press Release: SNAP Application Processing Times Steadily Improving*, Alaska Dep't of Health (Sept. 15, 2023), https://health.alaska.gov/News/Pages/2023/20230915_ SNAP.aspx.

such households had been waiting more than 60 days as of May 25, 2023.[61] Or, the backlog data for November 2, 2023 shows that 5,960 recertifying households had been waiting more than 60 days for DOH to process their applications.[62] A delay of more than 30 days means that these class member's SNAP benefits would already have been terminated and would not restart without action by DOH to recertify the case and issue SNAP benefits.

Thousands of Alaskans have suffered—and continue to suffer—long delays in the processing of their SNAP applications and recertifications, and that problem has not been resolved. Moreover, DOH systematically fails to even notify SNAP households that their applications are delayed and, thus, fails to advise SNAP households of the reason for the delay or provide an opportunity for administrative review.[63] Without SNAP benefits, class members have suffered profound harm. For instance, 61-year-old Steve Younker has diabetes, hypoglycemia, severe cataracts, and a monthly income of $1,342.[64] He applied for a recertification in August 2023, but was not approved until February 7, 2024, and received no notice in the interim.[65] All the while, he had to choose between paying for food and other bills, had to sell his car, and lost nearly 20 pounds.[66]

---

[61] Renewed Feronti Decl. at ¶ 10 (citing Exhibit 3).

[62] *Id.*

[63] ECF No. 27 at ¶ 115.

[64] Declaration of Steve Younker at ¶¶ 1–7.

[65] *Id.* at ¶¶ 9–13. Mr. Younker also visited DOH offices many times to seek information about his recertification, and DOH even lost his application. *Id.*

[66] *Id.* at ¶¶ 15, 17.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 16 of 34

Or, consider 66-year-old Roger Gaston and his 63-year-old disabled wife Marlene, who live on a fixed income.[67] They suffered without SNAP benefits due to agency delays, including from November 2022 until March 2023, and again in January and February 2024.[68] During these delays, they could not afford both groceries and utilities, and were forced to ignore their utility bills to buy food.[69] They fell so far behind on bills that Mr. Gaston took out an $1,800 loan, which he is still repaying.[70]

Or, consider 70-year-old Rachel Grant, who is disabled and lives in subsidized housing.[71] She has relied on and received SNAP benefits for about 20 years, yet when she applied for a recertification in October 2023, she was not approved until February 2024. She received no notice in the interim.[72] Without SNAP benefits, Ms. Grant could not even afford to buy a chew toy for her service dog.[73]

By now, DOH's failures are so enduring that they are *again* harming the named plaintiffs.[74] For instance, Zoya Jenkins—the same Zoya Jenkins who was skipping meals in late 2022 so that her children would have enough food—again suffered delays in late

---

[67] Declaration of Roger Gaston at ¶¶ 1–6.

[68] *Id.* at ¶¶ 9, 15, 18, 21, and 26.

[69] *Id.* at ¶¶ 16, 27.

[70] *Id.* at ¶ 29.

[71] Declaration of Rachel Grant at ¶¶ 1–3.

[72] *Id.* at ¶¶ 5–9.

[73] *Id.* at ¶ 10.

[74] *See, e.g.*, Declaration of Rose Carney.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION

2023 as she waited four months for DOH to correctly process her recertification.[75] She was unable to pay her phone bill on three separate occasions, accruing an additional late fee of $17 each time.[76] To get through this period, her family relied on the heavily processed food available at the food bank, and Ms. Jenkins' health suffered.[77]

Rose Carney, another named plaintiff, likewise faced long delays again when she sought to recertify in 2023.[78] After filing her recertification well before the deadline, she went from November 2023 through January 2024 without any update on her case.[79] During that time, she again relied on foodbanks, including a foodbank she herself is a volunteer at.[80] When DOH finally approved Ms. Carney's recertification, the agency budgeted her incorrectly and she did not receive the correct benefit amount until March 2024.[81]

In late 2023—as the backlog of overdue SNAP cases again grew—DOH stopped conducting the interview part of the SNAP eligibility determination process that is required by 7 C.F.R. § 273.2(e), and did so contrary to FNS's direction.[82] On January 30, 2024, FNS

---

[75] Declaration of Zoya Jenkins at ¶¶ 6–14.

[76] *Id.* at ¶ 15.

[77] *Id.* at ¶ 16.

[78] Declaration of Rose Carney at ¶¶ 5–13.

[79] *Id.* at ¶¶ 5–12.

[80] *Id.* at ¶ 10.

[81] *Id.* at ¶¶ 12–13.

[82] Claire Stremple, *Alaska's Federal Food Stamp Funding at Risk, USDA Letter Warns*, Alaska Beacon (Feb. 1, 2024, 9:08PM), https://alaskabeacon.com/2024/02/01/alaskas-federal-food-stamp-funding-at-risk-usda-letter-warns; Renewed Feronti Decl. at Exhibit 5.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 18 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 18 of 34

notified DOH that it needed to resume the interviews or face fiscal penalties per 7 C.F.R. § 276.4.[83] DOH cannot credibly claim to have fixed its delays while flouting federal law and putting the state's SNAP funding at risk. These actions suggest an agency grasping at straws to evade scrutiny, not one committed to sustainably remedying endemic delays.

## IV. ARGUMENT

A party seeking preliminary injunctive relief must show that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest.[84] Where, as here, the government is a party to the action, the latter two factors merge.[85]

The Ninth Circuit assesses pleas for preliminary injunctive relief on a sliding scale.[86] If a plaintiff shows that there are "serious questions" on the merits, which is a lesser showing than a "likelihood of success," a preliminary injunction may still be appropriate if the balance of hardships tips sharply in the plaintiff's favor.[87] "Serious questions need not promise a certainty of success, nor even a probability of success, but must involve a fair chance of success on the merits."[88]

---

[83] Renewed Feronti Decl. at ¶ 14 (citing Exhibit 7).

[84] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

[85] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

[86] *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011).

[87] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014).

[88] *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (quotations omitted).

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 19 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 19 of 34

### i. The plaintiffs are likely to succeed on the issues for which they seek a preliminary injunction.

#### 1. The plaintiffs are likely to succeed in showing that DOH's failure to timely process SNAP applications violates the SNAP Act.

Data from FNS and DOH shows that DOH has struggled to process applications for SNAP benefits within legally mandated time frames for years, with a greater degree of untimely processing in the recent period aligning with the timing of this lawsuit. The harm from DOH's untimely SNAP processing is borne out in the delays suffered by the named plaintiffs,[89] and the experiences of individual class members after this lawsuit was filed, including those offering affidavits in support of this Motion.[90]

While thousands of Alaskans apply for SNAP benefits every month, DOH's data shows that it failed to timely process SNAP applications repeatedly over the past decade.[91] Recently, in the first six months of SFY 2024, DOH timely processed 46.2% of expedited applications, 25.7% of initial applications, and 21.2% of recertifications.[92] This means that, from July through December 2023, DOH violated the processing deadlines for over half of the expedited applications it received, around 75% of the initial applications it received, and nearly 80% of recertifications.[93] Courts have enjoined similar violations of the SNAP

---

[89] *See* ECF Nos. 7-1, 7-2, 7-3, 7-4; 7-5, 7-6, 7-7, 7-8, 7-9, 7-10.

[90] *See, e.g.*, Declaration of Rose Carney; Declaration of Rachel Grant; Declaration of Roger Gaston; Declaration of Steve Younker; Declaration of Zoya Jenkins.

[91] Renewed Feronti Decl. at ¶ 11 (citing Exhibits 4–5).

[92] *Id.* at ¶ 12.

[93] *Id.*; *see also* 7 U.S.C. § 2020(e)(3); 7 C.F.R. § 273.2(g)(1); § 2020(e)(9); 7 C.F.R. § 273.2(i)(3)(i); 7 C.F.R. § 273.14(d).

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 20 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 20 of 34

Act, including by ordering agencies to **fully** satisfy federal deadlines to provide benefits. For instance, in *Briggs v. Bremby*, the Second Circuit affirmed a preliminary injunction requiring a state to timely process SNAP applications.[94] It held that SNAP Act timeliness standards impose an affirmative obligation to "complete certification and provide an allotment of food stamp to all 'eligible households' within [statutorily prescribed time limits]."[95] Other federal courts share this strict understanding of SNAP Act mandates.[96]

Similarly, in *Booth v. McManaman*, a federal court issued a preliminary injunction directing Hawaii to timely issue SNAP benefits to eligible households.[97] The court rejected

---

[94] 792 F.3d 239, 247 (2d Cir. 2015).

[95] *Id.* at 246.

[96] *See, e.g.*, *Withrow*, 942 F.2d at 1389 ("Plaintiffs are entitled under [the SNAP Act] to [full] compliance, not substantial compliance."); *Haskins v. Stanton*, 794 F.2d 1273, 1277 (7th Cir. 1986) (noting that the SNAP Act "literally requires strict compliance with its provisions" and, aside from "a few inadvertent errors [that are] inevitable," the act should be complied with "as strictly as is humanly possible"); *Garnett v. Zeilinger*, 313 F. Supp. 3d 147, 157 (D.D.C. 2018) ("[T]he requirement for absolute compliance with the timelines for processing applications flows directly from the statutory text itself."), *vacated*, 485 F. Supp. 3d 206 (D.D.C. 2020); *Reynolds v. Giuliani*, 35 F. Supp. 2d 331, 345–47 (S.D.N.Y.) (granting preliminary injunction and ordering defendants "to process all applications for expedited food stamps . . . within the time frames required by law" following a finding that "applicants with emergency needs are not being provided with expedited food stamps within the seven day period imposed by federal law"), *modified in part*, 43 F. Supp. 2d 492 (S.D.N.Y. 1999); ; *Robertson*, 766 F. Supp. at 471–79 (noting that "the value of the timely operation of [SNAP] cannot be overestimated," finding "wide spread and serious violations of all timely processing standards for applicants," and requiring state to adhere to a standard of 0% of applications pending longer than mandatory processing timelines for both regular and expedited SNAP benefit applications, with an acceptable error rate not exceeding 3%).

[97] 830 F. Supp. 2d 1037, 1046 (D. Haw. 2011).

the state's argument that it was already addressing the issues, explaining that:

> This Court cannot simply defer to the wait-and-see approach advocated by the Defendant, particularly in light of the seriousness of the harm incurred by Plaintiffs as a result of DHS' delay. Given DHS' undisputed ongoing failure to process SNAP applications within the time frames set forth under federal law, the Court concludes that Plaintiffs have a strong likelihood of success on the merits of this action. Indeed, numerous other courts have ordered state and county defendants to comply with the timely processing requirements for food stamp applications.[98]

The same is true here. The plaintiffs have shown that DOH has systemically violated federal law by failing to provide SNAP benefits to plaintiffs and class members within legally mandated processing timeframes and that those violations are ongoing for members of the Untimely Eligibility Class. For these reasons, there is a great likelihood that the plaintiffs will prevail on this issue.

### 2. The plaintiffs are also likely to succeed in showing that DOH fails to provide required notice and fair hearing opportunities.

DOH also fails to provide notice of SNAP application processing delays. By federal regulation, the SNAP-issuing agency is required to provide a notice when it fails to timely process applications that informs the SNAP household of the delay and provides the opportunity to seek an administrative fair hearing.[99] By federal law, then, DOH must provide the opportunity for a fair hearing when its actions affect a household's participation in SNAP or the SNAP household is aggrieved of the agency's actions.[100]

---

[98] *Id.* at 1043.

[99] 7 C.F.R. § 273.10(g)(1)(iii).

[100] 7 U.S.C. § 2020(e)(10); 7 C.F.R. § 273.15(a).

Yet DOH does not inform class members about delays or provide the opportunity for a fair hearing. When the named plaintiffs faced delays, none received notice about the delays or their right to a hearing to challenge the delays.[101] DOH admits that it does not *ever* send a notice of delayed processing when the processing of an initial SNAP application is delayed;[102] this is the agency's de facto policy. So long as DOH continues to forgo notifying applicants of processing delays, this problem will persist.[103]

The failure to issue a required notice and provide administrative hearing rights violates the SNAP Act. It also violates due process, which requires that a public assistance recipient be afforded timely notice of a determination affecting participation in a program and an opportunity to meaningfully contest the agency's decision.[104]

The plaintiffs certainly possess a property interest in SNAP benefits. *Goldberg v. Kelly* recognized that individuals have a protected property interest in receipt of their public benefits and must be afforded procedural due process protections as guaranteed by the Fourteenth Amendment to the Constitution.[105] There, the Supreme Court reasoned that

---

[101] *See* ECF Nos. 7-1, 7-2, 7-3, 7-4, 7-5, 7-6, 7-7, 7-8, 7-9, 7-10;; *see, e.g.*, ECF No. 7-8 at ¶¶ 12–15 (recertification application was not timely processed by DOH, and applicant never received notification from DOH about the same); ECF No. 7-9 at ¶¶ 5–8 (two different applications were not timely processed, and applicant never received notice from about these delays).

[102] ECF No. 27 at ¶ 115.

[103] *See, e.g.*, Declaration of Rose Carney at ¶¶ 5–6; Declaration of Rachel Grant at ¶¶ 8–10; Declaration of Steve Younker at ¶ 11; Declaration of Zoya Jenkins at ¶¶ 7–8.

[104] *Goldberg v. Kelly*, 397 U.S. 254, 267–68 (1970).

[105] *Id.*

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 23 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 23 of 34

public benefits are "a matter of statutory entitlement," which makes the interest in receipt of such benefits a right rather than a privilege.[106] In a later case, the Court expressly noted that SNAP benefits are a form of property protected by due process.[107]

Meanwhile, the Ninth Circuit recognizes that both recipients of public benefits and applicants for public benefits may possess a property interest sufficient to give rise to due process.[108] Other circuits have held the same,[109] especially when, like here, an applicant will be entitled to benefits by operation of law as opposed to an official's discretion.[110]

Because SNAP benefits implicate a protected property interest, "the Constitution requires [at a minimum] notice and some opportunity to be heard."[111] Yet DOH fails to provide **any** notice of its delayed processing of initial and recertification applications or the

---

[106] *Id.* at 262.

[107] *Atkins v. Parker*, 472 U.S. 115, 128 (1985).

[108] *See, e.g.*, *Ressler v. Pierce*, 692 F.2d 1212, 1215 (9th Cir. 1982) (finding that applicants have a federally protected property interest in receiving benefits); *Griffeth v. Detrich*, 603 F.2d 118, 121–22 (9th Cir. 1979).

[109] *See, e.g.*, *Kapps v. Wing*, 404 F.3d 105, 115 (2d Cir. 2005); *Hamby v. Neel*, 368 F.3d 549, 559 (6th Cir. 2004); *Mallette v. Arlington Cnty. Emps.' Supp. Ret. Sys. II*, 91 F.3d 630, 535 (4th Cir. 1996) ("The Supreme Court has explained that a person may hold a property interest in a benefit even before it has been determined that she is, in fact, eligible for the benefit."); *Daniels v. Woodbury Cnty.*, 742 F.2d 1128, 1132–33 (8th Cir. 1984); *White v. Roughton*, 530 F.2d 750, 755 (7th Cir. 1976).

[110] *Nozzi v. Hous. Auth.*, 806 F.3d 1178, 1191 (9th Cir. 2015) ("Further, as we have previously held, plaintiffs have a protected property right in public benefits when, as here, a statute authorizes those benefits and the implementing regulations greatly restrict the discretion of the people who administer those benefits.") (quotations omitted)); *Daniels*, 742 F.2d at 1132.

[111] *Unthaksinkun v. Porter*, 2011 WL 4502050, at *18 (W.D. Wash. Sept. 28, 2011) (quoting *Mallette*, 91 F.3d at 640).

right to a fair hearing to challenge such delays. It is well-established that such an "outright failure[] to even attempt to provide notice violate[s] due process."[112] Without adequate notice explaining the delay, SNAP applicants and recipients cannot understand the specific reason for the deprivation of benefits and cannot effectively exercise their appeal rights. In these circumstances, "the right to be heard has little reality or worth."[113]

Finally, the plaintiffs also seek relief under the Due Process Clause of the Alaska Constitution.[114] Not only does Alaska's jurisprudence have a history of vindicating due process rights for public benefit recipients,[115] but the Alaska Constitution's guarantee of due process is also more protective than that of the federal constitution.[116] This contributes to the plaintiffs' likely success on their due process notice claim or, at the least, their raising of serious questions about the same.

### ii. The plaintiffs will suffer irreparable harm absent a preliminary injunction.

DOH's delayed processing of SNAP applications and recertifications deprives class members of the food they need to subsist. This is the essence of "irreparable harm." DOH's

---

[112] *Wright v. Beck*, 981 F.3d 719, 728 (9th Cir. 2020); *see also Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988) ("Failure to give notice violates the most rudimentary demands of due process of law.") (quotations omitted)).

[113] *Wright*, 981 F.3d at 727 (quotations and brackets omitted).

[114] ECF No. 1-1 at ¶¶ 308–10.

[115] *See, e.g.*, *Allen v. Dep't of Health & Soc. Servs., Div. of Pub. Assistance*, 203 P.3d 1155, 1166–67 (Alaska 2009); *Baker v. State*, 191 P.3d 1005, 1010 (Alaska 2008).

[116] *Balough v. Fairbanks N. Star Borough*, 995 P.2d 245, 263 n.4 (Alaska 2000) ("Alaska's due process clauses confer broader protection than do their federal counterparts.") (alteration omitted)).

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 25 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 25 of 34

failure to issue critical food benefits on time puts the safety of indigent people at risk, and it cannot be remediated later by money, bond, or upon the eventual issuance of long overdue benefits. Indeed, food insecurity is the very kind of "brutal need" that causes long-term emotional and physical effects which cannot be later remedied.[117]

Courts have repeatedly found that the loss of SNAP benefits, which deprives many low-income households of their sole source of food, is irreparable harm for purposes of issuing preliminary relief.[118] As another district court recently put it: "Going without food is an irreparable harm. This sort of deprivation of nutrition, and the psychological and physical distress attending that deprivation, are quite likely to impose lingering, if not irreversible effects."[119] The Ninth Circuit has also found irreparable harm in cases about public benefits.[120] This includes a recognition that, with the loss of even a small portion of

---

[117] *Goldberg*, 397 U.S. 254 at 260–65.

[118] *See, e.g., Booth*, 830 F. Supp. 2d at 1044 ("Since the denial of a preliminary injunction may deprive many low-income households of their sole source of food, the Court concludes that the irreparable harm requirement is easily satisfied here."); *Haskins*, 794 F.2d 1276–77 (holding that "the deprivation of food [resulting from the denial of food stamps] is extremely serious and is quite likely to impose lingering, if not irreversible, hardships upon recipients") (quotations omitted)); *Garnett*, 313 F. Supp. 3d at 157 (D.D.C.) ("The harms described in these [plaintiffs' and declarants'] affidavits—forgoing food or other necessities—are clearly irreparable in nature."); *Briggs v. Bremby*, 2012 U.S. Dist. LEXIS 172018, at **56–57 (D. Conn. Dec. 4, 2012) ("The denial of essential public benefits like food stamps which help provide for basic nutrition and sustenance undeniably constitute irreparable harm.").

[119] *Dist. of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 43 (D.D.C. 2020).

[120] *See, e.g.*, *Kildare v. Saenz*, 325 F.3d 1078, 1083 (9th Cir. 2003) (citation omitted) (holding that economic hardship resulting from the denial of disability benefits constitutes irreparable harm because "back payments cannot erase either the experience or the entire effect of several months without food, shelter or other necessities") (quotations omitted)).

subsistence benefits to which poor people might be entitled, irreparable injury arises and justifies preliminary relief.[121] "When a family is living at subsistence level, the subtraction of any benefit can make a significant difference to its budget and to its ability to survive."[122]

Such severe harms are especially pronounced for households eligible for expedited SNAP benefits. As one federal court stated:

> For those households eligible for expedited issuance . . . thirty days without aid could mean hunger, malnutrition, or even starvation, as both houses of Congress recognized in legislative history declaring that households qualifying for expedited issuance need "immediate" help to buy food.[123]

The hardships of class members solidify this. Plaintiffs Ellanna, Kamkoff, Andrew, Birch, Conover, Ferguson, and Jenkins could not buy enough food for their children.[124] Plaintiff Carney, who had a quintuple bypass in 2015 and has other health issues, faced hardship in meeting her nutritional needs and went three months without a required diet.[125] Declarant Younker's diabetes degraded during his time without SNAP, and he lost 20 pounds in six months.[126] Others had to pick between buying food and other necessities like heat and water. To afford food, Plaintiff Carney gave up necessities like gas, toilet paper, and

---

[121] *Beno v. Shalala*, 30 F.3d 1057, 1063 n.10 (9th Cir. 1994).

[122] *Paxton v. Sec'y of Health and Hum. Servs.,* 856 F.2d 1352, 1354 (9th Cir. 1988).

[123] *Harley v. Lyng*, 653 F. Supp. 266, 273 (E.D. Pa. 1986).

[124] ECF No. 7-1 at ¶ 35; ECF No. 7-2 at ¶¶ 17–19; ECF No. 7-3 at ¶¶ 13–15; ECF No. 7-4 at ¶¶ 12–14; ECF No. 7-6 at ¶¶ 22–25; ECF No. 7-8 at ¶ 20; ECF No. 7-10 at ¶¶ 35–39.

[125] ECF No. 7-7 at ¶ 17; Declaration of Rose Carney at ¶ 11.

[126] Declaration of Steve Younker at ¶ 15.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 27 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 27 of 34

detergent.[127] Plaintiff Fender and declarant Gaston had to decide between paying for food or paying for heating fuel in winter.[128] Plaintiffs Andrew, Birch, and Conover had to skip meals and starve.[129] DOH cannot remedy such harms after the fact via a monetary payment or late issuance of outstanding benefits; no one eats retroactively. Instead, injunctive relief is needed. Only an injunction can ensure that class members do not face the same delays each and every time they must recertify, as Ms. Carney and Ms. Jenkins did so recently.

The same conclusion follows the denial of notice and hearing rights. Even if DOH later provides a notice and hearing, it cannot change the deprivation experienced by the applicant who waits, hungry, without a chance to remedy the delay causing that hunger.[130]

Further, as a *per se* matter, a loss of constitutional rights "unquestionably constitutes irreparable harm."[131] Indeed, when a plaintiff is likely to prevail on a constitutional issue, like the due process rights at issue here, that establishes irreparable harm for purposes of preliminary relief.[132] Thus, insofar as DOH has denied SNAP applicants and recipients notice and an opportunity to be heard, that is, itself, irreparable harm.

---

[127] ECF No. 7-7 at ¶ 16.

[128] ECF No. 7-9 at ¶ 9; Declaration of Roger Gaston at ¶ 16.

[129] *See* ECF No. 7-3 at ¶ 14; ECF No. 7-4 at ¶ 14; ECF No. 7-6 at ¶ 24.

[130] *Willis v. Lascaris*, 499 F. Supp. 749, 759 (N.D.N.Y 1980) ("[P]laintiffs will suffer irreparable harm if they are not provided with a meaningful notice which explains how and why their food stamp allotment" will be impacted.).

[131] *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Cate v. Oldham*, 707 F.2d 1176, 1188–89 (11th Cir. 1983).

[132] *Planned Parenthood Ariz., Inc. v. Humble*, 753 F.3d 905, 911 (9th Cir. 2014).

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 28 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 28 of 34

iii.   **The balance of equities tip in the plaintiffs' favor and a preliminary injunction is in the public interest.**

Each day that class members lack SNAP benefits is another risk to their well-being.

Conversely, the requested relief does not impose additional administrative requirements on

DOH beyond those already mandated by law. As the Seventh Circuit instructs:

> Because the defendants are required to comply with the [SNAP] Act under the terms of the Act, we do not see how enforcing compliance imposes any burden on them. The Act itself imposes the burden; this injunction merely seeks to prevent the defendants from shirking their responsibilities under it. We also fail to see how enforcing a statute designed to promote the public welfare disserves the public.[133]

The harms that class members suffer without their SNAP benefits greatly outweigh any

purported injury to DOH as a result of this Court ordering the agency to follow the law and

fix its flawed administration of SNAP. The Ninth Circuit has held similarly that the public

interest favors enjoining the unlawful deprivation of basic subsistence benefits.[134] Further,

while curing hunger itself promotes the public interest, the SNAP Act was also intended to

strengthen this country's economy, increase agricultural abundance, and better position

Americans for employment.[135] DOH's failures frustrate all of these public interests as well.

---

[133] *Haskins*, 794 F.2d at 1277.

[134] *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983) (concluding that, in the context of an unlawful deprivation of Social Security benefit, the public interest prong favored granting injunction and explaining that "[o]ur society as a whole suffers when we neglect the poor, the hungry, the disabled, or when we deprive them of their rights or privileges"); *see also Booth*, 830 F. Supp. 2d at 1045 ("[O]rdering Defendant to comply with federally mandated timeliness requirements would serve to advance social welfare by ensuring that eligible low-income households receive needed assistance to provide food for themselves and their families.").

[135] 7 U.S.C. § 2011.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 29 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 29 of 34

"The public interest is . . . best served when the courts uphold the constitutional rights of individuals who have been aggrieved by government action."[136] "It is clear that it would not be equitable or in the public's interest to allow the state to violate the requirements of federal law, especially when there are no adequate remedies available."[137] When DOH sought a stay in November 2023, it rested on the premise that FNS has primary jurisdiction over SNAP operations and stated that it was seeking to complete a corrective action process with FNS prior to resuming litigation.[138] DOH stressed the primacy of FNS's role in SNAP oversight and its expertise.[139] Yet, less than 3 weeks after filing that motion and of its own volition, DOH suspended interviews for SNAP eligibility determinations, against the express direction of FNS and outside of the terms of the Corrective Action Plan undertaken between DOH and FNS; this radical and unauthorized change in operations resulted in FNS issuing an advance notification letter to DOH in January 2024.[140] The letter is an indication of potentially escalating penalties under the SNAP regulations.[141] Issuance

---

[136] *Abdur-Rahman v. Napolitano*, 814 F. Supp. 2d 1087, 1097 (W.D. Wash. 2010); *see also Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("[B]y establishing a likelihood that Defendants' policy violates the U.S. Constitution, Plaintiffs have also established that both the public interest and the balance of the equities favor a preliminary injunction.").

[137] *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (brackets and ellipses omitted).

[138] ECF No. 21 at 2–3.

[139] *Id.*

[140] Renewed Feronti Decl. at ¶ 14 (citing Exhibit 7).

[141] *See* 7 C.F.R. § 276.4.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 30 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 30 of 34

of an injunction to curb DOH's illegal conduct is surely in the public interest where DOH's do-it-yourself fixes to SNAP processing failures have run afoul of its federal oversight agency, too. Court intervention is a necessity.

### iv. The Court should waive the bond requirement in Rule 65(c).

Plaintiffs request that the Court waive Fed. R. Civ. P. 65(c)'s bond requirement, given that the named plaintiffs are indigent and have brought a case for the public interest. Courts have broad discretion in determining the security required and may dispense with the requirement entirely.[142] Also, several circuits, including the Ninth Circuit, and district courts have approved of dispensing with security for indigent plaintiffs.[143] Here, Plaintiffs are surviving at the edge of poverty. Waiving the bond poses no risk to Defendant, as the Plaintiffs ask only that the Court order the Defendant to comply with federal law on timely application processing, timely issuance of benefits, and the provision of adequate notice.

### V. CONCLUSION

If there is any silver lining to this crisis, it is that this hardship showcases the courage and relentless grit of Alaskans. Members of the plaintiff classes have starved in their own homes, fed toddlers with $5.01 in the bank, sacrificed heat in the dead of winter, and

---

[142] *See V.L. v. Wagner*, 669 F.Supp.2d 1106, 1123 (9th Cir 2009); *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005); *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999); *Marsh USA, Inc. v. Schuhriemen*, 183 F. Supp. 3d 529, 538 (S.D.N.Y. 2016).

[143] *See V.L.*, 669 F.Supp.2d at 1123; *Pharm. Soc. of N.Y., Inc. v. Dep't of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995); *Walker v. Pierce*, 665 F.Supp. 831, 844 (N.D. Cal. 1987); *Washington v. Fla. Agency for Persons with Disabilities*, 658 F. Supp. 2d 1332, 1339 (N.D. Fla. 2009) (collecting cases).

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 31 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 31 of 34

skipped meals altogether so that their kids could eat. These drastic harms should not be normalized as DOH meanders through various attempts at correcting the SNAP processing chaos and as the figurative pendulum swings back and forth, into and out of backlog for another year or longer. In January 2023, DOH was failing to satisfy its legal mandate to provide timely SNAP benefits to hungry Alaskans. In January 2024, DOH was still failing hungry Alaskans. This should not be the plaintiffs' and class members' burden to bear.

The plaintiffs do not seek a novel or untested solution. Courts around the country routinely grant injunctive relief in cases about delays in, or the improper administration of, SNAP and other public benefits.[144] And courts around the country have routinely granted preliminary relief in similar cases about inadequate notice given to low-income recipients of public assistance.[145] Here, the plaintiffs respectfully ask this Court to do the same.

---

[144] *See, e.g.*, *Robertson v. Jackson*, 972 F.2d 529, 536 (4th Cir. 1992) (affirming order enjoining defendant to timely provide food stamps to eligible households); *Haskins v. Stanton*, 794 F.2d 1273, 1276–77 (7th Cir. 1986) (affirming order granting preliminary relief to redress violations of Food Stamp Act that prevent applicants from obtaining timely benefits); *Garnett*, 313 F. Supp. 3d at 166 (granting preliminary injunction regarding timely processing of SNAP recertification applications and requiring monitoring regarding compliance with SNAP timeliness compliance); *Briggs v. Bremby*, 2012 U.S. Dist. LEXIS 172018, at *61 (D. Conn. Dec. 4, 2012) (preliminarily enjoining defendant from failing to provide food stamps on a timely basis), *aff'd*, 792 F.3d 239 (2d Cir. 2015); *Booth*, 830 F. Supp. 2d at 1046 ("Based upon consideration of all the *Winter* factors set forth above, the Court concludes that Plaintiffs have made a clear showing that they are entitled to preliminary injunctive relief requiring DHS to process food stamp applications and issue benefits to eligible households within federally mandated time frames.");

[145] *See, e.g.*, *Banks v. Trainor*, 525 F.2d 837, 840 (7th Cir. 1975) (affirming preliminary injunction prohibiting reductions of SNAP benefit until adequate notice was provided); *M.K.B. v. Eggleston*, 445 F. Supp. 2d 400, 439–40 (S.D.N.Y. 2006) (supplementing preliminary injunction in case about defendant providing inadequate notice of eligibility determinations to noncitizens eligible for public assistance, Medicaid, or food stamps).

Dated: May 8, 2024               Attorneys for Plaintiffs

*/s/* Nicholas Feronti
Goriune Dudukgian, AK Bar No. 0506051

Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel.: (617) 406-6000
Fax: (617) 406-6100
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel.: (619) 699-2700
Fax: (619) 699-2701
Email: christopher.young@us.dlapiper.com

*Micah A. Chavin (Cal. Bar No. 313634)
**DLA PIPER LLP (US)**

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 33 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 33 of 34

1415 L Street, Suite 270
Sacramento, CA 95814-3976
Tel.: (916) 930-3200
Fax: (916) 930-3201
Email: micah.chavin@us.dlapiper.com

*Bethany M. Bunge (Tex. Bar No. 24120730)
**DLA Piper LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
Tel.: (713) 425-8400
Fax: (713) 425-8401
Email: bethany.bunge@us.dlapiper.com

 *Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

*appearing pro hac vice*

Attorneys for Plaintiffs

MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION
*Della Kamkoff et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 34 of 34

Case 3:23-cv-00044-SLG   Document 35-1   Filed 05/08/24   Page 34 of 34