# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

DELLA KAMKOFF, *et al.*,

                Plaintiffs,

      v.

HEIDI HEDBERG, in her official
capacity as Commissioner of the
Alaska Department of Health,

                Defendant.

Case No. 3:23-cv-00044-SLG

## <u>ORDER RE MOTION FOR PRELIMINARY INJUNCTION</u>

Before the Court at Docket 35 is Plaintiffs' Renewed Motion for Preliminary Injunction. Defendant responded in opposition at Docket 46, to which Plaintiffs replied at Docket 52.[1] Oral argument was held on July 18, 2024.[2] After oral argument, Plaintiffs filed a Motion to Supplement Renewed Preliminary Injunction Filing at Docket 61. Defendant responded in partial opposition at Docket 62, to which Plaintiffs replied at Docket 64. Plaintiffs then filed a Second Motion to Supplement Renewed Preliminary Injunction Filing at Docket 67. Defendant responded in opposition at Docket 68, to which Plaintiffs replied at Docket 69. And

---

[1] Plaintiffs also filed a Notice of Supplemental Authority in Support of Renewed Motion for Preliminary Injunction at Docket 60, to which Defendant responded at Docket 63.

[2] Docket 59.

Plaintiffs recently filed a Third Motion to Supplement at Docket 71, with Defendant's response at Docket 72 and Plaintiffs' reply at Docket 73. [3]

## BACKGROUND

This case is about the State of Alaska's ("State") administration of the federally funded Supplemental Nutrition Assistance Program ("SNAP" or "Program"), which was established by the Food Stamp Act of 1964 ("SNAP Act").[4] The Program, codified at 7 U.S.C. §§ 2011-2036d, is meant "to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households."[5] The Program is overseen by the Food and Nutrition Service ("FNS") within the U.S. Department of Agriculture ("USDA").[6] In Alaska, the Department of Health ("DOH"), Division of Public Assistance ("DPA"), administers the Program.[7] DOH, through the DPA, must administer the Program

---

[3] On December 23, 2024, at Docket 75, Plaintiffs filed a notice suggesting the death of named plaintiff Della Kamkoff pursuant to Rule 25(a). All parties and potentially interested non-parties have been served with appropriate notice. Plaintiffs state they intend to file a motion to substitute Davis Kamkoff, Della Kamkoff's husband, as a successor named plaintiff and class representative for Della Kamkoff. Plaintiffs indicate that Defendant will not oppose the motion to substitute when filed.

[4] *See* Docket 1-1 at ¶¶ 1-4, 32-37; Food Stamp Act of 1964, Pub. L. No. 88-525, § 4, 78 Stat. 703, 704 (1964). Originally called the Food Stamp Program, the program was renamed in 2008 to the Supplemental Nutrition Assistance Program. *See* Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, §§ 4001-02, 122 Stat. 1651 (2008).

[5] 7 U.S.C. § 2011.

[6] *See* 7 C.F.R. §§ 271.2, 271.3(a).

[7] *See* Alaska Department of Health, Division of Public Assistance, *Supplemental Nutrition Assistance Program (SNAP)*, https://health.alaska.gov/dpa/Pages/SNAP/default.aspx (last

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 2 of 32

in compliance with the SNAP Act and its implementing regulations,[8] as well as in accordance with its own FNS-approved state operation plan.[9] Households must meet certain eligibility requirements and apply to participate in the Program.[10] DOH is responsible for processing applications and certifying applicants' eligibility.[11] The regulations provide for numerous procedures related to SNAP applications, including processing timelines, notice provisions, and language access requirements, among other things.[12] If a State is not in compliance with federal requirements, then the Secretary of the USDA will give the State a period of time to correct the failures, but if the failures continue, the federal government may seek injunctive relief requiring compliance.[13] Courts have also recognized a private right of action pursuant to 42 U.S.C. § 1983.[14]

---

visited Nov. 19, 2024).

[8] 7 U.S.C. § 2020; 7 C.F.R. § 271.1 *et seq.*; *see also Withrow v. Concannon*, 942 F.2d 1385, 1386 (9th Cir. 1991) ("A state's participation [in SNAP] is optional, but participating states must comply with federal requirements.").

[9] 7 U.S.C. § 2020(d); 7 C.F.R. § 272.2.

[10] *See* 7 U.S.C. § 2014.

[11] 7 U.S.C. § 2020(a).

[12] *See, e.g.*, 7 C.F.R. § 273.2(a)(2), (e), (g), (h); 7 C.F.R. § 272.4(b); 7 C.F.R. § 273.10(g); 7 C.F.R. § 273.14(b), (d).

[13] 7 U.S.C. § 2020(g).

[14] *See Briggs v. Bremby*, 792 F.3d 239, 245-46 (2d Cir. 2015); *Gonzalez v. Pingree*, 821 F.2d 1526, 1531 (11th Cir. 1987); *Victorian v. Miller*, 813 F.2d 718, 724 (5th Cir. 1987); *Barry v. Lyon*, 834 F.3d 706, 717 (6th Cir. 2016); *Garnett v. Zeilinger*, 323 F. Supp. 3d 58, 71-73 (D.D.C. 2018).

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 3 of 32

Case 3:23-cv-00044-SLG    Document 77    Filed 12/31/24    Page 3 of 32

Plaintiffs bring this suit on behalf of themselves and two classes: (1) an "Untimely Eligibility Class," "comprised of all Alaska residents who since January 20, 2021 have applied, are applying, or will apply for SNAP benefits through an initial application or an application for recertification and did or will not receive an eligibility determination within the legally required timeframes"; and (2) a "Right to File Class," "comprised of all Alaska residents who since January 20, 2021, were or will be denied the right to file a SNAP application the first time they contact the agency."[15]

Plaintiffs allege six causes of action, the first five of which allege violations of federal law: (1) failure to timely process SNAP initial and recertification applications; (2) failure to ensure that Alaskans can submit SNAP applications on the first day they contact the agency; (3) "failure to provide interpretation services, bilingual personnel, or translated written certification materials necessary for SNAP participation"; (4) "failure to provide written notice and opportunity to request a fair hearing to SNAP applicants whose eligibility was not determined within legally mandated timeframes"; and (5) violation of the Due Process Clause of the Fourteenth Amendment. [16] The sixth cause of action alleges a violation of the Due

---

[15] Docket 1-1 at ¶ 19. Defendant stipulated to certification of these classes. *See* Docket 13; Docket 15. The Court denied class certification of a third class to be comprised of Alaska residents with limited English proficiency who did or will not receive application materials or vital eligibility documents in their primary language and/or access to oral interpretation services. Docket 38.

[16] Docket 1-1 at ¶¶ 297-307.

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 4 of 32

Process Clause of Article I, section 7, of the Alaska Constitution.[17]  Plaintiffs seek injunctive and declaratory relief against Defendant.[18]

Plaintiffs originally filed their complaint and a motion for preliminary injunction in the Alaska Superior Court in January 2023.[19]  Defendant removed the case to federal court in March 2023.[20]  The Court denied Plaintiffs' motion for preliminary injunction that had originally been filed in state court without prejudice to renewal.[21]  Plaintiffs' Renewed Motion for Preliminary Injunction is now before the Court.

The Renewed Motion for Preliminary Injunction requests that the Court issue three directives to DOH:

1) Promptly process SNAP applications and recertifications as is required by 7 U.S.C. § 2020(e)(3), (4), and (9), including those cases now eligible for expedited processing and now pending beyond legally mandated-processing timeframes, during the pendency of the litigation and on an ongoing basis;

---

[17] Docket 1-1 at ¶¶ 308-310.

[18] Docket 1-1 at 42-46.

[19] Docket 1-1; Docket 7-22.

[20] Docket 1.

[21] Docket 24 at 14.

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 5 of 32

2) Provide written notice and an opportunity to request a fair hearing to those SNAP applicants who applications are not processed within the mandated timeframes; and

3) Provide a mechanism by which Plaintiffs' counsel may bring to the attention of Defendant those instances in which an application may not have been processed in accordance with applicable federal statutes and regulations and require Defendant to investigate the processing of such applications and advise Plaintiffs' counsel of the result of said investigation within three business days, along with the identity and contact information of the employee responsible for resolving the request for assistance.[22]

## JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action with certain claims arising under federal law: 42 U.S.C. § 1983 and the Fourteenth Amendment of the Constitution. The Court may exercise supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367.

---

[22] Docket 35-8 at 2.

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 6 of 32

Case 3:23-cv-00044-SLG    Document 77    Filed 12/31/24    Page 6 of 32

## LEGAL STANDARD

The Supreme Court in *Winter v. Natural Resources Defense Council, Inc.* characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[23] Entitlement to a preliminary injunction requires plaintiffs to establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest.[24]  When the government is a party, the last two requirements merge.[25]

Alternatively, as the Ninth Circuit confirmed post-*Winter*, a sliding-scale variant of the preliminary injunction standard is available to a plaintiff that can only show that there are "serious questions" going to the merits instead of the more stringent showing of likelihood of success.[26]  Serious questions are those that are "substantial, difficult, and doubtful" so as to "make them a fair ground for litigation" and a "more deliberative investigation."[27]  In the presence of these serious

---

[23] 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

[24] *Winter*, 555 U.S. at 20.

[25] *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).

[26] *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

[27] *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)).

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 7 of 32

Case 3:23-cv-00044-SLG    Document 77    Filed 12/31/24    Page 7 of 32

questions, an injunction may be issued if the balance of hardships tips sharply in the plaintiff's favor and the plaintiff can also satisfy the two remaining *Winter* factors.[28]

At issue here is a request for a mandatory injunction. "A mandatory injunction orders a responsible party to take action," as opposed to a "[a] prohibitory injunction [which] prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits."[29] "[M]andatory inunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages."[30]

Injunctive relief is an equitable remedy, and "[t]he essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case."[31]

---

[28] *All. for the Wild Rockies*, 632 F.3d at 1134-35.

[29] *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 -79 (9th Cir. 2009) (internal quotations and alterations omitted).

[30] *Id.* at 879 (quoting *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1980)).

[31] *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009) ( quoting *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987)).

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 8 of 32
Case 3:23-cv-00044-SLG     Document 77     Filed 12/31/24     Page 8 of 32

**DISCUSSION**

## I. Motion to Supplement

The Court first addresses Plaintiffs' three motions to supplement their renewed preliminary injunction motion.[32] Through these motions, Plaintiffs seek permission to file updated data about DOH's performance in timely processing SNAP applications and recertifications "that was not previously available at the time this matter was briefed and argued."[33] Plaintiffs include the proposed supplemental data as exhibits to their motions.[34] As to the first motion to supplement, Defendant "decline[s] to join" Plaintiffs' motion because Defendant maintains the motion does not comply with Local Rule 7.1(d)(2) but it "does not necessarily object to [the] newest report entering the record."[35] As to the second and third motions to supplement, Defendant objects.[36] Defendant asserts that monthly updates are unnecessary because the timeliness data is irrelevant to what it considers the determinative issue—whether an injunction will be effective given DOH's ongoing efforts to remedy the non-compliance.

---

[32] Dockets 61, 67, 71.

[33] Docket 61 at 3. *See* Docket 61-1 at 4 (Decl. of Micah Chavin at ¶¶ 5-7).

[34] Docket 61-1, Ex. 1; Docket 67-1, Exs. 1, 2, 3; Docket 71-1, Exs. 1, 2, 3.

[35] Docket 62 at 2-3.

[36] Dockets 68, 72.

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for
Preliminary Injunction
Page 9 of 32

Local Rule 7.1(d)(2) provides that "after briefing of a motion is complete, supplementation of factual materials may occur only by motion for good cause. The motion must have the proposed factual materials attached as an exhibit and address the reasons earlier filing was not possible or their relevance was not appreciated." Contrary to Defendant's assertion, Plaintiffs' motions comply with Local Rule 7.1(d)(2), and they have shown good cause to supplement their preliminary injunction motion. The motions to supplement include the proposed factual materials and explain that the materials were previously unavailable because they consist of updated timeliness data for the months after the motion was filed and argued. These materials, containing new data for the Court to consider, are relevant to Plaintiffs' Renewed Motion for Preliminary Injunction. Indeed, in its opposition to Plaintiffs' request for a preliminary injunction, Defendant contended that Plaintiffs' supporting data was "outdated" and that DOH had made significant efforts to clear its application backlog and reach compliance with federal law, negating the effectiveness of any potential injunction.[37] The proposed supplemental materials provide the up-to-date data about DOH's continually evolving timeliness rates and the effectiveness of DOH's efforts. The Court therefore grants Plaintiffs' Motion to Supplement Renewed Preliminary Injunction Filing at Docket 61, their Second Motion to Supplement Renewed Preliminary

---

[37] Docket 46 at 2, 12.

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 10 of 32

Injunction Filing at Docket 67, and their Third Motion to Supplement Renewed Preliminary Injunction Filing at Docket 71.

## II. Motion for Preliminary Injunction

### a. Likelihood of Success on the Merits

#### i. Timeliness

The SNAP Act requires that once DOH receives an application for benefits, it must "promptly" certify a household's eligibility for SNAP benefits.[38]  DOH must complete the certification process and provide benefits to eligible applicants within 30 days of the application filing date.[39]  If the application qualifies as an expedited application— that is, the application is from a household with an income of less than $150 a month and liquid assets of $100 or less—DOH must complete the certification process and provide benefits no later than seven days after the application is filed.[40]

Households certified as eligible to receive benefits are entitled to those benefits for a duration of time referred to as a "certification period."[41]  DOH is required to provide advance notice to households informing them of the expiration of their certification period and of the requirement to file for recertification of

---

[38] 7 U.S.C. § 2020(e)(3).

[39] *Id.*; *see also* 7 C.F.R. § 273.2(g)(1).

[40] 7 U.S.C. § 2020(e)(9)(A).

[41] 7 U.S.C. §§ 2012(f), 2020(e)(4).

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 11 of 32

eligibility.[42] For a household that timely submits recertification and remains eligible, DOH must continue to provide SNAP benefits without a break in benefits—that is, the household must receive its recertified benefits "no later than one month after the receipt of the last allotment issued to it pursuant to its prior certification."[43]

These timeframes are subject to a strict compliance standard. Substantial compliance is not enough; all applications must be processed within these deadlines, with an exception being made only for *de minimis* levels of delays caused by inadvertent errors in processing.[44] The overseeing federal agency, FNS, considers a state in compliance with these processing deadlines if its "Application Processing Timeline" ("APT") rate—calculated by dividing the number of initial SNAP applications approved timely, by the total number of initial applications approved within the same time period, multiplied by 100—is at 95% or above.[45]

---

[42] 7 U.S.C. § 2020(e)(4); 7 C.F.R. § 273.14(b)(1).

[43] 7 U.S.C. § 2020(e)(4); *see also* 7 C.F.R. § 273.14(d).

[44] *See Withrow*, 942 F.2d at 1389 ("Plaintiffs are entitled under [the SNAP Act] to [full] compliance, not substantial compliance."); *Haskins v. Stanton*, 794 F.2d 1273, 1277 (7th Cir. 1986) (noting that the SNAP Act "literally requires strict compliance with its provisions" and, aside from "a few inadvertent errors [that are] inevitable," the act should be complied with "as strictly as is humanly possible").

[45] USDA, *Updated Guidance for Improving State Agency Application Processing Timeliness Rates: Standardizing the Escalation Process* (Aug. 2, 2023, as updated Aug. 1, 2024), https://www.fns.usda.gov/snap/admin/improving-state-timeliness-rates-escalation-process-guidance; USDA, *Clarification on the Three Ways Initial SNAP Application Processing Timeliness is Measured* (June 2, 2017), https://www.fns.usda.gov/snap/QC/measuring-application-process-timeliness.

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 12 of 32

Plaintiffs are likely to prevail on the merits of their claim that DOH is not meeting its legally mandated deadlines. Based on the data provided to the Court, which dates back to 2015, DOH's non-compliance is historical, persistent, and significant. The percentages of timely processed applications for State Fiscal Years ("SFY") 2015 – 2022 were as follows:[46]

|  | SFY 2015 | SFY 2016 | SFY 2017 | SFY 2018 | SFY 2019 | SFY 2020 | SFY 2021 | SFY 2022 |
|---|---|---|---|---|---|---|---|---|
| Timely Processing of Expedited Apps | 67.1% | 82.4% | 72.8% | 79.7% | 87.0% | 92.9% | 71.4% | 82.6% |
| Timely Processing of Initial Apps | 69.4% | 80.0% | 74.9% | 86.9% | 91.5% | 92.6% | 61.5% | 78.9% |
| Timely Processing of Recertifications | 65.4% | 76.5% | 51.5% | 68.4% | 80.9% | 92.0% | 53.7% | 68.0% |

State Fiscal Year 2023, which includes the months leading up to this lawsuit, shows a sharp decline from what was already notable non-compliance:[47]

|  | SFY 2023 |
|---|---|
| Timely Processing of Expedited Apps | 42.4% |
| Timely Processing of Initial Apps | 34.4% |
| Timely Processing of Recertifications | 19.3% |

---

[46] Docket 35-2 at 6 (Decl. of Nicholas Feronti at ¶ 11).

[47] Docket 35-2 at 96 (Ex. 5 at 2).

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 13 of 32

Case 3:23-cv-00044-SLG   Document 77   Filed 12/31/24   Page 13 of 32

The first six months of Fiscal Year 2024 showed similar non-compliance rates:[48]

|  | YTD SFY 2024 (Thru Dec. 2023) |
|---|---|
| Timely Processing of Expedited Apps | 46.2% |
| Timely Processing of Initial Apps | 25.7% |
| Timely Processing of Recertifications | 21.2% |

These rates are far short of what is needed to meet the strict compliance demanded of the statute. Another metric demonstrating the effect of the delays is the number of applications and recertifications that are overdue for processing. In 2023, this backlog ranged between 6,000 and 14,000 applications.[49]

The second half of Fiscal Year 2024 showed marked signs of improvement, with timely processing rates in June 2024 reaching 81% for non-expediated applications and 95% for expedited applications.[50] But processing rates dipped

---

[48] Docket 35-2 at 95 (Ex. 5 at 1).

[49] Docket 35-2 at 19-87 (Ex. 3).

[50] Docket 71-1 at 8 (Ex. 1).

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 14 of 32

again in Fiscal Year 2025, with the most recent data showing a timely processing rate of 70% for non-expedited applications and 75% for expedited applications.[51]

Defendant does not contest that DOH's delays run afoul of federal mandates. Indeed, FNS has already identified these deficiencies and has required DOH to implement a corrective action plan to reduce its SNAP application backlog. As part of the oversight process, FNS approved a waiver of the requirement that all applicants be interviewed as part of the eligibility determination process.[52] DOH had argued that this interview requirement was slowing its progress because it lacked the staff to implement it.[53] The waiver was in place from May 2024 through October 2024.[54] While, as noted above, there had been some improvement in timely processing rates during this period, which included the time of the parties' briefing, with DOH inching towards overall APT rates of near 90%,[55] the waiver has now been phased out. Without the waiver in place—that is to say, with the return of the requirement that applicants be interviewed—timely processing rates have again fallen. The most recent data set, provided at Docket 71-1, shows that without the FNS-approved interview waiver, DOH's rate of timely processing for all

---

[51] Docket 71-1 at 8 (Ex. 1).

[52] Docket 46-5 at 1.

[53] Docket 46-5 at 1; *see also* Docket 35-2 at 106 (Ex. 7).

[54] Docket 46-5 at 1, 5-6.

[55] Docket 46-3 (Ex. B).

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 15 of 32

initial SNAP applications is 72% and, as of November 14, 2024, there are over 1,200 SNAP initial applications pending beyond the 30-day limit.[56] As noted above, compliance under the SNAP Act requires that all applications be processed timely with an exception made only for *de minimis* and irregular delays. Over 1,200 Alaskans waiting on SNAP benefits is beyond any arguably *de minimis* backlog. Given the data show persistent non-compliance, Plaintiffs have clearly demonstrated that they are likely to prevail on the merits on this issue.

### ii. Notice

SNAP Act regulation 7 C.F.R. §273.10(g)(1) requires DOH to provide an applicant with a written status update within 30 days of the date of the initial application. The notice can be either 1) an approval, providing details about the household's entitlement to benefits, 2) a denial, explaining the basis for denial and providing information about how to proceed, or 3) a "pending status" notice, which informs the household that its application has not been completed and is still being processed.[57]

Under the statute itself, 7 U.S.C. § 2020(e)(10), DOH must provide "a fair hearing . . . to any household aggrieved by the action of the State agency under

---

[56] Docket 71-1 at 5, 15 (Decl. of Nicholas Feronti at ¶¶ 10, 11; Exs. 1, 2). The data from October 2024 shows an improvement from September 2024, when the timely processing rate for all initial SNAP applications was 67% and the number of overdue applications was greater than 3,000. Docket 67-1 at 4-6, 7, 28 (Decl. of Nicholas Feronti at ¶¶ 8,11; Ex. 1; Ex. 3 at 11).

[57] 7 C.F.R. § 273.10(g).

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 16 of 32

any provision of its plan of operation as it affects the participation of such household in [SNAP]."[58]   DOH must also inform a household of that right to a hearing when that household disagrees with DOH's actions.[59]   The State regulation addressing the administration of public assistance programs, including SNAP, requires that DOH grant a hearing to an applicant whose "request for . . . food . . . is not acted upon with reasonable promptness."[60]

Plaintiffs assert that based on these provisions, DOH is required to send out written notice when an application has been delayed beyond the 30-day deadline and that, because a delay adversely affects a household's participation in the Program, this notice must also inform the applicant of the right to a hearing.  They assert that Constitutional Due Process also demands that DOH provide notice and opportunity for a hearing when there are processing delays that prevent a household from receiving timely SNAP benefits.

Defendant concedes that DOH fails to comply with the notice requirement in the regulations.  It does not send "pending status" notices to households awaiting action on their SNAP applications beyond 30 days. Given this concession,

---

[58] 7 U.S.C. § 2020(e)(10).

[59] 7 C.F.R. § 273.15(f) ("[A]t any time the household expresses to the State agency that it disagrees with a State agency action, it shall be reminded of the right to request a fair hearing.").

[60] 7 AAC 49.020(1) ("An opportunity for a hearing must be granted to a recipient whose request for . . . food . . . is not acted upon with reasonable promptness.").

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 17 of 32

Plaintiffs will, at a minimum, succeed on the merits of their claim seeking to enforce § 273.10(g) and its requirement that DOH send "pending status" notices to initial applicants.

Defendant, however, contends that there is no accompanying requirement to provide a hearing, and consequently no requirement to include notice of the right to a hearing, to applicants facing delays. It argues that the provision in the statute allowing for a hearing applies only in response to affirmative state action, such as a denial or other adverse decision that negatively affects a household's participation in the Program, not to mere processing delays. That assertion is without merit. As noted above, the law requires DOH to grant a hearing to any "household aggrieved by [its] action . . . as it affects the participation of such household in [SNAP]."[61] A household entitled to SNAP benefits is clearly "aggrieved" by the DOH's delay because the household remains without such benefits for longer than the 30-day processing window that is permitted under the statute.

The case relied upon by DOH for its assertion that processing delays do not count as an action that can aggrieve applicants, *Haskins v. Stanton*,[62] is inapposite. That case addressed whether the plaintiffs could bring a §1983 claim

---

[61] 7 U.S.C. § 2020(e)(10).

[62] 794 F.2d 1273 (7th Cir. 1986).

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 18 of 32

to challenge systemic delays in processing SNAP Act applications. The court held that they could, finding that the state's administrative hearing procedure did not provide an adequate remedy for the plaintiffs' challenge to the systemic lengthy application delays.[63] The court did not address whether these delays constituted action of the state under § 2020(e)(10).

Moreover, apart from the SNAP Act, Defendant acknowledges that State regulations implementing public benefit programs, including SNAP, explicitly confer upon applicants a right to a fair hearing based on processing delays.[64] Consequently, it is clear that DOH has a legal obligation to provide individualized hearings to those facing delays, whether that delay relates to an initial application or a recertification application.

Based on the requirement that a pending status notice be sent to initial applicants facing processing delays and the additional requirement, under both federal and state law, that an opportunity for a hearing be granted to households suffering the consequences of those delays, it follows that pending status notices should include information about the right to a hearing. Delayed recertification applications should also receive notice; as argued by Plaintiffs, the right to a hearing is meaningless if the beneficiary is not informed of that right.[65]

---

[63] *Id.* at 1276.

[64] Docket 46 at 13-14, 24.

[65] *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) ("Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified."

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 19 of 32
Case 3:23-cv-00044-SLG   Document 77   Filed 12/31/24   Page 19 of 32

Defendant asserts that the DPA's application form satisfies any obligation the agency has to notify applicants about their right to a hearing. That form contains information about how the applicant can request a hearing if he or she disagrees with an action taken by the agency.[66] This preemptory notice is insufficient. Notice of a delay on an initial application is required after 30 days and, under the applicable regulations, applicants are to be reminded of the right to a hearing when they disagree with any agency action. The inclusion of a reminder of the right to a hearing in the pending status notice, that admittedly must be sent after 30 days have passed, would satisfy this obligation. Moreover, the initial application form does not clearly inform households that a processing delay is an action that adversely affects their participation in SNAP and that they can challenge the processing delay of their application through a request for a hearing.

The Court concludes that Plaintiffs have demonstrated a likelihood of success on the merits on the issue of DOH's non-compliance with applicable notice and hearing requirements set forth in the SNAP Act, its implementing regulations, and the accompanying state regulations.[67]

---

(quoting *Baldwin v. Hale*, 68 U.S. 223, 233 (1863)).

[66] Docket 46-7 at 1.

[67] Defendant did not assert a position on Plaintiffs' claim that lack of notice and hearing violates the Due Process Clause of the U.S. Constitution and Alaska Constitution. At oral argument, however, attorneys for the State indicated an objection to any assertion that delays in processing SNAP benefits triggers due process protections. The Court need not decide this particular issue at this time, given the statute and regulations require notice and hearing apart from any due process requirements.

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 20 of 32
Case 3:23-cv-00044-SLG     Document 77     Filed 12/31/24     Page 20 of 32

## b. Irreparable Injury, Balancing of Equities, and the Public Interest

The remaining *Winter* factors also favor the issuance of a preliminary injunction. Given the economic circumstances described and demonstrated by the named plaintiffs, which are indicative of all members of the class, the delay of SNAP benefits, which results in a deprivation of food, "unquestionably constitutes irreparable harm."[68] "When a family is living at subsistence level, the subtraction of any benefit can make a significant difference to its budget and to its ability to survive."[69] Plaintiffs have further demonstrated, through the submission of data reflecting the DOH's timely processing rates over the past few years, that these delays causing the Plaintiffs' harm have been intractable and thus are likely to continue. While DOH had made some progress towards the required 95% APT rate over the last year, it has not been consistent, lasting progress. Overall timely processing rates began falling again in July 2024, with rates that recently fluctuate around 70%, meaning around 30% of applicants fail to receive SNAP benefits on time. Because of the failure to provide the requisite notice, these applicants remain uncertain about why they are not receiving their SNAP benefits, about when they might be able to rely on these benefits, and about what they can do to advocate for and hasten receipt of their benefits.

---

[68] *Booth v. McManaman*, 830 F. Supp. 2d 1037, 1043 (D. Hawaii 2011).

[69] *Paxton v. Sec'y of Health & Human Servs.*, 856 F.2d 1352, 1354 (9th Cir. 1988).

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 21 of 32

As a result of this irreparable harm, the balance of equities tips in favor of granting Plaintiffs' request for an injunction.  In this regard, this Court agrees with the analysis of other district courts that have confronted this issue.  Plaintiffs have a "vital and essential interest in the timely receipt of food stamps" and the harm suffered because of the loss of timely benefits "outweighs any injury caused by requiring [DOH] to do what was already required under the [SNAP] Act."[70]  "The Act itself imposes the burden[;] this injunction merely seeks to prevent [DOH] from shirking [its] responsibilities under it."[71]  Likewise, public interest considerations also favor Plaintiffs.  "[I]t is axiomatic that the public has an interest in the enforcement of federal laws[,]" particularly when those law are enacted to promote the public's welfare by "raising levels of nutrition among low-income households."[72]  Stated another way, the Court is hard-pressed "to see how enforcing a statute designed to promote the public welfare disserves the public."[73]

DOH acknowledges the significant irreparable harm to SNAP applicants and that harm's concomitant effect on the balancing of equities and the public's well-being.  However, Defendant contends there are practical enforcement issues that weigh in favor of denying Plaintiffs' request for an injunction.  It points to the

---

[70] *Briggs v. Bremby*, Case No. 3:12-cv-324(VLB), 2012 WL 6026167, at *19 (D. Conn. Dec. 4, 2012).

[71] *Id.*

[72] *Booth*, 830 F. Supp. 2d at 1044-45 (quoting 7 U.S.C. § 2011).

[73] *Briggs*, 2012 WL 6026167, at *19 (quoting *Haskins*, 794 F.2d at 1277).

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 22 of 32

Case 3:23-cv-00044-SLG    Document 77    Filed 12/31/24    Page 22 of 32

considerable efforts already in place, with oversight from FNS, to remedy DOH's non-compliance. These efforts include modernization of core technology that would allow SNAP benefits management to shift from its current "COBOL" system, which is out of date and does not interface with other programs necessary to process cases, to a system that will allow automation and integration of "AI-based tools" that will create efficiencies in applications and information sharing.[74] The updated system is currently being developed and is expected to be operable in July of 2025.[75] Additional efforts include implementation of a "Broad Based Categorical Eligibility" program that was adopted by the State Legislature. [76] The program is designed to allow families who qualify for other state-operated, need-based programs to qualify for SNAP without having to specifically demonstrate SNAP eligibility; the implementation of this program, however, requires FNS approval. DOH has also hired consultants to help design new staffing patterns and set priorities for resource allocation to improve efficiency within the DPA in the face of intractable staffing shortages.[77] Relatedly, it asserts that it continues to work with the State Legislature and other state agencies to obtain resources and implement employee classification and incentive changes that would help with the

---

[74] Docket 46-8 at 2-3 (Decl. of Deb Etheridge at ¶ 4).

[75] Docket 46-8 at 2-3 (Decl. of Deb Etheridge at ¶ 4).

[76] Docket 46-8 at 6 (Decl. of Deb Etheridge at ¶ 8).

[77] Docket 46-8 at 6-7 (Decl. of Deb Etheridge at ¶ 9).

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 23 of 32

recruitment and retention of employees.[78]  Given these efforts and strategies that are already in place, DOH  argues that a preliminary injunction is unnecessary to remedy or prevent future irreparable harm because there is no directive from the Court that could improve on the efforts already underway.

The Court disagrees that DOH's current efforts weigh against the issuance of an injunction.  While these efforts are commendable, there is at present no indication that these efforts will successfully bring DOH into full compliance with the processing deadlines.  In *Briggs v. Bremby*, the district court issued a preliminary injunction requiring the applicable state agency to timely process SNAP applications and in doing so rejected the state agency's argument that an injunction was unnecessary in light of "various ameliorative measures to improve its timeliness rates."[79]  The district court noted that while the agency's actions were "commendable," they did not render injunctive relief moot, because the court's involvement would prevent the agency from backsliding on any efforts or returning to its non-compliant status.[80]  The district court in *Booth v. McManaman* articulated similar reasoning when, in issuing an injunction to enforce the SNAP Act, it rejected the state agency's argument that court intervention was unnecessary in light of its efforts to reach compliance:

---

[78] Docket 46-8 at 8-9 (Decl. of Deb Etheridge at ¶ 11).

[79] 2012 WL 6026167, at *19.

[80] *Id.*

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 24 of 32

> While [the agency] has undertaken extensive and commendable ameliorative measures to improve the administration of SNAP, those efforts do not render this action moot. . . . Moreover, [the agency] is only in the beginning stages of implementing [its new management system] and thus its effectiveness on [the] administration of SNAP benefits has yet to be determined. This Court cannot simply defer to the wait-and-see approach advocated by the Defendant, particularly in light of the seriousness of the harm incurred by Plaintiffs as a result of [the] delay.[81]

Moreover, Defendant's argument that the DOH's efforts moot the need for an injunction is belied by the recent data submitted into the record. The data show the gains Defendant relied upon to make this argument in June 2024 have been lost. The rate of applications timely processed is presently around 70%; a rate that is far lower than *di minimis* non-compliance and far from an assurance that the DOH's current ameliorative efforts will be successful.[82]

Defendant also asserts that an injunction would add additional burdens and costs that would slow current agency efforts, which will adversely affect the public's interest. It argues that this is particularly true as to any requirement that the DOH send pending status notices and provide a hearing to any applicant who requests one. As fully discussed above, however, these requirements are not additional, court-imposed mandates. They are existing obligations placed upon DOH under

---

[81] 830 F. Supp. 2d at 1042.

[82] *Cf. Garnett*, 313 F. Supp. 3d at 158 (granting a limited injunction on the issue of the state's timely processing of initial SNAP applications after noting that the agency was achieving "close to full compliance" under a corrective action plan with FNS and then concluding that a "full injunction" with heavy court involvement would not be necessary to prevent the irreparable harms caused by the delays).

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 25 of 32

Case 3:23-cv-00044-SLG    Document 77    Filed 12/31/24    Page 25 of 32

the SNAP Act, its implementing regulations, and state law. DOH is required to comply with the law. An injunction here does not add to what is already required under the law but instead is intended to prevent DOH "from shirking [its] responsibilities under it."[83] While an injunction may cause administrative difficulties, those difficulties "are clearly outweighed by the public interest in providing immediate assistance to low-income households who are eligible for relief but have not received needed assistance."[84] The staffing shortages faced by the DOH that it asserts are preventing its statutory compliance is not a reason to deny preliminary injunctive relief that is clearly warranted under the *Winter* standard.[85]

### c. Rule 65(b) Specificity

Defendant asserts that the Court cannot issue the preliminary injunction as proposed by Plaintiffs because it fails to comport with Federal Rule of Civil Procedure 65(d). Under Rule 65(d), when granting an injunction, the Court must state the terms of the injunction "specifically" and "describe in reasonable detail the act or acts restrained or required." "The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to

---

[83] *Withrow*, 942 F.2d at 1388 (quoting *Haskins*, 794 F.2d at 1277).

[84] *Booth*, 830 F. Supp. 2d at 1044.

[85] *Blanco v. Anderson*, 39 F.3d 969, 973 (9th Cir. 1994) (holding that a lack of resources is not an excuse for failing to provide the plaintiffs their statutory right to benefits).

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 26 of 32

avoid the possible founding of a contempt citation on a decree too vague to be understood."[86] Defendant argues that Plaintiffs' proposed injunction simply directs DOH to "obey the law" without any specificity: "[It] does not identify any action that the State is currently taking that it must cease taking, and it does not identify any action that the State is not taking that it must begin taking."[87] In other words, Defendant asserts that Plaintiffs' proposed injunction fails to identify the corrective steps DOH must take to reach compliance with the SNAP Act's timely processing requirements.

But an injunction to "obey the law" is not categorically vague. An injunction need not describe how a defendant should reach compliance with the law, as long as it is specific about what law is being violated and what that law requires.[88] In *Thomas v. County of Los Angeles*, the Ninth Circuit held that the trial court's injunction lacked the specificity required under Rule 65(d): "The district court's injunction [ ] directs compliance, under penalty of contempt, with all department policies and guidelines for conducting searches and for the use of force. It does not define what the policies are, or how they can be identified."[89] In other words,

---

[86] *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1087 (9th Cir. 2004) (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)).

[87] Docket 46 at 16.

[88] *See Fortyune*, 364 F.3d at 1087 (rejecting the defendant's argument that Rule 65(d) requires that the court articulate how to enforce the injunction).

[89] 978 F.2d 504, 509 (9th Cir. 1992).

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 27 of 32
Case 3:23-cv-00044-SLG    Document 77    Filed 12/31/24    Page 27 of 32

the injunction was vague as to which policies needed to be followed. If, however, an injunction includes a clear directive, such as setting deadlines for when to complete required processes, it is sufficiently specific to avoid running afoul of Rule 65(d).[90] Put differently, an injunction must explain what the defendant must do—for example, the defendant must comply with a certain deadline—but it need not devise the policies and procedures for how to accomplish that directive.

Here, Plaintiffs ask the Court to issue an injunction that directs DOH to process initial SNAP Act applications, expedited applications, and recertifications within the applicable timeframes set forth in 7 U.S.C. § 2020(e)(3),(e)(4), and (e)(9) and to provide the requisite notice and hearing as is required in 7 C.F.R. § 273.10(g)(1), 7 U.S.C. § 2020(e)(10), and 7 AAC 49.020(1). This request identifies the specific statutory provisions and implementing regulations not being met and explains what DOH must do to comply with those laws—achieve full compliance with the processing deadlines and send the requisite notices. It is not a vague directive.

Any assertion that DOH cannot do more to improve its compliance rate, and therefore, the Court must identify more specific corrective measures that it should attempt, is without merit. Again, the Court does not need to devise the corrective

---

[90] *See Melendres v. Skinner,* 113 F.4th 1126 (9th Cir 2024) (holding that the lower court's injunction properly identified the specific directive with which the defendants had to comply—the requirement that the defendants must conduct all administrative investigations within 85 days).

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 28 of 32
Case 3:23-cv-00044-SLG    Document 77    Filed 12/31/24    Page 28 of 32

measures it believes will best implement the injunction's directives.  Moreover, as explained above, the Court cannot simply condone an admitted violation of a statute, which is designed to ensure adequate nutrition for low-income households, because of the difficulty the State might have in reaching compliance. The Court must issue the injunction, regardless of seemingly intractable staffing shortages or technical difficulties, to monitor DOH's progress and to push DOH and the State as a whole to solve its non-compliance as quickly as possible.

### d.  Rule 65(c) Waiver

Plaintiffs request that the Court waive Federal Rule of Civil Procedure 65(c), which requires a party seeking a preliminary injunction to provide sufficient security to cover damages sustained by the defendant if the injunction is later determined to have been wrongfully issued.  A court has the discretion to determine the amount of the security.[91]  It may waive the requirement altogether if there is no realistic likelihood of harm to the defendant[92] or when the plaintiffs are of limited financial means and are bringing a case of significant public interest.[93]  Both circumstances

---

[91] Fed. R. Civ. P. 65(c) (stating that the movant for a preliminary injunction must give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained").

[92] *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).

[93] *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) (recognizing that no bond may be appropriate in cases involving the public interest); *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (upholding a nominal bond under Rule 65(c) where the damages to the government defendant would at most be minimal and the plaintiffs, and class members as a whole, were of "unremarkable financial means" and bringing a lawsuit to advance the public's interest).

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 29 of 32

Case 3:23-cv-00044-SLG    Document 77    Filed 12/31/24    Page 29 of 32

are present here: indigent plaintiffs are bringing a case in support of the public's interest, and a waiver of the bond requirement poses no risk to Defendant given the injunction is meant to prompt DOH to meet its preexisting legal obligations. Given these circumstances, the Rule 65(c) bond is appropriately waived.

## CONCLUSION

Based on the foregoing discussion, Plaintiffs' Motion to Supplement Renewed Preliminary Injunction Filing at Docket 61 and their Second and Third Motion to Supplement Renewed Preliminary Injunction Filing at Docket 67 and Docket 71 are GRANTED.

Plaintiffs' Renewed Motion for Preliminary Injunction at Docket 35 is also GRANTED as follows:

IT IS ORDERED:

1) DOH, through the DPA, must promptly process SNAP applications and recertifications within the timeframes established by 7 U.S.C. § 2020(e)(3), (4), and (9), including those cases now eligible for expedited processing and now pending beyond legally mandated-processing timeframes on an ongoing basis during the pendency of this litigation;

2) DOH must provide written notice and opportunity to request a fair hearing to those SNAP applicants who applications are not processed within the mandated timeframes;

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 30 of 32
Case 3:23-cv-00044-SLG     Document 77     Filed 12/31/24     Page 30 of 32

3) Recognizing that immediate compliance is untenable, but to ensure DOH, and the State as a whole, continues to prioritize reaching compliance with the statutory and regulatory requirements discussed herein and to prevent any reduction of efforts on the part of DOH to remedy its non-compliance, DOH must take the following additional actions:

   a. DOH shall provide monthly status reports to the Court, beginning February 1, 2025.  Each report shall include any newly available data about DOH's timely processing rates in a summarized form. Each status report must include information about DPA's information system update with information about what steps have been completed and what remains to be done in order for the new system to be in place and operable by July 2025.  The report must also describe staffing changes and any recruitment and retention efforts taking place at the division, department, or state level.  It must also provide an update about the implementation of "Broad Based Categorical Eligibility", as well as other projects being pursued to simplify the eligibility determination process. The status reports must show progress towards compliance and sustained efforts to address the problems hindering compliance.

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 31 of 32
Case 3:23-cv-00044-SLG    Document 77    Filed 12/31/24    Page 31 of 32

b. DOH will continue, during the pendency of this litigation, to allow members of the Untimely Eligibility Class to seek, through their attorneys of record, informal relief when their applications have been pending beyond the statutory deadlines. The parties are tasked with determining the process by which the attorneys can flag an application as overdue and push the DOH to accelerate an eligibility determination. This internal relief process shall be described to the Court in the first status report on February 3, 2025.

DATED this 31st day of December 2024, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:23-cv-00044-SLG, *Kamkoff, et al. v. Hedberg*
Order re Motions to Supplement Renewed Preliminary Injunction Filing and Motion for Preliminary Injunction
Page 32 of 32

Case 3:23-cv-00044-SLG   Document 77   Filed 12/31/24   Page 32 of 32