# Attachment 1: Federal Correspondence



**Department of Health**

DIVISION OF PUBLIC ASSISTANCE
Program Integrity and Analysis

3601 C Street, Suite 200
Anchorage, Alaska 99503
Main: 907.269.1060
Fax: 907.269.1062

May 09, 2025

Charles Tobin
Regional Program Director, Western Region
Supplemental Nutrition Assistance Program
90 Seventh St., Suite 10-100
San Francisco, CA 94103

Dear Mr. Tobin,

Thank you for your May 01, 2025, letter outlining additional detail required to approve Alaska's Recertification Processing Timeliness (RPT) Corrective Action Plan (CAP). I would also like to thank your staff for taking time to meet with us to clarify the requirements.

In response, we are submitting Alaska's updated RPT CAP for your review. The updated plan includes the missing analysis outlined in the May 01, 2025, response.

As noted in previous correspondence these strategies are not all encompassing of the efforts Alaska has deployed to address timeliness issues. Alaska will continue to provide detailed overviews of all strategies to FNS through monthly meetings with the Western Region (WR) Team and providing copies of the monthly court status report.

Thank you for your consideration and please contact me if you have any questions or require additional information.

Sincerely,

Tracie Dablemont

Tracie Dablemont
Chief, Program Integrity and Analysis
Alaska Division of Public Assistance

cc: Deb Etheridge, AK DPA
Rebecca Stovall, AK DPA
Evan Moss, FNS WRO
Jacqueline Bourne, FNS WRO
Shaunte' Milbourne, FNS WRO

**Alaska SNAP Recertification Processing Timeliness (RPT)**
**Corrective Action Plan**
**May 09, 2025**

Response to Advanced Notification Letter dated March 20, 2025, follow up April 10, 2025, and May 01, 2025

| Overview | |
|---|---|
| **Geographic Extent Unacceptable RPT Rate** | The Division of Public Assistance (DPA) administers SNAP eligibility and recertification processing statewide. The unacceptable Recertification Processing Timeliness (RPT) rate is a statewide issue, not isolated to a single office. While performance varies by location—particularly in high-volume offices like Anchorage, Wasilla, and Kenai—the systemic challenges affect all areas. DPA serves clients across Alaska through centralized processing, a virtual contact center, and in-person access where offices exist. Clients in remote areas receive equivalent service through telephonic and online channels. These systemic issues, including workforce constraints and outdated processing systems, transcend office boundaries. |
| **Root Cause Analysis** | **Root Cause #1:  Critical Workforce Shortages and Turnover**<br>• As of December 27, 2024, 14 of 133 Eligibility Technician positions were vacant, a 10.5% vacancy rate.<br>• In 2024, the turnover rate reached 49%, resulting in 65 exits in one year. Each departure results in approximately 11 months of lost staff time due to hiring and training cycles.<br>• These staffing shortfalls, combined with workload volume, have created a substantial gap. A workload analysis estimates that 167 FTEs are needed to meet current demand, yet only 38 seasoned Eligibility Technicians are fully available, resulting in a gap of 129 FTEs.<br><br>**Root Cause #2:  Legacy Eligibility Platform and Technological Limitations**<br>• Alaska continues to rely on the Eligibility Information System (EIS) - a legacy platform that lacks modern automation, dynamic forms, or integrated eligibility functionality. Processing recertifications require multiple manual steps and data entry across disconnected systems.<br>• Although automation projects have reduced burden in some areas (e.g., ILINX cloud migration, SNAP eForms, automated SMS), EIS remains the core processing engine and was not designed to meet current volume or regulatory complexity.<br>• The State has initiated a multi-phase modernization effort to transition to an Integrated Eligibility System (IES), with components for SNAP, Medicaid, and APA scheduled through 2028. These enhancements will ultimately allow for the decommissioning of EIS and enable more efficient and accurate eligibility determinations.<br>• Until all systems are able to be integrated staff must access several systems to complete an eligibility determination. They must access the workflow system, the document management system and depending on the programs being determined, as many as three separate eligibility systems.  This necessity does increase transaction times for eligibility determination.<br>• Until this transition is complete, Alaska's system constraints will continue to hinder timeliness and performance despite the best efforts by staff. |

## Corrective Action, Expected Outcomes, and Timelines

| Corrective Action | Expected Outcome | Timeline | Root Cause Addressed |
|---|---|---|---|
| Reassign processing teams to focus on recertification backlog | Reduce delayed recerts | **Start:** May 2025 <br> **Initial Review:** July 2025 | **Root Cause #1: Critical Workforce Shortages and Turnover** |
| Sustain 140-staff Virtual Contact Center (VCC) and shift capacity to recerts | Improve client engagement, reduce recert delay | **Ongoing** | **Root Cause #1: Critical Workforce Shortages and Turnover** |
| Fund and hire 15 additional ET2s (FY26) and 15 more (FY27) | Close workforce gap and reduce burnout | **Start:** July 2025 <br> **Projected Completion:** July 2026 | **Root Cause #1: Critical Workforce Shortages and Turnover** |
| Implement hiring and retention LOAs (bonuses) | Reduce 49% turnover rate | **Start:** October 2024 <br> **Sunset:** June 30, 20025 | **Root Cause #1: Critical Workforce Shortages and Turnover** |
| Automate recert packet processing in ILINX | Reduce manual steps, increase efficiency | **Start:** May 2025 <br> **Projected Completion:** September 2025 | **Root Cause #2: Legacy Eligibility Platform and Technological Limitations** |

## Monitoring and Evaluation Plan

DPA is committed to improving recertification timeliness while also being mindful of staff capacity and avoiding burnout. To ensure sustainable progress, the division has implemented a multi-layered monitoring and evaluation framework designed to balance accountability with support:

| | |
|---|---|
| **System Monitoring** | Weekly data reports from the Eligibility Information System (EIS) and ILINX are used to track case aging, completion timelines, and recertification progress. Reports are disaggregated by office and processing team to enable targeted interventions. |
| **Performance Tracking in JIRA** | All Corrective Action Plan (CAP) activities and milestones, including those related to Recertification Processing Timeliness (RPT), are tracked in JIRA. This allows leadership to monitor progress, assign accountability, and flag delays in real time. |
| **QCI Governance Structure** | The Division's Continuous Quality Improvement (CQI) Plan includes a dedicated subcommittee focused on Corrective Actions. This group meets regularly to review performance data, assess progress, and recommend operational adjustments. |
| **Daily Case Monitoring** | Eligibility Technician supervisors and regional chiefs use real-time dashboards to identify aging recertifications and reallocate workload as needed to manage staff bandwidth. |
| **External Support** | DPA is working closely with the Change and Innovation Agency (CIA) to optimize workflows and implement improvements that reduce administrative burden and support staff efficiency. |

## Conclusion

In addition, RPT progress will be reviewed in monthly leadership meetings in tandem with APT metrics. Target benchmarks are established quarterly, with the goal of reaching a minimum RPT rate of 33.68% within six months of CAP approval.

The division will continue to submit monthly RPT data to FNS using the SNAP Timeliness Protocol and will adapt implementation strategies as needed based on observed performance trends and evolving staffing capacity.


**Food and Nutrition Service**
U.S. DEPARTMENT OF AGRICULTURE

**April 10, 2025**

**Deb Etheridge**
Director
Division of Public Assistance
Alaska Department of Health
350 Main Street, Room 304
Juneau, Alaska 99811-0640

**Dear Deb Etheridge**,

This letter is in response to the Alaska Division of Public Assistance (AK DPA) March 27, 2025, request to combine the Recertification Processing Timeliness (RPT) Corrective Action Plan (CAP), with the already approved Application Timeliness (APT) CAP.

As outlined in the Guidance for Improving State Agency RPT Rates, the State may combine the RPT CAP with their Application Processing Timeliness (APT) CAP when the root cause of errors can be addressed with the same corrective actions.

Please submit to FNS the State's analysis of its root cause errors contributing to the error rate and how its current CAP initiatives will address the RPT no later than **April 21, 2025**.

We share your desire to improve service to applicants and participants by providing timely and accurate benefits. FNS stands ready to continue to work with you to ensure that ADPA's operation of SNAP is compliant with Federal law and regulations. If you wish to discuss this matter further, please contact Charles Tobin, Regional Director at (415) 645-1927 or at charles.tobin@usda.gov .

Food and Nutrition Service, Braddock Metro Center, 1320 Braddock Place, Alexandria, VA 22314

USDA is an Equal Opportunity Provider, Employer, and Lender

Sincerely,

CHARLES TOBIN     Digitally signed by CHARLES TOBIN
                            Date: 2025.04.10 13:32:59 -07'00'

Charles Tobin

Director

Supplemental Nutrition Assistance Program

Western Region

CC:

Young Ihm, FNS WRO

Evan Moss, FNS WRO

Jackie Bourne, FNS WRO

Jodi Gonzalez, FNS WRO

Shaunte' Milbourne, FNS WRO

Lydia Luchini, AK DPA

Traci Dablemont, AK DPA

Seth Barnes, AK DPA

Christina Davis, AK DPA

WRO File Code: SNAP\400\CAPS\RPT\AK

| | |
|---|---|
| **From:** | McCleskey, John - FNS |
| **To:** | Etheridge, Deb J (DOH); NewInvestmentPlans |
| **Cc:** | Moss, Evan - FNS; Ihm, Young - FNS; Bourne, Jacqueline - FNS; Gonzalez, Jodi - FNS; Baker, Dawn - FNS; Levandowski, Jason - FNS; Garson-Shumway, Carmen - FNS; Wilkinson, Tiffany - FNS; Hedberg, Heidi R (DOH); Stovall, Rebecca L (DOH); Dablemont, Tracie L (DOH); Ziegenfuss, Jacqelli Y (DOH); McGraw, Rebecca A (DOH); Meek, Ciara L (DOH); Wilkinson, David A (LAW); Davis, Christina L (DOH); Luchini, Lydia (DOH); Harrison, Lael (LAW); Nelson, Justin D (LAW) |
| **Subject:** | RE: AK FY23 New Investment Plan Feedback |
| **Date:** | Monday, May 5, 2025 6:27:26 AM |
| **Attachments:** | image001.png |

Hey Deb,

Apologies for the late response, I was out on Friday. If you all could target this for return in 30 days, that would be helpful but let me know if that timeline would present challenges or if you'd like to discuss further.

Thanks,

John McCleskey
Branch Chief
Quality Control Branch | Program Administration and Nutrition Division
Supplemental Nutrition Assistance Program



Food and Nutrition Service
1320 Braddock Place, Alexandria, VA, 22314
Office Number
p: (703) 457-7747

**From:** Etheridge, Deb J (DOH) <deb.etheridge@alaska.gov>
**Sent:** Thursday, May 1, 2025 4:56 PM
**To:** NewInvestmentPlans <NewInvestmentPlans@usda.gov>
**Cc:** Moss, Evan - FNS <evan.moss@usda.gov>; Ihm, Young - FNS <young.ihm@usda.gov>; Bourne, Jacqueline - FNS <jacqueline.bourne@usda.gov>; Gonzalez, Jodi - FNS <Jodi.Gonzalez@usda.gov>; Baker, Dawn - FNS <dawn.baker@usda.gov>; Levandowski, Jason - FNS <jason.levandowski@usda.gov>; Garson-Shumway, Carmen - FNS <Carmen.Garson-Shumway@usda.gov>; Wilkinson, Tiffany - FNS <tiffany.wilkinson@usda.gov>; McCleskey, John - FNS <john.mccleskey@usda.gov>; Hedberg, Heidi R (DOH) <heidi.hedberg@alaska.gov>; Stovall, Rebecca L (DOH) <becca.stovall@alaska.gov>; Dablemont, Tracie L (DOH) <tracie.dablemont@alaska.gov>; Ziegenfuss, Jacqelli Y (DOH) <jacqelli.ziegenfuss@alaska.gov>; McGraw, Rebecca A (DOH) <rebecca.mcgraw@alaska.gov>; Meek, Ciara L (DOH) <ciara.meek@alaska.gov>; Wilkinson, David A (LAW) <david.wilkinson@alaska.gov>; Davis, Christina L (DOH) <christina.davis@alaska.gov>; Luchini, Lydia (DOH) <lydia.luchini@alaska.gov>; Harrison, Lael (LAW) <lael.harrison@alaska.gov>; Nelson, Justin D (LAW) <justin.nelson@alaska.gov>
**Subject:** RE: AK FY23 New Investment Plan Feedback

Thank you for the detailed feedback on Alaska's FY2023 New Investment Plan. We are

currently reviewing the comments internally and anticipate requesting a meeting soon to discuss several items and seek technical assistance. Could you please let us know if there is a target date for resubmission of the revised plan?

Best,
Deb

**Deb Etheridge** | Director
Division of Public Assistance, Alaska Department of Health
P.O. Box 110640 | Juneau, AK 99811-0640
907.465.2680 (office)
Deb.etheridge@alaska.gov

---

**From:** NewInvestmentPlans <NewInvestmentPlans@usda.gov>
**Sent:** Thursday, May 1, 2025 11:32 AM
**To:** NewInvestmentPlans <NewInvestmentPlans@usda.gov>; Etheridge, Deb J (DOH) <deb.etheridge@alaska.gov>
**Cc:** Moss, Evan - FNS <evan.moss@usda.gov>; Ihm, Young - FNS <young.ihm@usda.gov>; Bourne, Jacqueline - FNS <jacqueline.bourne@usda.gov>; Gonzalez, Jodi - FNS <Jodi.Gonzalez@usda.gov>; Baker, Dawn - FNS <dawn.baker@usda.gov>; Levandowski, Jason - FNS <jason.levandowski@usda.gov>; Garson-Shumway, Carmen - FNS <Carmen.Garson-Shumway@usda.gov>; Wilkinson, Tiffany - FNS <tiffany.wilkinson@usda.gov>; McCleskey, John - FNS <john.mccleskey@usda.gov>; Hedberg, Heidi R (DOH) <heidi.hedberg@alaska.gov>; Stovall, Rebecca L (DOH) <becca.stovall@alaska.gov>; Dablemont, Tracie L (DOH) <tracie.dablemont@alaska.gov>; Ziegenfuss, Jacqelli Y (DOH) <jacqelli.ziegenfuss@alaska.gov>; McGraw, Rebecca A (DOH) <rebecca.mcgraw@alaska.gov>; Meek, Ciara L (DOH) <ciara.meek@alaska.gov>; Wilkinson, David A (LAW) <david.wilkinson@alaska.gov>; Davis, Christina L (DOH) <christina.davis@alaska.gov>; Luchini, Lydia (DOH) <lydia.luchini@alaska.gov>; Harrison, Lael (LAW) <lael.harrison@alaska.gov>; Nelson, Justin D (LAW) <justin.nelson@alaska.gov>
**Subject:** AK FY23 New Investment Plan Feedback

Some people who received this message don't often get email from newinvestmentplans@usda.gov. Learn why this is important

**CAUTION:** This email originated from outside the State of Alaska mail system. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good afternoon Deb:

We reviewed Alaska's FY2023 New Investment Plan and provided feedback below for each section in the 74A. Please resubmit their new investment plan with all items below addressed.

Section I - Currently sufficient. Revisions may be required based on required edits to other sections detailed below.

Section II

- The root causes listed in this section only partially align with what was in Section I. Please ensure the root causes in Section II match the root causes identified in Section I.
- In addition, it appears the State indicated it has resolved root cause 1 – incorrect application of staff, and root cause 2 – household composition and income misreporting. Please ensure the root causes mentioned are errors identified from FY23 reviews that can be addressed in the proposed activities.
- Next, please ensure the root causes in Section II are clearly explained, as FNS is unsure how COVID-related errors are relevant for FY23 reviews.

Activity 1 – Implement Staff-Facing Tools to Improve Policy Accuracy and Reduce Processing Delays

1a) Worker Assistance
- Detailed Cost Estimate – this section must include a breakdown of the predicted costs, including estimates on licensing, configuration, and training services.

1b) Centralized Eligibility Technician Repository
- Detailed Cost Estimate – this section must include a breakdown of the predicted costs, including monthly service charges, for how long, and vendor set up.

1c) Intelligent Policy Tracking and Compliance Support
- Detailed Cost Estimate – this section must include a breakdown of predicted costs

Activity 2 – Enhance Client- Facing Systems to Streamline Communication, Enable Self-Service, and Support Timely, Accurate Submissions

2a) Client Portal
- Detailed Cost Estimate – this section must include an additional breakdown for system implementation

2b) SNAP Recertification eForm
- Detailed Cost Estimate – please include the vendor quote

2c) Notice Enhancements
- Detailed Cost Estimate – please include the vendor quote

2d) Validation Service for Client Portal
- Root Cause Addressed - The link to root causes is unclear. Please revise to ensure this activity adequately addresses root causes identified.

Activity 3 – Strengthen QC through System Modernization and Targeted Case Reviews

- This activity is not approvable, as new investment money cannot be used towards activities that target the quality control system. The SNAP quality control system is a measurement of how accurately SNAP state agencies determine a household's eligibility and benefit amount, and is used to inform corrective actions towards identified error causes. The Quality Control system is not where errors come from, it is where they are found. Thus, the SNAP quality control system does not impact the root causes of error and therefore does not meet requirements in 7 CFR 275.23(h). In addition, staff overtime

cannot be approved, as the proposed activity must also represent an addition to the minimum program administration required by law for State agency administration including corrective action per 7 CFR 275.23(h)(1)(ii)

Please let us know if there are any questions to our comments. We are happy to schedule a meeting as well if additional technical assistance is needed.
Have a great evening.

Carmen Garson-Shumway and Tiffany Wilkinson
Program Analysts
Quality Control Branch- National Office
Program Administration and Nutrition Division



FNS Supplemental Nutrition Assistance Program
NewInvestmentPlans@usda.gov

---

**From:** Ihm, Young - FNS <young.ihm@usda.gov>
**Sent:** Wednesday, April 16, 2025 11:59 AM
**To:** NewInvestmentPlans <NewInvestmentPlans@usda.gov>
**Cc:** Tobin, Charles - FNS <Charles.Tobin@usda.gov>; Moss, Evan - FNS <evan.moss@usda.gov>;
Bourne, Jacqueline - FNS <jacqueline.bourne@usda.gov>; Gonzalez, Jodi - FNS
<Jodi.Gonzalez@usda.gov>; Baker, Dawn - FNS <dawn.baker@usda.gov>; Levandowski, Jason - FNS
<jason.levandowski@usda.gov>
**Subject:** FW: Submission of Alaska's QC Investment Plan per 7 CFR § 275.23(h)

Hi NO Team,

Please see the attached Investment Plan submission from AK. We are beginning our review and await further discussion. Thank you.

Young

---

**From:** Etheridge, Deb J (DOH) <deb.etheridge@alaska.gov>
**Sent:** Tuesday, April 15, 2025 3:54 PM
**To:** Ihm, Young - FNS <young.ihm@usda.gov>
**Cc:** Tobin, Charles - FNS <Charles.Tobin@usda.gov>; Moss, Evan - FNS <evan.moss@usda.gov>;
Hedberg, Heidi R (DOH) <heidi.hedberg@alaska.gov>; Stovall, Rebecca L (DOH)
<becca.stovall@alaska.gov>; Dablemont, Tracie L (DOH) <tracie.dablemont@alaska.gov>;
Ziegenfuss, Jacqelli Y (DOH) <jacqelli.ziegenfuss@alaska.gov>; McGraw, Rebecca A (DOH)
<rebecca.mcgraw@alaska.gov>; Meek, Ciara L (DOH) <ciara.meek@alaska.gov>; Wilkinson, David A
(LAW) <david.wilkinson@alaska.gov>; Davis, Christina L (DOH) <christina.davis@alaska.gov>; Luchini,
Lydia (DOH) <lydia.luchini@alaska.gov>; Harrison, Lael (LAW) <lael.harrison@alaska.gov>; Nelson,

Justin D (LAW) <<u>justin.nelson@alaska.gov</u>>
**Subject:** Submission of Alaska's QC Investment Plan per 7 CFR § 275.23(h)

Hello, Young Ihm.

In compliance with 7 CFR § 275.23(h) and pursuant to the terms outlined in the signed settlement agreement dated January 16, 2025, the Alaska Division of Public Assistance respectfully submits the enclosed Quality Control (QC) Investment Plan. This submission addresses Alaska's Supplemental Nutrition Assistance Program (SNAP) payment error liability for Federal Fiscal Year (FFY) 2023 through targeted investments using state-only funds totaling $5,954,328.

The plan focuses on three critical investment areas encompassing nine specific activities designed to significantly reduce payment errors, enhance SNAP program accuracy, and improve client and staff experiences. Key initiatives include enhancements to eligibility determination tools, upgrades to client-facing technology systems, and vital improvements to our quality control processes, including overtime resources to expedite case reviews and establish reliable performance baselines.

Detailed descriptions and budget breakdowns for each activity are provided in the attachments. We appreciate the continued support from FNS and look forward to collaborative oversight as we execute these improvements. Biannual progress reports will be provided as required. Please confirm receipt of this submission and advise if further information is required.

Attachments:
- Alaska QC Investment Submission Memo
- Alaska FNS-74A (FY 2023 QC New Investment Plan)
- Attachment Detailed QC Investment Activities – Alaska Division of Public Assistance

Sincerely,

Deb

**Deb Etheridge** | Director
Division of Public Assistance, Alaska Department of Health
P.O. Box 110640 | Juneau, AK 99811-0640
907.465.2680 (office)
<u>Deb.etheridge@alaska.gov</u>

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

| | |
|---|---|
| **From:** | Etheridge, Deb J (DOH) |
| **To:** | Makhdoomi, Muzafar - FNS |
| **Cc:** | Tobin, Charles - FNS; Hedberg, Heidi J (DOH); Dablemont, Tracie J (DOH) |
| **Subject:** | RE: Collection of State Disqualification and Sanction Data |
| **Date:** | Wednesday, May 14, 2025 1:50:00 PM |
| **Attachments:** | Alaska_SNAP_Disqualification_Data_2025.xlsx |
| | image001.png |

Dear Muzafar,

In response to your May 6 request and in alignment with Executive Order 14243 and the associated FNS Data Sharing Guidance, please find attached Alaska's completed SNAP Disqualification Data spreadsheet.

We were able to capture and provide the requested data for the "Disqualification" tab. The only data available for the "Sanction" tab is a snapshot of all participants with sanction coding reflected in the SNAP data download for April 2025. Due to system limitations, we are unable to identify the date the sanction was implemented or ended.

Supporting documentation for the figures submitted is available upon request. Please let me know if further clarification is needed.

Best regards,

Deb

**Deb Etheridge** | Director
Division of Public Assistance, Alaska Department of Health
P.O. Box 110640 | Juneau, AK 99811-0640
907.465.2680 (office)
Deb.etheridge@alaska.gov


**From:** Makhdoomi, Muzafar - FNS <Muzafar.Makhdoomi@usda.gov>
**Sent:** Wednesday, May 7, 2025 2:27 PM
**Cc:** Tobin, Charles - FNS <Charles.Tobin@usda.gov>
**Subject:** Collection of State Disqualification and Sanction Data

> **CAUTION:** This email originated from outside the State of Alaska mail system. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dear State Leaders,

As a follow-up to yesterday's email regarding Data Sharing Guidance Letter – Executive

Order 14243, FNS is requesting that your office provide us with that data by **5:00 PM EST on Wednesday, May 14**th. I have attached a spreadsheet with instructions for ease of use as you capture the data. Please contact me at (415) 314-9569 or via email Muzafar.Makhdoomi@usda.gov should you have any questions.

I kindly request that you disseminate this information to your relevant staff responsible for data input.

espectfully,

Muzafar

Muzafar Makhdoomi D M, M S , PhD, MP M, DA   PM
 egional Administrator
Western   egional Office



Food and Nutrition Service
90 Seventh Street, Suite 10-300
San Francisco,   A 94103
415-705-1337

---

**From:** Makhdoomi, Muzafar - FNS
**Sent:** Tuesday, May 6, 2025 3:01 PM
**To:** Makhdoomi, Muzafar - FNS <Muzafar.Makhdoomi@usda.gov>
**Cc:** Tobin, Charles - FNS <Charles.Tobin@usda.gov>
**Subject:** FNS - Data Sharing Guidance Letter & Executive Order 14243

Dear State  eaders,

Please see the attached FNS   Data Sharing Guidance letter that outlines the expectation for State agencies to provide authorization to SNAP EBT processors to work with and transmit SNAP data to the USDA. This request aligns with the signed Executive Order 14243, Stopping Waste, Fraud, and Abuse by Eliminating Information Silos (also attached).

For any questions or concerns, please contact Gina Brand, Senior Policy Advisor for Integrity at gina.brand@usda.gov.

 egards,
Muzafar

Muzafar Makhdoomi D M, M S , PhD, MP M, DA   PM
 egional Administrator
Western   egional Office



Food and Nutrition Service
90 Seventh Street, Suite 10-300
San Francisco,   A 94103
415-705-1337

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

## Sanctioned SNAP Applicants

| State | Total Sanctioned |
|---|---|
| Alaska | 205 |

| Reason for Sanction | Number Sanctioned for Reason | Number Referred to DoJ | DoJ Action (If Known) | Number Referred to DHS | DHS Action (If Known) | Notes |
|---|---|---|---|---|---|---|
| DF - Disqualified Fraud - Used for client convicted of fraud, a convicted ineligible felon, fleeing felon or convicted of SNAP trafficking | 33 | 0 | n/a | 0 | n/a | The data reflects a snapshot of the number of participants in sanctioned status as of April 2025. Due to system limitations, the specific dates when sanctions were implemented cannot be captured. The SNAP sanctioned data provided reflects current query limitations in the mainframe system. While every effort is being made to ensure completeness, there may be under-reporting due to these system constraints. |
| DI - Disqualified. Used for clients who fail to provide an SSN, who fails to delclare citizenship, ineligible aliens or an ineligible ABAWD | 166 | 0 | n/a | 0 | n/a | The data reflects a snapshot of the number of participants in sanctioned status as of April 2025. Due to system limitations, the specific dates when sanctions were implemented cannot be captured. The SNAP sanctioned data provided reflects current query limitations in the mainframe system. While every effort is being made to ensure completeness, there may be under-reporting due to these system constraints. |
| DJ - Disqualified Jobs. E&T non-compliance, comparable TANF non-compliance or voluntary job quit | 6 | 0 | n/a | 0 | n/a | The data reflects a snapshot of the number of participants in sanctioned status as of April 2025. Due to system limitations, the specific dates when sanctions were implemented cannot be captured. The SNAP sanctioned data provided reflects current query limitations in the mainframe system. While every effort is being made to ensure completeness, there may be under-reporting due to these system constraints. |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Disqualified SNAP Applicants

| State | Total Disqualifications |
|-------|-------------------------|
| Alaska | 12 |

| Reason for Disqualification | Number Disqualified for Reason | Number Referred to DoJ | DoJ Action (If Known) | Number Referred to DHS | DHS Action (If Known) | Notes |
|---|---|---|---|---|---|---|
| Intentional Program Violation - Waiver of Right to Hearing Signed | 7 | 0 | n/a | 0 | n/a | |
| Intentional Program Violation - Conviction/Theft | 1 | 0 | n/a | 0 | n/a | Prosecuted by Alaska Department of LAW. |
| Intentional Program Violation - Administrative Disqualification Hearing - Hearing Favorable | 4 | 0 | n/a | 0 | n/a | Under Alaska Administrative Code 7 AAC 49.330, the state employs an administrative disqualification process for Supplemental Nutrition Assistance Program (SNAP) fraud cases, which precludes referrals to the Department of |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | |
|---|---|
| **From:** | Bourne, Jacqueline - FNS |
| **To:** | Dablemont, Tracie L (DOH) |
| **Cc:** | Milbourne, Shaunte" - FNS; Smith, Barbara - FNS; Lancaster, Curwin - FNS |
| **Subject:** | RE: Verbal Notification Requirements |
| **Date:** | Thursday, May 8, 2025 12:34:31 PM |
| **Attachments:** | image001.png |

Hi Tracie-

Per 7 CFR 273.2(e) the interviewer must advise households of their rights and responsibilities during the interview, including the appropriate application processing standard and the households' responsibility to report changes.

State agencies no longer have interview waivers, however, when the interview waiver was in place the requirement to verbally explain the reporting requirements was waived.

Anytime benefits are issued on a case and the HH was not entitled/eligible to those benefits the SA is required to establish a claim.

The SA is not required to include the R&R language in the approval notice, however per 7 CFR 273.2(a)(1) the SA must have a procedure for informing persons who wish to apply for SNAP benefits about the application process and their rights and responsibilities.

7 CFR 273.10(g)(1)(i) **Notice of Eligibility:** If an application is approved, the State agency shall provide the household with written notice of the amount of the allotment and the beginning and ending dates of the certification period. The household shall also be advised of variations in the benefit level based on changes anticipated at the time of certification. If the initial allotment contains benefits for both the month of application and the current month's benefits, the notice shall explain that the initial allotment includes more than 1 month's benefits, and shall indicate the monthly allotment amount for the remainder of the certification period. The notice shall also advise the household of its right to a fair hearing, the telephone number of the SNAP office (a toll-free number or a number where collect calls will be accepted for households outside the local calling area), and, if possible, the name of the person to contact for additional information. If there is an individual or organization available that provides free legal representation, the notice shall also advise the household of the availability of the services. **The State agency may also include in the notice a reminder of the household's obligation to report changes in circumstance and of the need to reapply for continued participation at the end of the certification period. Other information which would be useful to the household may also be included.**

Jackie Bourne
Lead Program Specialist
SNAP | Operations
Western Regional Office



Food and Nutrition Services
415-293-3717

**From:** Dablemont, Tracie L (DOH) <tracie.dablemont@alaska.gov>
**Sent:** Thursday, May 8, 2025 11:52 AM
**To:** Bourne, Jacqueline - FNS <jacqueline.bourne@usda.gov>
**Cc:** Milbourne, Shaunte' - FNS <Shaunte'.Milbourne@usda.gov>; Smith, Barbara - FNS
<Barbara.Smith2@usda.gov>; Lancaster, Curwin - FNS <curwin.lancaster@usda.gov>; Dablemont,
Tracie L (DOH) <tracie.dablemont@alaska.gov>
**Subject:** RE: Verbal Notification Requirements

Good morning Jackie,

Just following up on this question.

Thank you, Tracie

**From:** Bourne, Jacqueline - FNS <jacqueline.bourne@usda.gov>
**Sent:** Thursday, April 17, 2025 9:05 AM
**To:** Dablemont, Tracie L (DOH) <tracie.dablemont@alaska.gov>
**Cc:** Milbourne, Shaunte' - FNS <Shaunte'.Milbourne@usda.gov>; Smith, Barbara - FNS
<Barbara.Smith2@usda.gov>; Lancaster, Curwin - FNS <curwin.lancaster@usda.gov>
**Subject:** RE: Verbal Notification Requirements

**CAUTION:** This email originated from outside the State of Alaska mail system. Do not
click links or open attachments unless you recognize the sender and know the content
is safe.

Hi Tracie-

We will review and get back to you on this. Looping in our TNI branch to the conversation as
well.

Thanks,

Jackie Bourne
Lead Program Specialist
SNAP | Operations
Western Regional Office



Food and Nutrition Services
415-293-3717

**From:** Dablemont, Tracie L (DOH) <tracie.dablemont@alaska.gov>
**Sent:** Thursday, April 17, 2025 9:28 AM
**To:** Milbourne, Shaunte' - FNS <Shaunte'.Milbourne@usda.gov>; Bourne, Jacqueline - FNS <jacqueline.bourne@usda.gov>
**Cc:** Dablemont, Tracie L (DOH) <tracie.dablemont@alaska.gov>
**Subject:** Verbal Notification Requirements

Good morning,

We are receiving fair hearing decisions from our Administrative Law Judges that say we cannot close a case for failure to submit an interim report if we did not verbally explain the requirement to the client as outlined in regulation. These cases are given written due diligence through the initial notice of needing an IR, the notice the IR has not been received and the IR closure notice. The IR requirement however is not always in the initial approval notice. I have a couple questions related to this.

1. If a state has an interview waiver in place, does that waiver also waive the various verbal notification requirements
2. When the judge orders us to issue benefits I believe that issued benefits should then have a claim established because they received proper requests for information. Can you confirm this is correct.
3. Is it a requirement of the approval notice to include language explaining the IR requirement?

Thank you,
Tracie Dablemont
Chief, Program Integrity and Analysis
907.310.4187

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

## Presidential Documents

Executive Order 14243 of March 20, 2025

### Stopping Waste, Fraud, and Abuse by Eliminating Information Silos

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered:

**Section 1**. *Purpose*. Purpose. Removing unnecessary barriers to Federal employees accessing Government data and promoting inter-agency data sharing are important steps toward eliminating bureaucratic duplication and inefficiency while enhancing the Government's ability to detect overpayments and fraud.

**Sec. 2**. *Definitions*. (a) "Agency" has the meaning given to it in section 3502 of title 44, United States Code, except that such term does not include the Executive Office of the President or any components thereof.

(b) "Agency Head" means the highest-ranking official of an agency, such as the Secretary, Administrator, or Director. With respect to multimember agencies, "Agency Head" means the Chairman or equivalent official.

**Sec. 3** *Eliminating Information Silos*. (a) Agency Heads shall take all necessary steps, to the maximum extent consistent with law, to ensure Federal officials designated by the President or Agency Heads (or their designees) have full and prompt access to all unclassified agency records, data, software systems, and information technology systems—or their equivalents if providing access to an equivalent dataset does not delay access—for purposes of pursuing Administration priorities related to the identification and elimination of waste, fraud, and abuse. This includes authorizing and facilitating both the intra- and inter-agency sharing and consolidation of unclassified agency records.

(b) Within 30 days of the date of this order, Agency Heads shall, to the maximum extent consistent with law, rescind or modify all agency guidance that serves as a barrier to the inter- or intra-agency sharing of unclassified information specified in subsection (a) of this section. Agency Heads shall also review agency regulations governing unclassified data access, including system of records notices, and, within 30 days of the date of this order, submit a report to the Office of Management and Budget cataloging those regulations and recommending whether any should be eliminated or modified to achieve the goals set forth in this order. Regulatory modifications pursuant to this order are exempt from Executive Order 14192.

(c) Immediately upon execution of this order, Agency Heads shall take all necessary steps, to the maximum extent consistent with law, to ensure the Federal Government has unfettered access to comprehensive data from all State programs that receive Federal funding, including, as appropriate, data generated by those programs but maintained in third-party databases.

(d) Immediately upon execution of this order and without limiting the above directives, the Secretary of Labor and the Secretary's designees shall receive, to the maximum extent consistent with law, unfettered access to all unemployment data and related payment records, including all such data and records currently available to the Department of Labor's Office of Inspector General.

(e) This order supersedes any prior Executive Orders and rules or regulations subject to direct Presidential rulemaking authority to the extent they

serve as a barrier to the inter- or intra-agency sharing of unclassified information as specified in this order.

(f) Agency Heads shall conduct a review of classified information policies to determine whether they result in the classification of materials beyond what is necessary to protect critical national security interests and, within 45 days of the date of this order, submit a report to the Office of Management and Budget cataloguing those classified information policies and recommending whether any should be eliminated or modified to achieve the goals set forth in this order.

**Sec. 4**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,
*Washington, March 20, 2025.*

[FR Doc. 2025–05214
Filed 3–24–25; 8:45 am]
Billing code 3395–F4–P



United States Department of Agriculture
Washington, D.C. 20250
May 6, 2025

Dear State Agency Directors,

On March 20, 2025, President Trump issued Executive Order 14243, *Stopping Waste, Fraud, and Abuse by Eliminating Information Silos*. Among myriad important directives, this Executive Order required agency heads to "take all necessary steps, to the maximum extent consistent with law, to ensure the Federal Government has unfettered access to comprehensive data from all State programs that receive Federal funding, including, as appropriate, data generated by those programs but maintained in third-party databases." The Department of Agriculture (USDA) is committed to effectuating this Executive Order with respect to all programs in its purview.

The Food and Nutrition Service (FNS) at USDA plays a key role in providing nutrition services to Americans in need through the Supplemental Nutrition Assistance Program (SNAP or the Program). SNAP, which is Federally funded, is administered by the States, districts, and territories through partnerships with FNS and several payment processors.

This distributed administration takes advantage of our federal system to enable States to meet the needs of their residents. However, as explained in the President's Executive Order, USDA must retain "unfettered access to comprehensive data" from federally funded programs like SNAP even if such data is "maintained in third-party databases." This is the only way to eliminate "bureaucratic duplication and inefficiency" and enhance "the Government's ability to detect overpayments and fraud."

At present, each State, district, territory, and payment processor is a SNAP information silo. These various entities maintain discrete collections of SNAP application, enrollment, recipient, and transaction data, each of which is necessary in ensuring the integrity of the Program. Thus, pursuant to the President's Executive Order and to confirm that SNAP is being administered appropriately and lawfully, USDA and FNS are working to eliminate these information silos.

7 U.S.C. 2020(a)(3) and (e)(8)(A) and 7 C.F.R. 272.1(c)(1) and (e) authorize USDA and FNS to obtain SNAP data from State agencies and, by extension, their contractors. FNS is therefore working with several SNAP payment processors to consolidate SNAP data. If they have not yet done so, your processors may reach out to you to provide notice of this partnership and data sharing.

FNS will use the data it receives from processors to ensure Program integrity, including by verifying the eligibility of benefit recipients. This is consistent with FNS's statutory authority and the President's Executive Order and will ensure Americans in need receive assistance, while at the same time safeguarding taxpayer dollars from abuse. Upon completion of its analysis, and to the extent necessary, FNS will follow up with State agencies regarding next steps.

Additionally, pursuant to, among other authorities, the President's Executive Order, 5 U.S.C. 553(a)(2), 7 U.S.C. 2020(a)(3), and 7 C.F.R. 272.1(e), USDA is taking steps to require all States to work through their processors to submit at least the following data to FNS, as applicable:

1. Records sufficient to identify individuals as applicants for, or recipients of, SNAP benefits, including but not limited to personally identifiable information in the form of names, dates of birth, personal addresses used, and Social Security numbers.
2. Records sufficient to calculate the total dollar value of SNAP benefits received by participants over time, with the ability to filter benefits received by date ranges.

Requested data will cover the period beginning January 1, 2020, through present. Please contact me at gina.brand@usda.gov with any questions related to this data sharing request.

Failure to grant processor authorizations or to take the steps necessary to provide SNAP data to FNS may trigger noncompliance procedures codified at 7 U.S.C. 2020(g).

Thank you for your continued work to help address the needs of vulnerable Americans and safeguard taxpayer dollars.

Sincerely,

Digitally signed by
GINA BRAND
Date: 2025.05.06
15:53:29 -04'00'

Gina Brand
Senior Policy Advisor for Integrity
United States Department of Agriculture
Food, Nutrition, and Consumer Services


U.S. DEPARTMENT OF AGRICULTURE

April 24, 2025

**TO:**   State SNAP Agencies

**FROM:**   John Walk
Acting Deputy Under Secretary for Food, Nutrition, and Consumer Services

**SUBJECT**:   Improving Eligibility Verification to Support Program Integrity

On February 19, 2025, President Donald J. Trump issued Executive Order 14218, declaring his "Administration will uphold the rule of law, defend against the waste of hard-earned taxpayer resources, and protect benefits for American citizens in need, including individuals with disabilities and veterans." Executive Order 14218 directs the United States Department of Agriculture (USDA) to "enhance eligibility verification systems, to the maximum extent possible, to ensure that taxpayer funded benefits exclude any ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States."

Further, Secretary Brooke Rollins sent a letter to State agencies and Tribal partners that shared her guiding principles for USDA nutrition assistance programs, including a commitment to "[t]ake swift action to minimize instances of fraud, waste, and program abuse" and "[c]larify statutory, regulatory, and administrative requirements."

In compliance with Executive Order 14128 and the Secretary's priority of program integrity, this memo sets the minimum expectations for eligibility verification to ensure that only individuals who meet all eligibility requirements obtain Supplemental Nutrition Assistance Program (SNAP) benefits and prevent "ineligible aliens" from participating in the program.

By law, only United States citizens and certain lawfully present aliens may receive SNAP benefits. The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Public Law 104-193) established that "aliens within the Nation's borders not depend on public resources to meet their needs." SNAP is not and has never been available to illegal aliens.

To ensure that tax dollars do not fund SNAP benefits to illegal aliens or other ineligible aliens, State agencies should carefully examine their identity and immigration status verification practices and make necessary enhancements.

At minimum, State agencies must do the following:
- Verify identity of the applicant (i.e., the intended beneficiary is who they claim to be) and should do so before proceeding to confirm immigration status;
- Collect and verify social security numbers (SSNs) for all household members applying for SNAP benefits;
- Compare SSNs to the Social Security Agency's Death Master File and also use any available information to confirm the SSN belongs to the person who submits it as his or her own.

Office of the Under Secretary for Food, Nutrition, and Consumer Services
1400 Independence Avenue, SW, Washington, DC 20250-9600
USDA is an equal opportunity provider, employer, and lender.

- Query the Department of Homeland Security (DHS) Systematic Alien Verification for Entitlements (SAVE) system for all alien applicants and complete all additional verification steps prompted by SAVE before determining that the individual meets the qualifying status requirements. State agencies are advised of a letter to Governors from Department of Homeland Security Secretary Kristi Noem that SAVE is now available at no cost and encouraging its use to confirm benefit eligibility;
- Collect immigration documents intended to show qualifying status during the initial application process rather than wait for a prompt from SAVE;
- Pursuant to 7 C.F.R. 273.2(f)(2)(i), and prior to certification of the household, verify United States citizenship for any applicant for whom there is an indicia that the applicant's claim to United States citizenship (whether natural born, naturalized, acquired, or derivative) is questionable through, at a minimum, use of the SAVE system.  States are advised DHS has established a mechanism to process a SAVE inquiry without the use of a unique DHS identifier for applicants that claim natural born United States citizenship.

To further enhance verification processes for identity and immigration status, the Food and Nutrition Service (FNS) strongly encourages State agencies to:

- Using 7 CFR 273.2(f)(3), mandate verification of all applicants' claims to United States citizenship by the applicant.
- Adopt the Identity Authentication State Option that allows applicants to authenticate their identity using a set of multiple-choice authentication questions, such as questions on high school attendance, prior addresses, or credit card use;
- States should review the effectiveness of eligibility interviews and their support of accurate eligibility determinations.  States should encourage greater use of in-person interviews;
- Discontinue the use of pre-populated application forms to avoid inadvertent carryover of incorrect information; and
- Use SAVE to continuously verify the immigration status of all aliens in the State participating in SNAP since immigration status can quickly change.  If changes to immigration status no longer supports a claim to being a qualified alien, SNAP benefits must be discontinued in accordance with program rules.

Receipt of SNAP by illegal aliens and other ineligible aliens is a serious program integrity concern. In 2024, USDA reported $10.5 billion in improper SNAP payments made in the preceding fiscal year alone. This represented nearly 12 percent of payments by SNAP. As reported by the Government Accountability Office (GAO), the failure by State agencies to verify program eligibility requirements was a main reason for improper payments. Citizenship and identity were two of seven examples of eligibility requirements that GAO found State agencies were not sufficiently verifying, leading to improper payments.

State agencies are advised that FNS will assess the effectiveness of identity and immigration status verification practices in regular management evaluations for program compliance. Among other factors, FNS will evaluate whether State agency processes are effective to verify identity and immigration status. Negative findings will result in issuance of corrective actions to ensure State agencies satisfy all statutory and regulatory requirements and that SNAP benefits are only provided to individuals eligible under existing law.

Benefit fraud is unacceptable in all forms, including use by illegal aliens. This guidance serves as a foundation for future compliance endeavors that will not only deter, but end access to benefits by illegal aliens. I appreciate your attention and assistance in making certain only those eligible receive SNAP benefits.

Sincerely,

JOHN WALK Digitally signed by JOHN WALK

John Walk
Acting Deputy Under Secretary
Food, Nutrition, and Consumer Services
United States Department of Agriculture