STEPHEN J. COX
ATTORNEY GENERAL
Lael A. Harrison (Alaska Bar No. 0811093)
Senior Assistant Attorney General
Department of Law
PO Box 110300
Juneau, AK 99811-300
Telephone: (907) 465-3600
Facsimile: (907) 465-2539
Email: lael.harrison@alaska.gov

Justin D. Nelson (Alaska Bar No. 1102007)
Senior Assistant Attorney General
Alaska Department of Law
100 Cushman Street, Suite 400
Fairbanks, AK 99701
Telephone: (907) 451-2811
Facsimile: (907) 451-2985
Email: justin.nelson@alaska.gov
Email: Fai.law.ecf@alaska.gov

David Wilkinson (Alaska Bar No. 1211136)
Senior Assistant Attorney General
Alaska Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Telephone: (907) 269-6612
Facsimile: (907) 258-4978
Email:  david.wilkinson@alaska.gov

*Attorneys for Defendant*

*John Andrew et. al. v. Heidi Hedberg*    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment    Page 1 of 41
Case 3:23-cv-00044-SLG  Document 102  Filed 09/02/25  Page 1 of 41

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 3:23-cv-00044-SLG |
| Heidi Hedberg, in her official capacity as Commissioner of the Alaska Department of Health, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.      INTRODUCTION

The SNAP Act at 7 U.S.C. §2020(e) does not create a private right enforceable under 42 U.S.C. §1983 under standards newly articulated by the United States Supreme Court. Section 2020(e) lists the many requirements for state plans for SNAP administration; the plaintiffs have sued to enforce five of them. In *Medina v. Planned Parenthood South Atlantic*, the United States Supreme Court recently found no private right to enforce a Medicaid state plan requirement.[1] The Court instructed that spending-power statutes must include "clear and unambiguous rights-creating language" to create private rights of

---

[1]      606 U.S. ---, 145 S.Ct. 2219 (2025).

*John Andrew et. al. v. Heidi Hedberg*
Defendant's Motion for Summary Judgment
Case No.: 3:23-cv-00044-SLG
Page 2 of 41
Case 3:23-cv-00044-SLG   Document 102   Filed 09/02/25   Page 2 of 41

action.[2] No such language appears the subsections of §2020(e) on which plaintiffs rely. At best, the subsections use mandatory and individual centric language, which the Supreme Court has clarified may show intent to confer a benefit, but which is not sufficient to create individually enforceable rights. Because the statutory provisions do not create enforceable private rights, regulations implementing those provisions cannot do so independently. This Court should grant this Motion for Summary Judgment and dismiss the plaintiffs' statutory and regulatory claims.

## II.    BACKGROUND:

### A.    States administer SNAP under approved state plans, subject to enforcement by the federal government for noncompliance.

SNAP is a federally funded benefit program, administered by states and intended "to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households."[3] In order to participate in SNAP, states must have a state plan approved by the United States Department of Agriculture ("USDA"), Food and Nutrition Services ("FNS") (referred to in the SNAP Act as "the Secretary.")[4] The SNAP Act sets out requirements and options for state plans, listed in 7 U.S.C. §2020(e).[5]

---

[2]      *Id.* at 2233.

[3]      7 U.S.C. §2011.

[4]      7 U.S.C. §2020(d).

[5]      7 U.S.C. §2020(e) ("The State plan of operation required under subsection (d) of this section shall provide, among such other provisions as may be required by regulation…").

*John Andrew et. al. v. Heidi Hedberg*                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                    Page 3 of 41
Case 3:23-cv-00044-SLG    Document 102    Filed 09/02/25    Page 3 of 41

Plaintiffs have sued the State of Alaska Department of Health ("DOH") to privately enforce certain provisions of §2020(e), specifically those relating to the timeframe for processing initial applications, expedited applications and recertification applications; the ability of households to apply for SNAP on their first in-person contact with DOH; and the translation and interpretation of SNAP-related materials for households with limited English proficiency.[6]

Regarding the timeframe for processing applications, §2020(e)(3) requires that state plans provide "that the State agency shall … promptly determine the eligibility of each applicant household … not later than thirty days following its filing of an application." Once a household is determined eligible, the state must re-certify the household for additional certification periods. Section (e)(4) requires that state plans provide

> that each such household which … fil[es] an application for … recertification no later than fifteen days prior to the day upon which its existing certification period expires shall, if found to be still eligible, receive its allotment no later than one month after the receipt of the last allotment issued to it pursuant to its prior certification.

Section 2020(e)(9) requires special state plan provisions for households with very limited income and resources, commonly referred to as "expedited" applications. State plans must provide "that the State agency shall [] provide benefits no later than 7 days after the date of application to any household which" meets the criteria for expedited processing.[7]

---

[6] Class Action Complaint, Dkt. 1-1 (March 1, 2023) ("Complaint") at 39-40.

[7] 7 U.S.C. §2020(e)(9).

*John Andrew et. al. v. Heidi Hedberg*
Defendant's Motion for Summary Judgment
Case No.: 3:23-cv-00044-SLG
Page 4 of 41
Case 3:23-cv-00044-SLG    Document 102    Filed 09/02/25    Page 4 of 41

Sections 2020(e)(1) and (2) contain the requirements for state plans that form the basis for the plaintiffs' first contact filing and language access claims. Subsection (1) requires that state plans provide

> that the State agency shall … comply with regulations of the Secretary requiring the use of appropriate bilingual personnel and printed material in the administration of the program in those portions of political subdivisions in the State in which a substantial number of members of low-income households speak a language other than English.

The plaintiffs also rely on §2020(e)(2), which begins with the following general mandate in subsection (A): "the State agency shall establish procedures governing the operation of supplemental nutrition assistance program offices that the State agency determines best serve households in the State." Regarding language access, it goes on to say: "including … households in areas in which a substantial number of members of low-income households speak a language other than English."

Regarding first contact filing, subsection (2)(B) states: "In carrying out subparagraph (A), a State agency… (iii) shall permit an applicant household to apply to participate in the program on the same day that the household first contacts a supplemental nutrition assistance program office in person during office hours."

Congress also set out the potential consequences for a state's failure to comply with its state plan. Section 2020(g) gives significant deference to FNS and the U.S. Attorney General regarding how to enforce the state plan requirements of Section 2020(e). However, Congress did not make all noncompliance actionable by FNS—only noncompliance

*John Andrew et. al. v. Heidi Hedberg*                                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                    Page 5 of 41
          Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 5 of 41

"without good cause."[8] When a state lacks good cause for a failure to comply with its state plan, FNS "shall immediately inform such State agency of such failure and shall allow the State agency a specified period of time for the correction of such failure."[9] If the state does not correct its failure within that specified time, FNS "may refer the matter to the Attorney General with a request that injunctive relief be sought to require compliance forthwith by the State agency."[10] Regardless of whether FNS refers the matter to the Attorney General, "the Secretary shall proceed to withhold from the State such funds authorized … [by] this title as the Secretary determines to be appropriate."[11]

Thus, in the SNAP Act Congress has set out both the required provisions for state plans and the enforcement mechanisms for states that fail to comply with their plans without good cause. Those enforcement mechanisms include both injunctive relief and withholding federal funding. The SNAP act gives significant discretion to FNS and the U.S. Attorney General regarding how to best to proceed.

### B. FNS has been working with Alaska to enforce its state plan provisions regarding timely application processing since early 2023.

DOH has experienced delays in processing SNAP applications and recertifications, which has led to FNS imposing a Corrective Action Plan ("CAP"). FNS closely monitors DOH's compliance with that CAP and reviews other aspects of DOH's administration of

---

[8]      7 U.S.C. §2020(g).

[9]      *Id.*

[10]     *Id.*

[11]     *Id.*

*John Andrew et. al. v. Heidi Hedberg*                                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                              Page 6 of 41
          Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 6 of 41

the SNAP program. FNS has fined Alaska for SNAP administration issues unrelated to this litigation. But FNS has not imposed a CAP related to filing on first contact or language access.

In the fall of 2022, DOH experienced a severe backlog in processing SNAP applications and recertifications.[12] Although DOH has since made significant progress in improving its application processing timeliness, DOH has yet to achieve the 95% application processing timeliness rate desired by FNS.[13] In early 2023, FNS issued an advance warning letter to DOH regarding the initial application processing backlog.[14] FNS demanded that DOH enter into a CAP, subject to FNS approval.[15] FNS did not accept DOH's first proposal for a CAP, but required additional submissions by DOH before approving the CAP in April of 2023.[16] FNS has since amended that CAP by requiring

---

[12]     Affidavit of Deb Etheridge in Support of Motion for Stay, Dkt. 17-2 (Nov. 9, 2023) at 3.

[13]     *See* Attachment 3 to Report on Compliance with Court-Ordered Requirements, Dkt. 100-4 (July 31, 2025) at 7 (showing DOH's application processing timeliness rates since early 2023); Exhibit 1 to Motion for Stay, Dkt. 17-1 (Nov. 9, 2023) at 1 ("While State agencies are required to process all SNAP applications within the timelines provided in the statute, FNS considers an [application processing timeliness] rate of 95 percent and above acceptable performance").

[14]     Exhibit 3 to Motion for Stay, Dkt. 17-1 (Nov. 9, 2023) at 23-26.

[15]     *Id*.

[16]     Exhibit 2 to Motion for Stay, Dkt. 17-1 (Nov. 9, 2023) at 17-22 (FNS approved CAP, pages 20-22 include original submission, FNS National Office Comments, FNS Western Region Office Comments, and state responses).

*John Andrew et. al. v. Heidi Hedberg*                                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                         Page 7 of 41

additional data reporting,[17] setting specific benchmarks for improvement,[18] and by adding requirements for recertification timeliness.[19] The CAP demonstrates careful consideration of the causes of noncompliance and targeted solutions; it is not just an enforcement mechanism, but a plan for systemic change developed by a collaboration of state and federal experts.

FNS has engaged closely with DOH regarding this CAP from early 2023 through the present. FNS has required monthly, and sometimes weekly, data reporting according to specific formats.[20] FNS has conducted multiple site visits with DOH in Alaska.[21] FNS has met with DOH regularly, typically on a weekly or bi-weekly basis, to review and discuss

---

[17]     Exhibit 7 to Motion for Stay, Dkt. 17-1 (Nov. 9, 2023) at 55-56.

[18]     Report on Compliance with Court-Ordered Requirements, Dkt. 80-1 (Feb. 3, 2025) at 18.

[19]     Attachment 1 to Report on Compliance with Court-Ordered Requirements, Dkt 97-2 (June 2, 2025) at 1-5.

[20]     Declaration of Tracie Dablemont in Support of Motion for Stay, Dkt. 17-3 (Nov. 9, 2023) at 4; Exhibit A to Opposition to Motion for Preliminary Injunction, Dkt. 46-2 (June 12, 2024); Declaration of Tracie Dablemont in Support of Opposition to Motion for Preliminary Injunction, Dkt. 46-10 (June 12, 2024), Attachment 1 to Report on Compliance with Court-Ordered Requirements, Dkt 97-2 (June 2, 2025) at 4 ("The division will continue to submit monthly RPT data to FNS using the SNAP Timeliness Protocol").

[21]     Declaration of Tracie Dablemont in Support of Motion for Stay, Dkt. 17-3 (Nov. 9, 2023); Declaration of Tracie Dablemont in Support of Motion for Summary Judgment (September 2, 2025).

*John Andrew et. al. v. Heidi Hedberg*                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                    Page 8 of 41
              Case 3:23-cv-00044-SLG    Document 102    Filed 09/02/25    Page 8 of 41

implementation of FNS's recommendations.[22] This is all in addition to ad-hoc, informal advice and communication by phone and email.[23]

FNS has not referred DOH to the U.S. Attorney General to seek any injunctions, nor has FNS taken action to withhold any federal funding from DOH. Separate and apart from its enforcement of timely application processing, however, FNS has imposed significant monetary penalties due to Alaska's rate of erroneous benefits overpayments. FNS fined the State approximately $12,000,000 in penalties for errors in 2023, and FNS has again recently fined Alaska approximately $4,600,000 for 2024.[24]

FNS has conducted additional reviews of other aspects of DOH's administration of the SNAP program and found no violations.[25] Notably, FNS has never included compliance with state plan provisions regarding first contact filing in any DOH CAP.[26] FNS has also never determined that Alaska is out of compliance with its state plan regarding language access. In 2018, the FNS Civil Rights Division opened an investigation of DOH's language

---

[22] Declaration of Tracie Dablemont in Support of Motion for Stay, Dkt. 17-3 (Nov. 9, 2023); Declaration of Tracie Dablemont in Support of Motion for Summary Judgment (September 2, 2025).

[23] Declaration of Tracie Dablemont in Support of Motion for Stay, Dkt. 17-3 (Nov. 9, 2023); Declaration of Tracie Dablemont in Support of Motion for Summary Judgment (September 2, 2025).

[24] *See* Attachment 1 to Report On Compliance with Court-Ordered Requirements, Dkt. 100-2 (July 31, 2025); Exhibit B.

[25] Attachment 1 to Report on Compliance with Court-Ordered Requirements, Dkt 99-2 (July 1, 2025) p. 2.

[26] Declaration of Tracie Dablemont in Support of Motion for Summary Judgment (September 2, 2025).

*John Andrew et. al. v. Heidi Hedberg*
Defendant's Motion for Summary Judgment
Case No.: 3:23-cv-00044-SLG
Page 9 of 41
Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 9 of 41

access program, and although the investigation was never formally closed, FNS has taken no action on it since July 2023.[27]

### C. The plaintiffs seek to privately enforce the SNAP Act's state plan requirements.

In January 2023, various individual plaintiffs sued DOH under 42 U.S.C. §1983 and 7 U.S.C. §2020(e) requesting declaratory and injunctive relief to compel DOH to process all SNAP applications on time, to allow households to apply for SNAP on first in-person contact with DOH, and to provide certain notices and materials to applicants and beneficiaries in translation, without specifying particular languages or geographic areas.[28] They also sued for enforcement of various regulations implementing those provisions of §2020(e), including a requirement not contained in statute that DOH send notices to households whose application processing is delayed.[29]

The parties stipulated to certification of a timeliness class and a first-contact-filing class, but DOH opposed certification of a language-access class.[30] This Court denied certification, so the language-access claims are not class claims.[31] They are personal to Ms.

---

[27]    Exhibit 1 to Affidavit of Counsel in Support of Motion for Class Certification and Preliminary Injunction (Dkt. 7-13 at 9-21); Declaration of Jason Burke in Support of Motion for Summary Judgment (September 2, 2025).

[28]    Complaint at 45.

[29]    Complaint at 39-40.

[30]    Stipulation on Class Certification, Dkt. 13 (May 2, 2023).

[31]    Order Denying Motion for Class Certification, Dkt. 38 (May 15, 2024).

*John Andrew et. al. v. Heidi Hedberg*                                      Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                              Page 10 of 41
Case 3:23-cv-00044-SLG    Document 102    Filed 09/02/25    Page 10 of 41

Moroz and, even if proven, may seek only translation of notices and materials into Russian (Ms. Moroz's primary language).[32]

The plaintiff class sought a preliminary injunction regarding their timeliness claims, which this Court granted.[33] The preliminary injunction requires DOH to process initial and recertification applications on time, but also recognizes "that immediate compliance is untenable."[34] Therefore, the Court ordered DOH to file monthly reports "show[ing] progress towards compliance and sustained efforts to address the problems hindering compliance," which DOH has done.[35]

This Court also held that the SNAP Act grants applicants a right to a fair hearing if their applications remain unprocessed beyond the timeliness standards of §2020(e).[36] The State disagrees with that decision, and reserves the right to appeal it in future, but recognizes it as the law of the case in this litigation. In any event, there is no dispute that *state* regulation provides applicants with the opportunity for a fair hearing if their application is "not acted upon with reasonable promptness."[37] This Court ordered DOH to immediately begin "provid[ing] written notice and opportunity to request a fair hearing" to

---

[32]    Complaint at 36-37.

[33]    Order Re Motion for Preliminary Injunction, Dkt. 77 (Dec. 31, 2024).

[34]    *Id.* at 31.

[35]    *Id.*

[36]    *Id.* at 18-19.

[37]    7 AAC 49.020.

*John Andrew et. al. v. Heidi Hedberg*                                            Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                                    Page 11 of 41
                Case 3:23-cv-00044-SLG    Document 102    Filed 09/02/25    Page 11 of 41

applicants who have not had their applications "processed within the mandated timeframes," which DOH has done. [38]

Although neither party addressed it in the briefing, this Court's Order stated: "Courts have also recognized a private right of action pursuant to 42 U.S.C. §1983."[39] This Court cited the following cases in support of that statement: *Briggs v. Brembly*, 792 F.3d 239, 245-46 (2d Cir. 2015); *Gonzalez v. Pingree*, 821 F.2d 1526, 1531 (11th Cir. 1987); *Victorian v. Miller*, 813 F.2d 718, 724 (5th Cir. 1987); *Barry v. Lyon*, 834 F.3d 706, 717 (6th Cir. 2016); *Garnett v. Zeilinger*, 323 F. Supp. 3d 58, 71-73 (D.D.C. 2018).[40]

Litigating this case, including preparing and submitting monthly reports, has imposed a significant burden in both time and expense on DOH and the State of Alaska.[41] State agency staff have produced tens of thousands of pages of discovery, sat for four depositions, provided affidavits and declarations, and now expend hours each month producing court reports.[42] As addressed in those reports, DOH is understaffed, so time working on this litigation comes at the expense of time that would otherwise be dedicated to substantive matters of DOH operations, including administering SNAP.

---

[38]   Dkt. 77 at 30-31.

[39]   *Id.* at 3.

[40]   *Id.*

[41]   *See* Declaration of Deb Etheridge in Support of Defendant's Motion for Summary Judgment, September 2, 2025; Exhibit A (deposition notices, and most recent supplemental production through Bates Number 32,975).

[42]   *Id.*

*John Andrew et. al. v. Heidi Hedberg*                                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                          Page 12 of 41
Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 12 of 41

**D.** **In *Medina v. Planned Parenthood South Atlantic*, the United States Supreme Court recently clarified the test for inferring private causes of action from federal spending statutes.**

On June 26, 2025, the United States Supreme Court decided *Medina v. Planned Parenthood South Atlantic*, holding that a state plan requirement of the Medicaid Act did not create a private right enforceable under 42 U.S.C. §1983.[43] 42 U.S.C. §1983 allows a private party to sue to enforce rights created by the federal constitution or federal law. But in *Medina,* the Supreme Court cautioned that "federal statutes do not confer 'rights' enforceable under §1983 'as a matter of course.' That is particularly true of statutes … enacted pursuant to Congress's spending power."[44]

In *Medina*, the Supreme Court described "how to determine whether a statute confers an individually enforceable right under §1983," as follows:

> To prove that a statute secures an enforceable right, privilege, or immunity, and does not just provide a benefit or protect an interest, a plaintiff must show that the law in question *clearly and unambiguously uses rights-creating terms*. In addition, the statute must display an unmistakable focus on individuals like the plaintiff.[45]

The Court also explained that, even in the rare case that statutory language satisfies this "stringent and demanding" test, "a §1983 action still may not be available if Congress has displaced §1983's general cause of action with a more specific remedy."[46]

---

[43]     606 U.S. ---, 145 S.Ct. 2219 (2025).

[44]     *Id.* at 2227 (citations omitted).

[45]     *Id.* at 2229 (emphasis added).

[46]     *Id.* (citations omitted, cleaned up).

*John Andrew et. al. v. Heidi Hedberg*                                              Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                                          Page 13 of 41
                   Case 3:23-cv-00044-SLG    Document 102    Filed 09/02/25    Page 13 of 41

The Supreme Court further explained that spending-power statutes like Medicaid are "especially unlikely" to confer individual rights.[47] Congress's spending power does not "include the power to issue direct orders to the governments of the States."[48] Thus, spending-power statutes are more akin to contracts, or even treaties, between the federal government and the states: "while treaties may seek to benefit the citizens of the compacting nations, they generally do not confer individually enforceable rights against a sovereign, but depend for the enforcement of their provisions on the governments which are parties to them."[49] Thus "congress alone has the power to enforce the conditions it attaches to its grants."[50]

The Supreme Court explained that the "stringent and demanding test" for finding enforceable rights in spending-power statutes recognizes Congress's role in resolving public policy issues, including whether to create rights that might force states to shoulder the expense of defending against private lawsuits:

> [T]he decision whether to let private plaintiffs enforce a new statutory right poses delicate questions of public policy. New rights for some mean new duties for others. And private enforcement actions, meritorious or not, can force governments to direct money away from public services and spend it instead on litigation. The job of resolving how best to weigh those competing costs and benefits belongs to the people's elected representatives, not unelected judges charged with applying the law as they find it.[51]

---

[47]    *Id.* at 2230.

[48]    *Id.* (cleaned up).

[49]    *Id.* at 2231 (citations omitted, cleaned up).

[50]    *Id.*

[51]    *Id.* at 2229.

*John Andrew et. al. v. Heidi Hedberg*                                      Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                                 Page 14 of 41
Case 3:23-cv-00044-SLG    Document 102    Filed 09/02/25    Page 14 of 41

The Supreme Court also clarified how to understand its prior precedent on this topic. The Court explicitly disavowed a trio of cases which allowed private causes of action under 42 U.S.C. §1983: *Wilder v. Virginia Hospital Association*, 496 U.S. 498, 110 S.Ct. 2510 (1990), *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 107 S.Ct. 766 (1987), and *Blessing v. Freestone*, 520 U.S. 329, 117 S.Ct. 1353 (1997).[52] The Court was very clear that these cases are no longer good law: "Some lower court judges…still consult *Wilder*, *Wright*, and *Blessing* when asking whether a spending-power statute creates an enforceable individual right. They should not."[53]

The Supreme Court reaffirmed its recent decision in *Health and Hospital Corporation of Marion County v. Talevski* as "the only reliable yardstick against which to measure whether spending-power legislation confers a privately enforceable right."[54] That case found a private right of action to enforce a spending-power statute that was phrased unambiguously in terms of nursing-home residents' "rights."[55]

In *Medina*, the Supreme Court found that the Medicaid Act provision before it "looks nothing like" the unambiguous rights-creating language at issue in *Talevski*.[56] The provision of the Medicaid Act at issue in *Medina* sets out requirements for participating

---

[52]     *Id.* at 2233-34.

[53]     *Id.* at 2234 (citations omitted).

[54]     *Id.* (citing 599 U.S. 166, 143 S.Ct. 1444 (2023)).

[55]     *Id.*

[56]     *Id.*

*John Andrew et. al. v. Heidi Hedberg*                                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                          Page 15 of 41
Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 15 of 41

states' plans.[57] The Medicaid Act requires that a state's plan allow Medicaid patients to obtain services from any qualified provider of their choice.[58] Specifically, Medicaid state plans must

> provide that . . . any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services.[59]

When a state categorically excluded Planned Parenthood South Atlantic from the Medicaid program, that organization and one of its Medicaid-eligible patients sued.[60]

To determine whether that provision of the Medicaid Act allowed for a private enforcement action, the *Medina* Court began with the Act's plain language.[61] There was no doubt that the language "speaks to what a State must do to participate in Medicaid," and states that fail to comply could lose federal funding.[62] The Court held the language clearly "seeks to benefit both providers and patients."[63] But, as the Court explained, this is not enough to create a private cause of action: "missing from §1396a(a)(23)(A) is anything like [*Talevski's*] clear and unambiguous 'rights-creating language.'"[64]

---

[57]     *Id.* at 2227.

[58]     *Id.*

[59]     *Id.* at 2235 (quoting 42 U.S.C. §1396a(a)(23)(A)).

[60]     *Id.* at 2227.

[61]     *Id.* at 2235.

[62]     *Id.*

[63]     *Id.*

[64]     *Id.*

*John Andrew et. al. v. Heidi Hedberg*                                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                          Page 16 of 41
Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 16 of 41

Next, the Court highlighted where the provision appears in the Medicaid Act: namely, in the section that "outlines scores of things a state plan must include to qualify for federal finding."[65] This was different from *Talveski*, where the rights-creating language was set apart from other provisions.[66] The Court also noted that if the particular provision of the Medicaid state plan requirements created a private cause of action, then many other plan requirements would too.[67] Such an interpretation would inappropriately make private rights of action the norm rather than the exceptional, "atypical" case.[68]

In addition to directing what lower courts should consider when determining whether a spending-power statute creates a cause of action, the Supreme Court also addressed what lower courts should *not* consider. Specifically, courts should not consult legislative history.[69] This is because, in spending-power statutes, "the key is not what a majority of the Members of both Houses intend but what the States are clearly told."[70]

The Court also clarified that lower courts should not employ the test put forward by the dissenters, which asks whether a statute "uses 'compulsory' and 'individual centric terminology,'" and "evokes 'language classically associated with establishing rights.'"[71] The Court explained: "the dissent's test would risk obliterating the longstanding line

---

[65]     *Id.* at 2236.

[66]     *Id.*

[67]     *Id.*

[68]     *Id.*

[69]     *Id.*

[70]     *Id.* at 2236-37.

[71]     *Id.* at 2237.

*John Andrew et. al. v. Heidi Hedberg*                                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                          Page 17 of 41
Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 17 of 41

between mere benefits and enforceable rights."[72] The dissent's subjective test would enable courts to improperly find private rights of action "based on an unspoken judicial intuition that the provision before us is just more important than others."[73]

Finally, the Court clarified that the test is not about whether a private right of action is necessary to give teeth to statutory requirements. The "typical remedy" of termination of federal funding is "a realistic source of relief for violations" of the Medicaid Act, and not "too massive a remedy."[74] The Court also noted that cutting off funding is not, in fact, the only enforcement mechanism for a state plan provision if the state "has an administrative process that lets providers challenge their exclusion from the State's Medicaid program."[75]

The *Medina* Court concluded:

> For another thing still, if existing remedies prove insufficient, Congress can create new ones…. Of course, as we have observed, a decision like that comes with tradeoffs. At their best, individual suits under §1983 can vindicate plaintiffs' rights while pushing States to fulfill their obligations. But private enforcement does not always benefit the public, not least because it requires States to divert money and attention away from social services and toward litigation. And balancing those costs and benefits poses a question of public policy that, under our system of government, only Congress may answer.[76]

---

[72]    *Id.* at 2238.

[73]    *Id.*

[74]    *Id.* at 2239.

[75]    *Id.*

[76]    *Id.*

*John Andrew et. al. v. Heidi Hedberg*                              Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                        Page 18 of 41
Case 3:23-cv-00044-SLG    Document 102    Filed 09/02/25    Page 18 of 41

## III.    ARGUMENT

### A.    The plain language of the SNAP Act provisions at issue do not create privately enforceable rights under *Medina*.

*Medina* is on all fours with this case, and its analysis bars the plaintiffs' claims. Like the Medicaid Act in *Medina*, the SNAP Act is a spending-power statue that requires participating states to have an approved state plan. And like the *Medina* plaintiffs, the plaintiffs here seek to bring §1983 claims to enforce select provisions of the Act's state plan requirements. The relevant provisions of the SNAP Act contain no more unambiguous rights-creating language than the Medicaid Act provision in *Medina*. The plaintiffs cannot bring §1983 claims to enforce these provisions of the SNAP Act.

Like the Medicaid state plan statute at issue in *Medina*, §2020(e) does not order states to do anything other than to have an approved state plan for administering SNAP. As the Supreme Court noted in *Medina*, Congress's spending power does not include "the power to issue direct orders to the governments of the States."[77] The plaintiffs have sued under five provisions within the SNAP Act's lengthy list of state plan requirements.[78] This is obviously tenuous under *Medina*. The Supreme Court emphasized that private causes of action in federal spending statutes are "rare," making it highly improbable from the outset that 7 U.S.C. §2020(e) alone would contain *five* private causes of action.[79] In fact, the plain language of those provisions reveal no private causes of action.

---

[77]    *Id.* at 2230.

[78]    Complaint at 42-43 (demanding a declaration that DOH is in violation of 7 U.S.C. § 2020(e)(1)(B), (e)(2)(B)(iii), (e)(3), (e)(4), and (e)(9)).

[79]    *Medina*, 145 S.Ct. at 2228, 2229.

*John Andrew et. al. v. Heidi Hedberg*                Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                Page 19 of 41
Case 3:23-cv-00044-SLG    Document 102    Filed 09/02/25    Page 19 of 41

For their first contact filing and language access claims, the plaintiffs rely on 7 U.S.C. §2020(e)(1)(B), (2)(A) and (2)(B). None of these contain unambiguous rights-creating language. The basic command of these sections is for the state to "comply with [FNS] regulations" and "establish procedures…that the State agency determines best serve households in the State."[80] Contrary to an independently enforceable right, these provisions defer to both FNS and state agencies, relying on FNS to set policy by regulation and State agencies to determine specific procedures to use.

The language access provisions do not refer directly to individuals or households—rather, they refer to geographic areas. Section 2020(e)(1)(B) requires state plans to "provide . . . that the State agency shall . . . comply with regulations" that require the use of "appropriate" translated materials "in those portions of political subdivisions in the State in which a substantial number of members of low-income households speak a language other than English." And §2020(e)(2)(A) requires that state plans "provide . . . that the State agency shall . . . establish procedures" that the State determines will best serve households "in areas in which a substantial number of members of low-income households speak a language other than English." These sections use the subjective terms "appropriate" and "substantial," as well as providing services in "political subdivisions" and "geographic areas." "Households" are only indirectly referenced as way to identify the political subdivisions and geographic areas in question. This language is consistent with deference to FNS and states to both identify the applicable geographic areas and to determine what

---

[80]     7 U.S.C. 2020(e)(2)(A).

*John Andrew et. al. v. Heidi Hedberg*                                          Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                                          Page 20 of 41
            Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 20 of 41

services to provide in those areas. This language is inconsistent with a privately enforceable right.

In fact, even before *Medina,* at least one district court held that these provisions of §2020(e) did not create a cause of action, even under the now-defunct standards of *Wilder, Wright and Blessing.* That court stated: "This language does not suggest, much less mandate, an individual entitlement to bilingual services. This provision is simply intended to ensure that the State plan of operation include provisions to deal with counties with high populations of low income households whose language is other than English."[81]

The first contact filing provision is likewise deferential to states. The provision requires that state plans provide that a state agency shall, "in carrying out subparagraph (A)" (which requires "that the State agency shall establish procedures governing the operation of [SNAP] program offices that the State agency determines best serve households in the State"), "*permit* an applicant household" to apply for SNAP on its first in-person contact with the state agency.[82] The directive targets the state agency's creation of procedures. And the verb "permit" is consistent with conferral of a benefit, not exercise of a right (for example, states "permit" their citizens to drive but do not "permit" their citizens free speech).

The plaintiffs' timeliness claims rest on subsections (3), (4) and (9) of §2020(e):

(e) The State plan of operation … shall provide, among such other provisions as may be required by regulation:

---

[81]     *Almendares v. Palmer,* Not Reported in F.Supp.2d, 2002 WL 31730963 at *5 (N.D. Ohio 2002).

[82]     7 U.S.C. 2020(e)(2)(B) (emphasis added).

John Andrew et. al. v. Heidi Hedberg

*John Andrew et. al. v. Heidi Hedberg*                                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                          Page 21 of 41
          Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 21 of 41

(3) that the State agency shall … promptly determine the eligibility of each applicant household … so as to complete certification of and provide an allotment retroactive to the period of application to any eligible household not later than thirty days following its filing of an application…

(4) that the State agency shall insure that each participating household receive a notice of expiration of its certification prior to the start of the last month of its certification period advising the household that it must submit a new application in order to renew its eligibility for a new certification period and, further, that each such household which seeks to be certified another time or more times thereafter by filing an application for such recertification no later than fifteen days prior to the day upon which its existing certification period expires shall, if found to be still eligible, receive its allotment no later than one month after the receipt of the last allotment issued to it pursuant to its prior certification, …

(9) that the State agency shall— (A) provide benefits no later than 7 days after the date of application to any household which [meets asset and income requirements].

These subsections contain the "compulsory" term "shall" and "individual centric terminology" like "household," but *Medina* clarified this type of language is *not* sufficient to create privately enforceable rights under §1983.[83] "Compulsory" and "individual centric terminology" is evidence only of intent to confer a benefit and does not constitute unambiguous rights-creating language.[84] The subsections' use of "shall," and references to "each household" or "any household," simply show congressional intent to benefit those households. They do not create private causes of action.

The Medicaid Act provision at issue in *Medina* also used "shall," and referred to "any recipient."[85] This is analogous to the use of "shall" and "each household" in §§2020(e)(3) and (4) and "shall" and "any household" in §2020(e)(9). This is *not* analogous

---

[83]    *Medina*, 145 S.Ct. at 2237-38.

[84]    *Id.*

[85]    *Id.* at 2235 (quoting 42 U.S.C. § 1396a(a)(23)(A)).

*John Andrew et. al. v. Heidi Hedberg*
Defendant's Motion for Summary Judgment

to the multiple uses of the word "right" that the Court found sufficient to support a cause of action in *Talevski*.[86] Also like the Medicaid Act provision in *Medina*, §§2020(e)(3), (4), and (9) are undifferentiated sections of the long list of SNAP state plan requirements in §2020(e).[87] This is also different from *Talevski*, where the rights-creating provision was set apart from other provisions.[88]

Even the dissenters to *Medina* would require additional statutory language for these provisions to confer an enforceable right. The dissenter's test—rejected by the majority—would have required more than just compulsory and individual centric terminology; it would additionally have required "language classically associated with establishing rights."[89] The *Medina* dissenters pointed to the title of the relevant Medicaid section in the session laws: "free choice by individuals eligible for medical assistance."[90] The dissenters found that "free choice" unambiguously references the freedoms of the Bill of Rights.[91] The majority, however, found that the text of the statute—not the title—must contain unambiguous rights-creating language, and also suggested that even the phrase "free choice by patient guaranteed" would be insufficient to create a right enforceable under §1983.[92]

---

[86]    *Id.*

[87]    *Id.* at 2236.

[88]    *Id.* at 2235.

[89]    *Id.* at 2252 (Jackson, J., dissenting).

[90]    *Id.*

[91]    *Id.*

[92]    *Id.* at 2237.

*John Andrew et. al. v. Heidi Hedberg*          Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment          Page 23 of 41
Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 23 of 41

Here, §§2020(e)(3), (4) and (9) contain only compulsory and individual centric language; they do not contain any "language classically associated with establishing rights." So even the *Medina* dissenters would find no privately enforceable right here. That is to say: no member of the United States Supreme Court would find a private cause of action here, far less a majority. The words "shall" and "each household" or "any household" are not enough to confer a right enforceable under §1983.

Actually, in *Medina* the Supreme Court reversed the Fourth Circuit for relying on similar language to find a private cause of action.[93] The Fourth Circuit found a private right based on the Medicaid Act's references to "any individual" and to providers that provide "him" with service.[94] In reversing, the Supreme Court clarified that such language does not create enforceable private rights.

The Supreme Court emphasized that Congress knows how to use rights-creating language when it wishes to create rights.[95] In fact, §2020(e) uses language more classically associated with establishing rights in subsections unrelated to the plaintiffs' claims. The State expresses no opinion on whether it would pass the *Medina* test, but, for example, §2020(c), which is not part of the state plan requirements, states that "there shall be no discrimination by reason of race, sex, religious creed, national origin, or political affiliation" in "the certification of applicant households," and that State agencies' "administration of the program . . . shall be consistent with *the rights* of households under"

---

[93]     *Planned Parenthood South Atlantic v. Kerr*, 95 F.4th 152 (4th Cir. 2024).

[94]     *Id.* at 170.

[95]     *Medina*, 145 S.Ct. at 2235.

*John Andrew et. al. v. Heidi Hedberg*                                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                                    Page 24 of 41
Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 24 of 41

four listed civil rights acts.[96] That language is certainly stronger than the state plan requirements in §2020(e), and it reveals by contrast the obvious lack of rights-creating language in the provisions relied on by the plaintiffs.

Finally, if the language in the plaintiffs' cited subsections of §2020(e) were adequate to create private causes of action, then any number of §2020(e)'s other state plan requirements would too. But the Supreme Court instructed that private causes of action in spending statutes are the exception, not the rule.[97] The use of mandatory and individual centric language does not grant a privately enforceable right; it merely shows Congress's intent to confer benefits on those individuals. In fact, it would be impossible for Congress to set up a state-administered public benefit program without using some mandatory language to structure the program and some individual centric language to identify the intended beneficiaries. And it would be difficult for FNS to carry out its prerogative in §2020(g) to enforce the terms of a state's approved plan if §2020(e) did not use compulsory language. The correct interpretation of any mandatory or individual centric language in §2020(e) is that Congress meant to condition a State's participation in SNAP on the approval of a state plan that includes certain terms intended to benefit those households,

---

[96]     Emphasis added.

[97]     For example, §2020(e)(1)(C)(iii) sets out the provisions for state plans allowing telephonic applications, and almost uniformly uses such language: "A system [for telephonic applications] *shall* (I) record for further reference the verbal assent of *the household member*… (III) not deny or interfere with *the right of the household* to apply in writing…(IV) promptly provide to *the household member* a written copy of the completed application…."

*John Andrew et. al. v. Heidi Hedberg*                                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                          Page 25 of 41
Case 3:23-cv-00044-SLG    Document 102    Filed 09/02/25    Page 25 of 41

and that Congress intended in §2020(g) for FNS, not the households, to enforce those terms.

Section 2020(e) also contains provisions with mandatory and individual centric language that topically make no sense as conferring individual rights. For example, §2020(e)(8)(C) and (E) require that "[a]ll information obtained…from an applicant household shall be made available [to law enforcement]," and "the [information] of any member of a household shall be made available" to law enforcement. These provisions use the compulsory "shall" and individual centric "applicant household" and "member of a household." The terminology and sentence structure of this section is identical to the terminology and sentence structure of subsections (3), (4), and (9), but no one would understand this section to create a private right of action for a household to sue a state to force it to disclose the household's information to law enforcement. The difference between this subsection (8) and subsections (3), (4), and (9) is the substance—not the terminology. A household is more likely to want to enforce (3), (4), and (9) than (8), but Congress used the same basic terminology in all of them. The Supreme Court in *Medina* emphasized that courts must find the basis for a cause of action in statutory language, and the Court specifically cautioned against basing a cause of action on subjective judgment calls that some sections are just more important than others.[98]

---

[98]     *Medina*, 145 S.Ct. at 2238.

*John Andrew et. al. v. Heidi Hedberg*                                  Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                          Page 26 of 41
Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 26 of 41

**B.    The existence of alternate enforcement mechanisms contradicts the existence of a private cause of action.**

In *Medina*, the Supreme Court emphasized that the "typical remedy" for noncompliance with spending statutes is termination of federal funding.[99] No other remedy is contemplated or necessary to enforce federal spending statutes.[100] This was true in *Medina* even though there was no indication that the Centers for Medicaid and Medicare Services had made any effort to enforce the state plan provision at issue. The point is all the more compelling here. Not only does the SNAP Act provide that "typical remedy" for noncompliance, FNS has been actively engaged in comprehensive enforcement and oversight activities with DOH regarding application processing timeliness. There can be no question that §2020(g)'s enforcement provisions have teeth. Congress provided for federal enforcement of §2020(e)'s state plan provisions; it did not rely on individual causes of action.

Like the Medicaid Act in *Medina*, the SNAP Act does not require states to perfectly comply with their state plans. In *Medina*, the Supreme Court considered it relevant that the Medicaid Act only calls for termination of federal funding based on substantial noncompliance.[101] Similarly, the SNAP Act only calls for termination of federal funding for noncompliance "without good cause."[102] This provision undermines the idea that any individual has a right to specific compliance in his or her own instance—rather, FNS is

---

[99]      *Id.* at 2239.

[100]     *Id.*

[101]     *Id.* at 2235-36.

[102]     7 U.S.C. §2020(g).

*John Andrew et. al. v. Heidi Hedberg*                                      Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                              Page 27 of 41
            Case 3:23-cv-00044-SLG    Document 102    Filed 09/02/25    Page 27 of 41

empowered to determine the cause of individual or aggregate instances of noncompliance and only to take enforcement action absent good cause.[103] Before finding noncompliance, the SNAP Act contemplates FNS receiving information or conducting investigations, including investigations "initiate[d] upon receiving sufficient information evidencing a pattern of lack of compliance."[104] And FNS is required to notify State agencies of noncompliance and "allow . . . a specified period of time for the correction of such failure" before taking enforcement action.[105]

Further, in §2020(g) Congress specifically gave the U.S. Attorney General the power to seek an injunction, on referral by FNS, to require a state to comply with its state plan. But before the Attorney General can sue, FNS must have given the State agency a period of time to come into compliance.[106] This mechanism for the United States to seek injunctive relief contradicts the notion that the SNAP Act also empowered individuals to be able to seek such relief, immediately and regardless of good cause. Furthermore, the SNAP Act does not permit private individuals to usurp the power of FNS and the U.S. Attorney General in deciding whether to seek injunctions, for enforcement of what provisions, and on what terms. Interpreting §2020(e) to allow for private injunctions contravenes both the constraints on enforcement found in §2020(g), and the grant of authority to seek an injunction to the U.S. Attorney General.

---

[103]    *Id.*

[104]    *Id.*

[105]    *Id.*

[106]    *Id.*

*John Andrew et. al. v. Heidi Hedberg*                                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                            Page 28 of 41
              Case 3:23-cv-00044-SLG    Document 102    Filed 09/02/25    Page 28 of 41

FNS's authority to refer noncompliance to the U.S. Attorney General to seek an injunction is particularly noteworthy here, where FNS *is* actively pursuing various enforcement mechanisms against DOH, but has not elected to refer DOH to the U.S. Attorney General. Allowing the plaintiffs to proceed with this lawsuit gives them the power to override FNS's discretion and pursue an injunction despite FNS's choice not to do so. And with regard to the plaintiffs' first contact filing and language access claims, FNS has chosen not to pursue any enforcement activities in those areas—despite at one time investigating DOH's language access provisions. Allowing the plaintiffs to proceed with private enforcement of these state plan provisions forces DOH to divert resources towards these issues when FNS has chosen to focus on other issues or does not see the need for additional action on those issues.

A practical example of this problem can be found in the Preliminary Injunction's requirement that DOH send notices to all households experiencing delay in application processing.[107] All along, DOH was aware that federal regulation required it to send notices of delayed processing, but the agency's existing information technology made doing so highly administratively burdensome.[108] Therefore, DOH had intended to delay implementation of those notices until completion of its planned information technology

---

[107] Dkt. 77 (Dec. 31, 2024).

[108] *See* Opposition to Motion for Preliminary Injunction, Dkt. 46 (June 12, 2024) at 25-26; Declaration of Becca Stoval in Support of Opposition to Motion for Preliminary Injunction, Dkt. 46-9 (June 12, 2024) at 3.

*John Andrew et. al. v. Heidi Hedberg*          Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment          Page 29 of 41
Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 29 of 41

upgrades.[109] FNS elected to take no action regarding those notices, prioritizing other issues in its CAPs.

This Court granted the plaintiffs' requested injunction requiring DOH to immediately implement those notices, despite DOH's determination to delay and FNS's forbearance. DOH complied with the preliminary injunction, and doing so required interruption of other, higher-priority re-programming projects of DOH's information technology system.[110] This included a project to comply with FNS data reporting requirements.[111] While the SNAP Act may benefit households, it should not allow them to unilaterally reorder a state's compliance efforts away from FNS's priorities.

In addition to §2020(g)'s enforcement provisions, DOH has chosen to provide an administrative remedy for households to directly address application processing delays. Alaska regulation allows all initial, expedited, and recertification applicants to request a fair hearing when their applications are "unreasonably delayed", which DOH has interpreted to mean not processed within federal timeframes.[112] In *Medina*, affected individuals could not challenge the exclusion of their preferred health care provider from Medicaid through state or federal administrative processes.[113] Only the provider could

---

[109]    *Id.*

[110]    Report on Compliance with Court-Ordered Requirements, Dkt. 80-1 (Feb. 3, 2025) at 5 (describing delays in other programming efforts to comply with the court's order).

[111]    *Id.*

[112]    7 AAC 49.020.

[113]    *Medina*, 145 S.Ct. at 2239.

*John Andrew et. al. v. Heidi Hedberg*                                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                          Page 30 of 41
            Case 3:23-cv-00044-SLG    Document 102    Filed 09/02/25    Page 30 of 41

administratively appeal the provider's own exclusion from Medicaid to the state agency.[114] The *Medina* Court found that this state administrative process was sufficient to preclude a private cause of action.[115] Applying the reasoning of *Medina* here, DOH's administrative remedy directly available to affected individuals is a sufficient alternate remedy to preclude the existence of a private cause of action. And, as the Supreme Court pointed out, if Congress perceives the need for additional remedies, it can always create new ones.[116]

### C. Prior cases finding a private cause of action to enforce SNAP Act state plan requirements rely on the repudiated trio of *Blessing, Wright* and *Wilder*.

In its preliminary injunction order, this Court cited five cases in support of the existence of a private cause of action to enforce §2020(e), but each of those cases relies exclusively on the reasoning of *Blessing, Wright* and *Wilder*. In the Supreme Court's own words: "To the extent lower courts feel obliged, or permitted, to consider the … reasoning of *Wilder*, *Wright*, or *Blessing*, they should resist the impulse."[117] The SNAP Act cases that relied on them can no longer be considered persuasive. None of those cases looked for unambiguous rights-creating language as required by *Medina*.

---

[114]     *Id.* ("South Carolina has an administrative process that lets providers challenge their exclusion from the State's Medicaid program. That process can culminate with state judicial review—and, if necessary, with a petition for certiorari to this Court.") (citations omitted).

[115]     *Id.* In contrast, the overturned Fourth Circuit decision found the alternative administrative remedy insufficient because only the provider, and not the patient, could challenge the exclusion. *See Planned Parenthood South Atlantic*, 95 F.4th at 169.

[116]     *Medina,* 14 S.Ct. at 2239.

[117]     *Id.* at 2234.

*John Andrew et. al. v. Heidi Hedberg*                                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                              Page 31 of 41
          Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 31 of 41

The first case, *Briggs v. Bremby*, relied heavily on all three repudiated cases.[118] It applied the *Blessing* test and concluded the timeliness provisions of §2020(e) are "analogous to those in *Wright* and *Wilder*."[119] It also relied on the lack of state administrative process for individuals to challenge application processing delays, which further undermines its persuasiveness here, where DOH does offer such process.[120] Similarly, *Garnett v. Zeilinger* relied on the reasoning of *Blessing, Wilder*, and *Wright*, also finding that the timeliness provisions of §2020(e) "strongly resemble[] those at issue in *Wilder* and *Wright*."[121]

*Victorian v. Miller* relied heavily on *Wright*, and actually started from the presumption that a private cause of action exists to enforce all federal laws and that courts must look for evidence of Congressional intent to eliminate it.[122] That analysis is entirely the reverse of *Medina*'s stricture that Congress must affirmatively create private causes of action with "unambiguous rights-creating language," and that private causes of action to enforce spending-power statutes are "atypical exceptions."[123] It also relies on *Cannon v. University of Chicago*,[124] which was also explicitly repudiated by *Medina*.[125]

---

[118]    *Briggs v. Bremby*, 792 F.3d 239 (2nd Cir. 2015).

[119]    *Id.* at 245; *see also id.* at 242-43 (discussing *Blessing*).

[120]    *Id.* at 245; *see* 7 AAC 49.020.

[121]    *Garnett v. Zeilinger*, 323 F. Supp. 3d 58, 72 (D.D.C. 2018).

[122]    *Victorian v. Miller*, 813 F.2d 718, 721-22 (5th Cir. 1987).

[123]    *Medina*, 145 S.Ct. at 2236.

[124]    *Victorian,* 813 F.2d 720-22 (citing 441 U.S. 677, 99 S.Ct. 1946 (1979)).

[125]    *Medina*, 145 S.Ct. at 2230 n.1.

*John Andrew et. al. v. Heidi Hedberg*                                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                              Page 32 of 41
Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 32 of 41

The remaining two cases cited in the preliminary injunction order did not address application processing timeliness, but other provisions of §2020(e). *Gonzalez v. Pingree* relies almost exclusively on *Wright*, and also legislative history,[126] which *Medina* discourages.[127] *Barry v. Lyon* relies heavily on *Blessing*,[128] and also favorably cites *Harris v. Olszewski*,[129] which reached the opposite holding of *Medina*, finding a private cause of action in the same Medicaid choice-of-provider provision where *Medina* found none.[130]

The mere fact that these cases, together, find causes of action to enforce numerous subsections of §2020(e) undermines their collective reasoning. Together, these cases make private causes of action to enforce the state plan requirements in §2020(e) the norm, not the "atypical exception." That outcome is untenable under *Medina*. This Court should no longer rely on pre-*Medina* cases that found private causes of action in §2020(e). Those authorities deserve no weight because they were not based on unambiguous rights-creating language as required by *Medina*.

Moreover, there is no controlling Ninth Circuit precedent. The only Ninth Circuit case addressing private enforcement of a provision of the SNAP Act, *Withrow v.*

---

[126]     *Gonzales v. Pingree*, 821 F.2d 1526, 1528-30 (11th Cir. 1987) (addressing challenge to state policy of denying expedited SNAP benefits to households that missed an interview).

[127]     *Medina*, 145 S.Ct. at 2236-37.

[128]     834 F.3d 706, 716 (6th Cir. 2016) (challenging aspects of state's policy of SNAP disqualification for fleeing felons).

[129]     *Harris v. Olszewski*, 442 F.3d 456 (6th Cir. 2006).

[130]     *Barry v. Lyon*, 834 F.3d 706, 716 (6th Cir. 2016); *Medina*, 145 S.Ct. at 2255, n.7 (Jackson, J., dissenting).

*John Andrew et. al. v. Heidi Hedberg*                                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                              Page 33 of 41
          Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 33 of 41

*Concannon*, involves the requirement in §2020(e)(10) that state plans provide for fair hearings and a regulation requiring decisions within 60 days.[131] The question in that case was not the existence of a private cause of action, but rather whether the SNAP Act holds states to a standard of perfection in complying with this timeline, or only to a standard of "substantial compliance."[132] The case does not cite 42 U.S.C. §1983 or discuss the existence of a private cause of action. It is not directly controlling on the outcome of this motion.

However, even if *Withrow* were controlling precedent on the question of a private cause of action, it would be "clearly irreconcilable" with *Medina*.[133] *Medina* "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable."[134] *Withrow* discounts the SNAP Act's enforcement provisions regarding withholding federal funding: "We are not convinced, however, that the standard for termination of federal funding, a virtual death sentence for a state's program, is the appropriate one to define the rights of applicants and recipients of program benefits."[135] This is clearly irreconcilable with the Supreme Court's statement in *Medina*:

> This Court has specifically rejected the notion that the cut-off of funding is too massive a remedy to be a realistic source of relief for violations of [Medicaid Act state plan] provisions. To the contrary, this Court has called

---

[131]   *Withrow v. Concannon*, 942 F.2d 1385, 1387 (9th Cir. 1991) (citing 7 C.F.R. § 273.15(c)(1)).

[132]   *Id.* at 1387.

[133]   *Miller v. Gammie*, 335 F.3d 889, 892, 900 (9th Cir. 2003).

[134]   *United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011) (quoting *Miller*, 335 F.3d at 900).

[135]   *Withrow*, 942 F.2d at 1387.

*John Andrew et. al. v. Heidi Hedberg*                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                    Page 34 of 41
          Case 3:23-cv-00044-SLG    Document 102    Filed 09/02/25    Page 34 of 41

funding cutoffs the typical remedy when a grant recipient violates the terms of spending-power legislation.[136]

This Court is not required by the Ninth Circuit's decision in *Withrow* to find a private right of action in this case and cannot do so in contravention of *Medina*.

Finally, when the Supreme Court decided *Medina*, it understood that its decision would likely apply to the SNAP Act's application processing timeliness provisions in §2020(e), and that it was repudiating *Briggs v. Bemby*. In *Medina*, the Supreme Court favorably cited the United States' amicus curiae brief as offering examples of other spending-power statues that (if Planned Parenthood's argument prevailed) could improperly be read to create individual rights enforceable under §1983.[137] Among the citations offered by the United States was 7 U.S.C. §2020(e)(3) and *Briggs v. Bembry*:

> Treating [the Medicaid Act provision] as a Section 1983-enforceable provision would open the door for similar provisions—and the attendant line-drawing problems—in other Spending Clause statutes. The Food and Nutrition Act of 2008, 7 U.S.C. 2011 et seq., includes a long list of state-plan requirements mentioning individual "households," including that the State shall "promptly determine the eligibility of each applicant household" for supplemental nutrition assistance benefits. 7 U.S.C. 2020(e)(3); see *Briggs v. Bremby*, 792 F.3d 239 (2d Cir. 2015) (finding Section 1983-enforceable right).... Respondents' theory offers no way to distinguish between these provisions.[138]

---

[136]    *Medina*, 145 S.Ct. at 2239 (internal citations omitted, cleaned up).

[137]    *Id.*

[138]    Brief of the United States as Amicus Curiae Supporting Petitioner, 2025 WL 496923, at 29 (Feb. 10, 2025).

*John Andrew et. al. v. Heidi Hedberg*                                Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                      Page 35 of 41
Case 3:23-cv-00044-SLG    Document 102    Filed 09/02/25    Page 35 of 41

**D.   The plaintiffs cannot sue under §1983 to enforce FNS regulations because only Congress can confer rights enforceable under §1983, not administrative agencies.**

Only Congress can create private rights enforceable by 42 U.S.C. §1983—an administrative agency cannot do so by regulation.[139] Although language in a regulation may invoke a private right of action created by Congress in statute, a regulation may not create a privately enforceable right that Congress has not: "it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself."[140] Thus, the plaintiffs have no cause of action to independently enforce FNS regulations.

The SNAP Act contemplates FNS adopting regulations concerning the effective and efficient administration of states' SNAP programs—the Act does not contemplate FNS creating a framework for private enforcement of state plans. The SNAP Act instructs FNS to promulgate regulations as follows: "The Secretary shall issue such regulations consistent with this chapter as the Secretary deems necessary or appropriate for the effective and efficient administration of the supplemental nutrition assistance program."[141] Similarly, 7 U.S.C. 2020(e) states: "The State plan of operation required under subsection (d) of this section shall provide, among such other provisions as may be required by regulation…."[142]

---

[139]   *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).

[140]   *Id.*

[141]   7 U.S.C. §2013.

[142]   This also supports reading the statutory state plan requirements as not creating private causes of action. The SNAP Act requires State agencies to comply with state plan

*John Andrew et. al. v. Heidi Hedberg*                                 Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                          Page 36 of 41
          Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 36 of 41

Those instructions are not consistent with the notion that FNS regulations would be enforceable by anyone other than FNS or the U.S. Attorney General.

And the overall structure of the regulations enacted by FNS are consistent with those instructions. They do not contemplate the existence of private rights of action to enforce them. For example, the regulations contain substantial additional detail regarding FNS's process for enforcing the SNAP Act and its own regulations.[143] These provisions give significant discretion for FNS to determine whether to take enforcement action, what types of enforcement actions to take, on what schedule, and so forth. This discretion is contrary to the idea that state agencies might also face lawsuits from individual households—which could short-circuit FNS's discretionary choices and force immediate compliance with one state plan requirement notwithstanding FNS prioritizing others or deciding to give a state more time to come into compliance with that requirement.

Also, in 7 C.F.R. §272.3, FNS establishes its authority to waive state plan requirements in its discretion. A private cause of action to enforce state plan requirements would nullify FNS's authority to waive them and undermine FNS's enforcement discretion. The regulations cannot be read to allow for the existence of private causes of action.

The text of the specific regulations invoked by the plaintiffs are generally also inconsistent with private enforcement. To be sure, because the statutory text of the SNAP

---

terms whether set out in the Act or by regulation. *See* 7 U.S.C. 2020(g). The fact that the Act treats statutory state plan requirements the same as those found in regulation, and that regulations cannot independently create private causes of action, indicates that the statutory requirements likewise do not.

[143]    *See, e.g.*, 7 C.F.R. §§ 275.3, 275.16, 276.5, 276.4(d).

*John Andrew et. al. v. Heidi Hedberg*                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment              Page 37 of 41
        Case 3:23-cv-00044-SLG    Document 102    Filed 09/02/25    Page 37 of 41

Act does not create private rights enforceable under §1983, the regulations cannot do so independently. It therefore is of no consequence that, for example, the regulation interpreting §2020(e)'s first contact filing provision is phrased in terms of "rights"—that regulatory text cannot create a right when §2020(e)(1)(B) does not.[144] The statutory language controls the analysis, not the regulatory language chosen by FNS.

And the FNS regulations regarding timely application processing are not consistent with the existence of a private cause of action, in any case. In particular, 7 C.F.R. 273.2(h) describes what happens if a state agency does not meet timely application processing standards: the state agency must issue the household a notice of agency-caused delay. FNS considered what should happen if a state violated the application processing timelines of its state plan and created this process. This specific process for households affected by agency-caused delay runs counter to the existence of a private cause of action. Moreover, the regulations create a process for FNS to receive complaints about a state's compliance with FNS regulations.[145] That aligns with FNS having the discretion to determine enforcement based on evidence such as "information received by the Secretary" or the results of an FNS "investigation . . . initiate[d] upon receiving sufficient information

---

[144]     *Compare* 7 C.F.R. §273.2(c)(1)(iii) ("Right to same-day filing. Each household has the right to file an application form on the same day it contacts the SNAP office during office hours"); *and* 7 U.S.C. 2020(e)(1)(B) ("a State agency… shall permit an applicant household to apply to participate in the program on the same day that the household first contacts a [SNAP] office in person during office hours.").

[145]     *See* 7 C.F.R. §271.6 (setting out state and federal processes for addressing "Complaints regarding such areas as processing standards and service to participants and potential participants").

*John Andrew et. al. v. Heidi Hedberg*                                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                              Page 38 of 41
            Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 38 of 41

evidencing a pattern of lack of compliance by a State agency."[146] It is not at all consistent with the existence of a private cause of action to directly enforce those regulations in court.

The regulations regarding language access are also inconsistent with the existence of a private right of action; they are highly deferential to the state agency. The regulations call for the state agency to conduct its own assessment to determine what levels of language access services to provide in what languages and in what geographical areas.[147] This is inimical to the idea of a private right of enforcement, as the regulations do not guarantee any particular household in any particular geographic area any particular level of service in any particular language.[148]

### E. *Medina*'s policy reasons for avoiding inferred private causes of action in spending statutes apply here.

By filing this motion for summary judgment, DOH is not trying to shirk its responsibilities under the SNAP Act.[149] DOH accepted the responsibility of administering the federal program and is committed to achieving the federal standards for timely SNAP application processing. DOH will continue to work directly with FNS to achieve that compliance according to FNS's guidance and discretion.

---

[146]   7 U.S.C. 2020(g).

[147]   *See* 7 C.F.R.272.4(b) ("The State agency shall develop estimates of the number of low-income single-language minority households, both participating and not participating in the program, for each project area and certification office…").

[148]   *C.f. Medina*, 145 S.Ct. at 2235 (where Congress grants discretion to States, a private right of action is difficult to infer because "that would mean Congress ought to covey a right against the States in one breath but let States control its scope in the next").

[149]   *C.f. Haskins v. Stanton*, 794 F.2d 1273 (7th Cir. 1986).

*John Andrew et. al. v. Heidi Hedberg*                                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                              Page 39 of 41
          Case 3:23-cv-00044-SLG     Document 102     Filed 09/02/25     Page 39 of 41

DOH is filing this motion to avoid the burden and expense of this ongoing litigation, which diverts resources from its own efforts to improve its program and FNS's prioritization of compliance issues. DOH is also filing this motion to avoid the possibility of conflicting or inconsistent orders from this Court and from FNS, which has long been a very real fear of DOH.[150] Although this Court has suggested that it would take FNS directives into consideration when crafting relief,[151] the SNAP Act does not contemplate state agencies having to mediate between private plaintiffs and FNS in the first place. DOH's priorities for improving its program should be set by FNS and duly elected and appointed State officials, not private plaintiffs. The SNAP Act does not allow private plaintiffs to usurp FNS's authority and discretion to enforce Alaska's state plan.

Throughout this litigation, DOH has made its best efforts to work with the plaintiffs to resolve their concerns and to avoid conflicts between FNS and the demands of this lawsuit.[152] This is not a situation where a state has moved to dismiss while refusing to take any meaningful remedial action.[153] However, the litigation continues to divert DOH's limited resources. And the Supreme Court's recent decision in *Medina* makes clear that the plaintiffs have no private causes of action. This litigation must now end, and FNS's

---

[150]     *See, e.g.*, Motion for Stay, Dkt. 17 (Nov. 9, 2023).

[151]     *See* Order Re Pending Motions, Dkt. 24 (Feb 5, 2024) at 13.

[152]     *See, e.g.,* Report on Compliance with Court-Ordered Requirements, Dkt. 100-1 (July 31, 2025) at 7-9.

[153]     *C.f. Briggs v. Bremby,* 792 F.3d 239, 245-46 (2d Cir. 2015); *Booth v. McManaman*, 830 F.Supp.2d 1037 (D. Hawai'i 2011) ("This Court cannot simply defer to the wait-and-see approach advocated by Defendant").

*John Andrew et. al. v. Heidi Hedberg*                              Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                              Page 40 of 41

DOH is filing this motion to avoid the burden and expense of this ongoing litigation, which diverts resources from its own efforts to improve its program and FNS's prioritization of compliance issues. DOH is also filing this motion to avoid the possibility of conflicting or inconsistent orders from this Court and from FNS, which has long been a very real fear of DOH.[150] Although this Court has suggested that it would take FNS directives into consideration when crafting relief,[151] the SNAP Act does not contemplate state agencies having to mediate between private plaintiffs and FNS in the first place. DOH's priorities for improving its program should be set by FNS and duly elected and appointed State officials, not private plaintiffs. The SNAP Act does not allow private plaintiffs to usurp FNS's authority and discretion to enforce Alaska's state plan.

Throughout this litigation, DOH has made its best efforts to work with the plaintiffs to resolve their concerns and to avoid conflicts between FNS and the demands of this lawsuit.[152] This is not a situation where a state has moved to dismiss while refusing to take any meaningful remedial action.[153] However, the litigation continues to divert DOH's limited resources. And the Supreme Court's recent decision in *Medina* makes clear that the plaintiffs have no private causes of action. This litigation must now end, and FNS's

---

[150]     *See, e.g.*, Motion for Stay, Dkt. 17 (Nov. 9, 2023).

[151]     *See* Order Re Pending Motions, Dkt. 24 (Feb 5, 2024) at 13.

[152]     *See, e.g.,* Report on Compliance with Court-Ordered Requirements, Dkt. 100-1 (July 31, 2025) at 7-9.

[153]     *C.f. Briggs v. Bremby,* 792 F.3d 239, 245-46 (2d Cir. 2015); *Booth v. McManaman*, 830 F.Supp.2d 1037 (D. Hawai'i 2011) ("This Court cannot simply defer to the wait-and-see approach advocated by Defendant").

enforcement proceedings, along with the State's own consistent and sincere efforts to improve its SNAP program with the involvement of the Governor and Legislature, must be allowed to proceed without a parallel enforcement action by private attorneys general, never intended by Congress.

## IV.    CONCLUSION

The SNAP Act, 7 U.S.C. §2020(e)(1), (2), (3), (4) and (9), do not create private rights enforceable under 42 U.S.C. §1983, and therefore neither do the regulations implementing them. This Court should grant the State summary judgment on the plaintiffs' statutory and regulatory claims.

DATED: September 2, 2025.

STEPHEN J. COX
ATTORNEY GENERAL

By:     */s/ Lael A. Harrison*
Lael A. Harrison
Alaska Bar No. 0811093
David Wilkinson
Alaska Bar No. 1211136
Justin D. Nelson
Alaska Bar No. 1102007
Senior Assistant Attorneys General
Department of Law
Attorneys for Defendant

*John Andrew et. al. v. Heidi Hedberg*                    Case No.: 3:23-cv-00044-SLG
Defendant's Motion for Summary Judgment                  Page 41 of 41
            Case 3:23-cv-00044-SLG    Document 102    Filed 09/02/25    Page 41 of 41