Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700 (telephone)
(619) 699-2701 (fax)
Email: christopher.young@dlapiper.com

*Sean P. Fulton (Tex. Bar No. 24103727)
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201-2482
(214) 743-4572 (telephone)

(972) 692-7272 (fax)
Email: sean.fulton@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

*admitted pro hac vice*

**Attorneys for Plaintiffs**

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF ALASKA

| | |
|---|---|
| John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,<br><br>          *Plaintiffs*,<br><br>v.<br><br>Heidi Hedberg, in her official capacity As Commissioner of the Alaska Department of Health.<br><br>          *Defendant*. | **Case No. 3:23-cv-00044-SLG**<br><br>(Oral Argument Requested) |

## MEMEORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Everyone needs to eat. That is why Congress created the Supplemental Nutrition Assistance Program ("SNAP")—to serve as a critical safety net for the millions of low-income Americans that would otherwise be unable to meet their nutritional needs. Indeed, thousands of low-income Alaskans are eligible for and desperately need SNAP benefits so that they can feed themselves and their families. Yet, the Alaska Department of Health ("DOH" or Defendant) has consistently failed over multiple years to ensure the SNAP program operates as required by federal statutes and regulations and constitutional mandates of Due Process. Defendant's failure has caused—and continues to cause—many Alaskans to go hungry. Alaskans wait, on average, more than three months to get their benefits, despite the requirement that DOH render SNAP eligibility determinations in 30 days. DOH has failed to make offices and telephone lines accessible for Alaskans seeking SNAP, despite the requirement that individuals be able to apply for SNAP on first contact with the agency. Even worse, DOH fails to send a notice of delay to each impacted household when the processing of a SNAP application takes more than 30 days, despite the requirement to do so. In 2023, ten Alaskans impacted by these failures brought this lawsuit on behalf of themselves and the thousands of other Alaskans similarly situated against DOH alleging violations of the SNAP Act, the Federal Constitution, and the Alaska Constitution. This Court found Plaintiffs demonstrated a likelihood of success on the merits on the issues of DOH's ongoing failure to timely process SNAP applications and recertifications, and non-compliance with applicable

notice and hearing requirements set forth in the SNAP Act and its implementing regulations. Plaintiffs now ask this Court to render judgment in their favor based on the undisputed facts and law described below.

## STATUTORY AND REGULATORY SCHEME

Congress established the federally funded, state-administered Food Stamp Program in 1964 to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households" and to "permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation."[1] In 2008, the federal Food Stamp Program was renamed the Supplemental Nutrition Assistance Program ("SNAP") and the federal Food Stamp Act was renamed the Food and Nutrition Act of 2008.[2]

The federal government, through the United States Department of Agriculture's Food and Nutrition Service ("FNS"), provides funding to the states, including Alaska, to cover the cost of all SNAP benefits issued. The federal government also currently covers at least 50% of the state's cost to administer the program.[3]

---

[1] Pub. L. No. 88-525, § 2, 78 Stat. 703 (codified at 7 U.S.C. § 2011); *see also* 7 C.F.R. § 271.1 (stating general purpose and scope of SNAP program).
[2] Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, §§ 4001-4002, 122 Stat. 1651, 1853-60.
[3] 7 U.S.C. §§ 2013(a), 2019, 2025(a); 7 C.F.R. §§ 277.1(b), 277.4. Pursuant to provisions of Pub. L. No. 119-21 (2025), the state and federal share of these costs is anticipated to change in or after federal fiscal year 2027.

Federal law requires states to process applications and issue benefits timely to all eligible households.[4] Specifically, a "State agency shall . . . promptly determine eligibility of each applicant household by way of verification of income . . . so as to complete certification of and provide an allotment . . . to any eligible household not later than thirty days following its filing of an application."[5] Furthermore, a SNAP recipient seeking recertification of benefits must "receive its allotment no later than one month after the receipt of the last allotment issued" if the household filed its recertification application "no later than fifteen days prior to the day upon which its existing certification period expires."[6] This law ensures that people do not have a lapse in benefits while waiting for recertification. For destitute households in need of emergency assistance, the "State agency shall . . . provide benefits not later than 7 days after the date of application."[7] Implementing regulations are at 7 C.F.R. § 273.2 and contained more generally in 7 C.F.R. Part 273. For families who are denied or partly denied benefits, 7 U.S.C. § 2020(e)(10) authorizes a fair hearing and prompt determination thereafter for "any household aggrieved by the action of the State agency under any provision of its plan of operation as it affects the participation of such household in the supplemental nutrition assistance program."

---

[4] 7 U.S.C. § 2020.
[5] 7 U.S.C. § 2020(e)(3).
[6] 7 U.S.C. § 2020(e)(4).
[7] 7 U.S.C. § 2020(e)(3).

## PROCEDURAL HISTORY

On January 30, 2023, Plaintiffs filed this case in the Superior Court for the State of Alaska, Third Judicial District at Anchorage (case number 3AN-23-04259CI), along with a Motion for Class Certification and Motion for Preliminary Injunction.[8] On March 1, 2023, Defendant removed this action to this court.[9]

On March 10, 2023, the parties agreed to stay proceedings to engage in settlement efforts.[10] That stay was granted and was later extended by stipulation until October 31, 2023.[11]

On May 2, 2023, the parties filed a stipulation agreeing to the certification of two plaintiff classes: (1) an <u>untimely eligibility class</u> comprised of all Alaska residents since January 20, 2021 who have applied, are applying, or will apply for SNAP benefits through an initial application or recertification and did or will not receive an eligibility determination within legal required timeframes, and (2) a <u>right to file class</u> comprised of Alaska residents who since October 1, 2022 were or will be denied the right to file a SNAP application the first time they contact DPA during office hours.[12] On May 9, 2023, the court adopted the parties' proposed order certifying the agreed upon classes.[13]

---

[8] ECF 7.
[9] ECF 1.
[10] ECF 6.
[11] ECF Nos. 8, 12, 14.
[12] ECF 13.
[13] ECF 15.

On November 9, 2023, Defendant filed a motion requesting another 6-month stay of the proceedings, which Plaintiffs opposed.[14] On February 5, 2024, this Court denied Defendant's Motion for Stay and directed Defendant to file a response to Plaintiffs' Motion for Class Certification addressing the proposed language access class within 14 days.[15] This order also denied Plaintiffs' Motion for Preliminary Injunction, without prejudice to file a renewed motion which applied the federal (rather than state) standard for injunctive relief and articulated the relief in light of the changed status of the SNAP program in Alaska.[16]

On February 20, 2024, Defendant filed an Opposition to Plaintiffs' Motion for Class Certification as to the language access class.[17] Plaintiffs filed a Reply to that Opposition on February 27, 2024.[18] Defendant filed an Answer to the Complaint on March 15, 2024.[19] On May 15, 2024, this Court denied the Motion for Class Certification as to the language access class, only.[20]

On May 8, 2024, Plaintiffs filed their Renewed Motion for Preliminary Injunction.[21] Defendant filed an Opposition to the Renewed Motion for Preliminary

---

[14] ECF Nos. 17, 21, 22, 23.
[15] ECF 24.
[16] *Id.*
[17] ECF 25.
[18] ECF 26.
[19] ECF 27.
[20] ECF 38.
[21] ECF 35.

Injunction on June 12, 2024,[22] and Plaintiff filed a Reply on June 20, 2024.[23] On December 31, 2024, this court granted Plaintiffs' Renewed Motion for Preliminary Injunction and required DOH to: (i) promptly process SNAP applications and recertifications within legally required timelines, (ii) provide written notice and opportunity to request a fair hearing to SNAP applicants whose applications were not timely processed, (iii) provide monthly status reports to the Court beginning February 1, 2025, and (iv) allow members of the untimely eligibility class to seek informal relief through their attorneys during the litigation when applications have been pending beyond the statutory deadlines.[24]

Further, the Court found that "[g]iven the economic circumstances described and demonstrated by the named plaintiffs, which are indicative of all members of the class, the delay of SNAP benefits, which results in a deprivation of food, 'unquestionably constitutes irreparable harm.'"[25] The Court additionally found that the balance of equities tips in favor of granting Plaintiffs' request for an injunction as "Plaintiffs have a 'vital and essential interest in the timely receipt of food stamps' and the harm suffered because of the loss of timely benefits 'outweighs any injury caused by requiring [DOH] to do what was already required under the [SNAP] Act.'"[26] And finally, the Court found that

---

[22] ECF 46.
[23] ECF 52.
[24] ECF 77.
[25] ECF 77 at 21 (quoting *Booth v. McManaman*, 830 F. Supp. 2d 1037, 1043 (D. Haw. 2011)).
[26] ECF 77 at 22 (quoting *Briggs v. Bremby*, Case No. 3:12-cv-234(VLB), 2012 WL 6026167, at *19 (D. Conn. Dec. 4, 2012)).

public interest considerations favor the Plaintiffs as "the Court is hard-pressed 'to see how enforcing a statute designed to promote the public welfare disserves the public.'"[27]

Following the close of discovery, on September 2, 2025, Defendant filed a Motion for Summary Judgment.[28] Plaintiffs now bring this Motion for Summary Judgment.

## THE STANDARD FOR GRANTING SUMMARY JUDGMENT

Summary judgment on a claim is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[29] A fact is material when, under the governing substantive law, it could affect the outcome of the case.[30] A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party.[31]

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[32] The burden then shifts to the opposing party to show that summary judgment is not

---

[27] *Id.*
[28] ECF 102.
[29] Fed. R. Civ. P. 56(a).
[30] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[31] *Id.*; *see also SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982) ("A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth.").
[32] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and internal quotation marks omitted).

appropriate by designating specific facts showing that there is a genuine issue for trial.[33] The opposing party cannot rest on conclusory allegations.[34] And, more than a "metaphysical doubt" is required to establish a genuine issue of material fact.[35]

## FACTUAL BACKGROUND

In 2022, each of the ten named plaintiffs applied or reapplied for SNAP benefits.[36] Each plaintiff found that the day their benefits should have been processed came and went without any action from the agency.[37] Each day the plaintiffs went without benefits, they faced impossible decisions, deciding to forgo meals to ensure their children were fed or between heating their homes and having something to eat.[38]

Plaintiffs and other class members have been making these decisions for years, and there is no end in sight. Since this case was filed in January 2023, DOH has not complied with timely SNAP processing requirements for even a single month.[39] Not only are cases not being processed timely, but the extent of the delays is outrageous— applications routinely sit unprocessed for months.[40] Every time this happens, the result is

---

[33] *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).
[34] *See id.*
[35] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).
[36] ECF 45-5 ¶ 7; ECF 45-3 ¶ 8; ECF 7-7 ¶ 8; ECF 45-4 ¶ 12; ECF 45-1 ¶ 16; ECF 7-9 ¶ 6; ECF 45-6 ¶ 7; ECF 45-7 ¶¶ 28-30; ECF 45-2 ¶ 11; ECF 45-8 ¶ 13.
[37] Compl., ECF 1-1 ¶¶ 148, 163, 174, 193, 208, 218, 234, 249, 261, 277; Answer, ECF 27 ¶¶ 14, 163, 174, 193, 208, 218, 234, 249, 261, 277.
[38] ECF 45-5 ¶ 14; ECF 45-1 ¶¶ 36-38; ECF 45-5 ¶¶ 22-24; ECF 7-9 ¶ 7 *see also* ECF 45-3 ¶¶ 5-6; ECF 7-7 ¶ 16; ECF 45-4 ¶ 20; ECF 45-7 ¶¶ 38-39; ECF 45-2 ¶¶ 14-18; ECF 45-8 ¶¶ 17-19.
[39] SMF ¶¶ 76–84.
[40] SMF ¶¶ 89-90.

a family having to figure out how to make ends meet and to feed themselves without the critical assistance purchasing food that SNAP benefits provide.

In response to the COVID-19 public health emergency, FNS permitted DOH to alter SNAP processing procedures, which notably included waiving the requirement to conduct an interview as part of the application process.[41] Conducting an interview is time consuming; on average, a SNAP interview can take 60–90 minutes.[42] Interviews can only be conducted by staff hired directly by the State of Alaska, known as merit staff.[43] In 2021, during the initial period when the interview requirement was waived, the Alaska State Legislature cut funding for over 100 merit staff from DOH.[44]

In August 2022, DOH opted to give up SNAP processing waivers and resume conducting interviews.[45] In the subsequent months, the timely processing of SNAP applications and recertifications plummeted.[46] When the rate of timely processing plunged and more and more cases were left unprocessed, FNS granted another interview waiver to DOH.[47] From October 2022 through October 2024, DOH went through periods of being required to perform interviews and being granted waivers to bypass the interview.[48] While there was marginal improvement in processing timeliness, as this

---

[41] SMF ¶¶ 92–95.
[42] SMF ¶ 91.
[43] 7 U.S.C. § 2020(e)(6); 7 C.F.R. § 272.4(a).
[44] SMF ¶ 34.
[45] SMF ¶ 102.
[46] SMF ¶ 94.
[47] SMF ¶¶ 77–83; *see also* SMF ¶¶85–87.
[48] SMF ¶¶ 95–99.

Court noted in the Preliminary Injunction Order, when the last waiver ended in October 2024, "[w]ithout the waiver in place . . . timely processing rates have again fallen."[49] No interview waiver has been granted since this Court issued a preliminary injunction, and applicants are facing exceedingly long wait times to complete their required SNAP interviews, both in offices[50] and on the Virtual Contact Center ("VCC").[51]

Starting around March 2023, DOH hired contracted workers through the Public Consulting Group ("PCG") to help fill the major staffing gap that resulted from ending the positions of more than 100 DOH merit staff.[52] But PCG staff are non-merit staff who can complete other certain tasks to free up time for merit staff but cannot conduct SNAP interviews or render eligibility determinations on SNAP cases.[53] Even an army of non-merit staff cannot resolve a SNAP processing backlog arising because the limited pool of merit staff needed to complete specific steps in the application process is inadequate.

---

[49] ECF 77 at 15.

[50] Iris Samules, *'Nothing You Can Do Except Stand Here': Public Assistance Office Keeps Alaskans Waiting*, Anchorage Daily News (June 7, 2025) https://www.adn.com/alaska-news/2025/06/07/nothing-you-can-do-except-stand-here-public-assistance-office-keeps-alaskans-waiting/. Plaintiffs ask the Court to take judicial notice of this article. It is appropriate for this Court to take judicial notice of this article because it has been made publicly available by the Alaska State Government and is not subject to reasonable dispute. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (explaining that a court may take judicial notice of "matters of public record" provided there is no fact that is "subject to reasonable dispute"). Under Federal Rule of Evidence 201(b), provided a fact is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," then it is not "subject to reasonable dispute." Fed. R. Evid. 201(b); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

[51] SMF ¶¶ 38–44.

[52] SMF ¶ 8.

[53] SMF ¶¶ 32, 34.

When DOH fails to process an application in a timely manner, applicants are entitled to a notice of delayed processing that informs them of fair hearing rights.[54] At the time this lawsuit was filed, DOH never provided this notice and has admitted as much.[55] Only as a result of the Preliminary Injunction Order issued by this Court, in April 2025, did DOH begin notifying applicants when processing is delayed.[56]

Further, Defendant fails to ensure consistent access to the agency for Plaintiffs and class members to submit their applications. In 2020, DOH offices were closed due to the pandemic.[57] At the time this litigation was filed in 2023, DOH offices had not fully reopened.[58] At that time, DOH limited in-person access to SNAP applications.[59] To file a SNAP application, an Alaskan could call the VCC[60] to have a paper application mailed to them or a printable version of the application emailed to them. Additionally, the DOH website stated that applications could be submitted telephonically through the VCC.[61] However, there was no menu option for callers to the VCC to complete a telephonic application.[62] Additionally, when individuals attempted to apply for SNAP through the VCC, the wait times were over two hours long.[63] After waiting on hold and finally

---

[54] 7 C.F.R. § 273.10(g)(1)(iii).
[55] ECF 1-1 ¶ 115; ECF 27 ¶ 115.
[56] SMF ¶ 113.
[57] SMF ¶ 50.
[58] SMF ¶¶ 61–64.
[59] *Id.*
[60] SMF ¶ 24.
[61] ECF 1-1 ¶ 83; ECF 27 ¶ 83.
[62] SMF ¶ 56.
[63] SMF ¶ 57.

reaching a VCC representative in January 2023, Plaintiff Autumn Ellanna was told she could not apply.[64]

Today, DOH maintains only 11 physical offices across the entire state, making it practically impossible for many Alaskans to go to an office in-person.[65] Even as offices have ostensibly reopened after the end of the public health emergency, some offices are frequently closed, hampering individuals who seek in-person services from accessing DOH.[66] Residents of many of Alaska's more remote and rural areas can access a DOH office only via airplane, which is prohibitively expensive for the lowest-income Alaskans who rely on SNAP.[67]

The VCC thus plays a crucial role in providing Plaintiffs and class members access to DOH. Plaintiffs and class members rely on the VCC to get information about their cases, to complete the mandatory interview during a new SNAP application or recertification, and even to submit an initial SNAP application. Finding no evidence that DOH was permitting telephonic applications in January 2023, when Plaintiffs and Defendant discussed staying litigation, one condition the parties agreed upon was that Defendant would fully resume accepting telephonic applications for SNAP benefits through the VCC, no later than June 1, 2023.[68] In July 2023, DOH created a new queue

---

[64] ECF 45-7 ¶¶ 15-25.
[65] SMF ¶ 49.
[66] SMF ¶ 63–68.
[67] ECF 45-5 ¶ 11; ECF 45-3 ¶ 9.
[68] ECF 12 at 3.

on the VCC dedicated to telephonic applications.[69] And DOH's recent implementation of an online SNAP application form only occurred in December 2024, well after the commencement of this litigation.[70]

For years, DOH has asked the Court for time to sort through its many hurdles. Time has not solved the problem and has only left more class members without benefits to meet their basic needs.

## ARGUMENT

### A. Plaintiffs undisputably may enforce individual rights secured by the Constitution or provisions of federal law by way of 42 U.S.C § 1983.

To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that the defendant acted under the color of state law in a manner that resulted in depriving the plaintiff of a right, privilege, or immunity secured by the Constitution or federal law.[71] The color of state law requirement is "the equivalent of the 'state action' requirement under the Constitution."[72] This means an individual acts under the color of state law when exercising power made possible only by state authority.[73] Purely private conduct does not fall within the scope of § 1983.[74]

---

[69] SMF ¶ 60.
[70] SMF ¶ 72.
[71] 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988).
[72] *Jensen v. Lane County*, 222 F.3d 570, 574 (9th Cir. 2000); *United States v. Price*, 383 U.S. 787, 794 (1966).
[73] *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015).
[74] *Ouzts v. Maryland Nat'l Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974).

In this litigation, Plaintiffs have alleged that Defendant violated multiple rights articulated in the SNAP Act and in the Due Process clause of the Fourteenth Amendment to the Constitution. Plaintiffs will address the specific question of the enforceability under 42 U.S.C. § 1983 of rights conferred by specific provisions of the SNAP Act in response to Defendant's Motion for Summary Judgment.[75] Defendant's undisputed violations of the SNAP Act and the enforceability of Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the Constitution are discussed below.

**B. Defendant's SNAP processing delays are undisputed, violate federal law and cause injury to named Plaintiffs and class members.**

The SNAP Act requires that DOH "promptly" certify the household's eligibility for SNAP benefits once it receives an initial application.[76] For most households, DOH must determine a household's eligibility for SNAP and provide benefits (if eligible) within 30 days of the application filing date.[77] For households with particularly low incomes and resources, DOH must expedite processing and provide SNAP benefits no later than 7 days after the date of application.[78] DOH must also process recertification applications timely, and, when recipients file their recertification on time, DOH must ensure that eligible recipients receive their benefits within a month.[79]

---

[75] ECF 102.
[76] 7 U.S.C. § 2020(e)(3).
[77] 7 U.S.C. § 2020(e)(3).
[78] 7 U.S.C. § 2020(e)(9); 7 C.F.R. § 273.2(i)(4)(i)).
[79] 7 U.S.C. § 2020(e)(4).

DOH does not dispute its failure to timely process SNAP applications. This Court has already found that "DOH's non-compliance [with timely processing was] historical, persistent, and significant," and noted that "State Fiscal Year 2023, which includes the months leading up to this lawsuit, shows a sharp decline from what was already notable non-compliance."[80]

FNS considers a state to be in compliance with processing deadlines if its "Application Processing Timeliness" ("APT") rate is at 95% or above.[81] As this Court already noted, SNAP processing timeframes are subject to a strict compliance standard—substantial compliance is not enough.[82]

As predicted by this Court, in the seven months since the decision on Plaintiffs' Renewed Motion for Preliminary Injunction, DOH has failed to come into compliance with the timely processing deadlines.[83] Since December 2024, Defendant's APT rate has not exceeded 63% for initial applications, even including expedited applications. The APT rate for recertifications has not risen above an abysmal 30%.[84]

---

[80] ECF 77 at 13.
[81] USDA, *Updated Guidance for Improving State Agency APT Rates: Standardizing the Escalation Process* (Aug. 2, 2023, as updated Aug. 1, 2024), https://www.fns.usda.gov/snap/admin/improving-state-timeliness-rates-escalation-process-guidance; SMF ¶ 77–78. The APT is calculated by dividing the number of initial SNAP applications that were approved timely within a month by the total number of initial applications approved within the month, and multiplying that by 100.
[82] ECF 77 at 12 (citing *Withrow v. Concannon*, 942 F.2d 1385, 1389 (9th Cir. 1991); *Haskins v. Stanton*, 794 F.2d 1273, 1277 (7th Cir. 1986)).
[83] *See* ECF 77 at 24.
[84] SMF ¶ 84.

The monthly rate for each month since January 2025 as reported by DOH was:

| Alaska Supplemental Nutrition Assistance Program Timeliness[85] | | | | |
|---|---|---|---|---|
| Month | Non-Expedite Applications | Expedite Applications | Recertifications | Total Timeliness |
| Jan-25 | 62% | 64% | 18% | 52% |
| Feb-25 | 62% | 49% | 23% | 48% |
| Mar-25 | 64% | 53% | 29% | 51% |
| Apr-25 | 61% | 55% | 18% | 49% |
| May-25 | 52% | 62% | 14% | 44% |
| Jun-25 | 53% | 61% | 22% | 46% |

These rates come nowhere close to the 95% necessary to comply with the FNS's standard.

These delays continue to harm thousands of Alaskans. In addition to tracking the timeliness rate of applications, DOH tracks the number of applications that remain unprocessed beyond the legally mandated processing timeframe. When this case was filed in early 2023, the backlog contained a shocking 16,000 cases.[86] The backlog has never returned to that devastating number but since the Preliminary Injunction Order at the end of 2024 the backlog has remained steadily around 4,000.[87] This means that approximately 4,000 SNAP households each month are going without subsistence benefits and facing nearly impossible decisions about how to put food on the table, as detailed in the declarations of Plaintiffs.[88] The cases in backlog are not just delayed by a

---

[85] SMF ¶ 84.
[86] SMF ¶ 87.
[87] SMF ¶ 88.
[88] ECF 45-5 ¶ 14; ECF 45-1 ¶¶ 36–38; ECF 45-5 ¶¶ 22–24; ECF 7-9 ¶ 7 *see also* ECF 45-3 ¶¶ 5–6; ECF 7-7 ¶ 16; ECF 45-4 ¶ 20; ECF 45-7 ¶¶ 38–39; ECF 45-2 ¶¶ 14–18; ECF 45-8 ¶¶ 17–19.

few days; rather, the average untimely new application on May 6, 2025 had been sitting unprocessed for 98 days; the average expedited application for 26 days; and recertification for 94 days.[89]

It has been two years and eight months since this lawsuit was filed. Defendant's non-compliance began long before that and continues to this day. Defendant's assertion that DOH is doing its best to make the situation better are simply not sufficient to satisfy its obligations under federal law. More importantly, Defendant's continued failures mean that Alaskans are not getting access to food that they need and federal dollars have been allocated to provide. Therefore, Plaintiffs are entitled to summary judgment on this claim.

### C. Defendant's failure to ensure each eligible Alaskan can apply for SNAP on the first day they contact DOH violates federal law and causes injury to named Plaintiffs and class members.

Plaintiffs are entitled to summary judgment on their claim that DOH has not complied with the mandate that each household be able to apply for SNAP on the first day that they contact an office during office hours.[90] The Ninth Circuit has previously evaluated the filing rights of SNAP applicants and concluded that agencies must accept all SNAP applications filed during "the regular eight hours of the working day, Monday through Friday."[91] In *Blanco v. Anderson*, plaintiffs alleged that the State agency violated 7 U.S.C. § 2020(e)(2) by permitting welfare offices in certain counties to close on weekdays, especially Fridays, and allowing other offices to close for twelve days during

---

[89] SMF ¶¶ 89–90.
[90] 7 U.S.C. § 2020(e)(2)(B)(iii); 7 C.F.R. § 273.2(c)(1)(iii).
[91] *Blanco v. Anderson*, 39 F.3d 969, 972 (9th Cir. 1994).

the Christmas season.[92] The court noted that if an office was closed on Friday, it would be impossible for a household to apply for benefits on that day, and thus an applicant would have to wait three days to apply, even if they were in urgent need of assistance.[93] The court found that the state agency's actions were "defeat[ing]" 7 U.S.C. § 2020(e)(2) and held that agencies cannot limit office hours or dates in a way that would "frustrate the statute's purpose."[94] The court continued: "Congress presumes that applications may be filed at anytime during the normal working hours so that the beginning date for assistance will be fixed by the date on which application is made."[95]

Courts in other circuits have similarly ordered SNAP agency heads to comply with SNAP right to file requirements.[96]

7 C.F.R. § 273.2(c)(1)(i) provides additional detail and guidance as to DOH's specific obligations when implementing 7 U.S.C. § 2020(e)(2)(B)(iii). The regulation

---

[92] *Blanco v. Anderson*, 39 F.3d 969, 971–72 (9th Cir. 1994).
[93] *Id.*
[94] *Id.* at 972 ("Office hours," as this term is here used, must mean the regular eight hours of the working day, Monday through Friday.").
[95] *Id.*
[96] *See Holmes v. Knodell*, 733 F. Supp. 3d 775, 792–93 (W.D. Mo. 2024) (finding plaintiff's inability to access telephone systems to apply for benefits delayed application process and "required her to find a means of transportation that she did not have and that was costly to her on a low income"); *Southside Welfare Rts. Org. v. Stangler*, 156 F.R.D. 187 (W.D. Mo. 1993) (ordering agency to ensure no household is denied the right to file on the day they contact agency and also to ensure agencies are encouraging individuals to apply on that day); *Robertson v. Jackson*, 766 F. Supp. 470, 476–77 (E.D. Va. 1991) (ordering defendant agency to comply with federal requirement that Food Stamps applicants be able to apply on first day contacting the agency because to not allow and to not encourage this right "is a direct violation of the law"); *Haskins v. Stanton*, 621 F. Supp. 622, 630 (N.D. Ind. 1985) (ordering agency to comply with right to file requirements by permitting and encouraging households to file an application on same day they contact the agency).

details that households seeking SNAP are entitled to file applications in a myriad of ways—in person at the SNAP office, by mail, online, or by "other electronic transmissions" such as by telephone or fax.

In the months leading up to this litigation, participation in the SNAP program dropped dramatically. In July 2022, 97,915 persons received SNAP in Alaska, but by December 2022 there were only 38,161 persons receiving SNAP.[97] The dramatic drop in program participation strongly suggests that eligible Alaskans faced unlawful barriers to filing SNAP applications.

DOH has not provided consistent, reliable access to its offices so that SNAP applicants can file applications on the same day they contact the agency. DOH offices closed to the public during the COVID-19 pandemic around March 2020.[98] Some of DOH's eleven office lobbies began reopening in May 2022 on Tuesdays, Wednesdays, and Thursdays from 9 a.m. to 4 p.m. for general inquiries.[99] However, in January 2023 when this lawsuit was filed, the offices remained closed on Mondays and Fridays.[100] Pursuant to the stipulation of the parties in May 2023, Defendant agreed to reopen certain offices for general inquiries, including those in Anchorage, Wasilla, Fairbanks, and Juneau, on Mondays and Fridays by June 1, 2023.[101]

---

[97] ECF 35-1 at 13–14.
[98] SMF ¶ 50.
[99] SMF ¶ 62.
[100] *Id.*
[101] ECF 12 at 4–5.

While DOH ostensibly resumed five-day-a-week lobby hours in June 2023,[102] some offices have experienced repeated extended closures.[103] For instance, the Sitka office was closed from September through November 2022, March through July 2023, and March through August 2024.[104] It was frequently closed Tuesday through Thursday between August and November 2023 and for most or all of December 2023.[105] Additionally, the Nome office was closed from May 2022 through June 2023, again in January and February 2024, and has remained closed since January 2025.[106]

For some plaintiffs and many other class members, visiting a DPA office requires air travel, an unrealistic cost option for individuals so poor that they meet the means test to participate in SNAP.[107] Others must drive significant distances, making journeys that become impossible in winter.[108] Relying on in-person service options[109] cannot ensure that rural class members can apply for SNAP the first day they contact the agency that the SNAP Act requires.

DOH has allegedly accepted telephonic applications since August 2021.[110] In January 2023, when this lawsuit was filed, DOH's website indicated that individuals

---

[102] SMF ¶¶ 61, 64.
[103] SMF ¶ 65.
[104] SMF ¶ 66.
[105] SMF ¶ 67.
[106] SMF ¶ 68.
[107] ECF 45-5 ¶ 11; ECF 45-3 ¶ 9.
[108] ECF 45-6 ¶ 17; ECF 45-7 ¶¶ 9–11; ECF 45-2 ¶ 8.
[109] SMF ¶ 70.
[110] SMF ¶ 52.

could complete a telephonic application through the VCC.[111] But telephone access has proved illusory for many class members. For example, on Friday, January 13, 2023, Plaintiff Ellanna of Nome, Alaska, sought to file a telephonic application for SNAP, but DOH did not permit her to file an application on the first day she contacted the agency.[112]

At the time Plaintiff Ellanna attempted to file, there was no dedicated queue for telephonic applications on the VCC.[113] When she called the VCC to start a SNAP application, she was unsure which automated option to select and so chose option seven for general inquiry.[114] At the time, the average time a person had to wait on hold before speaking to a representative in the general inquiry queue was 2 hours and 9 minutes, and there was no indication of how to make a telephone application.[115] After waiting approximately an hour, Plaintiff Ellanna connected to a caseworker named Kathleen and stated that she wished to apply for SNAP.[116] Kathleen stated that she could not take an application over the telephone and that Plaintiff Ellanna could receive an application by postal mail or email.[117] Plaintiff Ellanna does not own a personal computer or printer, so receiving a PDF of the SNAP application as a printable email attachment would not have allowed her to file a SNAP application that day. Further, postal mail delivery to Nome is

---

[111] ECF 1-1 ¶ 83; ECF 27 ¶ 83.
[112] ECF 45-7 ¶¶ 15–25.
[113] SMF ¶ 56.
[114] ECF 45-7 ¶¶ 15–17.
[115] SMF ¶ 57.
[116] ECF 45-7 ¶¶ 23–24.
[117] ECF 45-7 ¶ 25.

slow, so neither email nor postal mail was practicable.[118] After the VCC refused to take her application, Plaintiff Ellanna submitted an application in person at the Nome DPA office—four days after she initially contacted the agency.[119] Monday, January 16, 2023, was a holiday, and so Ms. Ellanna went to the office Tuesday, January 17, 2023.[120] When she arrived, the office was closed, so she placed her completed SNAP application form into a drop box.[121]

The record contains no evidence that Defendant actually accepted telephonic applications prior to May 2023.[122] Defendant had no dedicated queue for telephonic applications, and individuals were being told that they could not file a telephonic application. Moreover, exceedingly long wait times to speak to a representative on the VCC rendered any possibility of filing a telephonic application inaccessible and prohibitive for individuals paying for phone service by the minute, as many low-income persons do. Further, DOH only launched a new online SNAP-specific application in December 2024, two years into this litigation.[123]

---

[118] ECF 45-7 ¶ 26.
[119] ECF 45-7 ¶ 28–30.
[120] ECF 45-7 ¶¶ 27–28.
[121] ECF 45-7 ¶ 29.
[122] As mentioned *supra*, when Plaintiffs and Defendant stayed the litigation in May 2023, the parties agreed that Defendant would fully resume accepting Telephonic Applications no later than June 1, 2023. ECF 12 at 3. Following the agreement to resume applications, DOH introduced a dedicated phone queue for these applications and began to collect data on this queue. Stovall Decl. Ex. 28 ¶ 9.
[123] SMF ¶ 72.

Defendant has an obligation to ensure that all SNAP applicants in Alaska are able to file applications in accordance with controlling statutory provisions, just as she has an obligation to ensure that DOH's policies and practices comply with the provisions of the SNAP Act. Defendant obstructed Plaintiff Ellanna's right to file her SNAP application on the first day by refusing to take a telephonic application after an extensive wait on the VCC. She then had to wait four days to submit her application and lost four days of benefits she would have been eligible to receive. Defendant has consistently failed to allow all applicants to make an application for SNAP on the first day they contact the agency. Plaintiffs are entitled to summary judgment on this claim.

### D. Defendant's undisputed failure to provide a notice of delayed SNAP processing violates federal and state law and causes injury to named Plaintiffs and class members.

Plaintiffs are entitled to summary judgment on their claims that Defendant fails to provide a required notice of delayed SNAP processing. There is no dispute of material fact as to DOH's failure to provide the notice. Defendant has admitted as much, and Plaintiffs are entitled to judgment as a matter of law. In their Complaint, Plaintiffs raise three independent claims addressing the need for a notice of delayed processing pursuant to provisions of the SNAP Act, the Due Process Clause of the Federal Constitution, and the Due Process Clause of the Alaska Constitution. These notices are not just a bureaucratic requirement; they offer important information to the many Alaskans who are in desperate enough circumstances to require food assistance and anxiously await benefits.

When this lawsuit was filed, DOH admitted that the agency failed to provide a notice of delayed SNAP processing for any individual.[124] Plaintiff Rose Carney only received confirmation that her recertification application had been submitted upon running into a DOH employee the following month.[125] Plaintiff Tereresa Ferguson was unable speak to a DOH employee and obtain an update on her application after over two months of calling.[126] Plaintiff Zoya Jenkins received an email response two months after she applied for recertification and one month after she sent an email asking for the status on her application; even then, the update was on that DOH would reach out if they needed additional materials from her.[127] Three months after submitting her recertification application, Plaintiff Kayla Birch received only a callback (after requesting one) telling her that her application was received two months prior.[128] Plaintiff Troy Fender was told by an employee to "be patient" when he went to visit the office to check the status of his application seven months after he submitted his SNAP application.[129] At the time this complaint was filed, Plaintiff Rhonda Conover—an applicant eligible for expedited benefits—had already waited a month with no status update on her benefits, even though expedited SNAP processing should be completed in just seven days.[130]

---

[124] ECF 1-1 ¶ 115; ECF 27 ¶ 115.
[125] ECF 7-7 ¶ 14.
[126] ECF 45-4 ¶¶ 15–19.
[127] ECF 45-1 ¶¶ 19–20.
[128] ECF 45-3 ¶ 10.
[129] ECF 7-9 ¶ 7.
[130] ECF 45-6 ¶ 10; 7 U.S.C. § 2020(e)(9).

It was only after this Court ordered it to do so that Defendant began sending out notices of delayed SNAP processing in or around April 2025.

### i. Plaintiffs must receive notice of delayed processing under the SNAP Act.

Plaintiffs are entitled to summary judgement on their claim that Defendant violated the SNAP Act and regulations by failing to provide a notice of delayed processing. In addressing the Plaintiffs' Renewed Motion for Preliminary Injunction, this Court fully reviewed legal arguments from both sides on this issue and the admission that Defendant failed to provide the required notice of delayed SNAP processing. The Court found for the Plaintiffs on this claim, directed Defendant to begin providing the required notice of delayed processing, and ordered that the notice must articulate the right to a fair hearing to class members.[131]

By federal law, Defendant must provide the opportunity for a fair hearing when its actions affect a household's participation in SNAP or the SNAP household is aggrieved by the agency's actions.[132] As this Court has already noted, exercise of the right to a hearing requires notice of the right.[133] By federal regulation, a state agency must provide a notice no later than the 30th day after a SNAP application is made to indicate the status

---

[131] ECF 77 at 19–20.
[132] 7 U.S.C. § 2020(e)(10) ("[T]he state plan of operation . . . shall provide . . . for the granting of a fair hearing and a prompt determination thereafter to any household aggrieved by the action of the State agency under any provision of its plan of operation as it affects the participation of such household in the supplemental nutrition assistance program."); 7 C.F.R. § 273.15(a).
[133] ECF 77 at 19.

of the application—approved, denied, or still pending.[134] Additionally, by state

regulation, "[a]n opportunity for a hearing must be granted to a recipient whose request

for . . . food . . . is not acted upon with reasonable promptness."[135]

Defendant's failure to process applications on time negatively affects the SNAP

participation of eligible households awaiting approval because they may go months

without actually receiving any SNAP benefits. A household waiting for critically needed

food benefits is aggrieved when those benefits do not arrive on time. By failing to

provide the notice of delay, Defendants have impeded aggrieved households from

exercising their statutory fair hearing rights in violation of the SNAP Act. Consistent with

the Court's Order on the Renewed Motion for Preliminary Injunction, Plaintiffs are

entitled to summary judgment on this claim.

### ii. Due Process under the Fourteenth Amendment to the Constitution requires that Plaintiffs receive notice of delayed processing.

In addition to violating the SNAP Act, Defendant's failure to provide notice of

delayed processing that articulates fair hearing rights violates the Due Process Clause of

the Fourteenth Amendment. Plaintiffs have a protected property interest in their receipt of

SNAP benefits. Defendant's practice of failing to issue a notice of delayed processing

that confers fair hearing rights deprives plaintiffs of the opportunity to grieve the

agency's delay and access a critical benefit.

---

[134] 7 C.F.R. §§ 273.10(g)(1)(i)-(iii).
[135] 7 AAC 49.020(1).

a. <u>SNAP applicants and recipients have a protected property interest in their SNAP benefits</u>.

Procedural due process protections attach where an individual has a protected property or liberty interest. To have a valid property interest, the plaintiff must have a "legitimate claim of entitlement to" the liberty or property.[136] The Supreme Court has recognized a property interest in receiving public benefits. The Court has specifically held: "[f]ood stamp benefits . . . are a matter of statutory entitlement for persons qualified to receive them."[137] Meanwhile, the Ninth Circuit recognizes that both recipients of and applicants for public benefits may possess a property interest sufficient to give rise to due process.[138] Subsistence benefits are properly treated as a form of property, entitled to protection under the Due Process Clause.[139]

b. <u>Defendant's failure to provide a notice of delayed processing violates Constitutional Due Process</u>.

Once a property interest is found, the next question is "what process is due?"[140] This inquiry is circumstance-dependent, and some deprivations demand more process than others.[141]

---

[136] *Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).
[137] *Atkins v. Parker*, 472 U.S. 115, 128 (1985) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970)).
[138] *See, e.g.*, *Ressler v. Pierce*, 692 F.2d 1212, 1215 (9th Cir. 1982) (finding that applicants have a federally protected property interest in receiving benefits); *Griffeth v. Detrich*, 603 F.2d 118, 121–22 (9th Cir. 1979). Plaintiffs cite to additional support in other circuits referenced in their brief in support of a Preliminary Injunction. ECF 35-1 at 24.
[139] *Atkins*, 472 U.S. at 128.
[140] *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).
[141] *See id.* ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."); *see also Goldberg*, 397 U.S. at 264–71 (procedures mandated by due process must be "adapted to the particular characteristics of welfare recipients"); *Cafeteria &*

To answer this question, courts have applied the *Mathews v. Eldridge* balancing test, which considers: (i) the private interest affected; (ii) the risk of erroneous deprivation and the value of additional or changed procedures; and (iii) the government's interest.[142]

Defendant's failure to issue a notice of delayed processing violates procedural due process under the *Mathews* test. *First*, Plaintiffs' private interest is high. During the months that Plaintiffs and class members are waiting for their applications to be processed, Defendant's delay deprives them of subsistence benefits. To be deprived of SNAP is to be deprived of food, and courts have recognized a weighty interest in SNAP and similar benefits.[143]

*Second*, the risk of erroneous deprivation is great. Multiple named Plaintiffs, who needed and were eligible for SNAP, went months without receiving benefits or a way to grieve the deprivation. Without notice of delayed processing and accompanying fair hearing rights, they had no way to address DOH's failure to timely determine their eligibility for SNAP.

---

*Rest. Workers Union, Loc. 473, AFL-CIO v. McElroy*, 367 U.S. 886, 895 (1961) (determination of process due must "begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected").

[142] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

[143] *See, e.g.*, *Daniels v. Woodbury Cnty., Iowa*, 742 F.2d 1128, 1133 (8th Cir. 1984); *Villegas v. Concannon*, 742 F. Supp. 1083, 1087 (D. Or. 1990); *Bliek v. Palmer*, 916 F. Supp. 1475, 1488 (N.D. Iowa 1996) (private interest in food stamps was "extremely significant" because "[f]ood is a necessity of life").

In comparison, requiring Defendant to produce a notice of delayed processing offers a layer of protection against future erroneous deprivations, regardless of whether Defendant has yet cleared a SNAP processing backlog. The additional notice provides SNAP households with information about the status of their applications, thus reducing applicant churn and filing of multiple applications. A notice would also offer an opt-in pathway to remedial action for those who elect to go to a fair hearing and ask to have the delay addressed and SNAP benefits issued. This would provide the undeniable benefit of keeping Plaintiffs fed.

Plaintiffs cannot speculate as to what interests Defendant may identify for the third *Mathews* prong. However, the administrative burden to the state of continuing to issue a notice that they have now developed and programmed into their system is minimal. Nor is there agency burden in following the existing requirements of SNAP.[144] *Mathews* is a balancing test and it is difficult to imagine what government interest could outweigh something so essential as subsistence benefits used to purchase food.

### iii. The Alaska Constitution requires that Plaintiffs receive a notice of delayed processing conferring fair hearing rights.

Summary judgment is independently warranted upon evaluation of Plaintiffs' Due Process rights under the Alaska Constitution. The Alaska Constitution's guarantee of due process is even more protective than that of the federal constitution.[145] The Alaska

---

[144] *Haskins*, 794 F.2d at 1277.

[145] *See Balough v. Fairbanks N. Star Borough*, 995 P.2d 245, 263 n.64 (Alaska 2000) ("Alaska's due process clauses confer broader protection than do their federal counterparts.") (alteration omitted)); *Native Vill. of Kwinhagak v. Dep't of Health & Soc. Servs., Off. of Children's Servs.*,

Supreme Court has also held that when the public benefit recipient has a "brutal need" for the benefit at issue, as is the case with SNAP benefits, "courts have traditionally required that agencies go to greater lengths—incurring higher costs and accepting inconveniences—to reduce the risk of error."[146]

To determine what process is due under the Alaska Constitution, state courts have applied the *Mathews v. Eldridge* balancing test, discussed *supra* in Section D.ii.b, but extended protections past those held by the Supreme Court.[147] Applying the *Mathews* test, Alaska courts have held that due process under the Alaska Constitution requires that a public assistance recipient must receive timely notice of a determination affecting participation in a program and an opportunity to meaningfully contest the agency's decision.[148]

The failure to issue the required notice of delayed processing and provide administrative hearing rights to a household aggrieved by DOH's delayed processing of their SNAP application thus violates both Due Process under the Fourteenth Amendment of the Constitution and the Alaska Constitution.

---

542 P.3d 1099, 1120 (Alaska 2024) ("[T]he Alaska Constitution's guarantee of due process is more protective than that of the federal constitution."); *State, Dep't of Nat. Res. v. Greenpeace, Inc.*, 96 P.3d 1056, 1064 (Alaska 2004) (same); *James v. State, Dep't of Corr.*, 260 P.3d 1046, 1051 n.16 (Alaska 2011) (same).

[146] *Allen v. Dep't of Health & Soc. Servs., Div. of Pub. Assistance*, 203 P.3d 1155, 1167 (Alaska 2009).

[147] *See Native Vill. of Kwinhagak*, 542 P.3d at 1120; *Greenpeace, Inc.*, 96 P.3d at 1064; *see also Baker v. City of Fairbanks*, 471 P.2d 386, 401–02 (Alaska 1970).

[148] *Baker v. State, Dep't of Health & Soc. Servs.*, 191 P.3d 1005, 1010 (Alaska 2008) ("food stamps, like various other forms of [public] benefits, are property interests protected by due process."); *see also Allen*, 203 P.3d at 1166–67 (citing *Baker v. State*).

**E. Defendant's failure to timely render eligibility determinations and issue benefits violates Due Process under the Fourteenth Amendment to the Constitution.**

Plaintiffs are entitled to summary judgment on their claim that Defendant's persistent failure to issue SNAP benefits on time deprives Plaintiffs of Due Process under the Fourteenth Amendment to the Constitution. As discussed *supra* in Section D, Plaintiffs have a protected property interest in their SNAP benefits and are thus entitled to Due Process protections.

"[T]he administrative process that determines eligibility for benefits must comport with due process."[149] "As due process applied to the welfare claimants in *Goldberg v. Kelly* . . . due process must attach to the process of determining ineligibility, whether at the outset or after receipt of benefits."[150] Courts analyzing Due Process violations resulting in wrongful deprivations of subsistence benefits have utilized two different tests. The first is the *Mathews v. Eldridge* balancing test, see *supra*. A second related body of case law, discussed *infra* at E.ii., holds that arbitrary governmental decision-making that results in the deprivation of a property interest, including subsistence benefits, violates due process.

> **i. Defendant's persistent delays in issuing SNAP benefits violate the *Mathews* test.**

---

[149] *Kraebel v. New York City Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 405 (2d Cir. 1992) (citing *Goldberg*, 397 U.S. at 260–66).

[150] *Kelly v. R.R. Ret. Bd.*, 625 F.2d 486, 490 (3d Cir. 1980) (citing *Wright v. Califano*, 587 F.2d 345, 354 (7th Cir. 1978) (defendant violated plaintiff's due process rights when defendant took nearly four years to render a determination on the benefits at issue)).

The *Mathews v. Eldridge* balancing test, discussed *supra* in Section D, considers: (i) the private interest affected; (ii) the risk of erroneous deprivation and the value of additional or changed procedures; and (iii) the government's interest.[151] As before, Plaintiffs' private interest in SNAP benefits is high. Defendant has deprived Plaintiffs of subsistence benefits, and "food is a necessity of life."[152]

Plaintiffs also satisfy the second *Mathews* prong. The risk of erroneous deprivation is great. Plaintiffs and other class members are indisputably entitled to SNAP benefit issuance following a timely eligibility determination, yet Defendant persists in depriving Plaintiffs and other class members of benefits for months, *see supra* Section B. In the most recent month for which data is available, 54% of applicants suffered a deprivation of SNAP benefits beyond required statutory timelines.[153]

While Plaintiffs and other class members eventually receive benefits, they are deprived of those benefits for the period the SNAP eligibility determination is pending. A person waiting to receive delayed SNAP benefits experiences hunger and desperation, even though they are entitled to assistance, solely because of administrative backlog.

---

[151] *Mathews*, 424 U.S. at 335.
[152] *Bliek v. Palmer*, 916 F. Supp. 1475, 1488 (N.D. Iowa 1996); *see Villegas v. Concannon*, 742 F. Supp 1083, 1087 (D. Or. 1990); *Davis v. Proud*, 2 F. Supp. 3d 460, 485 (E.D.N.Y. 2014) ("The importance of plaintiff's SNAP benefits is high and his interest in having restored the full amount of his SNAP benefits withheld by the State defendant's wrongful implementation . . . is substantial.").
[153] SMF ¶ 84.

The experience of going without the means to buy food cannot be erased by a late issuance of benefits. No one eats retroactively.

In contrast, changing Defendant's procedures to ensure that DOH consistently meets SNAP timeliness standards would provide meaningful protection against future erroneous deprivations. Plaintiffs and other class members are subject to recurring erroneous deprivations each time they apply or recertify their SNAP eligibility and fail to receive the benefits for which they are eligible. Reforms would have the undeniable effect of keeping Plaintiffs and other class members fed. With that in mind, Defendant—or this Court—could take other approaches to improve Defendant's timely processing of SNAP eligibility documents and promote due process.[154] For example—Defendant could allocate more merit staff to conduct interviews on the VCC or focus the work of merit staff on SNAP, where their work is required. Defendant could also designate a group of merit staff to process expedited SNAP applications in order to prioritize faster response for those with the least financial resources.

As to the third *Mathews* factor, Defendant may offer the Court her own insight. Yet, as Congress already noted, there is a governmental interest in ensuring adequate nutrition.[155] And administrative burdens to the state are "not overriding in the

---

[154] *See Daniels v. Woodbury Cnty., Iowa*, 625 F. Supp. 855 (N.D. Iowa 1986) (determining which specific procedures are necessary to ensure due process is met).
[155] *See also Villegas v. Concannon*, 742 F. Supp. 1083, 1087–88 (D. Or. 1990).

[subsistence benefits] context."[156] Nor is Defendant burdened by meeting the obligations already set forth in the SNAP Act.[157]

The undisputed evidence now before the Court demonstrates that Plaintiffs and other class members went without critical SNAP benefits, and will likely be deprived again when they must recertify unless Defendant is able to meet timely processing standards consistently. As a result, Plaintiffs are entitled to summary judgment on Plaintiff's Fifth Claim for relief.

### ii. Defendant's failure to timely issue SNAP deprives Plaintiffs of critical food assistance in violation of Due Process.

Defendant also violates Plaintiffs' due process rights by disregarding SNAP's eligibility standards. In an alternative due process framework to the *Mathews* test, courts have held that arbitrary governmental decision-making that results in the deprivation of a property interest, including subsistence benefits, violates due process.[158] Arbitrary decision-making in subsistence benefits programs seriously risks erroneous deprivation,[159] and ascertainable standards are "an elementary and intrinsic part of due process."[160] Due process requires that eligibility criteria be applied "uniformly" and "on

---

[156] *Bliek*, 102 F.3d at 1490 (citing *Goldberg*, 397 U.S. at 266).
[157] *Haskins*, 794 F.2d at 1277.
[158] *Holmes*, 733 F. Supp. 3d at 796 (citing *Daniels v. Woodbury Cnty., Iowa*, 742 F.2d 1128, 1133 (8th Cir. 1984)); *see also Ressler v. Landrieu*, 502 F. Supp. 324, 328 (D. Alaska 1980) (citing *Holmes v. New York City Hous. Auth.*, 398 F.2d 262, 265 (2d Cir. 1968)).
[159] *Holmes*, 733 F. Supp. 3d at 796 (citing *Daniels v. Woodbury Cnty., Iowa*, 742 F.2d 1128, 1133 (8th Cir. 1984)).
[160] *Baker-Chaput v. Cammett*, 406 F. Supp. 1134, 1140 (D.N.H. 1976); *see also Smith v. Goguen*, 415 U.S. 566, 578 (1974) (explaining that the "absence of any ascertainable standard for inclusion and exclusion is precisely what offends the due process clause").

the basis of ascertainable standards."[161] When such ascertainable standards are unequivocally outlined in federal requirements, the state administering the benefits program must comply in totality with them.[162] Subsistence benefits must, therefore, "be administered to ensure fairness and freedom from arbitrary decision-making as to eligibility" by consistently applying eligibility requirements.[163]

Here, Congress has established standards for uniformly and objectively determining SNAP eligibility.[164] Defendant renders those standards meaningless by failing to consult the objective criteria for months on end while Plaintiffs and other class members wait for benefits to which they are legally entitled.[165] The experiences of the named Plaintiffs and the timeliness data reported to this court, *supra* Section B, demonstrate clearly that Defendant consistently fails to apply SNAP's eligibility criteria

---

[161] *Ressler v. Landrieu*, 502 F. Supp. 324, 328 (D. Alaska 1980) (citing *Holmes v. New York City Housing Authority*, 398 F.2d 262, 265 (2d Cir. 1968)).
[162] *Withrow*, 942 F.2d at 1386.
[163] *White v. Roughton*, 530 F.2d 750, 753–54 (7th Cir. 1976); *see also Carey v. Quern*, 588 F.2d 230, 232 (7th Cir. 1978) (program must "insure fairness and avoid the risk of arbitrary decision making"); *K.W. by D.W. v. Armstrong*, 683 F. Supp. 3d 1125, 1133 (D. Idaho 2023) ("[A]bsence of any ascertainable standard for inclusion and exclusion is precisely what offends the Due Process Clause.") (citing *Smith*, 415 U.S. at 578); *M.A. v. Norwood*, 133 F. Supp. 3d 1093, 1098 (N.D. Ill. 2015) ("[A]rticulated standards" are required to "ensure fairness and to prevent arbitrary decision making."); *Strouchler v. Shah*, 891 F. Supp. 2d 504, 515–516 (S.D.N.Y. 2012) (decisions "[must] be made according to ascertainable standards . . . applied in a rational and consistent manner") (quoting *Mayer v. Wing*, 922 F. Supp. 902 (S.D.N.Y. 1996)); *Baker-Chaput*, 406 F. Supp. at 1130–40 ("[W]ritten, objective, and ascertainable standards is an elementary and intrinsic part of due process."); *Torres v. Butz*, 397 F. Supp. 1015 (N.D. Ill. 1975) ("[U]nreviewed and uncontrolled discretion . . . was violative of procedural due process.") (citing *Holmes v. New York City Hous. Auth.*, 398 F.2d 262 (2d Cir. 1968)).
[164] *See* 7 U.S.C. § 2020(e)(3), (e)(4), and (e)(9).
[165] SMF ¶¶ 76 – 84.

within statutory deadlines, resulting in widespread, ongoing arbitrary deprivations of benefits.[166]

For the named Plaintiffs and thousands of other class members, luck of the draw largely determines whether SNAP's eligibility criteria is applied timely or whether they are deprived of essential nutrition benefits for months.[167] Class members face unpredictable and unknowable delays that prevent otherwise eligible people from completing the SNAP eligibility process and receiving benefits within statutory timeframes. Defendant's operational failures mean that Plaintiffs and other class members are deprived of SNAP benefits without regard for the objective eligibility criteria, leaving them without means to buy food for days or months while their applications are delayed. Defendant is depriving class members of Due Process by arbitrarily depriving them of SNAP.

Defendant's failure to timely consult and apply SNAP eligibility criteria constitutes arbitrary agency action that deprives Plaintiffs and other class members of Due Process. As a result, Plaintiffs are entitled to summary judgment on their Fifth Claim for relief.

## CONCLUSION

Defendant's persistent failures to timely render SNAP eligibility determinations, permit SNAP applicants to file applications on the first day of contact with DOH and

---

[166] *Id.*
[167] *See* SMF ¶¶ 36–44; 70 – 71.

provide the notice of delayed processing violate multiple provisions of the SNAP Act,

federal due process and due process under the Alaska Constitution. For all the reasons

detailed above, Plaintiffs are entitled to summary judgment.

Dated: September 12, 2025

Respectfully submitted,


_/s/ Saima Akhtar_

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel.: (617) 406-6000
Fax: (617) 406-6100
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

\*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel.: (619) 699-2700
Fax: (619) 699-2701
Email: christopher.young@us.dlapiper.com

\*Sean P. Fulton (Tex. Bar No. 24103727)
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201-2482
(214) 743-4572 (telephone)
(972) 692-7272 (fax)
Email: sean.fulton@us.dlapiper.com

\*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

*\*appearing pro hac vice*

ATTORNEYS FOR PLAINTIFFS

## <u>Word Count Certification</u>

I certify that, in compliance with Local Rule of Civil Procedure 7.4(a)(1), the

foregoing Motion for Summary Judgment contains approximately 9,501 words, exclusive

of caption and signature blocks.

*/s/ Saima Akhtar*
Saima Akhtar
