Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700 (telephone)
(619) 699-2701 (fax)
Email: christopher.young@dlapiper.com

*Sean P. Fulton (Tex. Bar No. 24103727)
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201-2482
(214) 743-4572 (telephone)

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 1 of 26

(972) 692-7272 (fax)
Email: sean.fulton@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

*admitted pro hac vice*

**Attorneys for Plaintiffs**

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF ALASKA

|  |  |
|---|---|
| John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated,<br><br>       *Plaintiffs*,<br><br>v.<br><br>Heidi Hedberg, in her official capacity As Commissioner of the Alaska Department of Health.<br><br>       *Defendant*. | **Case No. 3:23-cv-00044-SLG** |

## STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1. Alaska's Department of Health ("DOH") is the state agency responsible for

   administering the Supplemental Nutrition Assistance Program ("SNAP") in Alaska

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 2 of 26

Case 3:23-cv-00044-SLG Document 108 Filed 09/12/25 Page 2 of 26

and ensuring compliance with federal law related to SNAP. Complaint, ECF 1-1 ¶ 18, Answer ECF 27 ¶ 18.

2. Heidi Hedberg is the Commissioner of the Alaska Department of Health ("DOH"). ECF 1-1 ¶ 18, ECF 27 ¶ 18.

3. DOH operates SNAP and issues benefits pursuant to an agreement with the Food and Nutrition Service ("FNS") and in accordance with the SNAP Act. Ex. 1, SOA004671.

4. DOH's Division of Public Assistance (DPA) administers the State's SNAP Program. ECF 1-1 ¶ 79, ECF 27 ¶ 79.

5. Deb Etheridge is the Director of the Alaska Division of Public Assistance. Ex. 2, Excerpts from Etheridge Dep. at 14:7–14:9.

6. DPA works with a contractor, Change and Innovation Agency ("C!A" or "CIA") to review, monitor, and improve the workflow management of day-to-day operations in DPA. Ex. 2 at 217:25–218:18.

7. Since January 2020, CIA has received at least $6.7 million in compensation. Ex. 3, Excerpts from 30b6 CIA Dep. at 166:6–168:19; Ex. 4, CIA Dep. Ex. 16.

8. DPA additionally works with a contractor, Public Consulting Group ("PCG"), who provides staff to perform certain duties including registering SNAP applications, taking SNAP applications over the phone, providing general information and referrals, and more. Ex. 2 at 155:24–156:10. DPA began working with PCG in or around March 2023. Ex. 2 at 159:24–160:4.

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 3 of 26

Case 3:23-cv-00044-SLG    Document 108    Filed 09/12/25    Page 3 of 26

9. While Plaintiff Andrew was waiting for his case to be processed, he and his children had to skip meals or have smaller portions than what they needed. ECF 45-5 ¶ 14.

10. While Plaintiff Birch was waiting for her SNAP benefits, she missed payments on her electric, cell phone, and internet bills, because she had to spend that money on food. ECF 45-3 ¶ 5. The cost of food was so high, she also had to rely on help from the Salvation Army and friends, and her and her sons largely lived off of deer meet that she had hunted. ECF 45-3 ¶ 6.

11. Without SNAP benefits, Plaintiff Carney had to use money she would usually spend on other necessities such as gas, toilet paper, and laundry detergent in order to pay for food. ECF 7-7 ¶ 16.

12. Without SNAP benefits, Plaintiff Ferguson relied on her sister who would cook meals and bring them over. She was able to go to the food bank once at the end of December, but otherwise it was too expensive to travel to the food bank. ECF 45-4 ¶ 20.

13. While Plaintiff Jenkins was waiting for her SNAP benefits, she would sometimes only eat once a day to make sure that her children had enough food. Some days, her husband wouldn't eat at all. ECF 45-1 ¶¶ 36-38.

14. In the months when Plaintiff Fender wasn't receiving benefits, he would have to decide between using his money to pay for heating costs for the RV he and his girlfriend lived in, or paying for food. ECF 7-9 ¶ 7.

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 4 of 26

Case 3:23-cv-00044-SLG    Document 108    Filed 09/12/25    Page 4 of 26

15. Without SNAP benefits, Plaintiff Conover and her husband relied on extended family for food, and would regularly skip meals. ECF 45-6 ¶¶ 22-24.

16. Without SNAP benefits, Plaintiff Ellanna relied on relatives for money for food. ECF 45-7 ¶¶ 38-39.

17. Without SNAP benefits, Plaintiff Moroz and her family struggled to get adequate food. They could not get to the nearest food bank as it was in Fairbanks, and the food they were able to get from local charities was not good for her children. ECF 45-2 ¶¶ 14-18.

18. Without SNAP benefits, Plaintiff Kamkoff and her family had to rely on family and the foodbank. ECF. No 45-8 ¶¶ 17-19.

19. Without SNAP benefits, Rachel Grant couldn't afford a Thanksgiving or Christmas meal. Instead of spending her time and attention focused on starting her own business, she had to focus instead on finding money for food. ECF. No 35-3 ¶¶ 10-11.

20. Without SNAP benefits, Roger Gaston and his wife eliminated all non-essential expenses, maxed out credit cards, and relied on family to cover vital medication. They chose between putting food on the table and paying their heating bill. ECF 35-5 ¶¶ 16-17.

21. Without SNAP benefits, Steve Younker's diabetes severely progressed and he lost 20 pounds. He began going to a food bank for the first time in his life, and had to

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 5 of 26

Case 3:23-cv-00044-SLG    Document 108    Filed 09/12/25    Page 5 of 26

spend money on cabs in order to get there. He had to make decisions about spending money on food or rent, gas, and electricity bills. ECF 35-6 ¶ 15-17.

22. None of the ten named plaintiffs received a timely determination on their SNAP application.

Applying for SNAP

23. To apply for SNAP benefits in Alaska, an applicant must submit an application to DPA. Ex. 5, Excerpts from 30b6 Stovall Dep. at 32:2–33:24.

24. Paper applications are available in the lobbies of DPA offices, on DPA's website, and in various community locations. Ex. 5 at 32:25–33:15; Ex. 3 at 157:14– 157:18. Alaskans can also call the VCC to have a paper application mailed to them or a printable version of the application emailed to them. ECF 1-1 ¶ 82; ECF 27. ¶ 82.

25. The lobby of the office must be open for an individual to be able to access the application, but drop boxes are on the exterior of the building and applicants may drop off an application when the lobby is closed. Ex. 3 at 158:1–158:23.

26. In January 2023, DPA's website indicated "[a]pplications can be submitted telephonically through the Virtual Contact Center (VCC)." ECF 1-1 ¶ 83; ECF 27 ¶ 83.

27. DPA uses the same form for SNAP applications that it uses for other benefit programs. The application is 13 pages long, and there are multiple questions that

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 6 of 26

Case 3:23-cv-00044-SLG    Document 108    Filed 09/12/25    Page 6 of 26

are not used in processing the SNAP application. Ex. 5 at 70:9–76:12; Ex. 6, SOA20608.

28. A submitted application will then be registered into DPA's eligibility information system ("EIS") manually. Ex. 5 at 34:12–35:3. This means that a worker will create a file for a client who is seeking SNAP benefits. Ex. 5 at 34:22–35:3.

29. DPA started using EIS over 40 years ago. Ex. 2 at 100:23–101:2.

30. In late 2024, early 2025, CIA went to offices and saw unprocessed paperwork which included stacks of applications and verifications. CIA was worried about getting the paperwork registered in the system timely. Ex. 3 at 103:8–104:9.

31. Staff are broadly categorized as merit or non-merit staff. Merit staff are staff that are hired by the State of Alaska to process SNAP applications and make eligibility determinations. Non-merit staff can do other clerical tasks such as register applications in the system, answer general inquiries about programs, and classify documents. Ex. 5 at 130:3–131:1, 133:7–133:25, 134:7–135:1; Ex. 2 at 197:13–198:12.

32. Non-merit staff tend to be contractors, such as CIA or PCG staff and cannot determine SNAP eligibility. Ex. 3 at 159:25–160:9; Ex. 5 at 133:7–133:25.

33. Once an application is submitted, DPA conducts an interview of the household. Ex. 5 at 42:4–43:22.

34. SNAP interviews must be done by merit staff. Ex. 5 at 130:3–131:1. DPA uses "eligibility technicians" to complete the interview. Ex. 5 at 106:1–106:2.

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 7 of 26

Case 3:23-cv-00044-SLG    Document 108    Filed 09/12/25    Page 7 of 26

35. DPA will attempt to call the household to conduct the interview, and if the applicant does not answer, DPA will schedule an interview for them and send the notice of the date and time of their interview window. Ex. 5 at 42:4–42:23.

36. Rather than schedule an applicant's interview for a set time, DPA gives a time window during which an applicant must call to complete their interview. Applicants can also call prior to their interview time. Ex. 3 at 87:11–87:22.

37. At the time of the interview window, the applicant will need to call in to the Virtual Contact Center ("VCC") and wait in the queue to speak to an eligibility technician. Ex. 5 at 47:21–48:7.

38. The average speed to answer is the average time a person waits before the call is answered. Ex. 7, Stovall Decl. Ex. 28 ¶ 6. The chart below represents a compilation of data indicating the average speed to answer in minutes for the scheduled interview queue in the VCC each month from August 2022, when DPA initially reinstated interviews, through April 2025, the most recently available

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 8 of 26

data. Ex. 8, VCC data from SOA012977, SOA032864.



39. The average speed to answer for the scheduled interview queue in the VCC in April 2025 was 2 hours and 14 minutes. Ex. 8.

40. This means that, on average, individuals who were actually able to speak to a representative to perform their interview had to wait on the queue for over 2 hours. Ex. 7 ¶ 6.

41. The Percent Abandon metric measures the percentage of calls where the caller voluntarily hangs up. Ex. 7 ¶ 6. The chart below represents a compilation of data indicating the percentage of abandoned calls on the scheduled interview queue in

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 9 of 26

Case 3:23-cv-00044-SLG    Document 108    Filed 09/12/25    Page 9 of 26

the VCC each month from August 2022 through April 2025. Ex. 8.



Percentage of Abandoned Calls on the Interview Queue by Month

42. For example, the Percent Abandon for the scheduled interview queue in the VCC in April 2025 was 47%, meaning that 47% of callers attempting to complete their scheduled interview hung up before speaking with a representative. Ex. 8

43. The average wait time metric is the average time a person waits before either abandoning the call, or speaking to a representative. Ex. 7 ¶ 6. The chart below represents a compilation of data indicating the average time a person waited on the scheduled interview queue before either abandoning the call or speaking with a

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 10 of 26

Case 3:23-cv-00044-SLG    Document 108    Filed 09/12/25    Page 10 of 26

representative each month from August 2022 through April 2025. Ex. 8.



Average Wait Time on Interview Queue in Minutes by Month

44. For example, the average wait time for the scheduled interview queue in the VCC in April 2025 was 1 hour and 12 minutes. Ex. 8.

45. DPA may ask for additional verification to determine eligibility. Ex. 5 at 50:5–51:4.

46. DPA must determine eligibility and issue benefits to the applicant household within 30 days of the date the application was submitted, or seven days for expedited applications. Ex. 5 at 57:13–57:16.

47. DPA considers an application to be timely processed when a determination has been made. Ex. 2 at 100:1–100:4.

48. Periodically, SNAP recipients must submit recertifications to maintain their eligibility for SNAP. While the recertification form is distinct, the process of

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 11 of 26

Case 3:23-cv-00044-SLG    Document 108    Filed 09/12/25    Page 11 of 26

submitting a recertification is otherwise the same as submitting an application. Ex. 9, Excerpts from Dablemont Dep. at 53:12–54:16.

<u>Right to file</u>

49. As of the filing of this motion, there are 11 physical DPA offices in the state of Alaska. DPA's website. Below is a map of where those offices are.



50. DPA office lobbies closed to the public during the COVID-19 pandemic around March 2020. Ex. 5 at 170:13–170:20.

51. Starting in April of 2021, DPA rolled out the VCC, a statewide phone number for Alaskans to call to reach DPA without having to go to an office in person. Prior to the establishment of the VCC, each individual office had a separate phone number. Ex. 10, SOA026404.

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 12 of 26

Case 3:23-cv-00044-SLG    Document 108    Filed 09/12/25    Page 12 of 26

52. In August 2021, DPA began accepting telephonic applications. Ex. 11, SOA006240; Ex. 5 at 98.3–98.5.

53. The implementation of the telephonic application allowed an applicant to provide the information needed to submit an application (i.e., the information that an applicant would generally include on a paper application), over the telephone. Ex. 5 at 95:21–96:6; Ex. 2 at 70:14–70:18.

54. After a telephonic application is taken, the application is processed in the same way as a paper application. Ex. 2 at 102:18–103:13.

55. Because telephonic applications do not have to be done by merit staff, and interviews do have to be done by merit staff, the interview is not done at the same time as the application. Ex. 5 at 97:3–97:10.

56. Initially, DPA did not have a separate queue on the VCC to accept telephonic applications. Ex. 7 ¶ 9.

57. The average speed to answer on the general inquiry queue in the VCC in January 2023 was 2 hours and 9 minutes. Ex. 8.

58. On May 2, 2023, the parties stipulated to stay this lawsuit on certain conditions. ECF 12.

59. One such condition was that DOH would "fully resume accepting Telephonic Applications for SNAP benefits through the Virtual Call Center ("VCC") using Telephonic Signatures, as approved by FNS, no later than June 1, 2023. ECF 12 at 3.

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 13 of 26

Case 3:23-cv-00044-SLG   Document 108   Filed 09/12/25   Page 13 of 26

60. Starting July, 2023, DPA created a queue on the VCC to accept telephonic applications. Ex. 7 ¶ 9.

61. Another condition for the stipulated stay was that "DOH [would] reopen lobbies on Monday and Friday in the Anchorage, Wasilla, Fairbanks and Juneau DPA offices by June 1, 2023." ECF 12 at 4-5.

62. Some DPA office lobbies had reopened to the public for general inquiries on May 3, 2022 on Tuesdays, Wednesdays, and Thursdays from 9am-4pm. Ex. 12, Defendant's Response to 2nd Interrogatories at 4; Ex. 5 at 172:10–173:1.

63. In December 2022, the Muldoon and Gambell offices closed permanently. Ex. 5 at 169:2–170:3.

64. DPA began reopening lobbies for general inquiries 5 days a week in June 2023. Ex. 12 at 4.

65. However, since 2022, the Sitka and Nome offices have had several prolonged closures. Ex. 12 at 4; Ex. 13, EOM Staff Emails; Ex. 5 at 80:11–81:17; 173:6–173:22.

66. The Sitka office was closed September through November 2022, March through July 2023, and March through August 2024. Ex. 12 at 4.

67. Additionally, the Sitka office tended to be closed Tuesday through Thursday from August through November 2023, and most, if not all, of December 2023. Ex. 13.

68. The Nome office was closed May 2022 through June 2023, January and February 2024, and has not been open since January 2025. Ex. 12 at 4.

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 14 of 26

Case 3:23-cv-00044-SLG   Document 108   Filed 09/12/25   Page 14 of 26

69. In addition to being open for general inquiries, offices began offering same-day eligibility services beginning with the Bethel office in July 2023, and most recently the Anchorage office in November 2024, at which point nine of the eleven offices offered same-day eligibility services. Ex. 12 at 4.

70. Same-day eligibility services mean that an individual can walk in and have an eligibility worker process their application right away. The completion rate of cases that are handled in a lobby are significantly higher than the completion rate of cases that are handled out of a lobby: in lobby completion in April 2025 was 83% compared to the non-lobby rate of 34%. Ex. 2 at 53:6–53:19; Ex. 3 at 81:24–83:10, 144:4–145:19; Ex. 14, SOA032808.

71. An article published in the Anchorage Daily News on June 7, 2025, reported that people were lining up an hour before offices opened in order to try to get assistance in person. Alaskans continue to face long lines at offices. Iris Samules, *'Nothing You Can Do Except Stand Here': Public Assistance Office Keeps Alaskans Waiting*, Anchorage Daily News (June 7, 2025) https://www.adn.com/alaska-news/2025/06/07/nothing-you-can-do-except-stand-here-public-assistance-office-keeps-alaskans-waiting/.

72. In December 2024, DPA offered a new Online SNAP specific application. Ex. 15, SOA006331; Ex. 5 at 76:13–76:24.

73. After an online application is complete, the application is processed in the same way a paper application is processed. Ex. 2 at 102:18–103:13.

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 15 of 26

Case 3:23-cv-00044-SLG   Document 108   Filed 09/12/25   Page 15 of 26

74. The online application does not automatically populate into the eligibility system. Rather, a worker must manually enter the application into EIS through the same process paper applications are registered. Ex. 5 at 62:23–63:13.

75. One reason that DPA decided to implement the online application was to make applying for SNAP more accessible for Alaskans. Ex. 2 at 73:23–74:21. CIA found that the online application offered a big advantage to the agency and customers. Ex. 3 at 139:22–140:5; Ex. 16, CIATPP_0000000019.

Timeliness

76. DPA has not been in compliance with the federal rules since at least January 2023. Ex. 2 at 32:5–33:6.

77. Each month, DPA tracks the Application Processing Timeliness (APT). Ex. 9 at 123:3–123:8.

78. The APT is calculated by dividing the total number of applications approved that were timely in a month by the total number of applications that were approved in the month. Ex. 9 at 124:8–126:4.

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 16 of 26

Case 3:23-cv-00044-SLG    Document 108    Filed 09/12/25    Page 16 of 26

79. The chart below represents a compilation of data indicating the monthly APT from January 2021 through June 2025. Ex. 17, SOA032851; ECF 100-4 at 7.



80. The most recently available data shows that the APT rate in June 2025 was 57%. *See* ECF 100-4 at 7.[1]

81. DPA also tracks timeliness for SNAP recertifications. This metric is calculated by dividing the total number of recertifications that were approved timely within the month divided by the total number of recertifications that were approved within the month. Ex. 9 at 159:6–160:2.

82. For the purposes of this metric, a recertification is considered timely approved if it was processed within 30 days. Ex. 9 at 159:12–159:19.

---

[1] This metric was calculated by combining the data available for both non-expedite and expedite applications to get a total APT rate for all new applications: $(501 + 545) / (939 + 891) = 57\%$.

83. The chart below represents a compilation of data indicating the monthly recertification timeliness from January 2021 through June 2025. Ex. 18, SOA032863; ECF 100-4 at 7.



84. Below are the processing rates for non-expedite applications, expedite applications, recertifications, and the total timeliness for each month between January 2025 and June 2025, as reported by DPA. ECF 100-4 at 7.

| | Alaska Supplemental Nutrition Assistance Program Timeliness | | | |
|---|---|---|---|---|
| Month | Non-Expedite Applications | Expedite Applications | Recertifications | Total Timeliness |
| Jan-25 | 62% | 64% | 18% | 52% |
| Feb-25 | 62% | 49% | 23% | 48% |
| Mar-25 | 64% | 53% | 29% | 51% |
| Apr-25 | 61% | 55% | 18% | 49% |
| May-25 | 52% | 62% | 14% | 44% |
| Jun-25 | 53% | 61% | 22% | 46% |

85. DPA also tracks the total number of applications and recertifications that are overdue in processing. DPA identifies these as cases that are in backlog.

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 18 of 26

Case 3:23-cv-00044-SLG   Document 108   Filed 09/12/25   Page 18 of 26

86. The chart below represents a compilation of data indicating the number of applications and recertifications that were in backlog each month from August 2022 through May 2025. Ex. 19, SOA032819.



87. In February 2023, there were a total of 15,938 SNAP cases in the backlog. Ex. 19.

88. According to the most recently available data, there were 4,782 cases in the backlog as of May 2025. Ex. 19.

89. The chart below represents a compilation of data indicating the average number of days that overdue applications had been unworked by week from March 6, 2023 through May 6, 2025. For instance, the first point on the purple line shows that among the SNAP applications that were not timely processed on March 6, 2023, the average number of days that the application had been sitting unprocessed was 97 days; the average number of days that an expedited SNAP application (blue line) had been sitting unprocessed was 79 days; and the average number of days

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 19 of 26

Case 3:23-cv-00044-SLG    Document 108    Filed 09/12/25    Page 19 of 26

that a SNAP recertification had been sitting unprocessed was 96 days. Ex. 20, Compilation of the Average Age of Unacted Applications Reports.



Average Age Unacted for Cases Over Time Limit

90. On May 6, 2025, the average number of days that untimely SNAP applications had been sitting unprocessed was 98 days, expedited applications was 26 days, and recertifications was 94 days. Ex. 20.

91. On average, a SNAP-only interview would take between 60 and 90 minutes. Ex. 5 at 96:24–97:2.

92. At various points during the COVID-19 pandemic, USDA/FNS issued waivers to Alaska DOH to waive this requirement and process applications without performing an interview.

93. Alaska DOH had an interview waiver starting in from July 2020 through July 2022. Ex. 21, Compilation of Memos to Staff Regarding COVID-19 Interview Waiver.

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 20 of 26

Case 3:23-cv-00044-SLG    Document 108    Filed 09/12/25    Page 20 of 26

94. Starting in August 2022, DOH was required to restart interviews. Ex. 5 at 106:21–107:2; Ex. 21 at SOA006400.

95. In October 2022, DOH received another interview waiver that was granted through September 2023; Ex. 5 at 108:5–108:25; Ex. 22, SOA006104.

96. In November 2023, DOH stopped doing interviews. Ex. 5 at 110:9–111:2; Ex. 23, SOA006373.

97. FNS had not granted permission to DOH to stop doing interviews at that time. Ex. 5 at 109:16–109:25; Ex. 24, SOA06185.

98. However, FNS did reinstate the interview waiver in May 2024. Ex. 5 at 111:12–111:24; Ex. 25, SOA025080.

99. DOH slowly reinstated interviews from August 1, 2024 through October 31, 2024. Ex. 5 at 113:20–114:5; Ex. 26, SOA06315.

100. The chart below represents a compilation of data indicating the number of applications and recertifications that were in backlog each month from August 2022 through May 2025, with dates where the interview waivers began and ended

superimposed. Ex. 19; Exs. 21–26.



Alaska SNAP Application Backlog by Month - Waiver Timeline

101. In January 2020, CIA stated that it would take 140 merit staff to keep up with the volume of work that DPA was facing, and that there were 44 positions that were either vacant or had been filled with staff who had not completed core training. Ex. 3 at 76:19–78:10; Ex. 27, CIATPP_0000000010.

102. During the 2021 legislative session, the Alaska State Legislature removed over 100 of DPA's merit staff. Ex. 2 at 203:1–206:3; Ex. 28, SOA004653.

103. In or around January 2023, DPA was put under a corrective action plan ("CAP") by FNS. In that process, FNS identified deficiencies related to untimely processing and identified the lack of staffing as a cause of application backlog and timeliness concerns. Ex. 5 at 77:19–80:18; Ex. 29, SOA13523.

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 22 of 26

Case 3:23-cv-00044-SLG    Document 108    Filed 09/12/25    Page 22 of 26

104. In August 2024, CIA reported that the number of staff available to complete the workload was decreasing. Ex. 3 at 128:9–131:10; Ex. 30, CIATPP_0000000056.

105. The staffing vacancy rate for DPA in April 2025 was around 30 percent. Ex. 5 at 79:22–80:6; *see also* Ex. 2 at 186:20–187:20, 234:24–235:19.

106. In order to get into compliance with timely processing, DPA stated that it would "take us being fully staffed, with maybe even adding some additional positions to the agency." Ex. 5 at 127:8–128:25; *see also* Ex. 3 at 103:8–104:19, 125:3, 145:24–146:3.

107. Inadequate staffing has been a consistent issue for Alaska. Ex. 3 at 152:2–152:13.

108. CIA has worked with DPA to try to increase efficiency among the staff. At one point, DPA implemented key performance indicators and quotas for the staff, but at the time only about 40% of the staff met the performance expectations. Ex. 3 at 136:20–138:10.

109. CIA stated that it typically sees more production out of an individual staff person in other states than it does in Alaska. Ex. 3 at 164:7–165:5.

110. CIA has suggested that DPA set up a dedicated call center. As of May 2025, staff would periodically, but not always, work on the call center. Many of the staff thought of the call center as punishment and did not enjoy working there. A dedicated call center is when there is dedicated staff to the call center who want to

be there and who take ownership in managing and running the call center. Ex. 3 at 140:16–142:18.

111.     As of May 2025, Alaska still did not have a dedicated call center. Ex. 3 at 142:15–142:18.

Notice

112.     DPA admitted that it was not sending the notice of delayed processing that is required by law. ECF 27 ¶ 115; Ex. 5 at 58:20–59:1.

113.     Following the Court's decision on Preliminary Injunction, DPA began issuing a notice of delayed processing. Ex. 5 at 59:3–59:5; Ex. 2 at 114:22–115:15. DPA began issuing this notice in or around April 2025. Ex. 2 at 115:7–116:4; ECF 97-1 at 11.

114.     If a SNAP applicant is experiencing delay in the processing of their application, they can file a fair hearing. Ex. 2 at 144:5–144:21.

Dated: September 12, 2025

Respectfully submitted,

*/s/ Saima Akhtar*

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 24 of 26

Case 3:23-cv-00044-SLG    Document 108    Filed 09/12/25    Page 24 of 26

(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel.: (617) 406-6000
Fax: (617) 406-6100
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel.: (619) 699-2700
Fax: (619) 699-2701
Email: christopher.young@us.dlapiper.com

*Sean P. Fulton (Tex. Bar No. 24103727)
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201-2482
(214) 743-4572 (telephone)
(972) 692-7272 (fax)
Email: sean.fulton@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
*John Andrew et. al. v. Heidi Hedberg*; Case No.: 3:23-cv-00044-SLG
Page 25 of 26

Case 3:23-cv-00044-SLG   Document 108   Filed 09/12/25   Page 25 of 26

444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

*appearing pro hac vice*

ATTORNEYS FOR PLAINTIFFS