Goriune Dudukgian (AK Bar No. 0506051)
Nicholas Feronti (AK Bar No. 2106069)
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700 (telephone)
(619) 699-2701 (fax)
Email: christopher.young@us.dlapiper.com

*Sean P. Fulton (Tex. Bar No. 24103727)
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201-2482
(214) 743-4572 (telephone)
(972) 692-7272 (fax)
Email: sean.fulton@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

*admitted *pro hac vice*

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated, *Plaintiffs*, <br><br> v. <br><br> Heidi Hedberg, in her official capacity as Commissioner of the Alaska Department of Health, <br> *Defendant*. | Case No. 3:23-cv-00044-SLG <br><br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION** |

## I.    PRELIMINARY STATEMENT

Alaska's Department of Health ("DOH") does not dispute its violations of the Supplemental Nutrition Assistance Program ("SNAP") Act. For years, DOH has violated 7 U.S.C. § 2020(e)(3), (4), and (9) by failing to timely process SNAP applications.[1] And it

---

[1] ECF No. 77 at 13.

is also undisputed that these delays continue to this day, leaving thousands of hungry Alaskans waiting for vital food benefits.[2] Nor does DOH dispute that it has been failing to provide aggrieved households with a notice of delayed processing conveying fair hearing rights under 7 U.S.C. § 2020(e)(10), or that it has not been permitting households "to apply for SNAP on the same day that the household first contacts a SNAP office in person during office hours," as required by 7 U.S.C. § 2020(e)(2)(B).

Instead, DOH now defends its failures by claiming that, despite its ongoing violation of federal law, hungry Alaskans are powerless to enforce the SNAP Act.[3] DOH asserts that a recent Supreme Court decision, *Medina v. Planned Parenthood S. Atl.*,[4] set forth a new standard for determining whether federal statutes enacted pursuant to Congress's spending power create rights enforceable under 42 U.S.C. § 1983, and that the SNAP Act provisions here fall short of that standard.

DOH is wrong. *Medina* simply reiterated a standard that the Supreme Court announced more than two decades ago in *Gonzaga Univ. v. Doe*[5]: a statute confers rights enforceable under § 1983 when, using all the traditional tools of statutory interpretation, it is clear from the statutory text that Congress intended to confer a privately enforceable right. That is the case here. The statutory text and context of the SNAP Act provisions here

---

[2] ECF No. 114-1 at 7.
[3] ECF No. 102 at 1.
[4] 606 U.S. --, 145 S. Ct. 2219 (2025).
[5] 536 U.S. 273 (2002).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 3 of 33

Case 3:23-cv-00044-SLG    Document 115    Filed 10/17/25    Page 3 of 33

clearly and unambiguously confer individually enforceable rights. DOH's motion for partial summary judgment should be denied.

## II.     LEGAL BACKGROUND

### A.     Privately Enforceable Rights Under 42 U.S.C. § 1983

"[S]ince the 1870s," 42 U.S.C. § 1983 "has provided an express cause of action to any person deprived (by someone acting under color of state law) of 'any rights . . . secured by the Constitution and laws.'"[6] Since its codification, parties have enforced constitutional and statutory rights via § 1983.

In 2002, in *Gonzaga*,[7] the Supreme Court clarified the standard for determining whether a statute enacted via Congress's spending power provides a privately enforceable "right" under § 1983. *Gonzaga* instructed that only "unambiguously conferred" rights are enforceable under § 1983.[8] To determine if a spending power enactment "unambiguously confer[s]" a right, courts must ask "whether or not Congress intended to confer individual rights upon a class of beneficiaries"—an inquiry that requires looking to the "text and structure" of the relevant statute.[9] Spending power enactments that are "rights-creating" meet this test when "phrased in terms of the persons benefited," "with an unmistakable focus on the benefited class," using "clear and unambiguous terms."[10]

---

[6] *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 171 (2023).
[7] 536 U.S. 273 (2002).
[8] *Id.* at 283.
[9] *Id.* at 285-86.
[10] *Id.* at 274, 284, 290 (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 691 (1979).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 4 of 33

Case 3:23-cv-00044-SLG     Document 115     Filed 10/17/25     Page 4 of 33

"Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983."[11] The burden then shifts to the defendant to rebut this presumption by showing that the statute either "expressly forbid[s] § 1983's use," or, "[a]bsent such a sign," implicitly does so by creating "a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983."[12]

The Supreme Court has twice applied the *Gonzaga* test: first in *Health & Hosp. Corp. of Marion Cnty. v. Talevski*,[13] and then in *Medina v. Planned Parenthood S. Atl.*[14] Neither established new law. Rather, each "reaffirmed" that "*Gonzaga* . . . sets forth [the] established method" for ascertaining whether spending clause enactments confer privately enforceable rights and applied that method to the spending power enactments at issue.[15]

In *Talevski*, the Supreme Court applied the *Gonzaga* test to two provisions of the Federal Nursing Home Reform Act ("FNHRA") and held that those provisions conferred § 1983-enforceable rights because they "use clear 'rights-creating language,' speak 'in terms of the persons benefited,' and have an 'unmistakable focus on the benefited class.'"[16] In *Medina*, by contrast, the Supreme Court held that Medicaid's "any-qualified-provider provision" did not satisfy the *Gonzaga* test because it does not contain the "clear and

---

[11] *Id.* at 284.

[12] *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 186 (2023) (citations omitted). The *Talevski* Court found rights enforceable via § 1983 even though the FNHRA provided a remedial scheme that did not preclude or restrict actions brought under § 1983. *Id.* at 188.

[13] 599 U.S. 166 (2023).

[14] 606 U.S. --, 145 S. Ct. 2219 (2025).

[15] *Medina*, 145 S. Ct. at 2234 (quoting *Talevski*, 599 U.S. at 183).

[16] *Talevski*, 599 U.S. at 186 (quoting *Gonzaga*, 536 U.S. at 284, 287, 290).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 5 of 33

Case 3:23-cv-00044-SLG    Document 115    Filed 10/17/25    Page 5 of 33

unambiguous rights-creating language" necessary to "support[] a private suit under § 1983."[17]

*Medina* did not, as Defendant argues, "newly articulate[]" a test for determining if a spending power enactment is privately enforceable under § 1983.[18] Rather, *Medina*, like *Talevski* before it, reaffirmed and applied *Gonzaga*. While *Medina* warned lower courts not to rely on a trio of pre-*Gonzaga* decisions when determining whether spending power enactments establish rights enforceable under § 1983, it only issued the warning because that trio of decisions had already been rejected twenty-three years before in *Gonzaga*.[19]

## B.     The Plaintiffs' Claims Under the SNAP Act.

SNAP was enacted by Congress to alleviate hunger and malnutrition by allowing low-income households better food purchasing power.[20] Provisions of the SNAP Act at issue in this litigation ensure that all eligible households may access and promptly receive the SNAP benefits to which they are entitled.[21] Here, Plaintiffs allege three claims under § 1983 based on Defendant's violation of five provisions of the SNAP Act.[22]

Plaintiffs' first claim—their "timely processing" claim—is based on Defendant's violations of 7 U.S.C. § 2020(e)(3), (4), and (9) (and its implementing regulations). Per § 2020(e)(3), a "State agency shall . . . promptly determine eligibility of each applicant

---

[17] 145 S. Ct. at 2236.
[18] ECF No. 102 at 1.
[19] 145 S. Ct. at 2234 (quoting *Talevski*, 599 U.S. at 183).
[20] 7 U.S.C. § 2011.
[21] 7 U.S.C. § 2020.
[22] Plaintiffs also alleged a claim under 7 U.S.C. § 2020(e)(1)(B), but that claim has now been dismissed. *See* ECF No. 111.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 6 of 33

Case 3:23-cv-00044-SLG     Document 115     Filed 10/17/25     Page 6 of 33

household by way of verification of income . . . so as to complete certification of and provide an allotment . . . to any eligible household not later than thirty days following its filing of an application."[23] Section 2020(e)(4) further requires that a SNAP recipient seeking recertification of benefits must "receive its allotment no later than one month after the receipt of the last allotment issued" if the household filed its recertification application "no later than fifteen days prior to the day upon which its existing certification period expires."[24] And § 2020(e)(9) provides that, for households in need of emergency food aid, the "State agency shall . . . provide benefits not later than 7 days after the date of application."[25]

Plaintiffs' second claim—their "notice of delayed processing" claim—is based on Defendant's violations of 7 U.S.C. § 2020(e)(10), which provides for a fair hearing and prompt determination thereafter for "any household aggrieved by the action of the State agency under any provision of its plan of operation as it affects the participation of such household in the supplemental nutrition assistance program."[26]

And Plaintiffs' third claim—their "right to file" claim—is based on Defendant's violations of 7 U.S.C. § 2020(e)(2)(B), which provides that the state agency "shall permit an applicant household to apply for SNAP on the same day that the household first contacts a SNAP office in person during office hours."[27]

---

[23] 7 U.S.C. § 2020(e)(3).
[24] 7 U.S.C. § 2020(e)(4).
[25] 7 U.S.C. § 2020(e)(9).
[26] Regulations pertaining to fair hearings are at 7 C.F.R. § 273.15.
[27] 7 U.S.C. § 2020(e)(2)(B)(iii).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 7 of 33

Case 3:23-cv-00044-SLG    Document 115    Filed 10/17/25    Page 7 of 33

Plaintiffs commenced this lawsuit in January 2023, and, in May 2023, the Court certified two classes: (i) a class of Alaska residents whose SNAP eligibility was not determined within the timeframes mandated by § 2020(e)(3), (4), and (9); (ii) a class of Alaska residents who have been or will be "denied the right to file a SNAP application the first time they contact DOH during office hours," in violation of § 2020(e)(2)(B)(iii).[28]

## III.  ARGUMENT

### A.  The SNAP Act Provisions at Issue Unambiguously Create Privately Enforceable Rights.

The statutory text and context make clear that, consistent with the *Gonzaga* standard, the SNAP Act provisions at issue unambiguously confer individual rights that are enforceable via § 1983. The statute's clear and unambiguous conferral of rights is only confirmed by the implementing regulations.

#### i)  Each Provision's Plain Text Unambiguously Confers Individual Rights.

Plaintiffs assert claims under five provisions of the SNAP Act: 7 U.S.C. § 2020(e)(2)(B)(iii), (e)(3), (4), (9), and (10). In "stark contrast to the statutory provisions that failed *Gonzaga*'s test in *Gonzaga* itself,"—and unlike the Medicaid Act provision at issue in *Medina*—each provision is "phrased in terms of the persons benefited" with an "unmistakable focus on the benefited class" using "rights-creating," individual-centric

---

[28] *See* ECF No. 15.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 8 of 33

Case 3:23-cv-00044-SLG    Document 115    Filed 10/17/25    Page 8 of 33

language.[29] "If a statutory provision surmounts this significant hurdle, it 'secures' individual rights that are deemed 'presumptively enforceable' under § 1983."[30]

That is certainly true of 7 U.S.C. § 2020(e)(3), (4), and (9), which form the basis of Plaintiffs' claim that the DOH fails to process their SNAP applications within the statutorily mandated timeframes (the "timely processing" claim). Consider the statutory language:

- 7 U.S.C. § 2020(e)(3) provides that the state agency "*shall* . . . promptly determine the eligibility of *each applicant* household" and "*shall* provide *each applicant household*, at the time of application, a clear written statement explaining what acts *the household* must perform to cooperate in obtaining verification and otherwise completing the application process."[31]

- 7 U.S.C. § 2020(e)(4) provides that the state agency "*shall* insure that *each participating household* receive a notice of expiration of its certification prior to the start of the last month of its certification period" and that "*each such household* which seeks to be certified another time or more times thereafter . . . *shall*, if found to be still eligible, receive *its allotment* no later than one month after the receipt of the last allotment issued to it pursuant to its prior certification."[32]

- 7 U.S.C. § 2020(e)(9) likewise provides that the state agency "*shall* . . . provide benefits no later than 7 days after the date of application to *any household.*"[33]

The other two provisions at issue contain the same mandatory and individual-centric text. Under § 2020(e)(2)(B)(iii), the state "*shall* permit *an applicant household* to apply to participate in the program on the same day that the household first contacts

---

[29] *Talevski*, 599 U.S. at 183, 185 (quoting *Gonzaga*, 536 U.S. at 283, 285-86).

[30] *Id.* at 184 (quoting *Gonzaga*, 536 U.S. at 284).

[31] 7 U.S.C. § 2020(e)(3) (emphasis added).

[32] 7 U.S.C. § 2020(e)(4) (emphasis added).

[33] 7 U.S.C. § 2020(e)(9) (emphasis added).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 9 of 33

Case 3:23-cv-00044-SLG    Document 115    Filed 10/17/25    Page 9 of 33

a supplemental nutrition assistance program office in person during office hours."[34] And §

2020(e)(10) requires that the state "***shall*** provide . . . for the granting of a fair hearing and

a prompt determination thereafter to ***any household*** aggrieved by the action of the State

agency"[35]

Such mandatory, "individually focused" language is precisely "the sort of 'rights-creating' language critical to showing the requisite congressional intent to create new rights."[36] As the Ninth Circuit has previously held, a statutory provision that "expresses a clear mandate by using the term 'shall,'" and "focuses squarely on the protected individual" contains "rights-creating language."[37]

Defendant concedes that at least § 2020(e)(3), (4), and (9) have "compulsory" and "individual centric terminology."[38] Defendant, however, insists that such language is insufficient to satisfy *Gonzaga*, arguing that *Medina* held that supposedly similar language in the Medicaid Act failed to constitute clear "rights-creating language."[39] That is incorrect.

---

[34] 7 U.S.C. § 2020(e)(2)(B)(iii) (emphasis added).

[35] 7 U.S.C. § 2020(e)(10) (emphasis added).

[36] *Gonzaga*, 536 U.S. at 287.

[37] *Henry A. v. Willden*, 678 F.3d 991, 1007 (9th Cir. 2012) (quotations omitted). Multiple courts, including this one, have rejected arguments that *Henry A.* is no longer good law post-*Medina*. *See Gatlin v. Contra Costa Cnty.*, No. 21-CV-00370-SI, 2025 WL 2459354, at *2 (N.D. Cal. Aug. 26, 2025); Order on Defs.' Mot. for Reconsideration, *Mary B. v. Kovol*, No. 3:22-cv-00129 (D. Alaska Aug. 7, 2025), ECF No. 338. As Judge Illston explained, *Henry A.* "used the language of *Gonzaga*" in concluding that the statutory provision at issue had rights-creating language. *Gatlin*, 2025 WL 2459354, at *2. So even though the Ninth Circuit "applied the *Blessing* test, it also integrated *Gonzaga* into its analysis." *Id.*

[38] ECF No. 102 at 22.

[39] *Id.*

Defendant elides at least three key differences between the Medicaid Act provision in *Medina* and the provisions at issue here.

First, unlike the SNAP Act provisions, the Medicaid provision in *Medina* does not use the compulsory language of "shall" when describing a state's obligations vis-à-vis individuals eligible for medical assistance.[40] This is an important difference: the word "shall" "expresses a clear mandate" and is thus classic "rights-creating language."[41]

Second, as *Medina* observed, Medicaid's "any qualified provider" provision "carve[s] out various exceptions," and it is unlikely that "Congress sought to convey a right against the States in one breath but let States control its scope in the next."[42] The SNAP Act provisions at issue create absolute obligations and permit no exceptions.[43]

Third, as *Medina* also observed, the Medicaid Act requires only that states "'comply substantially' with the any-qualified-provider mandate."[44] And "that focus on aggregate compliance suggests that statute addresses a State's obligations to the federal government, not the rights of any particular person."[45] But the SNAP Act provisions here require more

---

[40] *Compare* 42 U.S.C. § 1396a(a)(23) ("[A]ny individual eligible for medical assistance may obtain such assistance from ...."), *with, e.g.*, 7 U.S.C. § 2020(e)(9) ("[T]he State agency shall ... provide benefits no later than 7 days after the date of application to any household[.]").

[41] *Henry A.*, 678 F.3d at 1007 (quotation omitted).

[42] 145 S. Ct. at 2235.

[43] *Garnett v. Zeilinger*, 313 F. Supp. 3d 147, 155 (D.D.C. 2018). *But see Medina*, 145 S. Ct. at 2219 ("States may exclude providers 'convicted of a felony' and 'determin[e]' which convictions qualify" (quoting 42 U.S.C. § 1396a(a)(23)(B))).

[44] 145 S. Ct. at 2235.

[45] *Id.* (cleaned up and quoting *Gonzaga*).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 11 of 33

Case 3:23-cv-00044-SLG     Document 115     Filed 10/17/25     Page 11 of 33

than mere "substantial compliance." They create absolute obligations with which states must comply in every instance, not in "the aggregate." [46]

That the SNAP Act provisions do not use the word "right" does not make them any less rights-creating. A clear-statement rule "does not mean 'Congress must incant magic words.'"[47] The Supreme Court has *never* held, including in *Medina*, *Talevski*, or *Gonzaga*, that Congress must use the word "right" to create a right. In *Talevski*, where the Court found enforceable two provisions of the FNHRA, only one of those provisions contained the word "right." The other—which the Court held was also enforceable—did not.[48] Rather, courts must apply the "traditional tools of statutory construction" to ascertain whether Congress intended to create a right.[49] Applying those traditional tools here makes clear that Congress intended the relevant provisions of the SNAP Act to be rights-creating.

Nor does it matter that the provisions at issue are framed in terms of the state's obligations to individual households.[50] As *Talevski* explained, "it would be strange to hold

---

[46] *Garnett v. Zeilinger*, 313 F. Supp. 3d 147, 155 (D.D.C. 2018) ("the requirement for absolute compliance with the timelines for processing applications flows directly from the statutory text itself. This text 'literally requires strict compliance with its provisions.'" (quoting *Haskins v. Stanton*, 794 F.2d 1273, 1277 (7th Cir 1987))).

[47] *United States v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015) (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013)).

[48] *Talevski*, 599 U.S. at 184-85 (examining the statutory language of the unnecessary restraint and pre-discharge notice provisions of the FNHRA at 42 U.S.C. §§ 1396r(c)(1)(A)(ii) and 1396r(c)(2)). Of note, the pre-discharge notice provision of the Medicaid Act examined in *Talevski* does not contain the word "right" or "rights" in the statutory text, though the heading for the section refers to "Transfer and Discharge Rights." The *Medina* Court noted that these titles cannot themselves create rights. Rather, a title or heading only serves to emphasize the rights created by the statutory language. *Medina*, 145 S. Ct. at 2237.

[49] *Kwai Fun Wong*, 575 U.S. at 410.

[50] *See, e.g.*, 7 U.S.C. § 2020(e)(9).

that a statutory provision fails to secure rights simply because it considers, alongside the rights bearers, the actors that might threaten those rights (and we have never so held)."[51] Indeed, the First Amendment—which indisputably is rights-creating and enforceable under § 1983—begins: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."[52] There can be no serious dispute that such language is rights-creating despite not including the word "right." So too here.

Finally, while it can be "rare" for spending power statutes "to confer an enforceable right,"[53] rare does not mean impossible. When a statute clearly and unambiguously confers enforceable rights, those rights are enforceable under § 1983.[54] Allowing plaintiffs to enforce such clear rights "respects Congress's primacy in this arena and thus vindicates the separation of powers."[55] In these few SNAP Act provisions—which ultimately comprise just a fraction of the SNAP Act's provisions and just a sliver of the larger corpus of federal statutes—Congress decided to create privately enforceable rights, and that decision controls.[56]

---

[51] 599 U.S. at 185; *see also Sabree v. Richman*, 367 F.3d 180, 190 (3d Cir. 2004) ("[W]e find it difficult, if not impossible, as a linguistic matter, to distinguish the import of … 'A State plan must provide'—from the 'No person shall' language of Titles VI and IX.").

[52] U.S. Const., amend. I; *see also* U.S. Const., amends. III, V & XIII (establishing rights without using the word "right").

[53] *Medina*, 145 S. Ct. at 2230.

[54] *See Talevski*, 599 U.S. at 184.

[55] *Id.* at 183.

[56] Compare the individually focused and mandatory language of 7 U.S.C. § 2020(e)(3), for example, with numerous other operational provisions of the SNAP Act, such as 7 U.S.C. § 2019, ("a center, organization, institution, shelter, group living arrangement, or establishment . . . may be authorized to redeem benefits through a financial institution described in that sentence if the center, organization, institution, shelter, group living arrangement, or establishment is equipped

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 13 of 33

Case 3:23-cv-00044-SLG     Document 115     Filed 10/17/25     Page 13 of 33

### ii) The SNAP Act Expressly Contemplates Private Enforcement of These Provisions.

The plain text of each provision at issue thus clearly indicates that they are rights-creating. That conclusion follows as well from their statutory context. As the Court in *Talevski* instructed, statutory provisions "must be read in their context and with a view to their place in the overall statutory scheme."[57] In fact, *Talevski* "start[ed]" its analysis by considering where the provisions at issue "reside" within the statutory scheme and whether their statutory context "is indicative of an individual 'rights-creating' focus."[58] The Court reasoned that, by placing the provisions at issue alongside other rights-creating provisions, Congress alerted states to their private enforceability.[59]

The same is true here. Each provision at issue resides in 7 U.S.C. § 2020, which expressly contemplates judicial enforcement by individual households of the provisions at issue. Indeed, 7 U.S.C. § 2020(a)(3)(B)(ii) expressly requires state agencies to have records "available for review in ***any action filed by a household to enforce any provision of this chapter*** (including regulations issued under this chapter)."[60] That language plainly "contemplates private actions to enforce" provisions of the SNAP Act in ensuing sections

---

with 1 or more point-of-sale devices and is operating in an area in which an electronic benefit transfer system described in section 2016(h) of this title has been implemented"), or § 2021 (relating to disqualification and penalties for retail stores that fail to follow SNAP requirements).

[57] *Talevski*, 599 U.S. at 184 (quoting *West Virginia v. EPA*, 597 U.S. 697, 721 (2022)); *see also Medina*, 145 S. Ct. at 2236 (analyzing the "surrounding statutory context").

[58] *Talevski*, 599 U.S. at 184 (quoting *Gonzaga*, 536 U.S. at 284).

[59] *Medina*, 145 S. Ct. at 2236.

[60] 7 U.S.C. § 2020(a)(3)(B)(ii) (emphasis added).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 14 of 33

Case 3:23-cv-00044-SLG    Document 115    Filed 10/17/25    Page 14 of 33

of the statute, including those under which Plaintiffs' bring their claims here.[61] It would be illogical to require state agencies to maintain records for use in an action brought by a household to vindicate rights that the household cannot enforce.[62] To conclude otherwise would be to read the word "any" out of the statute, violating the "canon against surplusage."[63]

There can also be no doubt that "any action filed by a household" refers to private judicial actions, not state administrative hearings. When the SNAP Act contemplates an administrative hearing, it describes those proceedings as just that—"hearings."[64] And "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings are intended."[65] Moreover, under their "common usage," the words "action" and "filed" are "terms associated with bringing a lawsuit in court, not with seeking administrative review of an agency decision."[66]

Likewise, other SNAP Act provisions expressly reference privately-initiated legal proceedings to enforce benefit obligations. Section 2023(b) addresses "*any* judicial action arising under this Act" for restoring unpaid SNAP benefits that were wrongfully withheld

---

[61] *Barry v. Corrigan*, 79 F. Supp. 3d 712, 735 (E.D. Mich. 2015), *aff'd sub nom. Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016).

[62] *See Barry*, 79 F. Supp. 3d at 735 ("[T]his provision would make little sense if Congress did not intend for the SNAP Act to be enforceable by private action.").

[63] *Nielsen v. Preap*, 586 U.S. 392, 414 (2019).

[64] *See* 7 U.S.C. § 2020(e)(10) (discussing "the granting of a fair hearing" to any aggrieved household); *see also id.* § 2020(e)(4) (referring to a "fair hearing pursuant to paragraph (1) of this subsection").

[65] *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (quotation omitted).

[66] *Barry*, 79 F. Supp. 3d at 735; *see also* Black's Law Dictionary (12th ed. 2024) (defining "action" as "[a] civil or criminal judicial proceeding").

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 15 of 33

Case 3:23-cv-00044-SLG    Document 115    Filed 10/17/25    Page 15 of 33

by an agency.[67] Further, § 2027(a)(2) expressly anticipates private enforcement of provisions of the SNAP Act in state and federal courts as it allows the use of federal funds to pay for legal help "with any proceeding or action before any State or Federal agency or court."[68]

These textual references in later sections of the SNAP Act reinforce what is clear in § 2020(a)(3)(B)(ii)—that Congress expressly contemplated that individual households may pursue judicial enforcement of the SNAP Act's requirements in private lawsuits. Put differently, § 2020 treats the state's obligations to participating households as not merely benefits but *rights* that a household can enforce in court. And the statute provides "unmistakable notice" to states "that they might be subject 'to private suits . . . whenever they fail to comply with a federal funding condition.'"[69] Construed in light of this statutory context, the provisions at issue here are unmistakably rights-creating.

### iii) Implementing Regulations Further Indicate That the Statutory Provisions Create Rights.

The SNAP Act's implementing regulations further underscore what the plain statutory text makes clear: the provisions at issue create privately enforceable rights.[70] "[C]ourts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes."[71] In the SNAP Act, Congress directed

---

[67] 7 U.S.C. § 2023(b) (emphasis added).
[68] *See* 7 U.S.C. § 2027(a)(2).
[69] *Medina*, 145 S. Ct. at 2233 (quoting *Gonzaga,* 536 U.S. at 286-87).
[70] *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024).
[71] *Id.*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 16 of 33

Case 3:23-cv-00044-SLG    Document 115    Filed 10/17/25    Page 16 of 33

the Secretary of Agriculture to "issue such regulations consistent with this chapter as the Secretary deems necessary or appropriate for the effective and efficient administration of the [SNAP] program."[72] While the regulations do not themselves create rights,[73] they show that the administrative agency tasked with overseeing national SNAP operations has long understood that these provisions of its authorizing statute are rights-creating, which only confirms those provisions' clarity and unambiguity.

To start, SNAP regulations explicitly use the language of rights in describing those aspects of the eligibility process authorized by the statutory provisions at issue. Per 7 C.F.R. § 273.2(a)(1), state agencies must "have a procedure for informing persons who wish to apply for SNAP benefits about the application process and their **rights** and responsibilities."[74] The household's rights include:

- "Right to file in writing," 7 C.F.R. § 273.2(c)(1)(ii);

- "Right to same-day filing," 7 C.F.R. § 273.2(c)(1)(iii);

- "Right to reapply at any time subsequent to a withdrawal" 7 C.F.R. § 273.2(c)(6); and

- "Right to request a fair hearing" 7 C.F.R. § 272.3(n)(4)(i)(C).

---

[72] 7 U.S.C. § 2013(c).

[73] In Section III.D *infra*, Plaintiffs address Defendant's argument that they seek to improperly enforce regulations through § 1983. *See also Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).

[74] 7 C.F.R. § 273.2(a)(1) (emphasis added).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 17 of 33

Case 3:23-cv-00044-SLG     Document 115     Filed 10/17/25     Page 17 of 33

The regulations further require that a state interviewer "advise households of their **rights** and responsibilities during the interview, ***including the appropriate application processing standard***."[75]

The regulations also expressly contemplate that "a State agency [may be] sued by any person(s) in a State or Federal Court in any matter which involves the State agency's administration of SNAP."[76] "Class action suits," in fact, are among the lawsuits that the regulation contemplates, and the regulations impose detailed reporting requirements on states subject to such lawsuits.[77]

The SNAP Act's implementing regulations thus underscore that the authorizing statutory provisions are "rights-creating." While the Court is not required to defer to the federal regulatory agency's interpretation of the SNAP Act, it may consider the agency's well-informed views when determining if these statutory provisions are rights-creating.[78] And the repeated use of the term "right" in these regulations is another signal that the SNAP Act provisions themselves are clearly and unambiguously rights-creating.

**B.     Pre-*Medina* Decisions Reinforce that the SNAP Act Provisions at Issue are Privately Enforceable.**

As explained above, the plain text of the SNAP Act shows that the statutory provisions at issue confer rights enforceable under § 1983. But this is also not a question of first impression. Courts across jurisdictions have held that these SNAP Act provisions

---

[75] 7 C.F.R. § 273.2(e)(1) (emphasis added).
[76] 7 C.F.R. § 272.4(d)(1)(i).
[77] *Id.*
[78] *Loper Bright*, 603 U.S. at 394.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 18 of 33

Case 3:23-cv-00044-SLG     Document 115     Filed 10/17/25     Page 18 of 33

confer § 1983-enforceable rights. While many of those decisions applied the now-abrogated *Blessing* framework, some also applied the controlling *Gonzaga* standard. Those decisions' application of *Gonzaga*, and specifically their consideration of whether the SNAP Act's provisions unambiguously confer privately enforceable rights, still remains good law and persuasive. The following reviews some of those insights.

### i) 7 U.S.C. § 2020(e)(3), (4), and (9): Timely Processing

Courts have consistently held that § 2020(e)(3), (4), and (9)—the three SNAP Act provisions underlying the timely processing claim—satisfy *Gonzaga* and create rights that are enforceable under § 1983.[79] In *Briggs v. Bremby*, the Second Circuit held that §§ 2020(e)(3) and (e)(9) conferred 1983-enforceable rights under *Gonzaga*.[80] The Second Circuit recognized that, under *Gonzaga*, "'it is *rights*, not the broader or vaguer "benefits" or "interests," that may be enforced' under § 1983, and that nothing short of an 'unambiguously conferred right' will support a cause of action under § 1983."[81] And looking to *Gonzaga*, the Second Circuit held that, in § 2020(e)(3) and (9), "***Congress has conferred individual rights upon food stamp applicants in clear and unambiguous terms***."[82] That is because those provisions, "[u]nlike the funding provision involving in *Gonzaga*," . . . (1) contain language that is focused on the interests of the applicant households and calibrated to their economic needs, (2) create a specific requirement that

---

[79] *See, e.g.*, *Garnett v. Zeilinger*, 323 F. Supp. 3d 58, 71-73 (D.D.C. 2018); *Briggs v. Bremby*, 792 F.3d 239, 244-45 (2d Cir. 2015).
[80] 792 F.3d at 244-45.
[81] *Id.* at 242 (quoting *Gonzaga*, 536 U.S. at 283).
[82] *Id.* at 245.

must be followed for every food stamp applicant, rather than a generalized 'policy or practice,' and (3) do not merely direct the distribution of funds."[83]

The court in *Garnett v. Zeilinger* concluded similarly. While the court there applied "the *Blessing* test" when preliminarily enjoining an agency for violating the SNAP Act, it also explained that its holding met the *Gonzaga* standard.[84] The court contrasted the statute at issue in *Gonzaga* with the three SNAP Act provisions and concluded that "[t]he concerns animating the decision in *Gonzaga* are absent here," reasoning that the text of the SNAP Act provisions is "directed at the States, not at the Secretary of Health and Human Services, and is therefore not 'two steps removed' from benefits recipients."[85]

### ii) 7 U.S.C. § 2020(e)(2)(B): Right to File

The slate is not blank for § 2020(e)(2)(B) either.[86] In *Williston v. Eggleston*, the court recognized that "*Gonzaga* articulates the difference between those statutes giving right to section 1983 claims and those that do not."[87] The court held that § 2020(e)(2)(B) is one of those statutes that creates a clear, individually focused, privately enforceable right. The court reasoned that § 2020(e)(2)(B) is "the kind of rights conferring provision" that satisfies the *Gonzaga* standard because "[r]ather than having an 'aggregate focus,'" the

---

[83] *Id.* at 244-45 (quoting *Gonzaga*); *see also M.K.B. v. Eggleston*, 445 F. Supp. 2d 400, 427-29 (S.D.N.Y. 2006) (applying *Gonzaga* and holding that Section 2020(e)(3) and (9) confer rights enforceable under § 1983); *Walker v. Eggleston*, No. 04 CIV.0369(WHP), 2005 WL 639584, at *3-4 (S.D.N.Y. Mar. 21, 2005) (same).
[84] *Garnett*, 323 F. Supp. 3d at 72-73.
[85] *Id.* at 73 (quoting *Gonzaga*, 536 U.S. at 287).
[86] *See Williston v. Eggleston*, 379 F. Supp. 2d 561, 578 (S.D.N.Y. 2005).
[87] *Id.* at 575.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 20 of 33

Case 3:23-cv-00044-SLG    Document 115    Filed 10/17/25    Page 20 of 33

provision "establish[es] specific rights for individual households applying for food stamps and for eligible households to receive food stamps in a timely manner."[88] Again, that *Williston* concurrently applied *Blessing* does not make its *Gonzaga* analysis less forceful or less relevant to the matter before this Court.

### iii) 7 U.S.C. § 2020(e)(10): Fair Hearings

Courts have reached the same conclusion with respect to § 2020(e)(10) as well. The Sixth Circuit, for instance, has held that that provision "obviously" provides "SNAP beneficiaries [with] the right of private enforcement" and that "it creates certain due-process rights to SNAP beneficiaries."[89] That remains true whether one applies *Blessing* or *Gonzaga*. Indeed, after "analyz[ing] . . . section 2020(e)(10) in the manner *Gonzaga* requires," the district court in *Barry v. Corrigan* concluded that § 2020(e)(10) "of the SNAP Act create[s] individual rights."[90] As part of its detailed analysis, the court reasoned that the text of § 2020(e)(10) is phrased in terms of the persons benefited (any household) and uses "mandatory, not precatory" language such as "shall," making it rights-creating for an aggrieved person.[91]

\* \* \*

---

[88] *Id.* at 576, 577.

[89] *Barry v. Lyon*, 834 F.3d 706, 717 (6th Cir. 2016).

[90] 79 F. Supp. 3d 712, 738 (E.D. Mich. 2015).

[91] *Id.* at 737, 38; *cf. Withrow v. Concannon*, 942 F.2d 1385, 1387 (9th Cir. 1991) (observing that the language of Section 2020(e)(10) is "unequivocal, and states that a decision 'shall' or 'must' be made within the specified number of days").

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 21 of 33

Case 3:23-cv-00044-SLG    Document 115    Filed 10/17/25    Page 21 of 33

The pre-*Medina* cases reflect a consistent judicial consensus: the relevant SNAP Act provisions unambiguously create privately enforceable rights under § 1983 in a manner consistent with *Gonzaga*. This Court should adhere to that well-reasoned consensus.

In doing so, the Court should also reject Defendant's argument that none of these cases remain good law post-*Medina*. Defendant summarily asserts that "each of those cases relied exclusively on the reasoning of *Blessing*, *Wright* and *Wilder*."[92] But that is wrong. As explained, all of the above cases expressly recognized the Supreme Court's standard in *Gonzaga* and still held that these SNAP Act provisions passed muster under that standard.[93] That these courts also applied the *Blessing* test does not make their treatment of *Gonzaga* or their analysis of the statutory text less persuasive. Rather, it is a credit to the courts' thoroughness. Whether analyzed under *Blessing* or *Gonzaga*, the plain language of these provisions clearly and unambiguously confers rights to individual households that are plainly enforceable under § 1983.

### C. SNAP Act Enforcement Actions Under § 1983 Are Not Displaced by a Separate Enforcement Scheme.

Where a spending power statute satisfies *Gonzaga* and secures individual rights, the "rebuttable presumption" is that those rights are enforceable under § 1983.[94] A defendant may rebut that presumption by showing that Congress expressly or implicitly foreclosed

---

[92] ECF No. 102 at 31.
[93] *See, e.g.*, *Garnett v. Zeilinger*, 323 F. Supp. 3d at 71-73.
[94] *Talevski*, 599 U.S. at 186 n.13 (citing *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 125 (2005)).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 22 of 33

Case 3:23-cv-00044-SLG    Document 115    Filed 10/17/25    Page 22 of 33

enforcement via § 1983.[95] Yet that is Defendant's burden,[96] and Defendant cannot meet it here.

As an initial matter, Defendant cannot argue that the statutes at issue "expressly forbid § 1983's use."[97] Defendant does not and cannot cite any statutory text expressly prohibiting private enforcement of the relevant provisions by way of § 1983. No such prohibition exists; to the contrary, the SNAP Act contains multiple express references to a judicial action or "proceeding" before a state or federal court.[98]

Nor can Defendant "show that Congress issued the same command implicitly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983."[99] The "attendant presumption is that § 1983 can play its textually prescribed role as a vehicle for enforcing those rights, even alongside a detailed enforcement regime that also protects those interests, so long as § 1983 enforcement is not 'incompatible' with Congress's handiwork."[100] Thus, Defendant meets its burden only if it shows that private enforcement under § 1983 is "incompatible" with an enforcement scheme in the SNAP Act.[101]

---

[95] *Medina*, 145 S. Ct. at 2229 (citing *Ranchos Palos Verdes*, 544 U.S. at 120); *see also Talevski*, 599 U.S. at 186 (internal citations and quotations omitted) ("a defendant may defeat the presumption by demonstrating that Congress did not intend that § 1983 be available to enforce those rights.")

[96] *Talevski*, 599 U.S. at 186 n.13; *Gonzaga*, 526 U.S. at 284 n.4.

[97] *Talevski*, 599 U.S. at 186.

[98] 7 U.S.C. §§ 2020(a)(3)(B)(ii), 2023(b), and 2027(a)(2); *see also supra* at III.A.ii.

[99] *Talevski*, 599 U.S. at 186 (quoting *Ranchos Palos Verdes,* 544 U.S. at 120) (internal quotations omitted).

[100] *Id.* at 188 (cleaned up).

[101] *See id.* at 187 (declaring incompatibility the "*sine qua non*" of the inquiry).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 23 of 33

Case 3:23-cv-00044-SLG    Document 115    Filed 10/17/25    Page 23 of 33

Defendant cannot make that showing. The SNAP Act does not prescribe a different enforcement mechanism, and, like the federal statute found enforceable in *Talevski*, the SNAP Act lacks its own "private judicial right of action, a private federal administrative remedy, or any careful congressional tailoring that § 1983 actions would distort," instead defaulting to enforcement through § 1983—the general civil rights enforcement statute.[102]

Defendant's various attempts to conjure incompatibility should be rejected. First, Defendant appears to argue that Congress displaced enforcement of the SNAP Act under § 1983 with what it calls "alternate enforcement mechanisms," including administrative remedies, such as Food and Nutrition Service ("FNS") oversight or a theoretical injunction obtained by the United States Attorney General.[103] According to Defendant, those "alternate enforcement mechanisms" are "a sufficient alternate remedy *to preclude the existence of a private cause of action*."[104]

A substantial body of persuasive case law has long and roundly rejected this argument.[105] The Second Circuit in *Briggs* held that "Congress did not impliedly preclude

---

[102] *Id.* at 190 (cleaned up).
[103] ECF No. 102 at 3-10, 27-31.
[104] *Id.* at 31 (emphasis added). An emphasis on "precluding" causes of action is another way that the United States Supreme Court has long written about displacing an enforceable right under § 1983. *See, e.g.*, *Talevski*, 599 U.S. at 195 (quoting *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n.*, 453 U.S. 1, 20 (1981) ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983").
[105] *See, e.g.*, *Gonzalez v. Pingree*, 821 F.2d 1526, 1528-31 (11th Cir. 1987) ("the comprehensiveness of the remedial scheme" in the SNAP Act did not "preclude a § 1983 remedy"); *Victorian v. Miller*, 813 F.2d 718, 721-724 (5th Cir. 1987) (rejecting that SNAP Act causes of action were displaced due to "remedial mechanisms," or the potential of the federal government to "withhold funds and seek injunctive relief"); *Barry v. Corrigan*, 79 F. Supp. 3d

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 24 of 33

Case 3:23-cv-00044-SLG    Document 115    Filed 10/17/25    Page 24 of 33

private enforcement of the Food Stamp Act's time limits [7 U.S.C. § 2020(e)(3) and (9)] by granting enforcement powers to the Secretary of Agriculture," reasoning that, unlike the statute in *Gonzaga*, the Food Stamp Act "contains no similar agency adjudication process or enforcement structure that could take the place of private lawsuits."[106] Defendant ignores these holdings, which remain fully applicable and persuasive even post-*Medina*.

Second, Defendant asserts that a "typical" remedy for spending power enactments is termination of federal funding and that "[n]o other remedy is contemplated or necessary."[107] Yet "typical" does not mean "exclusive." Multiple spending statutes include both the possible termination of funding and a private right of action (whether internal to the statute or pursuant to § 1983).[108] The "typical" remedy of funding termination is entirely harmonious with a private cause of action. One remedy addresses the integrity of the system; the other vindicates individual rights and harms. There is no "incompatibility" there.

---

712, 738-739 (E.D. Mich., Jan. 9, 2015) *aff'd sub nom. Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016) (rejecting that federal "enforcement powers," such as "withholding of administrative funding" or the ability "to seek injunctive relief," displaced any SNAP Act causes of action); *Williston v. Eggleston*, 379 F. Supp. 2d 561, 577-578 (S.D.N.Y. 2005) (rejecting that SNAP Act causes of action were displaced due to fair hearing provisions).

[106] *Briggs v. Bremby*, 792 F.3d 239, 245 (2d Cir. 2015)

[107] ECF No. 102 at 27.

[108] *See, e.g.*, *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 295, 297 (2006) (noting that the Individuals with Disabilities Education Act was enacted under the Spending Clause and outlining its private right of action); *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255, 260 (2009) (noting that Title IX contained a federal funding termination remedy and holding that § 1983 may attach to Title IX's rights).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 25 of 33

Case 3:23-cv-00044-SLG    Document 115    Filed 10/17/25    Page 25 of 33

It accordingly does not matter that funding may be terminated if the state violates the SNAP Act "without good cause."[109] FNS can allow states to correct good faith mistakes rather than terminating entire SNAP programs, while individuals simultaneously remedy individual harms.[110] In other words, FNS may diligently perform its duties *and* individuals can simultaneously vindicate their own rights under § 1983. Similarly, the United States Attorney General may seek an injunction while individuals remedy their own individual harms. Plaintiffs are not usurping the power of FNS or the Attorney General by pursuing a different remedy.

Third, Defendant claims that private enforcement "forces DOH to divert resources toward these issues when FNS has chosen to focus on other issues."[111] This argument, based entirely on FNS's *enforcement priorities*, flouts the *Talevski* Court's instruction to look at the "text and context" of a statute to determine whether its remedial scheme is incompatible with enforcement under § 1983.[112] As the Ninth Circuit has explained in

---

[109] ECF No. 102 at 27.

[110] The Ninth Circuit emphasized this point in *Withrow v. Concannon*: "We are not convinced, however, that the standard for termination of federal funding, a virtual death sentence for a state's program, is the appropriate one to define the rights of applicants and recipients of program benefits." 942 F.2d 1385, 1387 (9th Cir. 1991). DOH hints that this is irreconcilable with *Medina* because it "rejected the notion that the cut-off of funding is too massive a remedy." ECF No. 102 at 34-35. DOH is mistaken. *Withrow* does not discard the termination of funding as a remedy, but rather points out that it need not be the only remedy *for the rights of individuals*. Two separate remedies can coexist.

[111] ECF No. 102 at 29. DOH also puzzlingly states: "All along, DOH was aware the federal regulation required it to send notices of delayed processing, but the agency's existing information technology made doing so highly administratively burdensome." *Id.* Puzzling, as DOH fought hard on the merits of this claim at the preliminary injunction stage. ECF No. 46 at 22-26. Yet now DOH suggests that, actually, it knew this "all along."

[112] *Talevski*, 599 U.S. at 187.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 26 of 33

Case 3:23-cv-00044-SLG     Document 115     Filed 10/17/25     Page 26 of 33

rejecting a similar argument, any burden on DOH is imposed by the statute itself, and "[b]ecause the defendants are required to comply with the Food Stamp Act under the terms of the Act, [the Court] d[id] not see how enforcing compliance imposes any burden on them."[113] Defendant's argument, taken to its logical end, would also preclude § 1983 enforcement for *any* statute because any § 1983 action will force a state to reallocate resources.

Fourth, Defendant inexplicably argues that its own state administrative remedy displaces private enforcement of the provisions at issue under § 1983.[114] Even if there were a conflict between the state administrative remedy and private enforcement—and there is not—Defendant's argument is unavailing because Alaska's state regulations cannot wholly displace the SNAP Act's self-contained enforcement scheme. Such displacement would be incompatible with § 1983.[115] Contrary to Defendant's assertion, *Medina* also does not support this argument because the *Medina* Court did not address displacement.[116]

At bottom, DOH fails to carry its heavy burden of showing that Congress displaced the causes of action at issue. Numerous courts that have examined the enforceability of the SNAP Act declined to find that Congress displaced enforcement under § 1983.[117] And

---

[113] *Withrow*, 942 F.2d at 1388 (quoting *Haskins v. Stanton*, 794 F.2d 1273, 1277 (7th Cir. 1986)).
[114] ECF No. 102 at 31-32.
[115] *Talevski*, 599 U.S. at 189.
[116] *Medina*, 145 S. Ct. at 2234 n.6. Further, the *Medina* majority only mentions state administrative remedies in response to the dissent's policy argument on step one, justifying its own reasoning to other members of the Court.
[117] *See supra* n.105.

DOH's vague arguments to the contrary are not only unavailing, but often unresponsive. Section 1983 remedies do not conflict with the SNAP Act's remedies.

### D. Plaintiffs Do Not Seek to Enforce SNAP Regulations.

Plaintiffs do not claim that any regulation creates a private right of action.[118] A regulation cannot independently create a private right of action; it can only do so if it is directly implementing a statute.[119] The statutory provisions that Plaintiffs seek to enforce are the source of the relevant private rights of action.[120] The regulations that Plaintiffs cite, whether in their Complaint or briefing,[121] merely provide additional details and guidance about Defendant's specific obligations.[122] This Court can properly review the regulations when assessing the scope of the DOH's obligations.[123]

Defendant points to no specific regulation that Plaintiffs alleged creates a right or obligation not reflected in the SNAP Act because Defendant cannot. Plaintiffs only cite regulations because they are closely tied to the statutory text and provide additional context for this Court to determine Defendant's obligations and Plaintiffs' rights.[124]

---

[118] *See* ECF No. 102 at 36-39.

[119] *Sandoval*, 532 U.S. at 291.

[120] 7 U.S.C. § 2020(e)(2)(B)(iii), (e)(3), (4), (9), (10).

[121] ECF No. 107-1.

[122] *See Price v. Stockton*, 390 F.3d 1105, 1112 n.6 (9th Cir. 2004) (noting it is "well settled that regulations alone cannot create rights . . . however, regulations may be relevant in determining the scope of the right conferred by Congress") (internal quotations omitted); *Harris v. James*, 127 F.3d 993 1009 (11th Cir. 1997) (regulation can flesh out the content of a statutory right); *Smith v. Kirk*, 821 F.2d 980, 984 (4th Cir. 1987); *Shakhnes v. Belin*, 689 F.3d 244, 253 (2d Cir. 2012) ("regulation merely further defines or fleshes out the content" of the statutory right to a fair hearing).

[123] *See Price v. Stockton*, 390 F.3d 1105, 1112 n.6 (9th Cit. 2004).

[124] *See supra* Section III.A.iii.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 28 of 33

Case 3:23-cv-00044-SLG     Document 115     Filed 10/17/25     Page 28 of 33

E.   **Defendant's "Policy" Arguments Misconstrue** *Medina*, **and Ignore Thousands of Alaskans Who Are Hungry Because of State Malfeasance.**

Defendant's policy arguments claiming this case should not move forward are disingenuous and irrelevant. Defendant claims to want to avoid conflicting obligations between a court order and what the FNS requires.[125] However, Plaintiffs are merely asking this Court to order Defendant to comply with SNAP Act requirements. Defendant can point to no obligations this Court would impose that are not squarely within the terms of the SNAP Act and its implementing regulations. Plaintiffs are asking the Court to order Defendant to meet timely processing standards in controlling statutes, a common outcome in other SNAP timeliness litigation.[126] Defendant claims to want to avoid the burden and ongoing expense of litigation.[127] But Plaintiffs also seek to end litigation as quickly as possible so Alaskans can have better, more timely access to SNAP benefits, which is why it is fortunate that discovery in this case is fully complete and Plaintiffs filed their motion for summary judgment to fully resolve the case without additional delay.

Regardless of Defendant's misguided policy arguments,[128] *Medina* explicitly states that the decision as to whether to allow private enforcement of statutory duties belongs to Congress, not to the courts.[129] As explained above, and in Plaintiffs' Motion for Summary

---

[125] *See* ECF No. 102 at 40.
[126] *See* ECF No. 35-1 at 20-22.
[127] *See* ECF No. 102 at 40; ECF Nos. 109–10.
[128] *See* ECF No. 102 at 39-41.
[129] *Medina*, 145 S. Ct. at 2229-2230 ("The job of resolving how best to weigh those competing costs and benefits belongs to the people's elected representatives, not unelected judges charged

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 29 of 33

Case 3:23-cv-00044-SLG   Document 115   Filed 10/17/25   Page 29 of 33

Judgment,[130] Congress has explicitly provided for private enforcement of the SNAP Act statutes at issue here to meet critical food need. As this Court already noted, "Plaintiffs have a 'vital and essential interest in the timely receipt of food stamps' and the harm suffered because of the loss of timely benefits 'outweighs any injury caused by requiring [DOH] to do what was already required under the [SNAP] Act.'"[131]

This case showcases the exact reason why private enforcement actions can be necessary. Alaska has been failing its people for years because it would rather drag its feet than feed its citizens. The explicit purpose of the SNAP Act is "to alleviate [] hunger and malnutrition" by "increasing food purchasing power for all eligible households who apply for participation."[132] Defendant's abject failure to provide timely SNAP benefits to "all eligible households who apply" directly contradicts Congress's stated purpose. For years, Defendant has failed to timely process applications, provide the necessary notice about its delays with an opportunity for a hearing, and ensure that Plaintiffs and class members can access the agency to submit their applications for benefits. The result is that thousands of Alaskans needlessly go hungry every month. Without this lawsuit, and swift action from this Court, there is no telling how much worse Defendant's SNAP process would get and

---

with applying the law as they find it.") (citing *Sandoval*, 532 U.S at 286 and *Gonzaga*, 536 U.S. at 285).
[130] ECF No. 107-1.
[131] ECF No. 77 at 22, *citing Briggs v. Bremby*, No. 3:12CV324 VLB, 2012 WL 6026167, at *19 (D. Conn. Dec. 4, 2012).
[132] 7 U.S.C. § 2011

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 30 of 33

Case 3:23-cv-00044-SLG    Document 115    Filed 10/17/25    Page 30 of 33

how many more people would go hungry as a result. If past is prologue, it may well be another very hungry decade.

DATED this 17th day of October, 2025.

Attorneys for Plaintiffs

*/s/ Saima Akhtar*

Goriune Dudukgian (AK Bar No. 0506051)
Nicholas Feronti (AK Bar No. 2106069)
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel.: (617) 406-6000
Fax: (617) 406-6100
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 31 of 33

Case 3:23-cv-00044-SLG    Document 115    Filed 10/17/25    Page 31 of 33

401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel.: (619) 699-2700
Fax: (619) 699-2701
Email: christopher.young@us.dlapiper.com

*Sean P. Fulton (Tex. Bar No. 24103727)
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201-2482
(214) 743-4572 (telephone)
(972) 692-7272 (fax) Email:
sean.fulton@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

*appearing *pro hac vice*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 32 of 33

Case 3:23-cv-00044-SLG     Document 115     Filed 10/17/25     Page 32 of 33

## Certificate of Service

I hereby certify that on October 17, 2025, a true and correct copy of the foregoing document was served on all parties via the CM/ECF electronic filing system.

*/s/ Saima Akhtar*
Saima Akhtar

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT RE: PRIVATE RIGHTS OF ACTION
*John Andrew et. al. v. Heidi Hedberg*; Case No. 3:23-cv-00044-SLG
Page 33 of 33

Case 3:23-cv-00044-SLG    Document 115    Filed 10/17/25    Page 33 of 33