STEPHEN J. COX
ATTORNEY GENERAL

Lael A. Harrison (Alaska Bar No. 0811093)
Senior Assistant Attorney General
Department of Law
PO Box 110300
Juneau, AK 99811-300
Telephone: (907) 465-3600
Facsimile: (907) 465-2539
Email: lael.harrison@alaska.gov

Justin D. Nelson (Alaska Bar No. 1102007)
Senior Assistant Attorney General
Alaska Department of Law
100 Cushman Street, Suite 400
Fairbanks, AK 99701
Telephone: (907) 451-2811
Facsimile: (907) 451-2985
Email: justin.nelson@alaska.gov
Email: Fai.law.ecf@alaska.gov

David Wilkinson (Alaska Bar No. 1211136)
Senior Assistant Attorney General
Alaska Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Telephone: (907) 269-6612
Facsimile: (907) 258-4978
Email: david.wilkinson@alaska.gov

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No.: 3:23-cv-00044-SLG |
| Heidi Hedberg, in her official capacity as Commissioner of the Alaska Department of Health, | ) | |
| Defendant. | ) | |

**OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**(Oral Argument Requested)**

## I. INTRODUCTION

The plaintiffs say they should win—but win what? The defendant ("DOH") is already doing everything reasonably possible to speed up SNAP application processing. This Court cannot order away the obstacles challenging DOH success. Only FNS has the power to waive SNAP Act administrative requirements and meaningfully speed up application processing, and DOH is already working closely with FNS.

Legally, the plaintiffs' failure to describe in any reasonable detail what they want the Court to order dooms their motion for summary judgment. The plaintiffs do not specify what declaratory judgment they want, far less establish that it "will serve a useful

purpose in clarifying and settling the legal relations in issue, and . . . terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."[1] Nor do they identify what acts they want restrained or required by a permanent injunction, far less establish that it would meet the necessary four-factor test.[2] And while the plaintiffs claim that delays alone violate due process, they identify no additional or substitute procedures that they believe due process requires, preventing the Court from conducting a meaningful *Mathews v. Eldridge* analysis.[3]

DOH has separately moved for summary judgment on the grounds that the plaintiffs cannot sue to enforce the SNAP Act or its implementing regulations under the newly articulated standards of *Medina v. Planned Parenthood South Atlantic*.[4] By responding substantively here to the plaintiffs' motion for summary judgment on their SNAP Act and regulatory claims, DOH does not concede that the plaintiffs have a cause of action under 42 U.S.C. § 1983, nor does DOH waive any argument made in its *Medina*-related motion for summary judgment. DOH has also separately moved for summary judgment on the plaintiffs' first-contact-filing and procedural due process

---

1 *Carroll Shelby Licensing, Inc. v. Halicki*, 138 F.4th 1178, 1189 (9th Cir. 2025).

2 *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

3 *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (requiring consideration of "the probable value, if any, of additional or substitute procedural safeguards" and "the fiscal and administrative burdens that the additional or substitute procedural requirements would entail."). The plaintiffs do identify one additional procedure, but DOH is already doing it, so that issue is moot. *See* Section IV.C, below.

4 Defendant's Motion for Summary Judgment, Dkt. 103 (Sept. 2, 2025) (citing *Medina v. Planned Parenthood South Atlantic,* 606 U.S. ---, 145 S.Ct. 2219 (2025)).

claims.[5] Again, DOH does not waive the arguments and assertions it raised in those motions. DOH focuses this response solely on the arguments raised in the plaintiffs' motion.

Because the plaintiffs do not establish that they are entitled to any judgment in their favor, this Court should deny the plaintiffs' motion in full, on all claims.

## II. STATEMENT OF FACTS

### A. There is no dispute that DOH is already doing everything reasonably possible to speed up SNAP application processing.

It is true that DOH has not yet been able to fully comply with the SNAP Act's timeliness standards.[6] But DOH has made significant and lasting improvements to timeliness since the 2022 backlog crisis—and that is not disputed.[7] There is also no dispute that DOH is operating under an FNS-imposed corrective action plan regarding timeliness.[8] And there is no dispute that DOH is working diligently to improve its application processing efficiency immediately and over the long term.

---

[5] Defendant's Motion for Partial Summary Judgment Re: First-Contact-Filing Claim, Dkt. 109 (Sept. 15, 2025); Defendant's Motion for Partial Summary Judgment Re: Constitutional Claims, Dkt. 110 (Sept. 15, 2025).

[6] Report on Compliance with Court Ordered Requirements, Attachment 3, Dkt. 114-4 (Sept. 30, 2025) ("October Court Report, Attachment 3") at 7.

[7] *See, e.g.,* Plaintiffs' Motion for Summary Judgment, Exhibits 17 and 19, Dkts. 108-17 and 108-19 (Sept. 12, 2025) ("Plaintiffs' Exhibits 17 and 19").

[8] Plaintiffs' Exhibit 29.

DOH is improving efficiency through every available avenue. It works daily with workflow coordinators to maximize utilization of staff.[9] It is in the midst of long-term, planned technology upgrades that will make operations more efficient.[10] It recently implemented Broad Based Categorical Eligibility, and a simplified application process for elderly and disabled households.[11] DOH is constantly recruiting and training new employees, while striving to retain trained employees.[12] And it is leveraging contract workers to the maximum possible extent.[13] In fact, DOH just received a waiver from FNS to allow contractors to conduct eligibility determinations.[14] Unfortunately, the October 1, 2025 government shutdown has resulted in the absence of key FNS personnel necessary to complete the implementation plan, so this project is temporarily on hold. However, DOH does expect to begin adding contractor capacity to process SNAP applications in 2026.

---

9 *See e.g.* Plaintiffs' Exhibit 14 (C!A Monthly Report describing providing "daily SNAP priorities report to track timely processing") and Plaintiffs' Exhibit 2 at 32 (excerpts of deposition of Deb Etheridge describing services C!A provides to DPA "at a high level" as including "daily support and workflow management"). *See also* Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment, Dkt. 108 (Sept. 12, 2025) ("Plaintiffs' Statement of Material Facts") at 3.

10 October Court Report, Attachment 4.

11 Report on Compliance with Court Ordered Requirements, Dkt. 100-1 (July 31, 2025) ("August Court Report") at 8-9.

12 October Court Report, Attachments 5 and 7.

13 October Court Report, Attachment 6.

14 October Court Report at 3-4 and Attachment 1 at 1-30.

As described in its August 2025 report to this Court, DOH has investigated all suggestions the plaintiffs have made during the course of this litigation, as well as suggestions from FNS.[15] And DOH has implemented those suggestions, is in the process of doing so, or has determined them inappropriate for Alaska.[16] Although the plaintiffs make no concrete demands in their motion, they suggest that DOH could, "[f]or example…allocate more merit staff to conduct interviews on the VCC."[17] But DOH already decided independently to do that as part of a broader policy initiative aimed at improving processing times and reducing missed interviews.[18] And staffing decisions should not be subject to Court review in any case—DOH must have ongoing flexibility to adjust its policies based on staffing and workload levels.

The plaintiffs also suggest that DOH could prioritize working expedite-eligible SNAP applications over regular SNAP applications.[19] But that would merely shift the burden of delay from one subset of the plaintiff class to another (the certified class does

---

15 August Court Report at 8-10 and Attachment 2.

16 *Id.*

17 Memorandum in Support of Plaintiffs' Motion for Summary Judgment, Dkt. 107-1 (Sept. 12, 2025) ("Plaintiffs' Memorandum") at 35.

18 *See* Exhibit A; Declaration of Becca Stovall. Note that the new policy significantly changes the process of scheduling interviews described in the plaintiffs' motion. Plaintiffs' Statement of Material Facts at 8. Going forward, DOH will schedule an interview at the time of registering an application and immediately provide notice to the applicant. An eligibility technician will process the application while conducting the scheduled interview.

19 Plaintiffs' Memorandum at 35 ("Defendant could … designate a group of merit staff to process expedited SNAP applications in order to prioritize faster response for those with the least financial resources.")

not distinguish between expedite-eligible applicants and other SNAP applicants).[20] The plaintiffs also seem to suggest that DOH could prioritize processing SNAP over other benefit programs not before this Court.[21] But that would also inappropriately shift the burden of delay from some needy Alaskans to others, some of whom have also sued over delays in those other programs.[22] It would also disserve the many class members who apply for SNAP and other benefit programs—like Medicaid—at the same time.[23] As a matter of public policy, DOH will not entertain the plaintiffs' suggestions to prefer certain SNAP applicants over others or to prefer SNAP applicants over applicants for other critical benefit programs.

---

[20] Stipulation on Class Certification, Dkt. 13 (May 2, 2023) at 2. *See also* October Court Report, Attachment 3 (showing similar processing timeliness rates for both expedited and regular SNAP applications).

[21] Plaintiffs' Memorandum at 35 ("Defendant could … focus the work of merit staff on SNAP, where their work is required.") Medicaid is the largest program that DPA administers, with more than 200,000 beneficiaries. *See* https://www.medicaid.gov/state-overviews/stateprofile.html?state=alaska. Medicaid has its own, somewhat different, merit staff requirements. 42 C.F.R. § 431.10(c).

[22] *See,* Notice of Related Case and Attachment 1, Dkts. 79 and 79-1 (Feb. 3, 2025) (certified class of Adult Public Assistance applicants); *Ott v. State, Dep't of Health,* 3:24-cv-00153-SLG (D. Alaska); *Ott v. State, Dep't of Health*, 3AN-24-06861CI (Sup. Alaska) (putative class of TEFRA Medicaid applicants).

[23] Alaska Dep't of Health & Social Services, Division of Public Assistance, Monthly Caseload & Benefit Summary, http://dpaweb.hss.state.ak.us/files/reports/Csld&BeneSumm.pdf at 2 (as of September 2024, 88.3% of SNAP recipients also received Medicaid, and 21.5% also received Adult Public Assistance).

The plaintiffs do not identify any other concrete actions DOH could take to speed up SNAP application processing.[24]

**B. There is no dispute that DOH automatically sends notices with fair hearing information to each applicant experiencing agency delay.**

On December 31, 2024, this Court ordered DOH to begin sending delay notices that inform applicants how to request a fair hearing.[25] The notices go to all expedite-eligible SNAP applicants whose applications remain unworked after seven days and all other SNAP applicants whose applications remain unworked after thirty days.[26] DOH fully implemented this requirement by the end of April 2025.[27]

**C. There is no dispute that Alaskans can apply for SNAP on their first contact with DOH during regular business hours.**

Undisputed evidence shows that DOH has accepted applications at all Division of Public Assistance ("DPA") offices and telephonically on the Virtual Contact Center ("VCC") during regular business hours since at least July 2023. This is true even during

---

24 Because the plaintiffs did not name an expert witness to opine on the efficacy of DOH's efforts or make informed recommendations, it is not clear that the plaintiffs could have offered admissible evidence to support such arguments in any case.

25 Order Re Motion for Preliminary Injunction, Dkt. 77 (Dec. 31, 2024) ("Preliminary Injunction") at 19-20.

26 *Id.* Applicants whose applications remain pending after seven or thirty days waiting on verification or an interview do not get this delay notice. They receive other correspondence about the verification or interview that also contains fair hearing information. For context, as of September 4, 2025, 616 expedite-eligible applications were open beyond seven days, but 434 of those were worked and pended for verification or interview. October Court Report, Attachment 3 at 5.

27 Report on Compliance with Court Ordered Requirements, Dkt. 97-1 (June 2, 2025) at 11.

DPA office closures. The plaintiffs offer no evidence of anyone being unable to apply for SNAP during regular business hours, either at a DPA office or on the VCC, since the height of the backlog crisis in late 2022 and early 2023.

DOH has accepted SNAP applications by phone since summer 2021, and it has never instructed workers to stop accepting them.[28] At first, the VCC took telephonic applications through the general inquiry queue, and then after July 2023 through a dedicated queue staffed by contractors.[29] All recent evidence shows reasonable wait times on the telephonic application queue.[30] DOH also began accepting online SNAP applications in December 2023.[31]

---

28 Plaintiffs' Exhibit 12 at 3-4 (verified interrogatory responses). The plaintiffs assert that "[t]he record contains no evidence that Defendant actually accepted telephonic applications prior to May 2023," despite these interrogatory responses, and despite the plaintiffs' own exhibit from August 2021 reporting that "SNAP application transaction time on the VCC is 91 minutes" and listing a 71% completion rate for "same-day" "VCC SNAP Apps." *See* Plaintiffs' Memorandum at 24; Plaintiffs' Exhibit 16 at 6, 8.

29 Plaintiffs' Exhibit 7 at 4.

30 Plaintiffs' Exhibit 8 at 71 (April 2025 telephonic applications queue average wait about 4 minutes), 69 (March 2025, average wait about 7.5 minutes), 67 (February 2025, average wait about 7.5 minutes); 65 (January 2025, average wait about 10 minutes), 63 (December 2024, average wait about 5.5 minutes). The plaintiffs' statement of material facts contains a lengthy analysis of the wait times on the interview queues, but the complaint states no allegations about interviews or interview wait times.

31 *See* Plaintiffs' Exhibit 15 at 2 ("Starting today, Thursday, December 28, 2023, we have a new Online SNAP only application"). The plaintiffs' motion misstates the launch of online SNAP applications as December 2024 due to Director Etheridge's inadvertent misstatement at her deposition. *See* Plaintiffs' Exhibit 2 at 9 ("in December of '24, in order for the online app—so it must have been December of '23. And—it was December of '24. Sorry.")

And there is no dispute of material fact that DOH has application forms and drop boxes available during regular business hours at all DPA offices, even when those offices are temporarily closed due to inadequate staffing.[32] The deposition testimony cited by the plaintiffs does not create a dispute of material fact.[33] They cite the following testimony by DOH's workflow contractor who has sent employees to visit DOH offices in Alaska but who does not live or work in Alaska:[34]

> Q: [S]o outside of . . . 8:30 to 5:00, or whatever you said the hours were that the physical building is open, is there the ability for an applicant to get an application or do they have to just wait until the next business day?
> A: My understanding is applications are available online if the office is closed . . . .
> Q: But nothing on like an exterior of the building where they could get an application or anything like that?
> A: . . . . [N]ot to my knowledge.[35]

This witness was specifically asked about the availability of applications "outside of business hours" when the "physical building" is closed. He testified that to his knowledge application forms are not available on the exterior of closed buildings. That is

---

32 Plaintiffs' Exhibit 12 at 3-4 (verified interrogatory responses stating office closure dates due to low staffing but noting "application forms and drop boxes were still available at the offices" during closures).

33 As DOH has explained in its separate motion for summary judgment on this claim, under Civil Rule 37 the plaintiffs cannot rely on this evidence because they failed to disclose it in response to a targeted interrogatory request. Defendant's Motion for Partial Summary Judgment Re: First-Contact-Filing Claim, Dkt. 109 (Sept. 15, 2025). Also, from a practical standpoint, had the plaintiffs identified this deposition testimony in response to the interrogatory, DOH could have quickly corrected their misunderstanding of this testimony and avoided expenditure of the Court's time reviewing this issue.

34 Exhibit B (deponent's personal address redacted for privacy).

35 Plaintiffs' Exhibit 3 at 30.

generally true. But almost all DPA offices are located inside larger office buildings that are open during regular business hours and locked after business hours.[36] Even when the DPA office is closed during business hours, the building in which it is located is open to the public.[37] Blank application forms are available by the DPA office, *inside* the open building but *outside* the closed DPA office. So, even if the DPA office is closed during regular business hours, blank paper application forms and drop boxes—which are checked same-day[38]—are accessible to the public. In any case, the plaintiffs have offered no evidence that DPA's practices for office closures have ever actually stood in the way of anyone's ability to apply for benefits that same day.

The plaintiffs also cite several facts that—while technically true—omit crucial context. For example, the plaintiffs cite the permanent closure of the Gambell Street and Muldoon offices in 2022,[39] but they fail to explain that those two offices consolidated into the University Center office.[40] The plaintiffs also refer to an Anchorage Daily News article describing long waits at the University Center office in early June 2025,[41] but fail

---

36 Declaration of Becca Stovall. The one exception is the Wasilla office, which does have blank application forms available on the exterior of the building when closed. In any case, the Wasilla office has not generally been subject to staffing-related closures. Plaintiffs' Exhibit 12 at 5.

37 Declaration of Becca Stovall.

38 Plaintiffs' Exhibit 5 at 17, 53.

39 Plaintiffs' Statement of Material Facts at 14.

40 Plaintiffs' Exhibit 5 at 50-51.

41 Plaintiffs' Statement of Material Facts at 15.

to note that DOH moved that office to a larger space to increase capacity and accessibility later that same month.[42]

The plaintiffs also suggest that the decline in Alaska's SNAP participation rate between July and December 2022 could be attributed to barriers to applying.[43] But the numbers of SNAP applications DPA received during that time remained steady and high.[44] The decline is more likely explained by the application processing backlog at that time, and the expiration of pandemic waivers that had expanded program eligibility. In any case, in the past twelve months (federal fiscal year 2025), Alaska SNAP participation rates have remained steady in the low-mid 60,000s.[45]

The plaintiffs also note that in late 2024, DOH's contractors identified a delay in registering paperwork into DOH's workload management system.[46] But the plaintiffs omit the fact that DOH promptly disclosed that issue to the Court and took rapid action to resolve it.[47] The plaintiffs also omit uncontradicted testimony that DOH correctly dated all paperwork as of the date received, despite any delay in registering it into the workload management system.[48] So not only is the plaintiffs' statement misleadingly incomplete, it

---

42 August Court Report at 8-9; Exhibit C.

43 Plaintiffs' Memorandum at 21.

44 http://dpaweb.hss.state.ak.us/files/reports/InitialAppsTable_History.pdf (page 7).

45 Exhibit D.

46 Plaintiffs' Exhibit 3 at 12-13.

47 Report on Compliance with Court Ordered Requirements, Dkt. 80-1 (Feb. 3, 2025) at 7. *See also* Exhibit E (contractor reports describing document import initiative).

48 Exhibit F.

also does not support the allegation that any person was unable to apply for SNAP on their first contact with DPA during regular business hours.

The plaintiffs offer no admissible evidence of Alaskans having difficulty applying for SNAP except the experience of one individual in late 2022 and early 2023.[49] They offer no evidence of any person being unable to apply for SNAP on first contract with DPA during regular business hours any time during the last two and half years.

## III. LEGAL STANDARDS

### A. Summary Judgment.

Under Federal Rule of Civil Procedure 56(a), a court must grant summary judgment when there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. The plaintiffs must point to "specific facts showing that there is a genuine issue for trial."[50] To reach the level of a genuine issue, the plaintiffs must identify sufficient admissible evidence such that a reasonable fact-finder could find in the plaintiffs' favor based on it.[51] The plaintiffs must cite "to particular parts of materials in the record, including depositions, documents, electronically stored

---

[49] Plaintiffs' Memorandum at 23. Although the plaintiffs' motion alleges that this affected "many class members," they point to evidence of only one. *Id.*

[50] *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[51] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (citations omitted).

information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials."[52]

Declarations signed only by attorneys, not the declarants themselves, are not admissible evidence.[53] The declarations of plaintiffs Zoya Jenkins,[54] Nataliia Moroz,[55] Kayla Birch,[56] Teresa Ferguson,[57] John Andrew,[58] Rhonda Conover[59] and Autumn Ellanna[60] are signed only by attorneys. Unless the plaintiffs submit new versions of those declarations signed by those individuals, they cannot rely on them in support of summary judgment.

Hearsay statements in news articles are not admissible evidence, nor are they appropriate for judicial notice. "Courts may take judicial notice of publications

---

52 Federal Rule Civ. P. 56(c)(1)(A).

53 *See* 28 U.S.C. § 1746 (declarations "of such person which is subscribed by him" under penalty of perjury may be admissible evidence); *see also Markel v. Bd. of Regents of Univ. of Wisconsin Syst.*, 276 F.3d 906, 160 (7th Cir. 2002) (summary judgment affidavit signed by plaintiff's counsel but not by plaintiff did not meet Rule 56 requirements and could not be considered on summary judgment motion).

54 Dkt. 45-1 (June 11, 2024) at 8 (signed by Constance Du).

55 Dkt. 45-2 (June 11, 2024) at 6 (signed by Constance Du).

56 Dkt. 45-3 (June 11, 2024) at 6 (signed by Nick Feronti).

57 Dkt. 45-4 (June 11, 2024) at 5 (signed by Nick Feronti).

58 Dkt. 45-5 (June 11, 2024) at 6 (signed by Nick Feronti).

59 Dkt. 45-6 (June 11, 2024) at 6 (signed by Nick Feronti).

60 Dkt. 45-7 (June 11, 2024) at 7 (signed by Nick Feronti).

introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true."[61]

The plaintiffs may not rely on "mere allegations or denials."[62] The plaintiffs cannot create a dispute of material fact simply by suggesting that the Court should disbelieve the sworn testimony of DOH staff and contractors.[63] The plaintiffs cannot rely on mere speculation and conjecture.[64]

**B. Declaratory Judgment.**

Granting declaratory judgment is never mandatory; it is within the discretion of the district court.[65] Declaratory relief is only appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue," and "when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."[66] When deciding whether to grant declaratory judgment, district courts

---

[61] *Von Saher v. Norton Simon Musuem of Art at Pasedena,* 592 F.3d 954, 960 (9th Cir. 2010); *see also Martinez v. Wayne County, Michigan*, 142 F.4th 828, 846 (6th Cir. 2025) (declining to take judicial notice of contents of news articles because their accuracy cannot be readily determined, and because they were offered for the truth of the matters they asserted).

[62] *Anderson*, 477 U.S. at 248.

[63] *Caroll v. Lynch*, 698 F.3d 561, 565 (7th Cir. 2012) ("But nothing requires the district court to disbelieve defendants' proffered evidence simply because Ms. Carroll—without proof—asserts it is false.").

[64] *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 681 (9th Cir. 1985).

[65] *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) ("the Declaratory Judgment Act is deliberately cast in terms of permissive, rather than mandatory, authority" (internal quotation omitted)).

[66] *Carroll Shelby Licensing, Inc. v. Halicki*, 138 F.4th 1178, 1189 (9th Cir. 2025).

should consider "the facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution."[67] It is the Court's duty to "decide actual controversies by a judgment which can be carried into effect and not . . . to declare principles or rules of law which cannot affect the matter in issue in the case before it."[68]

### C. Permanent Injunctions.

"A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief."[69] First, "a plaintiff must demonstrate . . . that it has suffered an irreparable injury."[70] Second, "that remedies available at law, such as monetary damages, are inadequate to compensate for that injury."[71] Third, "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted."[72] And fourth, "that the public interest would not be disserved by a permanent injunction."[73]

## IV. ARGUMENT

### A. Although DOH is not in full compliance with SNAP Act application processing timeframes, the plaintiffs have not established that they are entitled to any declaratory judgment or permanent injunction.

---

67 *Government Employees Ins. Co.*, 133 F.3d at 1223 (internal quotation omitted).

68 *Kodiak Oil Field Haulers, Inc. v. Teamsters Union Local No. 599*, 611 F.2d 1286, 1290 (9th Cir. 1980).

69 *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

70 *Id.*

71 *Id.*

72 *Id.*

73 *Id.*

DOH is already doing everything reasonably possible to speed up SNAP application processing. An order from this Court will have no real-world effect. No order can compel more people to apply for vacancies at DOH; no order can shorten the time to train new hires to process SNAP applications; no order can prohibit trained employees from leaving DOH; and no order can speed up technology updates. Only FNS has meaningful power to shorten SNAP application processing times. For example, FNS can waive the requirement that DOH interview applicants, as FNS has done in the past,[74] and FNS can waive the prohibition on contractors making eligibility determinations, as it just did.[75] And DOH is already working closely with FNS.

This Court cannot meaningfully analyze a motion for summary judgment without knowing what judgment the movant wants the Court to enter. The plaintiffs did not submit a proposed order with their motion. Their motion "respectfully aver(s)" that "defendant's policies and practices of failing or refusing to render timely eligibility determinations on [SNAP] applications and recertifications violate 7 U.S.C. § 2020(e)(3) and (4) [and (9)] and implementing regulations at 7 C.F.R. § 273.2,"[76] which could be a

---

74 Plaintiffs' Statement of Material Facts at 22. The plaintiffs must bear in mind that DOH and FNS are concerned not just with timeliness, but also accuracy. Waiving interviews speeds up application processing times but also reduces the amount of information available to DOH to ensure an accurate benefit determination.

75 October Court Report, Attachment 1 at 1-30.

76 Plaintiffs' Motion for Summary Judgment, Dkt. 107 (Sept. 12, 2025) at 3. The suggestion that DOH is "refusing" to process SNAP applications within federal timeframes is totally without factual basis and frankly insulting to DOH's dedicated and hardworking staff.

request for declaratory judgment. But entering that declaratory judgment would have no "useful purpose."[77] It certainly would not "afford relief from . . . uncertainty, insecurity, and controversy."[78] Such a declaration would change nothing in the real world. This is not an appropriate situation for the Court to exercise its discretion to enter a declaratory judgment.

Similarly, to get a permanent injunction, the plaintiffs must satisfy the applicable four-factor test,[79] but the plaintiffs do not address the relevant factors at all. Nor do they identify what, if any, acts they seek to restrain or require. This Court already entered a preliminary injunction, and DOH has complied with it for nine months. The plaintiffs have nothing to say about that, leaving DOH (and this Court) to guess at whether they consider the preliminary injunction to have been successful, whether they want it to become permanent, or whether they are now seeking something else.

To the extent that the plaintiffs want an injunction that flatly requires DOH to come into immediate, total compliance with SNAP Act application processing timeframes (or else face the threat of contempt), this Court has already properly declined to enter that injunction.[80] There is no dispute that DOH is already doing everything in its power to improve its application processing timeliness. Broadly enjoining DOH to come

---

77 *See Carroll Shelby Licensing, Inc.*, 138 F.4th at 1189.

78 *See id.*

79 *eBay, Inc.*, 547 U.S. at 391.

80 Preliminary Injunction at 31 (recognizing that "immediate compliance is untenable").

into immediate and total compliance with SNAP Act timeframes will change nothing.[81] At least, it will not lift the obstacles that have prevented DOH, despite its best efforts, from meeting the timeframes. It would only place DOH in an impossible position of having to choose between violating the Court's order, violating FNS rules and regulations to slapdash application processing, or letting other critical welfare benefit programs founder in order to focus all its staffing resources on SNAP. Such an injunction would not serve the public interest.

Only FNS has the power to meaningfully impact application processing timeliness. The plaintiffs highlight this by tracking DOH's historical SNAP application backlog against FNS's approval of interview waivers.[82] As the plaintiffs themselves point out, conducting interviews is a time-intensive aspect of processing SNAP applications, and when FNS has waived interviews, DOH has processed SNAP applications more quickly.[83] But this Court cannot compel FNS to waive interviews. Nor can any declaratory judgment or injunction unilaterally do away with the interview requirement.

The plaintiffs also (perhaps unintentionally) emphasize FNS's power to impact SNAP application processing times when discussing the role of DOH's contractors. The

---

[81] As the Second Circuit wryly noted, when declining to hold that a three year delay in processing Social Security disability benefit appeals violated due process, "[w]ere we convinced that a judicial fiat was the required or even desirable remedy to expedite crowded dockets to achieve more timely justice, we might more appropriately experiment with it upon ourselves." *Wright v. Califano*, 587 F.2d 345, 354 n.14 (2nd Cir. 1978).

[82] Plaintiffs' Statement of Material Facts at 22.

[83] Plaintiffs' Memorandum at 12.

plaintiffs correctly point out that under the SNAP Act, only state employees ("merit staff") may make eligibility determinations.[84] In 2023, DOH hired contract workers to staff the VCC, freeing up merit staff for eligibility determinations.[85] The plaintiffs write: "Even an army of non-merit staff cannot resolve a SNAP processing backlog arising because the limited pool of merit staff needed to complete specific steps in the application process is inadequate."[86] But just a few days before the plaintiffs filed their motion, FNS approved DPA's request to waive the merit staff requirement and allow contractors to conduct eligibility determinations.[87]

There is no order this Court can enter that will have any real-world impact on the time it takes for DOH to process SNAP applications or the number of staff available to process them. Only FNS can have that kind of impact. And Congress expressly charged FNS with enforcing the timeliness provisions of the SNAP Act.[88] Declaratory and injunctive relief has no role to play under these circumstances. This litigation merely draws down both the Court's and DOH's limited resources to no practical purpose.

This Court should deny the plaintiffs' motion for summary judgment because the plaintiffs have not told this Court what judgment they want or established why they are entitled to it.

---

[84] *Id.* at 11.

[85] *Id.* at 12.

[86] *Id.*

[87] October Court Report, Attachment 1 at 1-30.

[88] 7 U.S.C. § 2020(g).

### B. The plaintiffs' claim that application processing delays violate due process is too late and meritless.

In their motion, the plaintiffs raise a new claim that DOH violates the class's procedural due process rights by failing to process expedited SNAP applications within seven days and other SNAP applications within thirty days. The plaintiffs cannot raise this claim now because they neither pled it in their complaint nor raised it in prior briefing.[89] This Court should deny this claim for that reason, alone. But it is also meritless. The certified class of applicants—who may or may not be eligible for SNAP benefits—have a right to a fair determination of their eligibility.[90] The constitution imposes no hard seven- or thirty-day time limits on that fair eligibility determination—those administrative deadlines come from statute only.[91] DOH provides every applicant with a fair determination of their eligibility as quickly as DOH is reasonably able, which is all the process that is due.[92]

#### 1. The plaintiffs cannot raise this claim for the first time in a motion for summary judgment.

---

89 *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000).

90 *See Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard." (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)).

91 7 U.S.C. § 2020(e)(3), (4), and (9).

92 *See Wright v. Califano*, 587 F.2d 345, 356 (7th Cir. 1978) (reversing district court order requiring Social Security Administration to provide fair hearings within certain time limits: "we are not justified in sanctioning the imposition of unrealistic and arbitrary time limitations on an agency which for good faith and unarbitrary reasons has amply demonstrated its present inability to comply").

The plaintiffs' complaint alleges only that DOH violates applicants' procedural due process rights by failing to provide *notice and opportunity for a fair hearing* when an application is pending beyond SNAP Act timelines due to agency delay.[93] The plaintiffs argued that claim in their motion for preliminary injunction,[94] but the Court ordered DOH to begin providing that notice on statutory grounds and did not reach their constitutional arguments.[95]

In their motion for summary judgment, the plaintiffs for the first time claim that *the delay in processing applications itself*—regardless of a notice—violates due process.[96] Claims not pled in the complaint, and not argued by consent,[97] cannot be raised

---

[93] Class Action Complaint, Dkt. 1-1 (March 1, 2023) at 39-40, 42-43. The plaintiffs also make that claim in their motion for summary judgment, it is addressed in Section IV.C, below.

[94] Plaintiffs' Motion for Preliminary Injunction, Dkt. 35-1 (May 8, 2025) at 23-25.

[95] Preliminary Injunction at 20, n.67.

[96] Plaintiffs' Memorandum at 33. *Compare* Class Action Complaint, Dkt. 1-1 (March 1, 2023) at 42 (demanding declaratory judgment that DOH has "violated the Due Process clause of the 14th Amendment to the constitution by failing to issue timely and adequate written notice of eligibility or delayed processing and access to a fair hearing; and ensure a fair eligibility process is available to SNAP applicants and recipients"), *with* Plaintiffs' Motion for Summary Judgment, Dkt. 107 (Sept. 12, 2025) at 3 (averring that DOH's "policies and practices of failing or refusing to render timely eligibly determinations on SNAP applications and recertification and provide SNAP benefits to eligible households within (30) days of the date of application violate the Due Process Clause of the 14th Amendment to the United States Constitution" and that DOH's "policies and practices of failing or refusing to render timely eligibility determinations on expedited SNAP applications and provide SNAP benefits to eligible households within seven (7) days of the date of application violate the Due Process Clause of the 14th Amendment to the United States Constitution").

[97] *See* Federal R. Civ. P. 15(b)(2).

for the first time in summary judgment motions.[98] The plaintiffs filed their complaint in early 2023,[99] obtained a preliminary injunction in late 2024,[100] and discovery closed a few months ago.[101] It is too late for the plaintiffs to raise new constitutional claims now. This Court should deny the plaintiffs' motion for summary judgment on this claim for this reason alone.

**2. This claim is also meritless under *Mathews v. Eldrige*.**

The plaintiffs base this claim on a flawed analysis of *Mathews v. Eldridge*. In *Mathews*, the Court found no due process violation despite a typical delay of more than a year between termination of a recipient's disability benefits and a hearing.[102] That case certainly does not support a seven- or thirty-day hard constitutional deadline to provide a fair determination of eligibility for SNAP.

*Mathews v. Eldridge* sets out the framework to determine what process is due before the government takes action affecting a liberty or property interest.[103] To determine what process is due, courts consider three factors: first, "the private interest

---

98 *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000) ("After having focused on [one theory of liability] in their complaint and during discovery, the [plaintiffs] cannot turn around and surprise the [defendant] at the summary judgment stage on [another] theory").

99 Class Action Complaint, Dkt. 1-1 (March 1, 2023).

100 Preliminary Injunction (Dec. 31, 2024).

101 *See* Order Re: Plaintiffs' Unopposed Motion to Amend Scheduling Order, Dkt. 94 (April 16, 2025).

102 *Mathews v. Eldridge*, 424 U.S. 319, 342 (1976).

103 *Id.* at 349.

that will be affected by the official action"; second, "the risk of an erroneous deprivation of such interest through the procedures used"; third, "the probable value, if any, of additional or substitute procedural safeguards"; and fourth, "the Government's interest, including the . . . fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[104]

But the plaintiffs do not demand any additional or substitute procedures—they demand SNAP benefits.[105] The certified class is "all Alaska residents who since January 20, 2021 have applied, are applying, or will apply for SNAP benefits . . . and did or will not receive an eligibility determination within the legally required timeframes."[106] This class includes both eligible and ineligible applicants. Obviously, ineligible applicants have no right to SNAP benefits.

Applicants, whether ultimately eligible or ineligible, have the same right, which is to a *fair determination* of eligibility.[107] The plaintiffs rely heavily on *Goldberg v. Kelly* as

---

104 *Id.* at 335.

105 Plaintiffs' Memorandum at 35 ("Reforms would have the undeniable effect of keeping Plaintiffs and other class members fed.").

106 Stipulation on Class Certification, Dkt. 13 (May 2, 2023) at 2.

107 *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972). *See also Brandal v. State, Commercial Fisheries Entry Comm'n,* 128 P.3d 732, 739 (Alaska 2006) ("Just as importantly, all applicants—including those whose permit applications are ultimately denied—have a procedural interest in the prompt and fair adjudication of their claim.").


Case 3:23-cv-00044-SLG Document 116 Filed 10/24/25 Page 24 of 38

establishing a procedural due process right in welfare benefits, but that right is in the *procedure*, not in the *benefit*.[108] As the Supreme Court later explained:

> [T]he welfare recipients in *Goldberg v. Kelly* had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that *they had a right to a hearing* at which they might attempt to do so.[109]

Many courts, including the Alaska Supreme Court, have held that "delay alone" generally does not constitute a due process violation.[110] The seven- and thirty-day application processing timeframes that the plaintiffs demand come from the SNAP Act's administrative requirements for state plans of operation—they have no constitutional foundation. When considering whether administrative delay violates due process rights, "there is no talismanic number of years or months, after which due process is

---

108 *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970). There is no substantive due process right to receive welfare benefits. *Lavine v. Milne*, 424 U.S. 577, 584 n.9 (1976) ("Welfare benefits are not a fundamental right and neither the State or Federal Government is under any sort of constitutional obligation to guarantee minimum levels of support.").

109 *Roth*, 408 U.S. at 577 (citation omitted, emphasis added); *see also Atkins v. Parker,* 472 U.S. 115, 128 (1985) (SNAP benefits "are appropriately treated as a form of 'property' protected by the Due Process Clause; accordingly, *the procedures that are employed* in determining whether an individual may continue to participate in the statutory program must comply with the commands of the Constitution." (emphasis added)); *Kelly v. Railroad Retirement Bd.*, 625 F.2d 486 (3rd Cir. 1980) ("due process must attach *to the process* of determining ineligibility, whether at the outset or after receipt of benefits") (emphasis added).

110 *Sean P. v. Bisignano*, 2025 WL 2106715 (D. Alaska 2025) (nine month delay in processing Social Security disability termination appeal did not violate due process); *Brandal*, 128 P.3d at 740 (twenty-two year delay in processing commercial fishing permit application did not violate due process). *But see Kelly*, 625 F.2d 486 (delay of nearly four years to process application for disabled child benefit violated due process).

automatically violated."[111] In fact, any bright-line deadline would be antithetical to the "flexible" *Mathews v. Eldridge* analysis.[112]

The first *Mathews v. Eldridge* factor—the nature of the private interest—can include consideration of the time that the existing procedures take: "possible length of wrongful deprivation of . . . benefits (also) is an important factor in assessing the impact of official action on the private interests."[113] In *Mathews*, the delay between termination of disability benefits and a hearing generally exceeded one year.[114] The Court recognized that "hardship imposed upon the erroneously terminated disability recipient may be significant."[115] But the Court still found the other three factors outweighed that interest, and that due process did not require a pre-termination hearing.[116]

To the extent that the *Mathews v. Eldridge* analysis can apply to a demand for faster procedures, rather than additional or substitute procedures,[117] the analysis weighs decisively in favor of DOH because it is already doing everything reasonably possible to process applications quickly. Over the past six months, DOH's average SNAP

---

111 *Coe v. Thurman*, 922 F.2d 528, 531 (9th Cir. 1990).

112 *Mathews*, 424 U.S. at 334. *See also Kraebel v. New York City Dep't of Housing Preservation & Dev.*, 959 F.2d 395, 405 (2nd Cir. 1992) ("no bright-line rule exists for determining when a delay is so burdensome as to become unconstitutional").

113 *Mathews*, 424 U.S. at 341.

114 *Id.* at 342.

115 *Id.*

116 *Id.* at 349.

117 *Id.* at 335 (considering the value of "additional or substitute procedural safeguards" and the burdens of "additional or substitute procedural requirement[s]").

application processing time was 49 days.[118] This is not an egregious amount of time.[119] And each applicant receives a notice of delay with fair hearing information immediately after the statutory timeframe has passed. If an applicant is in dire circumstances and cannot wait for a retroactive benefit payment when DOH approves their application, that applicant can file a fair hearing request to bring the delay to DOH's attention. This is more process above and beyond the fair determination of eligibility to which they are entitled.

Although courts may find a constitutional violation if the delay in processing a benefit application is "egregious and without any rational justification,"[120] courts will not find due process violations when the "record does not establish that the delays are

---

[118] October Court Report, Attachment 3 at 4. In their motion, the plaintiffs point only to the average age of *untimely* applications, which fails to account for the bulk of applications that are processed within federal timeframes. Furthermore, the more recent data shows significantly shorter waits than the plaintiffs cite in their motion. Exhibit G (as of September 22, 2025 the average age of untimely regular SNAP applications was 65 days and 21 days for untimely expedited applications).

[119] For example, the Medicaid Act provides for a forty-five day or ninety-day application processing timeline, depending on type. *See* 42 C.F.R. § 435.912. It generally takes six to eight months for the Social Security Administration to process an application for disability benefits. *See* Social Security Administration, "How long does it take to get a decision after I apply for disability benefits?" available online at https://www.ssa.gov/faqs/en/questions/KA-01801.html. *C.f. Kelly*, 625 F.2d at 491 ("four years [to process a disability benefit application] is totally out of phase with the requirements of fairness"); *Brandal,* 128 P.3d at 740 (finding no due process violation in twenty-two year delay in processing commercial fishing permit application, but stating that the agency's "handing of this case was inexcusable").

[120] *Kraebel*, 959 F.2d at 405.

arbitrary or the result of some other inexcusable circumstance."[121] Here, it is not clear what more DOH could actually do to provide fair eligibility determinations more quickly.

Thus, the fourth *Mathews* factor, the Government's interest, is determinative. DOH is already doing its utmost. The second and third *Mathews* factors likewise weigh against finding a due process right to an eligibility determination in seven or thirty days. Those factors focus on reducing the risk of erroneous agency decision-making, but that risk would likely *increase* if this Court imposed hard deadlines, not *decrease*. As the Seventh Circuit explained in finding no due process violation in a three-year delay for a hearing on a benefit termination, "[t]o impose on the [agency] the crash review program sought by plaintiffs could be expected to result in a deterioration of the quality of the review, and possibly more injustice to claimants than justice. Speed cannot be an end in itself."[122]

In the end, the "system must be fair, and it must work," but it does not violate due process if it "does not work as quickly as we would like."[123] The certified class receives fair eligibility determinations as quickly as reasonably possible, and that is all that due process requires.

**3. This claim is also meritless under an arbitrary denial analysis.**

---

[121] *Wright v. Califano*, 587 F.2d 345, 354 (7th Cir. 1978) (finding no due process violation in more than three-year delay in providing fair hearing challenging termination of disability benefit).

[122] *Id.* at 356.

[123] *Id*.

The plaintiffs also argue that DOH violates their due process rights by arbitrarily processing some applications within 7 or 30 days and others later.[124] That theory might make sense if DOH *denied* all applications unworked after 30 days. But DOH provides every applicant with a fair determination of eligibility, as quickly as reasonably possible, which is all that due process requires.

The plaintiffs cite numerous cases in which agencies lacked clear standards for determining benefit eligibility and denied applications without explanation.[125] Consistent with *Mathews v. Eldridge*, those cases hold that arbitrary denials of benefits violate procedural due process because applicants do not get the fair eligibility determination to

---

124 Plaintiffs' Memorandum at 36.

125 *See Daniels v. Woodbury County, Iowa*, 742 F.2d 1128, 1131 (8th Cir. 1984) (affirming district court finding that "arbitrary denials of benefits, . . . failures to notify claimants of their appeal rights, and . . . failures to provide claimants with the reasons for adverse decisions" violated welfare applicants' due process rights); *Ressler v. Pierce*, 692 F.2d 1212 (9th Cir. 1982) (arbitrary determinations by property owners of whether to rent to subsidized housing beneficiaries violated beneficiaries' procedural due process rights); *Carey v. Quern*, 588 F.2d 230 (7th Cir. 1978) (procedural due process required agency to inform welfare recipients of option to request a clothing allowance and standards for approving it); *White v. Roughton*, 530 F.2d 750 (7th Cir. 1976) (arbitrary and standardless welfare eligibility determinations violated applicants' procedural due process rights); *K.W. by D.W. v. Armstrong*, 683 F. Supp. 3d 1125 (D. Idaho 2023) (due process required agency to inform recipients of standards for setting welfare benefit amount); *M.A. v. Norwood*, 133 F. Supp. 3d 1093 (N.D. Ill. 2015) (agency violated recipients' procedural due process rights when it reduced or terminated Medicaid benefits based on new standards without informing recipients of those new standards); *Strouchler v. Shah*, 891 F. Supp. 2d 504 (S.D.N.Y 2012) (same); *Baker-Chaput v. Cammett*, 406 F. Supp. 1134 (D.N.H. 1976) (ad hoc determination of eligibility for welfare benefit violated applicant's procedural due process rights); *Torres v. Butz*, 397 F. Supp. 1015 (N.D. Ill. 1975) (standardless implementation of free breakfast benefit in some schools but not others violated procedural due process).

which they are entitled.[126] The plaintiffs do not cite any cases about *delay* in application processing—only *denial*.

So the plaintiffs' argument depends on the fiction that DOH denies applications on day eight or thirty-one by not working them by then. But that is not what happens. DOH gives every applicant a fair eligibility determination, to which they have a due process right, as quickly as DOH is able. Sometimes that takes longer than seven or thirty days, but no applications are arbitrarily denied.

Missouri's past practices illustrate the flaws in the plaintiffs' argument. Unlike Alaska, until recently Missouri *did* deny applications in backlog on day thirty-one.[127] Specifically, Missouri did not have enough caseworkers to conduct interviews but

---

126 *Daniels,* 742 F.2d at 1133; *Ressler*, 692 F.2d at 1216 ("Ressler should have been given some means of ensuring that her application for . . . benefits was received and given meaningful review."); *Carey*, 588 F.2d at 232; *White*, 530 F.2d at 753; *K.W.*, 683 F. Supp. 3d at 1132 ("access to information in the User's Manual is necessary for preparing a meaningful challenge to a budget reduction"); *M.A.*, 133 F. Supp. 3d at 1099 ("due process requires that the agency's reason for its action be stated in sufficient detail to allow the affected individual an effective opportunity to defend") (internal quotation omitted); *Baker-Chaput*, 406 F. Supp. 1134 ("the eligible welfare applicant's interest in receiving general assistance pursuant to written standards outweighs the defendants' interest in the standardless administration of the general assistance program."); *Strouchler*, 891 F. Supp. 2d at 521 ("defendants have not provided an adequate pre-deprivation process").

127 *Holmes v. Knodell*, 733 F.Supp.3d 775, 782 (W.D. Mo. 2024) ("[Missouri's] eligibility system automatically denies applications if an interview has not been completed within 30 days regardless of whether applicants attempted to secure an interview, or whether [Missouri] meaningfully made an interview available.")

automatically denied SNAP applications on day thirty-one if the applicant had not completed an interview.[128]

Missouri was sued for this practice in Missouri District Court, and the individual plaintiffs successfully argued that those automatic denials violated procedural due process because they deprived applicants of a fair adjudication of eligibility.[129] The court held that procedural due process requires Missouri to give applicants a fair opportunity to complete an interview before denying an application *even if that takes longer than 30 days.*[130] Missouri has appealed, so that order may not stand.[131] But the circumstances sharply illustrate the difference between a true arbitrary denial on day thirty-one and DOH's fair determination of eligibility for each applicant, even though that fair determination may take longer than thirty days. Ultimately, the court ordered Missouri to give each applicant a fair eligibility determination, no matter how long that takes—just

---

128 *Id.* ("in July 2023, over fifty percent of all denials were due to the failure to complete a timely interview and were not decided on the merits of the application").

129 *See id.* The individual plaintiffs in that matter were represented by some of the same counsel that represent the plaintiff class here.

130 *See id.* ("Plaintiffs['] … applications were denied without a meaningful, realistic opportunity to interview, *and without having systems capable of keeping their applications alive to accommodate delays* in obtaining an interview." (emphasis added)); *see also* Order, *Holmes v. Bax*, No. 2:22-CV-04026-MDH, Dkt. 220 (May 6, 2025) (available online at https://nclej.org/wp-content/uploads/2025/05/220-Order-on-remedies.pdf) ("When an applicant has an interview scheduled for more than thirty days after their application was submitted, Defendant shall not deny the application for failure to interview prior to the scheduled appointment. As an eligibility determination cannot be made until after the interview is completed.").

131 *See Bax v. Holmes*, No. 25-1987 (8th Cir.).

like Alaska is already doing.[132] The thirty-day application processing timeframe is a statutory procedure required for state administrative plans; it has no independent constitutional significance.

It is crucial to understand that the plaintiffs' argument would apply to *any* welfare benefit based on need. Nothing about their argument is specific to SNAP.[133] A ruling that all agencies administering welfare benefits must process applications within seven or thirty days *as a matter of constitutional due process* would have far-reaching and alarming consequences. As would any ruling that the *administrative* rules governing how an agency processes a benefit—as opposed to the *eligibility* rules for who is entitled to a benefit—create property right rights protected by due process of law.[134]

---

[132] *See* Order, *Holmes v. Bax*, note 130 above. The specifics of the Missouri District Court's injunction are also instructive. For one thing, the court found that "Defendant has failed to identify a single program change or resource reallocation to address the issues raised initially in the Complaint and subsequently in the Court's summary judgment order." *Id.* This is very different from Alaska, where DOH has been demonstrably striving to improve its application timeliness rates since even before this lawsuit was filed. Also, the Court required the plaintiffs to "submit to this Court a report detailing the specific changes they contend are required to make Defendant's provision of SNAP benefits lawful . . . . Each proposed change must be separately and clearly identified." *Holmes*, 733 F. Supp. 3d at 800. Here, the plaintiffs have identified no changes that they contend DOH should be required to make.

[133] In support of their argument, the plaintiffs cite cases about various other welfare benefits. *See Goldberg*, 397 U.S. at 255 (temporary cash assistance to needy families); *M.A. v. Norwood*, 133 F. Supp. 3d 1093 (N.D. Ill. 2015) (Medicaid); *Strouchler v. Shah*, 891 F. Supp. 2d 504 (S.D.N.Y 2012) (Medicaid).

[134] *See Roth,* 408 U.S. at 577 ("Property interests, of course, are not created by the Constitution. Rather they are created, and their dimensions are defined by existing rules or understandings that stem from an independent source such as [statute]…. Thus, the welfare recipients in *Goldberg v. Kelly*, had a claim of entitlement to welfare payments that was grounded in *the statute defining eligibility* for them." (Internal citation omitted,

Constitutionalizing administrative procedures would wreak havoc on public administration of welfare benefits.

### C. DOH already sends notices of delayed processing, so the plaintiffs' claims about them are moot.

The plaintiffs' claims that the SNAP Act and procedural due process require DOH to provide notice and an opportunity for fair hearing whenever a SNAP application is delayed beyond 7 or 30 days are moot because DOH now sends that notice and intends to continue to do so.

Although the plaintiffs' motion sometimes asserts that DOH does not send these notices,[135] it also acknowledges that DOH does in fact do so.[136] The motion does not cite any evidence suggesting that DOH does not send these notices. There is no dispute of material fact that DOH sends these notices. The claims are therefore moot.[137] DOH raised

---

emphasis added)). Eligibility for SNAP is codified at 7 U.S.C. § 2014, titled "eligible households" and calculation of benefits is codified at 7 U.S.C. § 2017, titled "value of allotment," whereas the seven- and thirty- day application processing timelines are codified in 7 U.S.C. § 2020, titled "administration."

[135] *See, e.g.*, Plaintiffs' Memorandum at 3 ("DOH fails to send a notice of delay to each impacted household"), 25 ("There is no dispute of material fact as to DOH's failure to provide the notice"), 28 ("Defendant's practice of failing to issue a notice of delayed processing").

[136] *See, e.g.*, Plaintiffs' Memorandum at 27 ("Defendant began sending out notices of delayed SNAP processing in or around April 2025"); 31 ("the administrative burden to the state of continuing to issue a notice that they have now developed and programmed into their system is minimal"); *see also* Statement of Material Facts at 24 ("Following the Court's decision on Preliminary Injunction, DPA began issuing a notice of delayed processing.").

[137] Plaintiffs' Exhibit 2 at 16, Report on Compliance with Court Ordered Requirements, Dkt. 97-1 (June 2, 2025) at 11.

mootness in its own motion for summary judgment on this claim and will address it further in reply in support of that motion, as necessary.[138]

Even if these claims were not moot, neither federal nor state due process requires the notices.[139] The cases the plaintiffs cite do not support their novel claims. Those cases stand for the unremarkable proposition that welfare beneficiaries have a due process right to notice and a hearing before *termination* or *reduction* of their benefits.[140] None impose constitutional requirements on governments administering welfare benefits to issue notices of application processing delay at all, far less on day eight or thirty-one after receiving the application.

### D. The plaintiffs have not identified sufficient evidence to support their first-contact-filing claim.

The plaintiffs claim that DOH does not permit Alaskans to apply for SNAP on their first contact with DOH during regular business hours. But the plaintiffs have not identified enough evidence to justify a trial on this claim, let alone summary judgment in

---

138 Defendant's Motion for Partial Summary Judgment Re: Constitutional Claims, Dkt. 110 (Sept. 15, 2025).

139 DOH also disagrees with this Court's ruling that the SNAP Act provides a right to a fair hearing based on delay and preserves that issue for appeal. Preliminary Injunction at 18-19.

140 *See, e.g., Atkins v. Parker*, 472 U.S. 115 (1985) (notice of change in SNAP benefit calculation constitutionally sufficient); *Bliek v. Palmer*, 916 F. Supp. 1475 (N.D. Iowa 1996) (procedural due process required that notice of SNAP overpayment recoupment include options to settle, adjust or compromise the amount due); *Allen v. State*, *Dep't of Health & Soc. Servs.*, 203 P.3d 1155 (Alaska 2009) (notice of SNAP overpayment recoupment inadequate); *Baker v. State, Dep't of Health & Soc. Servs.*, 191 P.3d 1005 (Alaska 2008) (procedural due process required that notices of reduction in benefit levels sufficiently explain the reasons for the reductions).

their favor. The only potentially admissible evidence they identify is the experience of one person in late 2022 and early 2023.[141] They offer no evidence of any person who has been unable to apply for SNAP during regular business hours since then. All evidence is consistent that, since at least July 2023, DOH has accepted SNAP applications both telephonically and in person at all DPA offices during regular business hours, even when an office is closed. Deposition testimony that applications are not available outside DPA office buildings *after* business hours is irrelevant.[142]

The plaintiffs cite no case law suggesting a different result. The plaintiffs rely primarily on a Ninth Circuit case that actually did not require agency offices to remain open every weekday during business hours.[143] There, the court allowed the agency to comply with the first-contact-filing rule by making an emergency phone line available during closures, and by back-dating applications received on the next open day after the closure.[144] Here, telephonic applications are always available on the VCC during regular

---

141 Because this declaration was signed by an attorney, not the declarant, it is not admissible evidence unless the plaintiffs submit a new version executed by the declarant. *See* Declaration of Autumn Ellanna, Dkt. 45-7 (June 11, 2024) at 7 (signed by Nick Feronti).

142 *See* 7 U.S.C. §2020(e)(2)(B)(iii) ("a State agency… shall permit an applicant household to apply to participate in the program on the same day that the household first contacts a supplemental nutrition assistance program office in person *during office hours*" (emphasis added)); 7 C.F.R. §273.2(c)(1)(iii) ("Each household has the right to file an application form on the same day it contacts the SNAP office *during office hours*" (emphasis added)).

143 *Blanco v. Anderson*, 39 F.3d 969 (9th Cir. 1994).

144 *Id.* at 973.

business hours; and applications are available twenty-four hours a day online. Alaskans can submit applications during regular business hours even at closed DPA offices by using paper forms and drop boxes outside the office that are checked daily.

This Court should deny the plaintiffs' motion for summary judgment on this claim.

## V. CONCLUSION

This Court should deny the plaintiffs' motion for summary judgment in its entirety, and grant DOH's separately filed motions for summary judgment.

DATED: October 24, 2025.

STEPHEN J. COX
ATTORNEY GENERAL

By: /s/Lael Harrison
Lael A. Harrison
Assistant Attorney General
Alaska Bar No. 0811093
Department of Law
Attorney for Defendant

By: /s/Justin Nelson
Justin D. Nelson
Alaska Bar No. 1102007
Assistant Attorney General
Alaska Department of Law
Attorney for Defendant

Certificate of Service of Word Count and Service
In compliance with Local Rule of Civil Procedure 7.4(a)(1), I certify that the foregoing Opposition to Plaintiffs' Motion for Summary Judgment does not exceed 10,000 words, exclusive of caption and signature blocks.

I certify that on October 24, 2025, the foregoing Opposition to Plaintiffs' Motion for Summary Judgment was served electronically on:

Goriune Dudukgian
Northern Justice Project
406 G Street, Suite 207
Anchorage, AK 99501
gdudukgian@njp-law.com

Nicholas Feronti
Northern Justice Project
406 G Street, Suite 207
Anchorage, AK 99501
nferonti@njp-law.com
CC all pleadings to:
Jim Davis - jdavis@njp-law.com

Saima Akhtar
National Center for Law and Economic Justice
50 Broadway, Suite 1500
New York, NY 10004
akhtar@nclej.org

Margaret D. Craig
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
maggie.craig@us.dlapiper.com

Kelsey Tavares
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
kelsey.tavares@us.dlapiper.com

Christopher M. Young
DLA Piper LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101-4297
christopher.young@dlapiper.com

Sean P. Fulton
DLA Piper LLP (US)
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201-2482
sean.fulton@us.dlapiper.com

Constance I. Du
DLA Piper LLP (US)
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
constance.du@us.dlapiper.com

*/s/Lael Harrison*
Lael A. Harrison, Assistant Attorney General

*/s/Justin Nelson*
Justin D. Nelson, Assistant Attorney General