Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700 (telephone)
(619) 699-2701 (fax)
Email: christopher.young@us.dlapiper.com

*Sean P. Fulton (Tex. Bar No. 24103727)
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201-2482
(214) 743-4572 (telephone)
(972) 692-7272 (fax)
Email: sean.fulton@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

**admitted pro hac vice*

Attorneys for the Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated, *Plaintiffs*,<br><br>v.<br><br>Heidi Hedberg, in her official capacity as Commissioner of the Alaska Department of Health, *Defendant*. | Case No. 3:23-cv-00044-SLG<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: CONSTITUTIONAL CLAIMS** |

## I. PRELIMINARY STATEMENT

In 2023, when this lawsuit was filed, thousands of hungry Alaskans were trapped in a "backlog," waiting on the State of Alaska Department of Health ("DOH") to determine their eligibility for SNAP benefits.[1] By then, such delays had endured for years, dating to

[1] ECF No. 77 at 14 ("In 2023, this backlog ranged between 6,000 and 14,000.").

at least 2015.[2] Indeed, as this Court noted, DOH's failures were "historical, persistent, and significant."[3] Worse, DOH was not even sending notices to hungry Alaskans to advise that the determinations of their SNAP eligibility would be delayed.[4]

In response, Plaintiffs filed this lawsuit, raising six claims for relief.[5] Four claims asserted violations of the SNAP Act.[6] Two claims asserted violations of due process under the United States Constitution and the Alaska Constitution, respectively.[7] That said, some of DOH's conduct can violate both the SNAP Act *and* due process at the same time.[8]

Due to this lawsuit, some positive yet temporary developments have already helped hungry Alaskans. Namely, due to the preliminary injunction,[9] DOH now purports to at least send a notice when it delays the determination of an Alaskan's SNAP eligibility.[10]

---

[2] *Id.* at 13.

[3] *Id.*

[4] *Id.* at 17.

[5] ECF No. 1-1 at 39–41.

[6] *Id.* at 39–40.

[7] *Id.* at 40–41.

[8] In other words, the same facts can give rise to claims under the SNAP Act, as well as the United States Constitution and the Alaska Constitution. For example, DOH's failure to send notices about delays may violate 7 U.S.C. § 2020(e)(10) of the SNAP Act, and due process. Or, DOH's failure to render timely SNAP eligibility determinations may violate 7 U.S.C. § 2020(e)(3) and (e)(4) and (e)(9) of the SNAP Act, and due process.

[9] ECF No. 77 at 16–20, 30.

[10] ECF No. 110 at 3.

Now, with fuller and final relief closing in, and with no defenses on the merits, DOH is scrambling to escape judicial scrutiny. For the SNAP Act claims, DOH recently argued that Alaskans cannot even enforce the SNAP Act.[11] Plaintiffs opposed that elsewhere.[12]

Meanwhile, relevant here, DOH now seeks summary judgment on the constitutional claims.[13] In support, DOH makes two arguments, first that those claims are "moot,"[14] and second that they "lack merit."[15]

DOH's motion fails. To show why, Plaintiffs begin by giving background about the scope of their constitutional claims. This background is vital because, as will become clear, DOH's motion is not responsive to all parts of these claims. From there, Plaintiffs rebut DOH's two arguments, first by addressing mootness, and second by addressing the merits.

## II. BACKGROUND ON CONSTITUTIONAL CLAIMS

The constitutional claims have two main parts. *First*, Plaintiffs raise "notice-based" due process issues. These concern DOH's failure to provide a timely and adequate notice *after* DOH delays its determination of an Alaskan's SNAP eligibility.[16] *Second*, Plaintiffs

---

11 ECF No. 102.

12 ECF No. 115.

13 ECF No. 110.

14 *Id.* at 5.

15 *Id.* at 7.

16 ECF No. 1-1 ¶¶ 306, 309 (alleging that DOH violates due process by, *inter alia*, its "failure to provide timely and adequate written notice of eligibility or delayed processing

raise "arbitrary deprivation" issues. These concern DOH's failure, *in the first place*, to timely determine SNAP eligibility and to timely provide SNAP benefits.[17]

As will become clear below, DOH's summary judgment motion focuses only on the "notice-based" due process issues. Yet DOH ignores the "arbitrary deprivation" issues.

## III. ARGUMENT

### A. Plaintiffs' Constitutional Claims Are Not Moot

DOH's first argument is that Plaintiffs' constitutional claims are moot because it "is already sending the notices that the plaintiffs assert are required," and "there is no reason to believe that [it] is going to stop."[18] DOH also claims that, while this Court had to issue a preliminary injunction requiring it to provide these notices,[19] it only ever failed to provide the notices "for practical reasons" concerning its "technology system."[20]

---

for SNAP benefits and [by] depriv[ing] Plaintiffs of access to a fair hearing to raise disputes concerning eligibility and delayed processing"); *id.* at ¶ 307 (alleging that DOH violates due process by, *inter alia*, its "failure to provide required notice of delayed processing").

[17] *Id.* at ¶ 307 (emphasis added) ("[DOH] deprives Plaintiffs of fair access to SNAP benefits through use of a systemically inaccessible Virtual Contact Center, <u>failure to timely render eligibility determinations</u>, failure to provide required notice of delayed processing, <u>and subjecting otherwise eligible individuals to arbitrary deprivation of SNAP benefits</u> in violation of the Due Process Clause of the l4th Amendment to the Constitution, made actionable by 42 U.S.C. § 1983.").

[18] ECF No. 110 at 5.

[19] *Id.* at 3; *see also* ECF No. 77 at 16–20, 30.

[20] ECF No. 110 at 5–6; *see also* ECF No. 102 at 29 (claiming that, [a]ll along, DOH was aware that federal regulation[s] required it to send notices of delayed processing," but that issues with "information technology" made it "highly administratively burdensome.").

DOH's mootness argument has two flaws. First, it fails to address the constitutional claims in full. Second, for the "notice-based" parts of the constitutional claims that it does address, the voluntary cessation exception applies. Both flaws are addressed in turn.

**i. DOH's mootness argument fixates on the "notice-based" due process issues, but ignores the "arbitrary deprivation" due process issues.**

When DOH argues mootness, it relies only on the fact that it now provides notices.[21] However, while this action may be responsive to the "notice-based" due process issues, it ignores the "arbitrary deprivation" due process issues.[22] For instance, DOH's brief does not address the parts of Plaintiffs' claim that DOH violates due process via the "failure to timely render eligibility determinations," or by "subjecting otherwise eligible individuals to arbitrary deprivation of SNAP benefits."[23] DOH cannot dispense with these claims by ignoring them.[24] Rather, DOH has waived its opportunity to move for summary judgment on the basis that the "arbitrary deprivation" due process issues are moot.[25]

---

[21] *See, e.g., id.* at 6 (DOH intimating that all of the Plaintiffs' constitutional claims would be moot if only the notice and hearing issues were moot).

[22] *Id.* at ¶ 307.

[23] *See, e.g.*, ECF No. 110 at 3 (DOH recapping the constitutional allegations in the complaint but inexplicably omitting anything beyond notices and hearings).

[24] A claim is only moot if "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox* v. *Service Employees*, 567 U.S. 298, 307 (2012). So, even if notice and hearing issues were moot, the constitutional claims at large are not, as there remains "effectual relief" to be had as to the due process issues that DOH ignored. *See also Alaska v. Fed. Subsistence Bd.,* 501 F. Supp. 3d 671, 685 (D. Alaska 2020).

[25] *See, e.g., McDermott v. Town of Windham,* 204 F. Supp. 2d 54, 70 (D. Me. 2002) ("Because the parties have failed to adequately brief the issue, the Court will deem it

Regardless, DOH could not possibly argue mootness for the "arbitrary deprivation" parts of Plaintiffs' constitutional claims. DOH's own reporting shows that its delays persist on a massive scale, with thousands of Alaskans continuing to wait on SNAP benefits and eligibility determinations, sometimes for longer than even 100 days at a time.[26]

**ii. For the "notice-based" parts of the constitutional claims that DOH does address, the voluntary cessation exception to mootness applies.**

DOH, with an eye on another flaw in its mootness argument, makes a preemptive yet brief nod to voluntary cessation.[27] In so doing, DOH gives a rendition of the law that omits how strenuous the showing must be for voluntary cessation to moot a claim.

In reality, a voluntary cessation moots a case "only if it is *absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur."[28] This imposes a "stringent" standard and a "formidable" burden.[29] Otherwise, a defendant would be "free

---

waived for purposes of summary judgment."); *Xtomic, LLC v. Active Release Techniques, LLC,* 340 F. Supp. 3d 1092, 1104-05 (D. Colo. 2018) ("Defendants have not provided a fully developed analysis or legal authority . . . the Court will not undertake this task for them . . . summary judgment is denied as to Defendants' request.").

26 *See, e.g.*, ECF No. 114-4 at 5, 7 (showing thousands of hungry Alaskans still caught in a backlog waiting on timely benefits); ECF No. 100-4 at 3 (same); ECF No. 97-4 at 4 (same); ECF No. 95-1 at 69 (same); ECF No. 89-1 at 29 (same); ECF No. 80-1 at 32 (same). This all continues delays that have persisted for at least a decade. *See* ECF No. 77 at 14.

27 ECF No. 110 at 5–6.

28 *Adarand Constructors v. Slater*, 528 U.S. 216, 222 (2000) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)) (emphasis in original).

29 *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189–90 (2000).

to return to [its] old ways."[30] Thus, it is "exceedingly rare" for voluntary cessation to moot a case.[31] And "the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness."[32]

While courts can generally presume that governments act in good faith, even a government "must still demonstrate that the change in its behavior is 'entrenched' or 'permanent.'"[33] A key question is whether the government's position "could be easily abandoned or altered in the future."[34] And while a statutory change atop "rigors of the legislative process" may suffice, an executive action "that is not governed by any clear or codified procedures cannot moot a claim." [35]

Here, DOH does not satisfy its formidable burden. DOH argues only that, as required by this Court's preliminary injunction, it updated its IT system to send notices, and now that the system is updated, is unlikely to stop.[36] This fails for many reasons.

---

30 *Porter v. Bowen*, 496 F.3d 1009, 1017 (9th Cir. 2007) (quoting *Concentrated Phosphate*, 393 U.S. at 203).

31 *See LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1153 (9th Cir. 2006).

32 *Friends of the Earth*, 528 U.S. at 173.

33 *Fikre v. FBI*, 904 F.3d 1033, 1037–38 (9th Cir. 2018) (quoting *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015)).

34 *Id.* at 1038.

35 *Id.*

36 ECF No. 110 at 6.

First, the only reason that DOH is now sending notices is because *this Court ordered it to*.[37] DOH's "voluntary cessation" is a misnomer, as it was compelled by court order and thus can "hardly be considered voluntary" in the first place.[38] DOH "cannot now rely on [its] *court-ordered* compliance to argue that a court order is unnecessary."[39] That would be like "throwing away your umbrella in a rainstorm because you are not getting wet."[40]

Nor can DOH fall back on its assertion that "there is no reason to believe that DOH is going to stop" sending notices.[41] DOH cannot moot a case by "simply representing to the court that it will cease its wrongdoing."[42]

---

37 ECF No. 77 at 30.

38 *See FTC v. Sage Seminars*, 1995 U.S. Dist. LEXIS 21043, at *16–17 (N.D. Cal. Nov. 2, 1995) (finding that cessation of conduct could "hardly be considered 'voluntary'" when it occurred after defendants learned of FTC investigation); *see also Flores v. Bennett*, 675 F. Supp. 3d 1052, 1059 (E.D. Cal. 2023) ("[T]he assertion that Defendants 'voluntarily' rescinded the Flyer Policy lacks credibility because it is undisputed that Defendants took this action within hours of the Court's preliminary injunction order. This sequence of events creates a logical inference that Defendants rescinded the policy *because* of the Court-imposed requirements and to comply with the Court's order.").

39 *Nat'l Council of Nonprofits v. OMB*, 775 F. Supp. 3d 100, 120 (D.D.C. 2025) (emphasis in original); *see also id.* (internal citations and quotations omitted) ("As Plaintiffs point out, and as other judges of this court have recognized, adopting Defendants' position would mean that no TRO could ever become a preliminary injunction. If compliance with the terms of a TRO were sufficient to defeat entry of a preliminary injunction, few—if any—cases would make it past the TRO stage.").

40 *Shelby Cnty. v. Holder,* 570 U.S. 529, 590 (2013) (Ginsberg, J. dissenting).

41 ECF 110 at 5.

42 *LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1154 (9th Cir. 2006).

Worse, even if a mere reassurance could suffice, DOH's motion lacks even that. Aside from uncited speculation of attorneys,[43] DOH gives no new information about if or how fully it is complying with this Court's Order to send notices and provide hearings.[44] This is to say nothing of an entrenched commitment to continue doing so in the future.

Further, courts are even more skeptical if a defendant, including a governmental defendant, has argued on the merits that it does not need to alter its conduct.[45] While DOH now pretends that it agreed "all along" with this Court's preliminary injunction,[46] DOH's briefing instead shows that it vigorously contested some of its obligations.[47] This resistance

---

[43] DOH's motion relies on the speculation of counsel that "there is no reason to believe that DOH is going to stop" and "DOH has been sending the notices sought by the plaintiff, and will continue to." ECF No. 110 at 5. An evidentiary basis for said statements is lacking.

[44] DOH's lead citation for its assertion that it "now provides such notices" is to a report from more than eight months ago, about how it was planning to send notices in the future. *See* ECF No. 110 at 3 and n. 4 (citing ECF No. 80-1 at 4-5).

[45] *See, e.g., Forest Guardians v. Johanns*, 450 F.3d 455, 460, 462 (9th Cir. 2006) ("Second, the Forest Service's practice of not complying with the monitoring requirements is likely to persist despite the recent re-consultation. Notably, the Forest Service has argued throughout this litigation that it is not required to meet the monitoring requirements incorporated in the guidance criteria. The Forest Service asserts that those requirements are "unreasonable." Declaratory judgment in favor of Forest Guardians would thus ensure that the Forest Service does not continue to fail to meet its monitoring responsibilities in the future and that it fulfills its duty under the ESA to consult with FWS when necessary.").

[46] ECF No. 102 at 29.

[47] *See, e.g.,* ECF No. 46 at 13–14 (questioning if Alaskans had a right to a fair hearing to contest delays under federal law, questioning if Alaskans had a right to notice about delays under state law, and arguing that a notice of a *receipt* of an application could advise Alaskans of their right to a fair hearing upon a subsequent delay); *id.* at 22-26 (same).

even persisted at oral argument, when DOH disputed that its delays in processing SNAP benefits can warrant due process protections.[48] Even now, DOH continues to argue that Plaintiffs' claims lack merit.[49]

At bottom, DOH only began sending out the required notices in the spring of 2025, in compliance with this Court's preliminary injunction.[50] Before then, DOH long and vigorously resisted doing this. Without a final judgment that orders DOH to continue issuing this required notice to the class members, DOH can easily change its behavior and abandon this conduct. DOH has done nothing to assuage this fear. DOH has not carried its formidable burden to show that its recent change in conduct is permanent.

### B. Plaintiffs' Constitutional Claims Are Meritorious

After first seeking summary judgment with a mootness argument, DOH second argues that the constitutional claims "lack merit."[51] This second argument again fixates on the "notice-based" due process issues.[52] DOH asserts that it "is not aware of any case finding that due process requires a written notice and right to a fair hearing after an application has been pending for seven or thirty days."[53]

---

48 ECF No. 77 at n.67.

49 ECF 110 at 7.

50 ECF No. 77 at 16–20, 30.

51 ECF No. 110 at 7.

52 *Id.*

53 *Id.*

DOH's merits argument fares no better. First, DOH again fails to address any of the "arbitrary deprivation" due process issues, thus precluding DOH from securing summary judgment on those parts of Plaintiffs' constitutional claims. Second, for the "notice-based" parts of the constitutional claims, DOH wrongly argues that its processing delays do not rise to the level of a constitutional violation and that, thus, notice is not required.

**i. DOH's merits argument fixates on the "notice-based" due process issues but again ignores the "arbitrary deprivation" due process issues.**

As with mootness, DOH's merits argument ignores all of the "arbitrary deprivation" aspects of Plaintiffs' constitutional claims. DOH makes no discernable arguments about such matters.[54] Thus, DOH fails to even try to meet its Rule 56 burden for a significant part of Plaintiffs' constitutional claims.[55]

**ii. The "notice-based" parts of Plaintiffs' claims are meritorious.**

"The Due Process Clause forbids the governmental deprivation of substantive rights without constitutionally adequate procedure."[56] To prevail on procedural due process

---

[54] If DOH had raised a merits argument about the "arbitrary deprivation" due process issues, Plaintiffs contend that it would be incorrect. To explain why, Plaintiffs respectfully incorporate the briefing about this from the Memorandum in Support of Plaintiffs' Motion for Summary Judgment (ECF No. 107-1 at 25–38), and their coming reply in support.

[55] *Wroten v. USAA Gen. Indem. Co.,* 535 F. Supp. 3d 880, 883 (D. Alaska 2021) (emphasis added) ("Federal Rule of Civil Procedure 56(a) directs a court to grant summary judgment *if the movant shows* that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *see also* 11 Moore's Federal Practice - Civil § 56.40 ("The movant's motion papers must state the grounds justifying summary judgment with particularity [and] usually must support the motion with legal argument showing the movant's entitlement to judgment as a matter of law.").

[56] *Shanks v. Dressel*, 540 F.3d 1082, 1090–01 (9th Cir. 2008).

claims, a plaintiff must establish: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process."[57] To determine if process is adequate, courts look to the *Mathews* test: weighing private interests of plaintiffs, the risk of erroneous deprivation, and government interests.[58]

Here, DOH purports to challenge the "notice-based" parts of Plaintiffs' claims, but never engages with the foundations of due process. DOH fails to identify the relevant legal standard, or attempt any analysis under it. This amounts to DOH making a bare assertion that it is entitled to summary judgment. An argument this perfunctory is waived.[59]

Regardless, Plaintiffs affirmative motion for summary judgment thoroughly shows, including with citations to case law and the evidentiary record, why a due process analysis resoundingly favors Plaintiffs on the "notice-based" parts of their constitutional claims. Plaintiffs respectfully incorporate that briefing by reference here.[60]

---

57 *Id.* at 1090.

58 *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The Alaska Supreme Court also sometimes uses the *Mathews* test when evaluating due process claims that arise under the Alaska Constitution. *See, e.g., State v. Z.C.,* 569 P.3d 1153, 1168 (Alaska 2025).

59 *See, e.g., James v. US Bancorp,* 2021 U.S. Dist. LEXIS 89849 , *10 (C.D. Cal. May 11, 2021); *Prime Healthcare Servs. - Shasta LLC v. Price,* 2017 U.S. Dist. LEXIS 104644, *2 (E.D. Cal July 5, 2017); *see also United States v. Alden,* 527 F.3d 653, 664 (7th Cir. 2008) (internal citation omitted) ("Because it is not the obligation of this Court to research and construct the legal arguments available to parties,. . . these arguments are waived and warrant no discussion."); *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) ("We have repeatedly made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority are waived . . .").

60 ECF No. 107-1 at 28–31.

As for DOH's cursory claim that processing delays are only a violation after "many months or years,"[61] that is not availing. Delays in a post-deprivation hearing can clearly violate due process.[62] Further, such delays are especially likely to violate due process when they are "inordinately long" or if "a recipient demonstrates immediate financial need."[63] What DOH glosses over is that, to be deprived of SNAP is to be deprived of food, which is why courts recognize a weighty interest in SNAP and similar benefits.[64] A delay of seven days is interminable to a family facing bare cupboards and an empty refrigerator.

---

61 ECF No. 110 at 7.

62 *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 547 (1985); *see also Fusari v. Steinberg*, 419 U.S. 379, 389 (1975) ("Prompt and adequate administrative review provides an opportunity for consideration and correction of errors made in initial eligibility determinations. Thus, the rapidity of administrative review is a significant factor in assessing the sufficiency of the entire process."); *Coe v. Thurman*, 922 F.2d 528, 530 (9th Cir. 1990) ("[E]xcessive delay in the appellate process may also rise to the level of a due process violation."); *Rodrigues v. Donovan*, 769 F.2d 1344, 1348 (9th Cir. 1985) ("Given the Secretary's failure to provide a hearing after the suspension of benefits, despite Rodrigues's request for one, and the Secretary's considerable delay in deciding Rodrigues's claim, we do not find the due process challenges insubstantial."); *Kelly v. R.R. Ret. Bd.*, 625 F.2d 486, 490 (3d Cir. 1980) (holding that an "administrative review process of a single disability application" that "extended to nearly four years" was "wholly inexcusable"); *Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 405 (2d Cir. 1992) ("Stated differently, delay in processing can become so unreasonable as to deny due process."); *Schroeder v. Chicago*, 927 F.2d 957, 960 (7th Cir. 1991) ("Justice delayed is justice denied, the saying goes; and at some point delay must ripen into deprivation, because otherwise a suit alleging deprivation would be forever premature.").

63 *Isaacs v. Bowen*, 865 F.2d 468, 477 (2d Cir. 1989).

64 *See, e.g.*, *Daniels v. Woodbury Cnty.*, *Iowa*, 742 F.2d 1128, 1133 (8th Cir. 1984); *Villegas v. Concannon*, 742 F. Supp. 1083, 1087 (D. Or. 1990); *Bliek v. Palmer*, 916 F. Supp. 1475, 1488 (N.D. Iowa 1996) (private interest in food stamps was "extremely significant" because "[f]ood is a necessity of life").

Meanwhile, DOH flatly misleads with the three citations that it offers to support the "many months or years" rule that it wants to invent as a due process limit. *Kelly v. Railroad Retirement Bd.* held that a four year delay was "wholly inexcusable" and cited a case where "a delay of just over 100 days [to determine eligibility for benefits] was held to frustrate due process requirements."[65] *Isaacs v. Bowen* considered a delay of Medicare benefits, which is not a means-based entitlement, and stated that "[w]hen, for example, government benefits or entitlements are conditioned upon financial need due process concerns are of correspondingly greater weight."[66] And *Dukes v. New York City Employees' Retirement Sys.* stated that the benefits at issue, though "undoubtedly important to the plaintiff," were not "the very means by which to live."[67] These cases are easily distinguishable and, if anything, prove Plaintiffs' point: the benefits at issue in this particular case are some of the most important imaginable and therefore deserve speedy process.

Finally, DOH offers weak resistance to its "notice-based" due process violations under the Alaska Constitution. All DOH musters is a case about a seine fishery in Chignik, where a person was denied a permit for 22 years in compliance with due process.[68] In addition to this obviously being an eccentric case, DOH fails to mention that the State of

---

[65] 625 F.2d 486, 490 (3d Cir. 1980).

[66] 865 F.2d 468, 475 (2d Cir. 1989).

[67] 361 F. Supp. 3d 358, 373–74 (S.D.N.Y. 2019).

[68] ECF No. 110 at 8 (citing *Brandal v. State, Comm. Fisheries Entry Comm'n,* 128 P.3d 732 (Alaska 2006)).

Alaska provided this person with an interim fishing permit for the 22 years that he waited, which actually turned out to be a "windfall" for him because he had long been told that his application was likely to be denied anyways.[69] This is not a useful comparison to SNAP.

And when that inapposite case fades away, what comes into focus is how the Alaska Constitution's guarantee of due process is even more protective than that of the United States constitution.[70] And these enhanced due process protections should be especially salient here. After all, the Alaska Supreme Court has also emphasized that, when the public benefit recipient has a "brutal need" for the benefit at issue, as is the case with SNAP benefits, "courts have traditionally required that agencies go to greater lengths—incurring higher costs and accepting inconveniences—to reduce the risk of error."[71] Thus, even if Plaintiffs federal due process arguments were infirm, DOH has not offered a good reason for why the Alaska Constitution would not serve as a backstop.

## IV. CONCLUSION

The constitutional claims are live and meritorious. Plaintiffs request that this Court fully deny Defendant's Motion for Partial Summary Judgment re: Constitutional Claims.

---

69 *Brandal v. State,* 128 P.3d at 739.

70 *Balough v. Fairbanks N. Star Borough*, 995 P.2d 245, 263 n.64 (Alaska 2000) ("Alaska's due process clauses confer broader protection than do their federal counterparts."); *see also Native Vill. of Kwinhagak v. Dep't of Health & Soc. Servs.*, 542 P.3d 1099, 1120 (Alaska 2024); *State, Dep't of Nat. Res. v. Greenpeace*, *Inc.,* 96 P.3d 1056, 1064 (Alaska 2004); *James v. State*, 260 P.3d 1046, 1051 n.16 (Alaska 2011).

71 *Allen v. Dep't of Health & Soc. Servs.*, 203 P.3d 1155, 1167 (Alaska 2009); *see also Baker v. State*, 191 P.3d 1005, 1010 (Alaska 2008) (same).

DATED this 24th day of October, 2025.

Attorneys for Plaintiffs

/s/ Nicholas Feronti
Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel.: (617) 406-6000
Fax: (617) 406-6100
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel.: (619) 699-2700
Fax: (619) 699-2701
Email: christopher.young@us.dlapiper.com

*Sean P. Fulton (Tex. Bar No. 24103727)
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201-2482
(214) 743-4572 (telephone)
(972) 692-7272 (fax) Email:
sean.fulton@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

**appearing pro hac vice*

## Certificate of Service

I hereby certify that on October 24, 2025, true and correct copies of the foregoing document were served on all parties via the CM/ECF electronic filing system.

/s/ Nicholas Feronti