Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)
(212) 633-6371 (fax)
Email: akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
(619) 699-2700 (telephone)
(619) 699-2701 (fax)
Email: christopher.young@us.dlapiper.com

*Sean P. Fulton (Tex. Bar No. 24103727)
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201-2482
(214) 743-4572 (telephone)
(972) 692-7272 (fax)
Email: sean.fulton@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

*admitted *pro hac vice*

Attorneys for the Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| John Andrew, Kayla Birch, Rose Carney, Tereresa Ferguson, Zoya Jenkins, Troy Fender, Rhonda Conover, Autumn Ellanna, and Nataliia Moroz, on behalf of themselves, and all those similarly situated, *Plaintiffs*,<br><br>v.<br><br>Heidi Hedberg, in her official capacity as Commissioner of the Alaska Department of Health, *Defendant*. | Case No. 3:23-cv-00044-SLG<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Defendant Department of Health ("DOH") admits that it has not "compl[ied] with the SNAP Act's timeliness standards" during the nearly three-year pendency of this action.[1] Despite its admission to ongoing violations of federal law and Due Process, DOH asks this

[1] ECF No. 116 at 4.

Court to deny Plaintiffs' relief because it is "working diligently."[2] Diligence does not give DOH a free pass to continuously violate the rights of hungry Alaskans.

The facts are undisputed, so DOH's Response (ECF No. 116) presents four unpersuasive legal arguments, none of which provide a basis to deny Plaintiffs' summary judgment motion:

*First*, DOH's Response focuses on the alleged lack of remedies instead of its violations. This is a strawman. Plaintiffs' Motion for Summary Judgment establishes its claim for relief—as Rule 56 requires. Remedies can, and should, be addressed once liability has been established. There is simply no dispute that DOH is failing to comply with the law and Due Process requirements. DOH does not refute that in its Response.

*Second*, DOH feigns ignorance about Plaintiffs' Due Process claims, alleging that Plaintiffs raise them for the first time on summary judgment. Plaintiffs have made this claim from the outset of this litigation. Indeed, two separate claims in the Complaint have the title of Due Process, and both plead that "failure to timely render eligibility determinations" establishes the violation.[3] DOH's failure to take note of this claim until three years into this litigation does not render the claim untimely. Further, DOH misunderstands what Due Process requires in this case. Due Process, under both the U.S. Constitution and the Alaska constitution, requires DOH to timely render an eligibility determination, and, failing that, issue a notice of a right to a SNAP fair hearing. To this

---

2 *Id.*

3 ECF No. 1-1 ¶¶ 307, 309.

day, DOH is failing to render timely eligibility determinations and only started issuing notice of such delays after being compelled to by this Court's order. Thus, Plaintiffs' Due Process claims are not only timely, but well pleaded.

*Third*, DOH makes a brief allusion to their Partial Motion for Summary Judgment on Plaintiffs' Constitutional Claims.[4] As articulated in Plaintiffs' Response, Plaintiffs' constitutional claims are not moot.[5]

*Fourth*, DOH fails to raise genuine disputes of material facts as to the first contact filing claim. The record is clear that DOH's actions have prevented Alaskans from filing on the first day of contact and have therefore caused a dramatic drop in program participation.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In the nearly three years since this litigation commenced (in January 2023), DOH has been unable to process SNAP applications for hungry Alaskans within the statutorily mandated time limits for even one single month.[6]

In March 2023, two months into the litigation, DOH stated they were "very aware of, and [] making immediate and significant efforts to address, the SNAP backlog," and

---

4 ECF No. 110.

5 ECF No. 118.

6 ECF No. 108, at 16–18, ¶¶ 76–84.

Plaintiffs agreed to stay the litigation.[7] When the stay ended on October 31, 2023,[8] not only had DOH failed to clear the backlog but it had begun to rise again.[9] Thereafter, DOH requested an additional stay, arguing that the Food and Nutrition Service ("FNS") had primary jurisdiction and suggesting that FNS had sufficient power to hold DOH accountable.[10] In February 2024, nearly two years ago, this Court properly rejected that argument, articulating that "[t]his case began over a year ago and was already stayed for several months so that the State could try to resolve its SNAP applications backlog under federal oversight," and "further delay in this case would be inefficient, particularly given that FNS may not address all of Plaintiffs' claims."[11]

In May 2024, Plaintiffs made a renewed motion for preliminary injunction, requesting the Court enjoin DOH to promptly process SNAP applications and recertifications as required by law.[12] In the response, DOH pontificated that it was "doing everything reasonably possible to process SNAP applications on time," and the "lawsuit

---

7 ECF No. 6, at 2.

8 ECF No. 8; ECF No. 14.

9 ECF No. 108, at 19 ¶ 86, at 21–22 ¶ 100.

10 ECF No. 21.

11 ECF No. 24, at 13 (citations omitted).

12 ECF No. 35.

[was] simply irrelevant to the State's ongoing and substantially successful efforts to resolve this crisis."[13] This Court again properly rejected that argument.[14]

DOH does not dispute its failure to comply with the law.[15] Nor does DOH raise new arguments. It has simply put a new spin on arguments this Court has already rejected, and the Court should once again hold DOH to account.

## III. ARGUMENT

### A. Defendant's argument that remedies are lacking does not foreclose summary judgment.

There is no genuine dispute of material fact that DOH has failed in its statutory duty towards Plaintiffs, as DOH admits it continues to violate the SNAP Act. Having admitted to liability, DOH is stuck prematurely focusing its opposition on remedies.[16] Plaintiffs moved for summary judgment, not a permanent injunction.[17] These are separate legal questions, and the Court's scheduling order does not require that the parties brief them at

---

[13] ECF No. 46, at 7. Notably, in the 16 months since DOH wrote those words, it *still* has failed to successfully resolve this crisis.

[14] ECF No. 77, at 28 (emphasis added).

[15] ECF No. 116, at 4 ("It is true that DOH has not yet been able to fully comply with the SNAP Act's timeliness standards.")

[16] ECF No. 116, at 16–20.

[17] ECF No. 107.

the same time.[18] Plaintiffs intend to move for a permanent injunction once liability on each claim is established.[19] At that time, the Court and parties will be better positioned to consider appropriate permanent remedies. DOH's remedy arguments therefore have no bearing on the Court's decision on the instant motion.

As for liability, DOH concedes that it is violating federal law by failing to timely process SNAP applications but resists "any declaratory judgment or permanent injunction."[20] In support, DOH claims that it is "already doing everything reasonably possible"[21] and that this Court's orders have no "real-world impact."[22] DOH seems to

---

18 *See* ECF No. 66, setting a deadline of September 15, 2025 for dispositive motions but not for other relief motions.

19 *See, e.g.*, *Doe v. Tandeske*, No. A03-231CVJWS, 2005 WL 850862, at *4 (D. Alaska Feb. 3, 2005) (granting summary judgment in favor of the plaintiff and directing them to prepare and submit a judgment and permanent injunction for the court's consideration); *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005) ("Thus, to obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint . . ."); *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 559 (E.D. Va. 2007) (court deciding whether to grant a permanent injunction after a jury verdict found liability); *Metso Mins., Inc. v. Powerscreen Int'l Distrib. Ltd.*, 788 F. Supp. 2d 71, 72 (E.D.N.Y. 2011) (after a jury verdict on liability, plaintiff then moved for a permanent injunction); *Hudson v. Univ. of Tex. Med. Branch*, No. CV C-08-254, 2009 WL 10679244, at *1 (S.D. Tex. Nov. 24, 2009) (court holding plaintiff's motion for permanent injunction premature when plaintiff must first survive summary judgment and a trial on the merits before moving for a permanent injunction).

20 ECF No. 116, at 16.

21 *Id.* at 17.

22 *Id.* at 20.

suggest that this Court, and the judicial system as a whole, are incapable of deciding complex issues or finding a nuanced and effective resolution. But that is demonstrably false, and courts routinely issue injunctions in complex cases.[23] What's more, the Court has already rejected DOH's argument. As this Court detailed when preliminarily enjoining Defendant:

> [T]he Court cannot simply condone an admitted violation of a statute, which is designed to ensure adequate nutrition for low-income households, because of the difficulty the State might have in reaching compliance. The Court must issue the injunction, regardless of seemingly intractable staffing shortages or technical difficulties, to monitor DOH's progress and to push DOH and the State as a whole to solve its non-compliance as quickly as possible.[24]

DOH does not, and cannot, refute the fact that it has failed to abide by the SNAP Act and Due Process. These failures harm thousands of Alaskans, including named Plaintiffs and class members. Therefore, Plaintiffs are entitled to summary judgment.

---

23 *See, e.g.*, *F.T.C. v. H. N. Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir. 1982) (*"*Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake"); and *Brewer v. Hoxie Sch. Dist. No. 46 of Lawrence Cnty., Ark.*, 238 F.2d 91, 98 (8th Cir. 1956) ("Jurisdiction of the federal courts to issue injunction to protect the rights safeguarded by the Constitution is well established") (compiling citations omitted).

24 ECF No. 77, at 28–29.

### B. Plaintiffs are entitled to judgment as a matter of law on their due process claims, which are properly pled in the Complaint.

From the start of this litigation, Plaintiffs' complaint alleged that DOH violates the Due Process Clause of the l4th Amendment to the Constitution.[25] Now, years of litigation have left no genuine dispute as to any material fact that Plaintiffs are entitled to judgment as a matter of law on this claim. In opposition, DOH responds with two unavailing arguments.

First, DOH inexplicably contends that this claim is "too late."[26] For obvious reasons, this argument fails. Second, DOH insists that the claim also is "meritless" because it purportedly "provides every applicant with a fair determination of their eligibility as quickly as DOH is reasonably able, which is all the process that is due."[27] This argument fares no better. As discussed in more detail below and Plaintiffs' opening brief, delays in

---

25 ECF No. 1-1, at ¶ 307 (emphasis added).

26 ECF No. 116, at 21–23.

27 *Id.* at 23–33.

eligibility determinations such as those here infringe on Due Process rights, and the *Mathews* test conclusively supports Plaintiffs here.[28]

**a. The Due Process claims are timely.**

Plaintiffs' claims that DOH's processing delays violate due process are not new. Plaintiffs' Complaint, filed in January 2023, explicitly includes the allegations that DOH asserts are new:

> [DOH] deprives Plaintiffs of fair access to SNAP benefits through use of a systemically inaccessible Virtual Contact Center, failure to timely render eligibility determinations, failure to provide required notice of delayed processing, and subjecting otherwise eligible individuals to arbitrary deprivation of SNAP benefits in violation of the Due Process Clause of the l4th Amendment to the Constitution, made actionable by 42 U.S.C. § 1983.[29]

DOH's argument that the due process claims are untimely should be squarely rejected by the Court.

**b. The due process claims have merit.**

**i. Delay in processing benefits can constitute a due process violation.**

DOH next claims that it "provides every applicant with a fair determination of their eligibility as quickly as DOH is reasonably able, which is all the process that is due."[30] But DOH does not dispute that it fails to meet statutory deadlines with determinations often

---

28 *See Goldberg v. Kelly*, 397 U.S. 254, 266 (1970) (weighing the benefits recipient's interest, the state's interest in avoiding erroneous terminations, and the state's interest in "conserving fiscal and administrative resources"); *Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 406 (2d Cir. 1992).

29 ECF No. 1-1, at ¶ 307 (emphasis added).

30 ECF No. 116, at 21.

taking longer than 100 days.[31] Nor does DOH dispute that "courts may find a constitutional violation if the delay in processing a benefit application is 'egregious and without any rational justification.'"[32]

In *Cleveland Board of Education v. Loudermill*, the Supreme Court announced, "At some point, a delay in the post-termination hearing would become a constitutional violation."[33] Delays are especially likely to violate due process when they are "inordinately long" or when "a recipient demonstrates immediate financial need."[34] Here, delays are inordinately long *and* the recipients have demonstrated immediate financial need. DOH's own reporting[35] shows that thousands of Alaskans have waited (and are waiting) past statutory deadlines—often longer than 100 days—for benefit determinations. And, of

---

[31] ECF No. 119-4, at 2–3.

[32] ECF No. 116 at 27 (quoting *Kraebel*, 959 F.2d at 405).

[33] 470 U.S. 532, 547 (1985); *see also Fusari v. Steinberg*, 419 U.S. 379, 389 (1975) ("Prompt and adequate administrative review provides an opportunity for consideration and correction of errors made in initial eligibility determinations. Thus, the rapidity of administrative review is a significant factor in assessing the sufficiency of the entire process."); *Coe v. Thurman*, 922 F.2d 528, 530 (9th Cir. 1990) ("[E]xcessive delay in the appellate process may also rise to the level of a due process violation."); *Schroeder v. Chicago*, 927 F.2d 957, 960 (7th Cir. 1991) ("Justice delayed is justice denied, the saying goes; and at some point delay must ripen into deprivation, because otherwise a suit alleging deprivation would be forever premature.").

[34] *Isaacs v. Bowen*, 865 F.2d 468, 477 (2d Cir. 1989).

[35] *See, e.g.*, ECF No. 114-4, at 5, 7; ECF No. 100-4, at 3; ECF No. 97-4, at 4; ECF No. 95-1, at 69; ECF No. 89-1, at 29; ECF No. 80-1, at 32. *See also* ECF No. 107-1, at 17–19.

course, the Plaintiffs have "immediate financial need," being unable to provide food for themselves and their families.

### ii. People eligible for SNAP benefits have a property interest in receiving benefits *within the codified timeframe*.

DOH claims that its repeated violation of the codified timeframe in which SNAP benefits must be administered has "no constitutional foundation."[36] But "[p]roperty interests, of course, are not created by the Constitution. Rather, they are created, and their dimensions are defined, by existing rules or understandings that stem from an independent source . . . that secure[s] certain benefits and that support claims of entitlement to those benefits."[37] One of those "dimensions" relates to timing. As Judge Posner explained, "If [an applicant] received [a benefit] after he was *entitled* to receive it, then he was deprived of an entitlement, and entitlements are what the due process clause has been held to protect in the name of 'property.'"[38] The Second Circuit agreed: "In other words, 'implicit in the conferral of an entitlement is a further entitlement, to receive the entitlement within a reasonable time.'"[39] Therefore, DOH's argument that Plaintiffs are merely entitled to

---

[36] ECF No. 116, at 25.

[37] *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

[38] *Schroeder v. Chicago*, 927 F.2d 957, 959 (7th Cir. 1991); *see id.* ("If you are entitled to receive $1,000 on May 1, 1989, and you receive it on May 2, you have been deprived of an entitlement.").

[39] *Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 405 (2d Cir. 1992) (quoting *id.* at 960).

"*procedure,* not in the *benefit*" carries no water because DOH's *procedure* is wholly lacking, causing Alaskans to wait longer than 100 days for benefit determinations.

The property interests at stake in this case are *timely* SNAP benefit determinations. Generally, if benefits are delayed without a codified deadline, courts turn to *Mathews* to determine if delays are reasonable. *See* Part B.b.iii. *infra*. But here, statutes already set a maximum deadline for benefits processing. So, the constitutionally protected property interest is the benefit determination *within the codified timeframe*. Thus, when DOH fails to issue a decision in a mandatory 7-day or 30-day timeframe, it deprives applicants of their constitutionally protected property.

**iii. The *Mathews* Test strongly favors Plaintiffs.**

The parties agree that courts look to *Mathews* to decide if delays infringe on Due Process rights.[40] Here, as outlined in Plaintiffs' opening brief, the *Mathews* test is not a close call.[41]

First, there is an extraordinary private interest in the timely receipt of SNAP benefits, which DOH neither disputes nor addresses in their opposition. The Supreme Court has ruled that waiting for welfare benefits "may deprive an eligible recipient of the very

---

40 *See Goldberg v. Kelly*, 397 U.S. 254, 266 (1970) (weighing the benefits recipient's interest, the state's interest in avoiding erroneous terminations, and the state's interest in "conserving fiscal and administrative resources"); *Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 406 (2d Cir. 1992).

41 ECF No. 107-1, at 30–31.

means by which to live while he waits."[42] In the meantime, an applicant becomes "immediately desperate."[43] The Ninth Circuit held that hardship suffered from waiting for social security income "constitutes irreparable injury."[44] It is "simply not true that a claimant for disability benefits, not infrequently in dire financial circumstances due to his disability, is truly made whole by retroactive payments which he has had to survive well over a year without."[45] And the Seventh Circuit has applied this same rational to food benefits, holding that "the deprivation of food [resulting from the denial of food stamps] is extremely serious and is quite likely to impose lingering, if not irreversible, hardships upon recipients."[46]

Second, the risk of erroneous deprivation is a near certainty. Eligible applicants are waiting for an initial decision, and recipients lose benefits for months. DOH claims that summary judgment is not appropriate because "plaintiffs do not demand any additional or

---

42 *Goldberg*, 397 U.S. at 264.

43 *Id.*

44 *Johnson v. Shalala*, 2 F.3d 918, 922 (9th Cir. 1993).

45 *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983) (quoting *Caswell v. Califano*, 583 F.2d 9, 14 (1st Cir. 1978)).

46 *Haskins v. Stanton*, 794 F.2d 1273, 1276–77 (7th Cir. 1986); *see also Maldonado v. Houstoun*, 177 F.R.D. 311, 333 (E.D. Pa. 1997) ("[A] reduction in subsistence benefits constitutes irreparable harm to persons on the margin of subsistence."); *Garnett v. Zeilinger*, 313 F. Supp. 3d 147, 157–58 (D.D.C. 2018) ("[F]orgoing food or other necessities [is] clearly irreparable in nature.").

substitute procedures—they demand SNAP benefits."[47] This misunderstands Plaintiffs' claims and the law. Plaintiffs' claims are for failure to timely render eligibility determinations—not issue benefits. In turn, the class is defined by DOH's failure to timely receive eligibility determinations. Individuals who are not eligible for benefits are eligible to receive determination, which gives rise to hearing rights. A class member is deprived of a timely eligibility determination regardless of whether DOH is failing to issue SNAP benefits or a notice of denial giving rise to hearing rights within the relevant processing time frame.

Finally, the government interest in maintaining the status quo, which results in delays, is low. DOH claims that it "is already doing its utmost,"[48] but it is in the government's and the public's interest to speed up DOH's process. Moreover, DOH cannot argue that it serves the public interest by violating the law: "The problem here has not been any shortcoming in the laws, but simply a refusal of administrative agencies to comply with them. This invokes a public interest of the highest order: the interest in having government officials act in accordance with law."[49]

DOH claims this factor is "determinative" without providing any argument or evidence of increased burden that would result if summary judgment were granted. DOH

---

47 ECF No. 116, at 24.

48 *Id.* at 28.

49 *Seattle Audubon Soc'y v. Evans*, 771 F. Supp. 1081, 1096 (W.D. Wash. 1991) (citation omitted).

merely states say without evidence or explanation that there is a "risk of erroneous agency decision-making"—apparently ignoring that the seven and thirty-day deadlines are already set by statute.[50] And DOH cannot dispute that the preliminary injunction has resulted in improved processing times and notice procedures—demonstrating the value of additional safeguards.

Overall, "the interest of the eligible recipient in uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously [withheld], clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens."[51] The Ninth Circuit has added:

> Our society as a whole suffers when we neglect the poor, the hungry, the disabled, or when we deprive them of their rights or privileges. Society's interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required. It would be tragic, not only from the standpoint of the individuals involved but also from the standpoint of society, were poor, elderly, disabled people to be wrongfully deprived of essential benefits for any period of time.[52]

---

50 DOH's citation to *Wright v. Califano* is inapposite because in that case "the solution must come from the SSA itself with the assistance of the Congress" where Congress had only "imposed a duty on the SSA to process claims within a 'reasonable' time," without the "imposition of mandatory time limits in spite of proposals to do so." 587 F.2d 345, 352 (7th Cir. 1978). Here, Congress has imposed time limits, which DOH continues to disregard.

51 *Goldberg*, 397 U.S. at 266.

52 *Lopez*, 713 F.2d at 1437.

In *Fusari v. Steinberg*, the Court considered a constitutional due process challenge to Connecticut's process for reviewing applications for unemployment benefits.[53] The district court had found that delays violated due process when an applicant that was initially denied benefits had the right to an administrative appeal, but almost 90% of appeals took over 100 days to resolve.[54] The Connecticut Legislature changed its administrative process before the Supreme Court could rule, but the Court reasoned that the constitutional question was "significantly affected by the length of the period of deprivation of benefits."[55] *Fusari* therefore strongly suggests that 100 days of delay is too long for unemployment benefits.

Here, the facts favor Plaintiffs even more. The private interest in unemployment benefits, while high, is not as urgent as the private interest in food stamps.[56] The risk of erroneous deprivation is *far* higher in this case, as many of the Plaintiffs here were waiting for an *initial* decision on their applications, not an appeal of an initial denial. And finally, as DOH acknowledges, DOH itself has an interest in complying with the SNAP Act and its regulations in order to avoid fiscal penalties from FNS, whereas the Connecticut agency in *Fusari* was not even violating a specific statute or regulation with its delays. All told, DOH's unreasonable delays, in themselves, violate Due Process.

---

53 419 U.S. 379, 379–80 (1975).

54 *Id.* at 383–84.

55 *Id.* at 387–88.

56 *Cf. Mathews v. Eldridge*, 424 U.S. 319, 342 (1976) ("[T]he disabled worker's need is likely to be less than that of a welfare recipient.").

#### iv. DOH violates Alaska's due process guarantee, which provides greater protections than the federal Due Process Clause.

The Alaska Constitution's guarantee of Due Process is even more protective than that of the federal constitution.[57] The Alaska Supreme Court has also emphasized that when the public benefit recipient has a "brutal need" for the benefit at issue, as is the case with SNAP benefits, "courts have traditionally required that agencies go to greater lengths—incurring higher costs and accepting inconveniences—to reduce the risk of error."[58] Thus, even if this was a closer case—that is, even if the *Mathews* test was not so lopsided and the codified timeline was not so clear—the caselaw on the federal due process guarantee is merely a *baseline* for the stronger protections enshrined in our state's constitution.

#### v. DOH violates due process under the United States Constitution by arbitrarily depriving Plaintiffs of SNAP benefit determinations.

Recently, the Western District of Missouri found that the Missouri agency in charge of SNAP benefits violated the plaintiffs' federal Due Process rights. The court held that "'due process requires that [benefits] be administered to ensure fairness and freedom from arbitrary decision-making as to eligibility,' and that benefit programs be administered in a

---

57 *See Balough v. Fairbanks N. Star Borough*, 995 P.2d 245, 263 n.64 (Alaska 2000) ("Alaska's due process clauses confer broader protection than do their federal counterparts.") (alteration omitted)); *Native Vill. of Kwinhagak v. Dep't of Health & Soc. Servs., Off. of Children's Servs.*, 542 P.3d 1099, 1120 (Alaska 2024) ("[T]he Alaska Constitution's guarantee of due process is more protective than that of the federal constitution.").

58 *Allen v. Dep't of Health & Soc. Servs.*, 203 P.3d 1155, 1167 (Alaska 2009); *see also Baker v. State, Dep't of Health & Soc. Servs.*, 191 P.3d 1005, 1010 (Alaska 2008).

manner that 'ensure[s] the fair and consistent application of eligibility requirements.'"[59] Subsistence benefits must, therefore, "be administered to ensure fairness and freedom from arbitrary decision-making as to eligibility" by consistently applying eligibility requirements.[60]

Here, DOH claims that these standards do not apply to them because "DOH gives every applicant a fair eligibility determination, to which they have a due process right, as quickly as DOH is able."[61] But Due Process prohibits the deprivation of a property interest without constitutionally sufficient process. Congress established uniform standards for objectively rendering SNAP eligibility determinations.[62] DOH renders those standards meaningless by failing to consult the objective criteria for months while the Plaintiffs are left without an eligibility determination. Those who are arbitrarily forced to wait for months or years without having their eligibility determination go hungry for months or

---

59 *Holmes v. Knodell*, 733 F. Supp. 3d 775, 796 (W.D. Mo. 2024) (quoting *White v. Roughton*, 530 F.2d 750, 754 (7th Cir. 1976)).

60 *White v. Roughton*, 530 F.2d 750, 753–54 (7th Cir. 1976); *see also Carey v. Quern*, 588 F.2d 230, 232 n.1 (7th Cir. 1978) (program must "insure fairness and avoid the risk of arbitrary decision making"); *K.W. by D.W. v. Armstrong*, 683 F. Supp. 3d 1125, 1133 (D. Idaho 2023) ("[A]bsence of any ascertainable standard for inclusion and exclusion is precisely what offends the Due Process Clause."); *M.A. v. Norwood*, 133 F. Supp. 3d 1093, 1098 (N.D. Ill. 2015) ("[A]rticulated standards" are required to "ensure fairness and to prevent arbitrary decision making."); *Baker-Chaput v. Cammett*, 406 F. Supp. 1134, 1140 (D.N.H. 1976) ("[W]ritten, objective, and ascertainable standards is an elementary and intrinsic part of due process.").

61 ECF No. 116, at 30.

62 *See, e.g.*, 7 U.S.C. § 2020(e)(3), (e)(4), and (e)(9).

years. People experience profound deprivation without food daily, even if the agency eventually issues the benefits.[63]

### C. Plaintiff's constitutional claims are not moot, and Plaintiffs should prevail on those claims.

DOH argues is that Plaintiffs' constitutional claims "are moot" as to the allegations that DOH violates due process by failing to provide a timely and adequate notice after it delays its determination of an Alaskan's SNAP eligibility.[64] Further, despite labeling this argument as about mootness, DOH also states that "neither federal nor state due process requires the notices."[65]

This is the second time that DOH has made this argument,[66] and Plaintiffs have already rebutted it in a detailed brief.[67] Plaintiffs respectfully incorporate that briefing by reference here, as it thoroughly explains why the voluntary cessation exception squarely applies,[68] and why DOH's defenses on the merits are unavailing.[69]

### D. Plaintiffs are entitled to summary judgment on their first contact claim.

---

63 *See, e.g.*, *Haskins*, 794 F.2d at 1276-77; *Maldonado*, 177 F.R.D. at 333; *Garnett*, 313 F. Supp. 3d at 157–58.

64 ECF No. 116, at 33–34.

65 *Id.* at 34.

66 ECF No. 110.

67 ECF No. 118.

68 *Id.* at 7–11.

69 *Id.* at 12–16.

DOH's fourth argument relies on the incorrect assertion that Plaintiffs lack "sufficient evidence" to secure summary judgment on their first-contact-filing claim.[70] There is no dispute of fact here. DOH does not contest the barriers to first-contact-filing that existed when this case was filed. Offices were frequently closed, telephonic applications on the VCC were inaccessible, and the online application did not exist.[71] Any improvements that DOH has made occurred after this lawsuit was filed. DOH is essentially making a mootness argument, but, as Plaintiffs have articulated elsewhere, DOH has failed to meet its heavy burden to establish that the voluntary cessation exception to mootness doctrine does not apply.[72]

As argued in Plaintiffs' brief, the dramatic drop in program participation since July 2022 strongly suggests that eligible Alaskans have faced unlawful barriers to filing SNAP applications at all, let alone on the first day they contact the agency,[73] and DOH's own numbers support that. In Alaska in July 2022, 97,915 persons received SNAP, but by December 2022, only 38,161 persons were receiving SNAP.[74] DOH claims this drop in participation "is more likely explained by the application processing backlog at the time," but this argument fails on multiple counts.

---

70 ECF No. 116, at 34.

71 ECF No. 107-1, at 21–24.

72 *See* ECF No. 117, at 7–9.

73 ECF No. 107-1, at 21.

74 ECF No. 35-1, at 13–14.

First, DOH relies on a document they failed to produce in discovery,[75] which should preclude their ability to rely on it now.[76] Second, that document, used to suggest that "the numbers of SNAP applications DPA received during that time remained steady and high," directly contradicts the data DOH did produce—data that showed dramatically fewer applications.[77] Third, a comparison between initial applications for the same months in

---

75 ECF No. 116, at 12 n.44.

76 FRCP 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless"); *see, e.g.*, *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740–41 (9th Cir. 2021) ("Rule 37(c)(1) is an 'automatic' sanction that prohibits the use of improperly disclosed evidence." (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). Further, the burden is on the party seeking to introduce new evidence to show why the introduction is harmless, which DOH did not attempt to do so here. *See id.*, at 741 (citing *Yeti by Molly*, 259 F.3d at 1106–07).

77 *Compare* ECF No. 116, at 12 n.44 *with* ECF No. 108-17, at 3.

| | **Number of initial applications according to ECF No. 116 at 12 n. 44** | **Number of initial applications according to ECF No. 108-17 at 3** |
|---|---|---|
| July 2022 | 1,849 | 921 |
| August 2022 | 3,058 | 992 |
| September 2022 | 2,920 | 924 |
| October 2022 | 3,134 | 602 |
| November 2022 | 3,082 | 708 |
| December 2022 | 3,203 | 1,061 |

Fiscal Year 2023 and the available data for Fiscal Year 2025 shows that the number of initial applications was in fact lower in FY 2023 than FY 2025.[78]

Finally, DOH argues that in the past twelve months, SNAP participation rates have remained steady in the low-mid 60,000s, but this is well below the roughly 90,000 participants that had participated in SNAP from at least October 2017 until July 2022.[79] In DOH's motion for summary judgment,[80] DOH argued that "[a]ny problems with first-contact-filing in late 2022 and early 2023 were related to the unforeseen backlog crisis overwhelming DOH staff,"[81] but that crisis has undeniably continued to this day.[82] DOH

---

78 *Compare* ECF No. 116, at 12 n.44 *with* Alaska DPA SFY25 Initial Applications, at 7, http://dpaweb.hss.state.ak.us/files/reports/InitialAppsTable.pdf.

| | **2022** | **2024** |
|---|---|---|
| July | 1,849 | 3,863 |
| August | 3,058 | 4,214 |
| September | 2,920 | 3,461 |
| October | 3,134 | 3,747 |

79 DOH also suggests that the decline in participation could be due to the expiration of pandemic waivers that had expanded program eligibility (ECF No. 116, at 12), but SNAP participation had been steadily in the range of 80,000–90,000 persons since at least October 2017, well before the COVID-19 pandemic. ECF No. 35-2, at 11–17.

80 ECF No. 109.

81 ECF No. 109, at 15–16.

82 ECF No. 107-1, at 16–19.

office closures and shortages on the VCC have impeded Alaskans' ability to file a SNAP application on the first day of contact,[83] and despite DOH's protestations otherwise, the data shows that barriers remain.[84]

DOH also argues that Plaintiffs' declarations are inadmissible as they are signed by their attorneys.[85] DOH cites to Seventh Circuit case law about excluding an unsworn affidavit of a nonparty witness, that was signed on by plaintiff's counsel.[86] However, Local Rule 5.1 (e)(1)(B) authorizes signature by counsel for a party, as with the declarations at issue.[87] Fed. R. Civ. P. 56(c)(1)(B) cited by DOH, references the production of admissible materials on a motion for summary judgment. There is no reason that a declaration signed

---

83 ECF No. 107-1, at 19–25.

84 DOH has argued that since applications and drop boxes are available outside of closed offices, office closures do not impede Plaintiffs' right to file on the first day of contact with the agency. ECF No. 116 at 10–11. While the availability of applications and drop boxes could provide additional access during non-business hours (though it appears that these are only available during working hours with the rest of the building is open), drop boxes alone cannot replace access to in person office access or access via the VCC. DOH's claim, taken to its conclusion, would be that despite extreme geographical barriers, 11 drop boxes throughout the entirety of the state of Alaska would be sufficient to meet the State's obligation to permit Alaskans to file on the first day of contact with the agency. This is false.

85 *See* ECF No. 116, at 14, 35.

86 ECF No. 116, at 14 (citing *Markel v. Bd. of Regents of Univ. of Wisconsin Sys.*, 276 F.3d 906, 160 [sic] (7th Cir. 2002)). DOH incorrectly implies that the declaration at issue was for the plaintiff instead of for a fact witness. *Id*. DOH also provides the wrong pin-cite –the correct cite is *Markel v. Bd. of Regents of Univ. of Wisconsin Sys.*, 276 F.3d 906, 912 (7th Cir. 2002).

87 See ECF Nos. 45-1 to 45-7.

in a manner consistent with the rules of *this* jurisdiction would be inadmissible on summary judgment.

## IV. CONCLUSION

For the reasons stated above, in Plaintiffs' Motion for Summary Judgment (ECF 107 and 107-1), and Plaintiffs' Oppositions to Defendant's Motions for Summary Judgement (ECF 117 and 118), Plaintiffs respectfully ask this Court to grant summary judgment to Plaintiffs and hold that DOH's failures to timely render SNAP eligibility determinations, permit SNAP applicants to file applications with the first day of contact with DOH, and provide notice of delayed processing violate multiple provisions of the SNAP Act, federal Due Process, and due process under the Alaskan Constitution.

DATED this 17th day of November, 2025.

Attorneys for Plaintiffs

*/s/ Saima Akhtar*______________________________

Goriune Dudukgian, AK Bar No. 0506051
Nicholas Feronti, AK Bar No. 2106069
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: gdudukgian@njp-law.com
Email: nferonti@njp-law.com

*Saima Akhtar (New York Bar No. 4661237)
**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
50 Broadway, Suite 1500
New York, NY 10004
(212) 633-6967 (telephone)

(212) 633-6371 (fax)
Email: akhtar@nclej.org

*Margaret D. Craig (Mass. Bar No. 569130)
*Kelsey Tavares (Mass. Bar No. 705934)
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (telephone)
(617) 406-6100 (fax)
Email: maggie.craig@us.dlapiper.com
Email: kelsey.tavares@us.dlapiper.com

*Christopher M. Young (Cal. Bar No. 163319)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel.: (619) 699-2700
Fax: (619) 699-2701
Email: christopher.young@us.dlapiper.com

*Sean P. Fulton (Tex. Bar No. 24103727)
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, TX 75201-2482
(214) 743-4572 (telephone)
(972) 692-7272 (fax)
Email: sean.fulton@us.dlapiper.com

*Constance I. Du (IL Bar No. 6345766)
**DLA PIPER LLP (US)**
444 W Lake Street, Suite 900
Chicago, IL 60606-0010
(312) 368-8921 (telephone)
(312) 530-7321 (fax)
Email: constance.du@us.dlapiper.com

*appearing *pro hac vice*

**Certificate of Service and Word Count**

I hereby certify that on November 17, 2025, true and correct copies of the foregoing document were served on all parties via the CM/ECF electronic filing system. I further certify that in compliance with Local Rule of Civil Procedure 7.4(a)(1), the foregoing Reply in Support of Plaintiffs' Motion for Summary Judgment does not exceed 5,700 words, exclusive of caption and signature blocks.

*/s/ Saima Akhtar*