# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

JOHN ANDREW, *et al.*, *on behalf of themselves, and all those similarly situated,*

        Plaintiffs,

      v.

HEIDI HEDBERG, *in her official capacity as Commissioner of the Alaska Department of Health*,

        Defendant.

Case No. 3:23-cv-00044-SLG

## ORDER ON ALL PENDING MOTIONS

Before the Court are five pending motions:

1. At Docket 102 is Defendant Heidi Hedberg's Motion for Summary Judgment. Plaintiffs responded in opposition at Docket 115, to which Defendant replied at Docket 120.

2. At Docket 107 is Plaintiffs' Motion for Summary Judgment. Defendant responded in opposition at Docket 116, to which Plaintiffs replied at Docket 123.

3. At Docket 109 is Defendant's Motion for Partial Summary Judgment Re: First-Contact-Filing Claim. Plaintiffs responded in opposition at Docket 117, to which Defendant replied at Docket 122.

4. At Docket 110 is Defendant's Motion for Partial Summary Judgment Re: Constitutional Claims. Plaintiffs responded in opposition at Docket 118, to which Defendant replied at Docket 124.

5. At Docket 127 is Frederick E. Rapp's Motion for Leave to File Amicus Curiae Brief. Defendant responded in opposition at Docket 134. Plaintiffs are unopposed to this motion.[1]

Also, at Docket 138 Plaintiffs filed a Notice of Supplemental Authority regarding the summary judgment motions, to which Defendant responded and provided her own supplemental authority at Docket 140.

On December 18, 2025, the Court held oral argument on the four motions for summary judgment.[2] Oral argument was not requested and is not necessary to the Court's determination on the Motion for Leave to File Amicus Curiae Brief.

## BACKGROUND

This case is about the State of Alaska's administration of the federally funded Supplemental Nutrition Assistance Program ("SNAP"), which was established by the Food Stamp Act of 1964.[3] SNAP, codified at 7 U.S.C. §§ 2011–2036d, is meant "to safeguard the health and well-being of the Nation's population

---

[1] Docket 133.

[2] Docket 132.

[3] *See* Docket 1-1 at ¶¶ 1-4, 32-37; Food Stamp Act of 1964, Pub. L. No. 88-525, § 4, 78 Stat. 703, 704. Originally called the Food Stamp Program, the program was renamed in 2008 to the Supplemental Nutrition Assistance Program. *See* Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, §§ 4001–4002, 122 Stat. 1651.

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 2 of 48
Case 3:23-cv-00044-SLG    Document 147    Filed 05/21/26    Page 2 of 48

by raising levels of nutrition among low-income households."[4]  SNAP is overseen by the Food and Nutrition Service ("FNS") within the U.S. Department of Agriculture ("USDA").[5]  In Alaska, the Department of Health ("DOH"), Division of Public Assistance ("DPA") administers the Program.[6]  DOH, through the DPA, must comply with the SNAP Act and its implementing regulations, as well as with its own FNS-approved state operation plan.[7]

Households must meet certain eligibility requirements and apply to participate in SNAP.[8]  DOH is responsible for processing applications and certifying applicants' eligibility.[9]  The regulations contain numerous procedures related to SNAP applications, including application processing timelines, notice provisions, and language access requirements.[10]  If a State is not in compliance with federal requirements, then the Secretary of the USDA will give the State a period of time to correct the failures, but if the failures continue, the federal

---

[4] 7 U.S.C. § 2011.

[5] *See* 7 C.F.R. §§ 271.2, 271.3(a).

[6] *See Supplemental Nutrition Assistance Program (SNAP)*, Alaska Dep't of Health, Div. of Pub. Assistance, https://health.alaska.gov/dpa/Pages/SNAP/default.aspx (last visited May 18, 2026).

[7] 7 U.S.C. § 2020; 7 C.F.R. §§ 271.1, 272.2; *see Withrow v. Concannon*, 942 F.2d 1385, 1386 (9th Cir. 1991) ("A state's participation [in SNAP] is optional, but participating states must comply with federal requirements.") (citing *King v. Smith,* 392 U.S. 309, 316 (1968)).

[8] *See* 7 U.S.C. §§ 2014, 2020; 7 C.F.R. § 271.1 *et seq.*

[9] 7 U.S.C. § 2020(a).

[10] *See, e.g.*, 7 C.F.R. § 273.2(a)(2), (g)–(h); *id.* § 272.4(b).

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 3 of 48
Case 3:23-cv-00044-SLG    Document 147    Filed 05/21/26    Page 3 of 48

government may seek injunctive relief requiring a State's compliance and may withhold federal funding as the Secretary deems appropriate.[11]

Plaintiffs bring this suit on behalf of themselves and two classes: (1) an "Untimely Eligibility Class," "comprised of all Alaska residents who since January 20, 2021 have applied, are applying, or will apply for SNAP benefits through an initial application or an application for recertification and did or will not receive an eligibility determination within the legally required timeframes"; and (2) a "Right to File Class," "comprised of all Alaska residents who since January 20, 2021, were or will be denied the right to file a SNAP application the first time they contact the agency."[12]

Five claims remain in this case, four of which allege violations of federal law: (1) failure to timely process SNAP initial and recertification applications; (2) failure to ensure that Alaskans can submit SNAP applications on the first day they contact the agency; (3) "failure to provide written notice and opportunity to request a fair hearing to SNAP applicants whose eligibility was not determined within legally mandated timeframes"; and (4) violation of the Due Process Clause of the Fourteenth Amendment.[13] Plaintiffs' federal Due Process claim is based on

---

[11] 7 U.S.C. § 2020(g).

[12] Docket 1-1 at 4, 6, ¶¶ 4, 19. Defendant stipulated to the certification of these two classes. *See* Docket 13; Docket 15. The Court denied class certification of a third proposed class comprised of Alaska residents with limited English proficiency who did or will not receive application materials or vital eligibility documents in their primary language and/or access to oral interpretation services. Docket 38.

[13] Docket 1-1 at 39-41, ¶¶ 297-300, 303-07. Plaintiffs had also alleged an additional claim

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 4 of 48
Case 3:23-cv-00044-SLG    Document 147    Filed 05/21/26    Page 4 of 48

Defendant's "failure to provide timely and adequate written notice of eligibility or delayed processing for SNAP benefits and deprives Plaintiffs of access to a fair hearing to raise disputes concerning eligibility and delayed processing."[14] Plaintiffs also allege a federal Due Process claim based on Defendant's alleged "failure to timely render eligibility determinations, failure to provide required notice of delayed processing, and subjecting otherwise eligible individuals to arbitrary deprivation of SNAP benefits."[15] Plaintiffs' fifth claim alleges a violation of the Due Process Clause of Article I, section 7, of the Alaska Constitution based on Defendant's "failure to provide timely and adequate written notice of eligibility or delayed processing for SNAP benefits [which] deprives Plaintiffs of access to a fair hearing to raise disputes concerning eligibility and delayed processing."[16] Plaintiffs seek injunctive and declaratory relief against Defendant.[17]

On December 31, 2024, this Court issued a preliminary injunction ordering Defendant to (1) promptly process SNAP applications and recertifications in accordance with 7 U.S.C. § 2020(e)(3), (4), and (9); (2) "provide written notice and opportunity to request a fair hearing to those SNAP applicants [whose] applications

---

pursuant to 7 U.S.C. § 2020(e)(1)(B), Docket 1-1 at 39-40, ¶¶ 301-02, but that claim has been dismissed. Docket 111.

[14] Docket 1-1 at 40, ¶ 306.

[15] Docket 1-1 at 40-41, ¶ 307.

[16] Docket 1-1 at 41, ¶ 309.

[17] Docket 1-1 at 42-46.

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 5 of 48
Case 3:23-cv-00044-SLG    Document 147    Filed 05/21/26    Page 5 of 48

are not processed within the mandated timeframes"; and (3) submit monthly status reports to the Court providing DOH's timely processing rates.[18]

## JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action with certain claims arising under federal law: 42 U.S.C. § 1983 and the Fourteenth Amendment of the Constitution. The Court may exercise supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367.

## LEGAL STANDARD

### I. Leave to File Amicus Brief

Courts have broad discretion to grant or refuse amicus participation.[19] Amicus participants may be either impartial individuals or interested parties.[20] In deciding whether to grant leave to file an amicus brief, a court should consider whether the briefing "supplement[s] the efforts of counsel, and draw[s] the court's attention to law that escaped consideration."[21] "An amicus brief should normally be allowed when . . . the amicus has an interest in some other case that may be

---

[18] Docket 77 at 30-32. Defendant has filed the requisite status reports. *See* Dockets 78, 80, 82, 89, 95, 97, 99, 100, 103, 114, 119, 125, 135, 136, 137, 143, 144.

[19] *See Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

[20] *See Funbus Sys., Inc. v. Cal. Pub. Utils. Comm'n*, 801 F.2d 1120, 1125 (9th Cir. 1986) (citing *Miller-Wohl Co., Inc. v. Comm'r of Lab. & Indus. Mont.*, 694 F.2d 203, 204 (9th Cir. 1982)).

[21] *Miller-Wohl Co., Inc.*, 694 F.2d at 204 (first citing *Alexander v. Hall,* 64 F.R.D. 152, 155 (D.S.C. 1974); and then citing 3A C.J.S. *Amicus Curiae* § 6, at 427 (1973)).

affected by the decision in the present case, or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide. . . . Otherwise, leave to file an amicus curiae brief should be denied."[22]

### II. Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact lies with the movant.[23] If the movant meets this burden, the non-moving party must demonstrate "specific facts showing that there is a genuine issue for trial."[24] The non-moving party may not rely on "mere allegations or denials"; rather, to reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[25]

When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable

---

[22] *Cmty. Ass'n for Restoration of Env't v. DeRuyter Bros. Dairy*, 54 F. Supp. 2d 974, 975 (E.D. Wash. 1999) (first citing *Miller-Wohl Co.*, 694 F.2d at 204; and then citing *N. Sec. Co. v. United States*, 191 U.S. 555, 556 (1903)).

[23] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[24] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e) (1986)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[25] *Anderson*, 477 U.S. at 248-49 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 7 of 48
Case 3:23-cv-00044-SLG     Document 147     Filed 05/21/26     Page 7 of 48

inferences" in the non-moving party's favor.[26] In reviewing cross-motions for summary judgment, a court "review[s] each separately, giving the non-movant for each motion the benefit of all reasonable inferences."[27] "[P]urely legal issues appropriate for resolution in a motion for summary judgment include the interpretation of a statute or regulation."[28]

## DISCUSSION

### I. Motion for Leave to File Amicus Curiae Brief

The Court first addresses Frederick Rapp's Motion for Leave to File Amicus Curiae Brief at Docket 127. Mr. Rapp is an Eligibility Technician II who has been employed by DPA since November 2007.[29] Mr. Rapp's proposed amicus brief discusses his "15+ year advocacy campaign" to improve operations at DPA and asks the Court to continue its requirement that DPA provide regular status reports as to the timely processing of SNAP applications.[30]

Defendant opposes Mr. Rapp's motion because, "[w]hile the defendant appreciates Mr. Rapp's commitment to his job and to the population served by the

---

[26] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

[27] *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016) (citing *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008)).

[28] *Nichols Inst. Diagnostics, Inc. v. Scantibodies Clinical Lab'y, Inc.*, 218 F. Supp. 2d 1243, 1245 (S.D. Cal. 2002) (citing *Edwards v. Aguillard*, 482 U.S. 578, 581-82 (1987)); *see Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 776 (9th Cir. 2010) ("We review de novo both a grant of summary judgment in general and pure questions of law decided on summary judgment.").

[29] Docket 127 at 2.

[30] Docket 127 at 2-4.

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 8 of 48
Case 3:23-cv-00044-SLG     Document 147     Filed 05/21/26     Page 8 of 48

Division of Public Assistance, Mr. Rapp's proffered brief does not provide 'unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'"[31]

The Court agrees with Defendant that Mr. Rapp's amicus brief, while evidence of his dedication to serving the public as a DPA employee, does not provide the Court with unique information or perspective that the parties cannot provide that relates to the legal issues presently before the Court. As such, Mr. Rapp's Motion for Leave to File Amicus Curiae Brief at Docket 127 is **DENIED**.

## II.      SNAP Act Claims[32]

Defendant maintains that 7 U.S.C. § 2020(e)—which contains the SNAP Act provisions Plaintiffs invoke in their Complaint—"does not create a private right enforceable under 42 U.S.C. §1983."[33]

"[Section] 1983 . . . authorizes private parties to pursue violations of their federal statutory rights," although "statutes create individual rights only in 'atypical

---

[31] Docket 134 at 2-3 (quoting *Cmty. Ass'n for Restoration of Env't*, 54 F. Supp. 2d at 975).

[32] Relevant to Plaintiffs' claims under the SNAP Act are Defendant's Motion for Summary Judgment at Docket 102, Defendant's Motion for Partial Summary Judgment Re: First-Contact-Filing Claim at Docket 109, and Plaintiffs' Motion for Summary Judgment at Docket 107.

[33] Docket 102 at 2; *see* Docket 102 at 12 (noting that this Court's preliminary injunction order, "[a]lthough neither party addressed it in the briefing, this Court's Order stated: 'Courts have also recognized a private right of action pursuant to 42 U.S.C. § 1983.' This Court cited the following cases in support of that statement: *Briggs v. Bremby*, 792 F.3d 239, 245-46 (2d Cir. 2015); *Gonzalez v. Pingree*, 821 F.2d 1526, 1531 (11th Cir. 1987); *Victorian v. Miller*, 813 F.2d 718, 724 (5th Cir. 1987); *Barry v. Lyon*, 834 F.3d 706, 717 (6th Cir. 2016); *Garnett v. Zeilinger*, 323 F. Supp. 3d 58, 71-73 (D.D.C. 2018).") (citing Docket 77 at 3).

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 9 of 48
Case 3:23-cv-00044-SLG    Document 147    Filed 05/21/26    Page 9 of 48

case[s].'"[34]  As such, "§ 1983 provides a cause of action 'only for the deprivation of rights, privileges, or immunities,' 'not benefits or interests.'"[35]

As explained by the Supreme Court, although "there was a time in the mid-20th century when 'the Court assumed it to be a proper judicial function to provide' whatever 'remedies' it deemed 'necessary to make effective a statute's purpose,'"[36] in 2002—in *Gonzaga University v. Doe*—the Supreme Court "reject[ed] the notion that [its] cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983."[37]  The Supreme Court more recently applied the *Gonzaga* test in *Health and Hospital Corp. v. Talevski* and *Medina v. Planned Parenthood South Atlantic*.

Under the *Gonzaga* standard, "[t]o prove that a statute secures an enforceable right, privilege, or immunity, and does not just provide a benefit or protect an interest, a plaintiff must" satisfy a "'stringent' and 'demanding' test": (1) the plaintiff must show "that the law in question 'clear[ly] and unambiguous[ly]' uses 'rights-creating terms'"; and (2) "the statute must display 'an unmistakable focus'

---

[34] *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 367-68 (2025) (first citing *Maine v. Thiboutot*, 448 U.S. 1 (1980); and then quoting *Health & Hosp. Corp. v. Talevski*, 599 U.S. 166, 183 (2023)).

[35] *Id.* at 368 (internal quotation marks omitted) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)).

[36] *Id.* (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 131-132 (2017)). *See e.g.*, *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979).

[37] *Gonzaga*, 536 U.S. at 283.

on individuals like the plaintiff."[38] Put another way, "[c]ourts must employ traditional tools of statutory construction to assess whether Congress has 'unambiguously conferred' 'individual rights upon a class of beneficiaries' to which the plaintiff belongs."[39] "[E]ven for the rare statute that satisfies [this test], [the Supreme Court] has said a § 1983 action still may not be available if Congress has displaced § 1983's general cause of action with a more specific remedy."[40] The Supreme Court has also held that "spending-power statutes . . . are especially unlikely to" "confer an enforceable right" under this test.[41] The Supreme Court "has identified only three sets of spending-power statutes that confer enforceable rights under §1983."[42]

Defendant maintains that 7 U.S.C. § 2020(e) "does not create a private right enforceable under 42 U.S.C. §1983."[43] Defendant relies primarily on the recent Supreme Court decision in *Medina v. Planned Parenthood South Atlantic*, in which the Supreme Court held that a Medicaid statute enacted pursuant to Congress's

---

[38] *Medina*, 606 U.S. at 368 (additional internal quotation marks omitted) (first quoting *Talevski*, 599 U.S. at 180, 186; then quoting *Gonzaga*, 536 U.S. at 284, 290; and then quoting *id.* at 284).

[39] *Talevski*, 599 U.S. at 183 (citing *Gonzaga*, 536 U.S. at 283, 285-86).

[40] *Medina*, 606 U.S. at 368 (citing *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005)).

[41] *Id.* at 369.

[42] *Id.* at 377 (first citing *Wright v. Roanoke Redevelopment & Hou. Auth.*, 479 U.S. 418, (1987); then citing *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498 (1990); and then citing *Talevski*, 599 U.S. 166).

[43] Docket 102 at 2 (citing *Medina*, 606 U.S. at 368).

spending authority did not confer a privately enforceable right.[44] Defendant maintains that "*Medina* is on all fours with this case, and its analysis bars the plaintiffs' claims" because "the SNAP Act is a spending-power statute that requires participating states to have an approved state plan" and "the plaintiffs here seek to bring § 1983 claims to enforce select provisions of the Act's state plan requirements."[45] In Defendant's view, "[t]he relevant provisions of the SNAP Act contain no more unambiguous rights-creating language than the Medicaid Act provision in *Medina*," such that "[t]he plaintiffs cannot bring §1983 claims to enforce these provisions of the SNAP Act."[46]

Plaintiffs disagree. They maintain that the SNAP Act provisions they rely on are "'phrased in terms of the persons benefited' with an 'unmistakable focus on the benefited class' using 'rights-creating,' individual-centric language."[47]

The statute that Plaintiffs invoke—7 U.S.C. § 2020—is titled "Administration," with subsection (e) titled "Requisites of State plan of operation." Plaintiffs assert three claims under this statute. Plaintiffs' first claim alleges that Defendant has failed to comply with the processing requirements for initial and

---

[44] Docket 102 at 19-27 (citing *Medina*, 606 U.S. 357); *see Medina*, 606 U.S. at 376-80; *id.* at 385 ("Section 1983 permits private plaintiffs to sue for violations of federal spending-power statutes only in 'atypical' situations, where the provision in question 'clear[ly]' and 'unambiguous[ly]' confers an individual 'right.' Section 1396a(a)(23)(A) is not such a statute." (first quoting *Talevski*, 599 U.S. at 183; and then quoting *Gonzaga*, 536 U.S. at 290)).

[45] Docket 102 at 19.

[46] Docket 102 at 19.

[47] Docket 115 at 8-9 (quoting *Talevski*, 599 U.S. at 183, 185).

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 12 of 48
Case 3:23-cv-00044-SLG    Document 147    Filed 05/21/26    Page 12 of 48

recertification SNAP applications set forth in § 2020(e)(3), (4), and (9).[48] Section 2020(e)(3) provides that the "State agency shall . . . promptly determine eligibility of each applicant household by way of verification of income . . . so as to complete certification of and provide an allotment . . . to any eligible household not later than thirty days following its filing of an application." Section 2020(e)(4) requires the State agency to "insure" that a SNAP recipient seeking recertification of benefits "receive[s] its allotment no later than one month after the receipt of the last allotment issued" if the household filed its recertification application within a certain timeframe. And § 2020(e)(9) provides that "the State agency shall" "provide benefits not later than 7 days after the date of application to any household which" satisfies certain very low-income and asset thresholds.

Plaintiffs' second claim alleges that Defendant has failed to comply with § 2020(e)(2)(B), which provides that the State agency "shall permit an applicant household to apply to participate in [SNAP] on the same day that the household first contacts a supplemental nutrition assistance program office in person during office hours."[49]

Plaintiffs' third claim alleges that Defendant has failed to comply with the notice and hearing requirements in § 2020(e)(10) as to SNAP applicants whose

---

[48] Docket 1-1 at 39, ¶¶ 297-98; Docket 115 at 9.

[49] Docket 1-1 at 39, ¶¶ 299-300; Docket 115 at 9-10.

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 13 of 48
Case 3:23-cv-00044-SLG     Document 147     Filed 05/21/26     Page 13 of 48

eligibility was not determined within the SNAP Act's timeframes.[50]   Section 2020(e)(10) provides "for the granting of a fair hearing and a prompt determination thereafter to any household aggrieved by the action of the State agency under any provision of its plan of operation as it affects the participation of such household in [SNAP]."

To advance these statutory claims, Plaintiffs "must show, at a minimum, that [the SNAP Act provisions do] not just seek to benefit them or serve their interests but 'clear[ly] and unambiguous[ly]' give[] them individual federal rights."[51]   The Court begins by comparing the statutes at issue in this case to the statute in *Health and Hospital Corp. v. Talevski*, which the Supreme Court instructs is "the only reliable yardstick against which to measure whether spending-power legislation confers a privately enforceable right."[52]

In *Talevski*, the Supreme Court held that 42 U.S.C. §§ 1396r(c)(1)(A)(ii) and 1396r(c)(2)(A) conferred privately enforceable rights.[53]   Section 1396(c)(1)(A)(ii) provides: "A nursing facility must protect and promote the rights of each resident,

---

[50] Docket 1-1 at 40, ¶¶ 303-04; Docket 115 at 10.

[51] *Medina*, 606 U.S. at 376 (quoting *Gonzaga*, 536 U.S. at 290).

[52] *Id.* at 377.

[53] *Talevski*, 599 U.S. at 184-85; *see also Medina*, 606 U.S. at 377 ("*Talevski* addressed two provisions of the Federal Nursing Home Reform Act (FNHRA).  The first obliged nursing-home facilities to 'protect and promote' residents' '*right* to be free from' unnecessary 'physical or chemical restraints.'  The second appeared in a subparagraph titled '[t]ransfer and discharge *rights*.'  And both provisions sat in a subsection called '[r]equirements relating to residents' *rights*.'" (emphasis in original) (first citing *Talevski*, 599 U.S. at 181-182; then quoting 42 U.S.C. § 1396r(c)(1)(A)(ii)); then quoting *id.* § 1396r(c)(2)(A); and then quoting *id.* § 1396r(c))).

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 14 of 48
Case 3:23-cv-00044-SLG     Document 147     Filed 05/21/26     Page 14 of 48

including each of the following rights: . . . (ii) Free from restraints[.] The right to be free from physical or mental abuse, corporal punishment, involuntary seclusion, and any physical or chemical restraints imposed for purposes of discipline or convenience and not required to treat the resident's medical symptoms."[54]  Section 1396r(c)(2)(A) provides: "Transfer and discharge rights[.] (A) In general[.] A nursing facility must permit each resident to remain in the facility and must not transfer or discharge the resident from the facility unless" certain criteria are met.[55]

Both sections "reside in 42 U.S.C. § 1396r(c), which expressly concerns '[r]equirements *relating to residents' rights*.'"[56]  The Supreme Court held that "[t]his framing is indicative of an individual 'rights-creating' focus."[57]   Further, the Supreme Court held that the statutory provisions themselves demonstrate a "focus on individual residents": § 1396(c)(1)(A)(ii) "requires nursing homes to 'protect and promote . . . *[t]he right* to be free from . . . any physical or chemical restraints imposed for purposes of discipline or convenience and not required to treat *the resident's* medical symptoms" and, "[n]estled in a paragraph concerning 'transfer and discharge *rights*,'" 1396r(c)(2)(A) "tells nursing facilities that they 'must not transfer or discharge [a] *resident*" unless certain preconditions are met . . . ."[58]  The

---

[54] 42 U.S.C. § 1396r(c)(1)(A)(ii).

[55] *Id.* § 1396r(c)(2)(A).

[56] *Talevski*, 599 U.S. at 184 (emphasis in original) (citing *Gonzaga*, 536 U.S. at 284).

[57] *Id.*

[58] *Id.* at 184-85 (emphases in original) (first quoting 42 U.S.C. § 1396r(c)(1)(A)(ii)); then quoting

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 15 of 48
Case 3:23-cv-00044-SLG     Document 147     Filed 05/21/26     Page 15 of 48

Supreme Court held that these statutory provisions "use clear 'rights-creating language,' speak 'in terms of the persons benefited,' and have an 'unmistakable focus on the benefited class'" such that "the rights they recognize are presumptively enforceable under § 1983."[59]

There are some similarities between the statutes in *Talevski* and the ones at issue here. First, they are both spending-power statutory regimes. And both sets of statutes provide directives to the agency or facility responsible for administering a program or providing care: Section 1396r contains "Requirements for nursing facilities"; similarly, § 2020 is titled "Administration" and subsection (e) is titled "Requisites of State plan of operation."

Further, pursuant to § 1396r(c)(2)(A), "[a] nursing facility must permit each resident to remain in the facility and must not transfer or discharge the resident from the facility unless" certain criteria are met. Similar language appears in several subsections of § 2020: subsection (e)(3) provides that the "State agency shall . . . promptly determine eligibility of each applicant household . . . so as to complete certification of and provide an allotment . . . to any eligible household not later than thirty days following its filing of an application"; subsection (e)(4) requires the State agency to "insure" that a SNAP recipient seeking recertification of benefits "receive[s] its allotment no later than one month after the receipt of the

---

*id.* § 1396r(c)(2)(A); and then citing *id.* § 1396r(c)(2)(A)–(B)).

[59] *Id.* at 185-86 (quoting *Gonzaga*, 526 U.S. at 284, 287).

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 16 of 48
Case 3:23-cv-00044-SLG    Document 147    Filed 05/21/26    Page 16 of 48

last allotment issued" if certain criteria are met; subsection (e)(9) provides that "the State agency shall" "provide benefits not later than 7 days after the date of application to any household which" satisfies certain very low-income and asset thresholds; subsection (e)(2)(B) provides that the State agency "shall permit an applicant household to apply to participate in [SNAP] on the same day that the household first contacts a supplemental nutrition assistance program office in person during office hours"; and subsection (e)(10) provides "for the granting of a fair hearing and a prompt determination thereafter to any household aggrieved by the action of the State agency under any provision of its plan of operation as it affects the participation of such household in [SNAP]." Similar to the statutes in *Talevski*, these SNAP Act provisions "focus on individual" households.[60]

But there are several key, and in this Court's view, dispositive differences between the *Talevski* statutes and the SNAP provisions at issue here. In *Talevski*, the statutes expressly invoked the word "right" or "rights" when describing the nursing facilities' obligations to their residents. Indeed, 42 U.S.C. § 1396r(c) is titled "Requirements relating to residents' rights." In contrast, the SNAP Act provisions invoked by Plaintiffs do not mention "rights," and the Court does not discern any language that clearly and unambiguously creates "rights, privileges, or immunities, not benefits or interests."[61] Further, in *Talevski*, "Congress set its

---

[60] *Id.* at 184.

[61] *Medina*, 606 U.S. at 368 (internal quotation marks omitted) (quoting *Gonzaga*, 536 U.S. at

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 17 of 48
Case 3:23-cv-00044-SLG    Document 147    Filed 05/21/26    Page 17 of 48

rights-creating provisions apart from others and, in doing so, helped alert grantees that accepting federal funds comes with a duty to answer private suits."[62] Here, § 2020(e) sits amidst dozens of other "[r]equisites of State plan of operation" and does little to "alert" a State that SNAP funding "comes with a duty to answer private suits."[63] And while the SNAP Act is certainly intended to meet the needs of individuals like Plaintiffs, it does so in the context of setting forth the State's responsibilities to those individuals but does not clearly bestow a private right to sue. The Court therefore finds that Plaintiffs fail to satisfy the "'stringent' and 'demanding' test" set forth by the Supreme Court, as the provisions they rely on in § 2020(e) do not "'clear[ly] and unambiguous[ly]' use[] 'rights-creating terms.'"[64]

The Court's conclusion is bolstered by the Supreme Court's recent holding in *Medina*. In *Medina*, Planned Parenthood brought suit against the State of South Carolina after South Carolina announced that Planned Parenthood could no longer participate in the State's Medicaid program.[65] Planned Parenthood sought to enforce a provision of the Medicaid Act pursuant to 42 U.S.C. § 1983; specifically, 42 U.S.C. § 1396a(a)(23)(A)—known as the any-qualified-provider provision—

---

283).

[62] *Id.* at 379-80.

[63] 7 U.S.C. § 2020(e); *Medina*, 606 U.S. at 379-80.

[64] *Medina*, 606 U.S. at 368 (additional internal quotation marks omitted) (first quoting *Gonzaga*, 536 U.S. at 284; then quoting *Talevski*, 599 U.S. at 180, 186; and then quoting *Gonzaga*, 536 U.S. at 284, 290).

[65] *Id.* at 364-65.

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 18 of 48
Case 3:23-cv-00044-SLG    Document 147    Filed 05/21/26    Page 18 of 48

which "requires States to ensure that 'any individual eligible for medical assistance . . . may obtain' it 'from any [provider] qualified to perform the service . . . who undertakes to provide' it."[66]  The Supreme Court held that § 1396a(a)(23)(A) did not clearly and unambiguously confer a federal right to providers and that the provision was not enforceable by Planned Parenthood in a suit pursuant to § 1983.[67]

In reaching its holding, the Supreme Court compared § 1396a(a)(23)(A) to the nursing facility provisions in the FNHRA at issue in *Talevski*.  The *Medina* Court held that "[t]he any-qualified-provider provision before us looks nothing like those FNHRA provisions."[68]  The Court observed that while § 1396a(a)(23)(A) "speaks to what a State must do to participate in Medicaid" and "seeks to benefit both providers and patients," "missing from § 1396a(a)(23)(A) is anything like FNHRA's clear and unambiguous 'rights-creating language.'"[69]  The Supreme Court further reasoned that, as shown by the FNHRA, "Congress knows how to give a grantee clear and unambiguous notice that, if it accepts federal funds, it may face private suits asserting an individual right to choose a medical provider."[70]

---

[66] *Id.* at 364 (alterations in original) (quoting 42 U.S.C. § 1396a(a)(23)(A)).

[67] *Id.* at 385.

[68] *Id.* at 377.

[69] *Id.* at 377-78 (quoting *Talevski*, 599 U.S. at 186).

[70] *Id.* at 378.

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 19 of 48
Case 3:23-cv-00044-SLG     Document 147     Filed 05/21/26     Page 19 of 48

Similar to the qualified-provider statute at issue in *Medina*, § 2020(e) "speaks to what a State must do to participate in [SNAP]" and "seeks to benefit" recipient households.[71]  And also like § 1396a(a)(23)(A), "missing from § [2020(e)] is anything like FNHRA's clear and unambiguous 'rights-creating language.'"[72]  Plaintiffs attempt to distinguish the qualified-provider provision from the SNAP Act, contending that the Medicaid provision in *Medina* does not use "shall" to describe "a state's obligations vis-à-vis the individuals eligible for medical assistance."[73]  But this is not a meaningful distinction: the Medicaid Act requires that "A State plan for medical assistance must . . .  provide . . ."—language that is quite similar to the SNAP Act's provision that "[t]he State plan of operation . . . shall provide . . . ."[74]

Further, Plaintiffs maintain that § 2020(e)(2)(B)(iii), (e)(3), (e)(4), (e)(9), and (e)(10) "contain . . . mandatory and individual-centric text," emphasizing various words and phrases within those statutes such as "shall," "each applicant," "each applicant household," "each participating household," "any household," and "an applicant household."[75]  In Plaintiffs' view, "[s]uch mandatory, 'individually focused'

---

[71] *Id.* at 377-78 (quoting *Talevski*, 599 U.S. at 186).

[72] *Id* (quoting *Talevski*, 599 U.S. at 186)*.*

[73] Docket 115 at 11 (first citing 42 U.S.C. § 1396a(a)(23); and then citing 7 U.S.C. § 2020(e)(9)).

[74] 42 U.S.C. § 1396a(a)(23); 7 U.S.C. § 2020(e)(9).

[75] Docket 115 at 9-10.

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 20 of 48
Case 3:23-cv-00044-SLG     Document 147     Filed 05/21/26     Page 20 of 48

language is precisely 'the sort of rights-creating language critical to showing the requisite congressional intent to create new rights.'"[76]

However, the statute at issue in *Medina* contained similar language and the Supreme Court held that it did not create a privately enforceable right. Section 1396a(a)(23) provides: "A State plan for medical assistance must . . . provide that (A) any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services."[77] Here, pursuant to § 2020(e), "[t]he State plan of operation . . . shall provide" various things to "each applicant," "each applicant household," "each participating household," "any household," and "an applicant household."[78] Both §

---

[76] Docket 115 at 10 (additional internal quotation marks omitted) (quoting *Gonzaga*, 536 U.S. at 287). Plaintiffs also maintain that, pursuant to *Henry A. v. Willden*, "a statutory provision that 'expresses a clear mandate by using the term shall,' and 'focuses squarely on the protected individual' contains 'rights-creating language.'" Docket 115 at 10 (additional internal quotation marks omitted) (quoting 678 F.3d 991, 1007 (9th Cir. 2012)). Plaintiffs note that "[m]ultiple courts, including this one, have rejected arguments that *Henry A.* is no longer good law post-*Medina*." Docket 115 at 10 n.37 (first citing *Gatlin v. Contra Costa Cnty.*, Case No. 21-cv-00370-SI, 2025 WL 2459354, at *2 (N.D. Cal. Aug. 26, 2025); and then citing Order on Defs.' Mot. for Reconsideration, *Mary B. v. Dompeling*, Case No. 3:22-cv-00129-SLG (D. Alaska Aug. 7, 2025), Docket 338). Plaintiffs are correct that this Court previously found that *Henry A.* remained good law after *Medina*. *Henry A.* was directly on point as it involved the exact same statute at issue in *Mary B.* and therefore the Court was tasked with determining whether *Medina* "effectively overruled" *Henry A.* such that this Court could disregard binding Ninth Circuit precedent. Order at 2-3, Case No. 3:22-cv-00129-SLG, Docket 338. The Court found that *Henry A.* and *Medina* were not "clearly irreconcilable" and *Henry A.* remained controlling law. Order at 3-4, Case No. 3:22-cv-00129-SLG, Docket 338. The Court faces a very different task here. There is no binding Ninth Circuit authority regarding § 2020(e) and therefore the Court must conduct its own review of the statutory provisions Plaintiffs invoke to determine whether they create privately enforceable rights.

[77] 42 U.S.C. § 1396a(a)(23); *Medina*, 606 U.S. at 364.

[78] 7 U.S.C. § 2020(e); Docket 115 at 9-10.

1396a(a)(23) and § 2020(e) use mandatory language—"must" or "shall"—and both set forth what State plans must provide to individuals or households that qualify for services under the statute. Thus, as in *Medina*, the statutory provisions at issue here do not clearly and unambiguously use rights-creating language.

Additionally, in *Medina*, the Supreme Court explained that "[a]fter announcing that state Medicaid plans must allow individuals to obtain care from any qualified provider, the provision proceeds to carve out various exceptions to that rule."[79] Such a scheme would

> make[] perfect sense if § 1396a(a)(23)(A) speaks only to a State's duties to the federal government. But it is an arrangement a good deal harder to understand if § 1396a(a)(23)(A) also confers an individually enforceable right, for that would mean Congress sought to convey a right against the States in one breath but let States control its scope in the next.[80]

The Supreme Court noted that "[n]one of this may suffice to prove that the any-qualified-provider provision is unenforceable under § 1983. But it does show, once more, that the statute before us stands in stark contrast to the ones we faced in *Talevski*."[81]

Plaintiffs distinguish § 2020(e) from the Medicaid qualified-provider provision by correctly pointing out that the SNAP Act contains no exceptions.[82] But

---

[79] *Medina*, 606 U.S. at 378.

[80] *Id.* at 378-79.

[81] *Id.* at 379-80 (internal citation omitted).

[82] Docket 115 at 9 (first citing *Garnett v. Zeilinger*, 313 F. Supp. 3d 147, 155 (D.D.C. 2018),

the Court does not read the discussion in *Medina* to suggest that if a statute lacks exceptions, it confers privately enforceable rights. Were the Court to find that a statute conferred a privately enforceable right simply because the statute does not contain any exceptions, the Court would surely run afoul of the "'stringent' and 'demanding' test" set forth by the Supreme Court.[83] The fact that the SNAP Act does not include exceptions is not dispositive, particularly in light of the foregoing findings based on § 2020(e)'s plain text.

Further, the Supreme Court in *Medina* determined that the "surrounding statutory context yield[ed] similar clues" as to whether § 1396a(a)(23)(A) created an individual right.[84] For example, the Supreme Court looked to where Congress placed the qualified-provider provision within the Medicaid Act, observing that:

> the any-qualified-provider provision . . . appears in a subsection titled "Contents." That subsection outlines scores of things a state plan must include to qualify for federal funding. Those requirements do not appear in any discernible order, and the any-qualified-provider provision does not crop up until paragraph 23 of 87. All of § 1396a(a)'s requirements are directed to the Secretary of Health and Human Services, who must "approve any plan" that meets them.[85]

Similarly here, the provisions on which Plaintiffs rely appear in § 2020(e) titled "Requisites of State plan of operation" as several of 26 "things a state plan

---

*vacated*, 485 F. Supp. 3d 206 (D.D.C. 2020); and then citing *Medina*, 606 U.S. at 378-79).

[83] *Medina*, 606 U.S. at 368 (additional internal quotation marks omitted) (first quoting *Talevski*, 599 U.S. at 180, 186; then quoting *Gonzaga*, 536 U.S. at 284, 290; and then quoting *id.* at 284).

[84] *Id.* at 379.

[85] *Id.* (internal citations omitted).

must include to qualify for federal funding."[86]  For example, as Defendant points out, the 30-day processing deadline that Plaintiffs invoke is "buried in the middle" of a "214-word, run-on sentence."[87]

Another context clue is found in 42 U.S.C. § 1396c, which provides that a State need only "substantially comply" with § 1396a(a)(23)(A).  The *Medina* Court held that this provision reflects a "focus on 'aggregate' compliance suggest[ing] that [the] statute addresses a State's obligations to the federal government, not the rights 'of any particular person.'"[88]  Plaintiffs maintain that, unlike the Medicaid provision in *Medina*, more than substantial compliance is required under the SNAP Act because the SNAP Act contains "absolute obligations with which state must comply in every instance."[89]  Defendant disagrees because, "[l]ike the Medicaid Act in *Medina*, the SNAP Act does not require states to perfectly comply with their state plans. . . . [T]he SNAP Act only calls for termination of federal funding for noncompliance 'without good cause.'"[90]

---

[86] *Id.*

[87] Docket 120 at 5-6.

[88] *Medina*, 606 U.S. at 379 (quoting *Gonzaga*, 536 U.S. at 288).

[89] Docket 115 at 12 (citing *Zeilinger*, 313 F. Supp. 3d at 155 ("[T]he requirement for absolute compliance with the timelines for processing applications flows directly from the statutory text itself. This text 'literally requires strict compliance with its provisions.'")).

[90] Docket 102 at 27 (first citing *Medina*, 606 U.S. at 379; and then quoting 7 U.S.C. § 2020(g) ("State noncompliance; correction of failures[.] If the Secretary determines . . . that in the administration of the supplemental nutrition assistance program there is a failure by a State agency without good cause to comply with any of the provisions of this chapter, . . . the Secretary shall immediately inform such State agency of such failure and shall allow the State agency a specified period of time for the correction of such failure.")); *see also* 42 U.S.C. § 1396c (providing that the Secretary shall notify a State that further payments under Medicaid will

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 24 of 48
Case 3:23-cv-00044-SLG    Document 147    Filed 05/21/26    Page 24 of 48

To the extent Defendant is arguing that the "without good cause" standard in the SNAP Act is analogous to the "failure to comply substantially" standard in the Medicaid Act, the Court disagrees. But the good cause qualification does reflect that perfect compliance with the SNAP Act's processing requirements was not Congress's expectation. Regardless, this issue is only minimally helpful to the Court's determination here, as the *Medina* Court noted that "[i]n *Talevski*, after all, the Court found two FNHRA provisions to confer individual rights *even though that statute also speaks of 'substantial compliance'*" because "the provisions at issue there employed explicit and unmistakable 'rights creating language.'"[91] As explained above, the Court finds that Plaintiffs have not shown that the provisions in § 2020(e) that they rely on contain any such "explicit and unmistakable 'rights-creating language.'"[92]

Plaintiffs point to *Briggs v. Bremby* in which the Second Circuit held, in a decision issued prior to both *Talevski* and *Medina*, that "7 U.S.C. § 2020(e)(3) and (9) satisfy the *Blessing* test" and therefore "the time limits for allocating food stamps provided in 7 U.S.C. § 2020(e)(3) and (9) are privately enforceable through lawsuits brought under § 1983."[93] In so holding, the Second Circuit explained that

---

not be made if the Secretary finds . . . "that in the administration of the plan there is a failure to comply substantially with any such provision").

[91] *Medina,* 606 U.S. at 379 (emphasis added) (first citation omitted; and then quoting *Talevski*, 599 U.S. at 186).

[92] *Id.* (quoting *Talevski*, 599 U.S. at 186).

[93] Docket 115 at 19; *Briggs v. Bremby*, 792 F.3d 239, 244-46 (2d Cir. 2015) (citing *Blessing v.*

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 25 of 48
Case 3:23-cv-00044-SLG    Document 147    Filed 05/21/26    Page 25 of 48

"*Wright* and *Wilder* both strongly counsel in favor of finding the time limits of 7 U.S.C. § 2020(e)(3) and (9) privately enforceable under § 1983."[94]  While the *Briggs* Court held that in § 2020(e)(3) and (9), "Congress has conferred individual rights upon food stamp applicants in clear and unambiguous terms," in light of the Supreme Court's subsequent admonition in *Medina* not to rely on *Wright*, *Wilder*, or *Blessing*, the Court declines to follow out-of-circuit precedent that relied on those now disfavored cases.[95]

Plaintiffs also maintain that "7 U.S.C. § 2020 . . . expressly contemplates judicial enforcement by individual households of the provisions at issue" because "§ 2020(a)(3)(B)(ii) expressly requires state agencies to have records 'available for review in **any action filed by a household to enforce any provision of this chapter** (including regulations issued under this chapter).'"[96]  According to Plaintiffs, "[t]hat language plainly 'contemplates private actions to enforce' provisions of the SNAP Act in ensuing sections of the statute, including those under which Plaintiffs' bring their claims here."[97] Plaintiffs cite *Barry v. Corrigan*, in which

---

*Freestone,* 520 U.S. 329, 341 (1997)).

[94] *Briggs*, 792 F.3d at 244 (citing *Wright*, 479 U.S. at 418 and *Wilder*, 496 U.S. at 498).

[95] *Id.* at 245; *Medina*, 606 U.S. at 375-76 (holding that, in *Wilder* and *Wright*, "this Court briefly experimented with a different approach" to determining whether a statute created a privately enforceable right and admonishing lower courts to refrain from "consult[ing] *Wilder*, *Wright*, and *Blessing* when asking whether a spending-power statute creates an enforceable individual right") (citing *Planned Parenthood S. Atl. v. Kerr*, 95 F.4th 152, 163-165, 170 (4th Cir. 2024), *rev'd and remanded sub nom*. *Medina*, 606 U.S. 357)).

[96] Docket 115 at 14 (emphasis in original) (quoting 7 U.S.C. § 2020(a)(3)(b)(ii)).

[97] Docket 115 at 14-15 (quoting *Barry v. Corrigan*, 79 F. Supp. 3d 712, 735 (E.D. Mich. 2015)

the District Court for the Eastern District of Michigan found that "Section 2020(a)(3)(B)(ii) alone is arguably enough to show that Congress intended for a private right of action to be available under the SNAP Act."[98]  The Court then applied the *Blessing* and *Gonzaga* standards to find that §§ 2014(a) and 2020(e)(10) "create[d] individual rights."[99]

Defendant responds that the reference to "this chapter" in § 2020(a)(3)(B)(ii) "refers to the entire SNAP Act," codified at 7 U.S.C. §§ 2011-2036(d), such that "[t]he records retention provision in § 2020(a)(3)(B)(ii) cannot be read to make every provision of the SNAP Act and all related regulations privately enforceable under § 1983."[100]  In Defendant's view, § 2020(a)(3)(B)(ii) "sheds no light on which rare provisions of the SNAP Act, if any, create enforceable rights."[101]  As for *Barry v. Corrigan*, Defendant maintains that case only evaluated whether an enforceable

---

("[T]his provision would make little sense if Congress did not intend for the SNAP Act to be enforceable by private action."), *aff'd sub nom. Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016)).

[98] Docket 115 at 14-15, 21, 24; *Barry*, 79 F. Supp. 3d at 735.  This finding was affirmed on appeal.  *Barry*, 834 F.3d at 716-17.  The Sixth Circuit's opinion predates both *Talevski* and *Medina* and therefore understandably cites primarily to *Blessing* and, though less often, to *Gonzaga*.  *Id.* The Sixth Circuit's opinion does not specifically address whether the SNAP provisions unambiguously conferred a private right of action; the district court also did not make an express finding that the statute unambiguously conferred a private right of action but noted that "only an 'unambiguously conferred right . . . not the broader or vaguer benefits or interests' can support an action brought under § 1983."  *Barry*, 79 F. Supp. 3d at 734 (quoting *Gonzaga*, 536 U.S. at 283).

[99] *Barry*, 79 F. Supp. 3d at 738; *see id.* at 735-40.

[100] Docket 120 at 10.

[101] Docket 120 at 10.

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 27 of 48
Case 3:23-cv-00044-SLG   Document 147   Filed 05/21/26   Page 27 of 48

right existed as to § 2014 and failed to mention any subsection of § 2020(e).[102]  In any event, Defendant cautions against relying on *Barry* as that case applied the now-repudiated *Blessing* standard and predates the Supreme Court's recent opinions in *Talevski* and *Medina*.[103]

The Court declines to rely on out-of-circuit precedent that relies largely on *Blessing*.  Further, the Court finds that while there might be a privately enforceable right somewhere in the SNAP Act to which § 2020(a)(3)(B)(ii) would apply, based on the textual analysis above, the specific statutory provisions invoked by Plaintiffs do not pass *Gonzaga*'s stringent and demanding test, which precludes the Court from finding a privately enforceable right under those statutory provisions.  This conclusion is further supported by the fact that Congress created a right for the Attorney General to seek injunctive relief to require a State's compliance with the SNAP Act,[104] as that may suggest that "Congress has displaced § 1983's general cause of action with a more specific remedy."[105]

---

[102] Docket 120 at 10-11 & n.35.

[103] Docket 120 at 10-11 n.35.

[104] 7 U.S.C. § 2020(g) ("[T]he Secretary may refer the matter to the Attorney General with a request that injunctive relief be sought to require compliance forthwith by the State agency and, upon suit by the Attorney General in an appropriate district court of the United States having jurisdiction of the geographic area in which the State agency is located and a showing that noncompliance has occurred, appropriate injunctive relief shall issue."); *see also* Docket 120 at 13.

[105] *Medina*, 606 U.S. at 368 (citing *Rancho Palos Verdes*, 544 U.S. at 120).  *But see* H.R. Rep. No. 95-464, at 398 (1977) ("Vis-a-vis the states', the bill furnishes the Secretary with a flexible arsenal of weapons ranging from mere notice to the state to correct a failure to comply with the Act, regulations or state plan within a specified period (section 11(f) of the bill) to a request to the Attorney General for injunctive relief to enforce compliance after the state had failed to act

* * *

In sum, the Court finds that the provisions in 7 U.S.C. § 2020(e) that Plaintiffs rely on do not create privately enforceable rights. Therefore, Defendant is entitled to summary judgment on Plaintiffs' SNAP Act claims. Defendant's Motion for Summary Judgment at Docket 102 is **GRANTED;** Defendant's Motion for Partial Summary Judgment Re: First-Contact-Filing Claim at Docket 109 is **DENIED** as moot. Further, Plaintiffs' Motion for Summary Judgment at Docket 107 is **DENIED** as to the SNAP Act claims.

### III.    Fourteenth Amendment Due Process Claim[106]

Plaintiffs' Fourteenth Amendment claim alleges that Defendant has violated the federal Due Process Clause in two ways.[107] First, Plaintiffs allege that "Defendant causes Plaintiffs irreparable harm by the prevalent failure to provide timely and adequate written notice of eligibility or delayed processing for SNAP benefits and deprives Plaintiffs of access to a fair hearing to raise disputes concerning eligibility and delayed processing in violation of the Due Process

---

as notified it had to . . . . The administrative remedies against the state contained in section 11(f) and elsewhere should not be construed as abrogating in any way private causes of action against states for failure to comply with Federal statutory or regulatory requirements."); H.R. Rep. No. 110-627, at 774 (2008) ("The Senate amendment amends section 11(a) to clarify State responsibility for program administration (including cases where the program is operated on a state or locally-administered basis) and to require that program records kept to determine whether the State is in compliance with the Act/regulations, that such records be available for review in any action filed by a household to enforce the Act/regulations . . . .").

[106] Relevant to Plaintiffs' Fourteenth Amendment Due Process Claim are Plaintiffs' Motion for Summary Judgment at Docket 107 and Defendant's Motion for Partial Summary Judgment Re: Constitutional Claims at Docket 110.

[107] Docket 1-1 at 40-41, ¶¶ 306-07.

Clause of the 14th Amendment to the Constitution."[108]  Plaintiffs refer to this as the "notice-based" theory of liability.[109]  Second, Plaintiffs allege that "Defendant deprives Plaintiffs of fair access to SNAP benefits through . . . failure to timely render eligibility determinations . . . and subjecting otherwise eligible individuals to arbitrary deprivation of SNAP benefits in violation of the Due Process Clause of the 14th Amendment to the Constitution."[110]  Plaintiffs refer to this as the "arbitrary deprivation" theory of liability.[111]

### a. Mootness

As a preliminary matter, Defendant maintains that Plaintiffs' Due Process claim is moot because "DOH is already sending the notices that the plaintiffs assert are required by the federal and state constitutions, and there is no reason to believe that DOH is going to stop."[112]  Defendant explains that before this Court

---

[108] Docket 1-1 at 40, ¶ 306.

[109] Docket 118 at 4, 11-12.

[110] Docket 1-1 at 40-41, ¶ 307.  Paragraph 307 also alleges a Due Process Claim based on Defendant's "use of a systemically inaccessible Virtual Contact Center [and] failure to timely render eligibility determinations."  The first allegation is not briefed by Plaintiffs in their motion for summary judgment, and the second is duplicative of the allegation in Paragraph 306 of their Complaint regarding notice of delayed processing.  The Court therefore does not consider these theories of liability.

[111] Docket 118 at 5, 12.  Defendant maintains that Plaintiffs did not allege their "arbitrary deprivation" theory in the Complaint and, as such, they cannot assert this claim in their motion for summary judgment. Docket 116 at 21-23.  The Court finds the theory was adequately pleaded in ¶ 307 of the Complaint.  But while Plaintiffs' Complaint alleges two separate theories of liability under the Due Process Clause, as explained below, the Court finds that the two theories are functionally two different parts of the same analysis under the Due Process Clause.

[112] Docket 110 at 5.

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 30 of 48

entered the preliminary injunction ordering DOH to provide the notices, "such automated notices were not supported by DPA's information technology system."[113] "But this Court's order required DPA to undertake the administrative work to reprogram the system" and "[n]ow that that the reprogramming is complete and the notices are automated, there is no reason for DOH to stop sending the notices."[114] As such, Defendant contends that "[b]ecause DOH has been sending the notices sought by the plaintiffs, and will continue to do so, the plaintiffs' constitutional claims are moot and not subject to the 'voluntary cessation' exception to the mootness doctrine."[115]

Plaintiffs respond that Defendant's mootness argument only addresses the "notice-based" due process issue such that Defendant has waived the opportunity to move for summary judgment on mootness grounds on Plaintiffs' "arbitrary deprivation" allegation.[116] As to the notice-based theory, Plaintiffs maintain that the voluntary cessation exception to mootness applies.[117]

In general, "[a] case becomes moot whenever it loses its character as a present, live controversy of the kind that must exist if we are to avoid advisory

---

[113] Docket 110 at 5-6 (citing Docket 46-9 at 3 (Rebecca Stovall Decl.)).

[114] Docket 110 at 6.

[115] Docket 110 at 6.

[116] Docket 118 at 6.

[117] Docket 118 at 7-11.

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 31 of 48
Case 3:23-cv-00044-SLG    Document 147    Filed 05/21/26    Page 31 of 48

opinions on abstract propositions of law."[118] However, a party "cannot automatically moot a case simply by ending its unlawful conduct once sued."[119] For a case to be moot when a party has voluntarily ceased the challenged conduct, the party must show that it is "absolutely clear that the allegedly wrongful behavior [cannot] reasonably be expected to recur," and that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."[120] When the party asserting mootness is a government entity, courts "presume that it acts in good faith," "though the government must still demonstrate that the change in its behavior is 'entrenched' or 'permanent.'"[121] When assessing whether the government has carried this "heavy burden," courts consider "the 'procedural safeguards' insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s)."[122]

---

[118] *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1157 (9th Cir. 2006) (quoting *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001), *abrogated on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

[119] *Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

[120] *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1274 (9th Cir. 1998) (alteration in original) (first quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968); and then quoting *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 854 (9th Cir. 1985)).

[121] *Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018) (first citing *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010); and then quoting *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022)).

[122] *Id.* at 1038-39 (citations omitted).

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 32 of 48
Case 3:23-cv-00044-SLG     Document 147     Filed 05/21/26     Page 32 of 48

The Court agrees with Plaintiffs that Defendant has not met this heavy burden. The voluntary cessation exception to mootness applies, as even though DOH is presently sending the notices that Plaintiffs request, Defendant has not demonstrated that the practice of sending the notices "is 'entrenched' or 'permanent.'"[123] As Plaintiffs point out, "DOH is now sending notices . . . because *this Court ordered it to*"[124] and that "DOH's 'voluntary cessation' is a misnomer, as it was compelled by court order and thus can 'hardly be considered voluntary' in the first place."[125] Further, the only "procedural safeguard[]" "insulating the new state of affairs from arbitrary reversal" is a change to the automated notices and DOH's representations in its briefing that it will continue to send the notices even though it maintains it is not constitutionally required to do so.[126] This falls far short of demonstrating that DOH's provision of the automated notices is so "entrenched" or "permanent" as to moot the notice-based issue.[127] And, in any event, in the Preliminary Injunction, this Court provided relief to Plaintiffs pursuant to Plaintiffs'

---

[123] *Id.* at 1037 (citations omitted).

[124] Docket 118 at 9 (emphasis in original) (citing Docket 77 at 30).

[125] Docket 118 at 9 (first quoting *FTC v. Sage Seminars*, Case No. C 95-2854 SBA, 1995 WL 798938, at *6 (N.D. Cal. Nov. 2, 1995) (finding that cessation of conduct could "hardly be considered 'voluntary'" when it occurred after defendants learned of FTC investigation); and then citing *Flores v. Bennett*, 675 F. Supp. 3d 1052, 1059 (E.D. Cal. 2023) ("[T]he assertion that Defendants 'voluntarily' rescinded the Flyer Policy lacks credibility because it is undisputed that Defendants took this action within hours of the Court's preliminary injunction order. This sequence of events creates a logical inference that Defendants rescinded the policy *because of* the Court-imposed requirements and to comply with the Court's order." (emphasis in original))).

[126] *Fikre*, 904 F.3d at 1039.

[127] *Id.* at 1037.

claims that Defendant was in violation of the SNAP Act and implementing regulations and expressly found that it "need not decide [the Due Process] issue at the time," given that the SNAP Act and implementing regulations required notice and a hearing.[128] As such, the Court finds that Plaintiffs' claim that the Due Process Clause of the Fourteenth Amendment requires notice of delayed processing of SNAP applications is not moot.

### b. Federal Due Process Claim

As an initial matter, the Court explains why it concludes that Plaintiffs' two Due Process theories are effectively separate parts of a singular Due Process analysis. "The Due Process Clause forbids the governmental deprivation of substantive rights without constitutionally adequate procedure."[129] "To obtain relief on a procedural due process claim, the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'"[130] To determine if process is adequate, courts apply the framework articulated by the Supreme Court in *Mathews v. Eldridge*.[131]

> Under *Mathews*, the 'identification of the specific dictates of due process generally requires consideration of three distinct factors.'

---

[128] Docket 77 at 20 n.67.

[129] *Shanks v. Dressel*, 540 F.3d 1082, 1090-01 (9th Cir. 2008) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)).

[130] *Id.* at 1090 (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993) (alteration in original)).

[131] 424 U.S. 319 (1976).

'*First*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'[132]

In the Court's view, Plaintiffs' two theories are in fact the second and third prongs of the three-pronged Due Process inquiry. The second prong of the Due Process analysis requires a court to determine if there has been a deprivation of a property interest. Plaintiffs maintain that the delay in the processing of SNAP applications amounts to such a deprivation.[133] This prong is in essence Plaintiffs' "arbitrary deprivation" theory.[134] The third prong of the Due Process analysis requires a court to apply the *Mathews* framework to determine if process is constitutionally adequate. This is functionally the same as Plaintiffs' "notice-based" theory.[135]

---

[132] *Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022) (emphasis in original) (first quoting *Mathews*, 424 U.S. at 334-35; and then quoting *id.* at 335); *see also Patel v. City of Los Angeles*, 72 F.4th 1103, 1105 (9th Cir. 2023) ("To determine whether there has been a due process violation, we consider the *Mathews v. Eldridge*, 424 U.S. 319 (1976), factors, which 'include the competing interests at stake, the risk of erroneous deprivation under existing procedures, and the value of substitute procedures.'" (quoting *Duranceau v. Wallace*, 743 F.2d 709, 711 (9th Cir. 1984))).

[133] *See* Docket 1-1 at 40-41, ¶¶ 306-07.

[134] *See* Docket 118 at 5, 12.

[135] Docket 118 at 4, 11-12; *see Fusari v. Steinberg*, 419 U.S. 379, 389 (1975) ("[T]he possible length of wrongful deprivation of . . . benefits is an important factor in assessing the impact of official action on the private interests. . . . Prompt and adequate administrative review provides an opportunity for consideration and correction of errors made in initial eligibility determinations. Thus, the rapidity of administrative review is a significant factor in assessing the sufficiency of the entire process.").

As such, the question before the Court is whether the delay in SNAP application processing amounts to a deprivation of a property interest such that the Due Process Clause requires notice of the delay and an opportunity for a hearing. The answer to this question will determine Defendant's liability as to both of Plaintiffs' Due Process theories.

### i. Property Interest

To have a valid property interest, a plaintiff must have a "legitimate claim of entitlement to" the liberty or property.[136] "Food-stamp benefits . . . 'are a matter of statutory entitlement for persons qualified to receive them.'"[137] Plaintiffs point out that "the Ninth Circuit recognizes that both recipients of and applicants for public benefits may possess a property interest sufficient to give rise to due process."[138] Defendant does not dispute that Plaintiffs have a valid property interest in SNAP benefits.[139] Therefore, the Court finds that Plaintiffs have a valid property interest

---

[136] *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

[137] *Atkins v. Parker*, 472 U.S. 115, 128 (1985) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970)); *see Goldberg*, 397 U.S. at 267-69 (1970) (holding that before terminating welfare benefits, a pre-termination hearing was required and that a hearing must be "at a meaningful time and in a meaningful manner" but declining to hold that seven-day notice before termination was constitutionally insufficient per se).

[138] Docket 107-1 at 29 (first citing *Ressler v. Pierce*, 692 F.2d 1212, 1215 (9th Cir. 1982) (holding that applicants have a federally protected property interest in Section 8 housing benefits); and then citing *Griffeth v. Detrich*, 603 F.2d 118, 121-22 (9th Cir. 1979) (holding that applicants had a federally protected property interest in benefits provided by the San Diego County General Relief program)).

[139] *See generally* Docket 110; Docket 116.

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 36 of 48
Case 3:23-cv-00044-SLG     Document 147     Filed 05/21/26     Page 36 of 48

in SNAP benefits such that the Due Process Clause of the Fourteenth Amendment applies.

### ii. Deprivation

Plaintiffs maintain that "Defendant persists in depriving Plaintiffs and other class members of benefits for months."[140] Plaintiffs contend that "the constitutionally protected property interest is the benefit determination *within the codified timeframe*. Thus, when DOH fails to issue a decision in a mandatory 7-day or 30-day timeframe, it deprives applicants of their constitutionally protected property."[141] Plaintiffs maintain that "thousands of Alaskans have waited (and are waiting) past statutory deadlines—often longer than 100 days—for benefit determinations."[142] And, in Plaintiff's view, "[a] delay of seven days is interminable to a family facing bare cupboards and an empty refrigerator."[143]

Plaintiffs provide the following table to show timeliness data regarding SNAP application processing:

---

[140] Docket 107-1 at 34 (internal citation omitted).

[141] Docket 123 at 13 (emphasis in original).

[142] Docket 123 at 11.

[143] Docket 118 at 14.

| Alaska Supplemental Nutrition Assistance Program Timeliness | | | | |
|---|---|---|---|---|
| Month | Non-Expedite Applications | Expedite Applications | Recertifications | Total Timeliness |
| Jan-25 | 62% | 64% | 18% | 52% |
| Feb-25 | 62% | 49% | 23% | 48% |
| Mar-25 | 64% | 53% | 29% | 51% |
| Apr-25 | 61% | 55% | 18% | 49% |
| May-25 | 52% | 62% | 14% | 44% |
| Jun-25 | 53% | 61% | 22% | 46% |

[144]

Plaintiffs also represent that "[o]n May 6, 2025, the average number of days that untimely SNAP applications had been sitting unprocessed was 98 days, expedited applications was 26 days, and recertifications was 94 days."[145]

Defendant responds that, as of September 2025, the average SNAP application processing time was 49 days and "[t]his is not the kind of benefit application processing delay that has triggered constitutional concerns in other cases."[146]

The data in Defendant's recent court-ordered status report show that for the reporting period of October 2025 to March 2026, only 35% of SNAP applications

---

[144] Docket 123 at 22-23; Docket 108 at 18, ¶ 84.  Timeliness "is calculated by dividing the total number of applications approved that were timely in a month by the total number of applications that were approved in the month."  Docket 108 at 16, ¶ 78.

[145] Docket 108 at 18-19, ¶¶ 89-90.

[146] Docket 110 at 7; *see also* Docket 110 at 7 ("[C]ourts have held that delays of many months or years in processing benefits applications may rise to the level of due process violations." (first citing *Kelly v. R.R. Ret. Bd.,* 625 F.2d 486, 490-91 (3rd Cir. 1980) (holding that a delay of nearly four years to process annuity benefits for a disabled child violated the child's right to due process); then citing *Isaacs v. Bowen,* 865 F.2d 468, 477 (2nd Cir. 1989) (holding that a 19-month process to obtain Medicare Part B benefits did not violate due process); and then citing *Dukes v. N.Y.C. Emps.' Ret. Sys.,* 361 F.Supp.3d 358, 374-75 (S.D.N.Y. 2019) (finding that a two-year delay in processing the plaintiff's death benefit application did not violate due process))); Docket 116 at 26-27 ("Over the past six months, DOH's average SNAP application processing time was 49 days.  This is not an egregious amount of time.").

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 38 of 48
Case 3:23-cv-00044-SLG     Document 147     Filed 05/21/26     Page 38 of 48

were processed within the statutory time limits, and, in March 2026, the average processing time for SNAP applications was 47 days.[147] Further, Defendant represents that, as of September 2025, the average number of days an unprocessed and overdue SNAP application had been pending was 65 days for applications with a 30-day SNAP Act deadline and 21 days for expedited applications with a 7-day SNAP Act deadline.[148]

Defendant agrees that a court "may find a constitutional violation if the delay in processing a benefit application is 'egregious and without any rational justification.'"[149] But Defendant maintains that here "it is not clear what more DOH could actually do to provide fair eligibility determinations more quickly."[150] Further, while Plaintiffs suggest that any delay beyond the statutory timeframes in the SNAP Act amounts to an unconstitutional deprivation, Defendant contends that "[w]hen considering whether administrative delay violates due process rights, 'there is no talismanic number of years or months, after which due process is automatically violated.'"[151] Defendant maintains that it is "not aware of any case

---

[147] Docket 144-1 at 5 ("Within that total, non expedited applications were processed timely at 46 percent, expedited applications at 25 percent, and recertifications at 31 percent."); Docket 144-1 at 31 (SNAP timeliness data from July 2024 through March 2026).

[148] Docket 116-10 (Average Age of Unacted Applications by Program).

[149] Docket 116 at 27 (quoting *Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 405 (2nd Cir. 1992) (remanding the plaintiff landlord's due process claim that a city housing reimbursement program was unconstitutionally delayed for a determination of whether a one-to-two-year delay constituted inadequate process)).

[150] Docket 116 at 28.

[151] Docket 116 at 26 (quoting *Coe v. Thurman*, 922 F.2d 528, 531 (9th Cir. 1990) (holding that

finding that due process requires a written notice and right to a fair hearing after an application has been pending for seven or thirty days."[152]

The Court agrees with Defendant that there is no bright-line rule as to when a SNAP application processing delay amounts to an unconstitutional deprivation. In particular, the Court is not persuaded by Plaintiffs' argument that any delay beyond the statutory timeframes in the SNAP Act constitutes an unconstitutional deprivation of a property interest under the Due Process Clause.[153]

Plaintiffs rely primarily on three cases in support of their claim that the SNAP processing delay here constitutes an unconstitutional deprivation. The first case is *Cleveland Board of Education v. Loudermill*,[154] a case in which the plaintiff was challenging pretermination and post-termination procedures for public employees

---

"there is no talismanic number of years or months, after which due process is automatically violated" in case alleging a constitutional due process violation for a delay in the resolution of a state prisoner's appeal for post-conviction relief)).

[152] Docket 110 at 7.

[153] *See* Docket 116 at 20-21 (citing *Wright v. Califano*, 587 F.2d 345, 356 (7th Cir. 1978) (holding that "in the name of due process as a flexible standard, we are not justified in sanctioning the imposition of unrealistic and arbitrary time limitations on an agency which for good faith and unarbitrary reasons has amply demonstrated its present inability to comply" in a due process challenge to the Social Security Administration's processing of a survivor's benefits)). Plaintiffs maintain that "DOH's citation to *Wright v. Califano* is inapposite because in that case . . . Congress had only 'imposed a duty on the SSA to process claims within a reasonable' time," and did not impose mandatory time periods. Docket 123 at 16 n.50 (citing 587 F.2d at 352). In contrast, Plaintiffs assert that "[h]ere, Congress has imposed time limits, which DOH continues to disregard." Docket 123 at 16 n.50. The Court finds that the processing timelines in the SNAP Act are not automatically grafted onto the requirements of the Due Process Clause.

[154] Docket 123 at 11 (citing *Loudermill*, 470 U.S. at 532). While Plaintiffs cite to other cases for propositions of law and rebut the cases that Defendant maintains support Defendant's arguments, Plaintiffs only analyze the three cases addressed herein. *See* Docket 107-1 at 29-38; Docket 118 at 12-16; Docket 123 at 10-20.

who could only be removed for cause.[155]  As to the required pretermination process, the Supreme Court held that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."[156]  As to the post-termination process, the Supreme Court held that, "[a]t some point, a delay in the post-termination hearing would become a constitutional violation," but that the nine-month delay in the plaintiff's post-termination proceedings in that case did not "state a claim of a constitutional deprivation."[157]  A delay in a post-termination hearing is not at issue in this case and, as shown above, the average delay in SNAP application processing here is far less than nine months.

The second case that Plaintiffs rely on is *Fusari v. Steinberg*.[158]  In that case the Supreme Court considered whether interview procedures to assess eligibility for Connecticut unemployment compensation benefits violated the Due Process Clause.[159]  The district court had found that if a benefits examiner had denied benefits, an applicant's appeal took on average more than 126 days to resolve, and nearly 90% of appeals required more than 100 days to resolve.[160]  Before the

---

[155] *Loudermill*, 470 U.S. at 535, 546-47.

[156] *Id.* at 546 (citing *Arnett v. Kennedy,* 416 U.S. 134, 170-171; and then citing *id.* at 195-96).

[157] *Id.* at 547 (citing *Barry v. Barchi,* 443 U.S. 55, 66 (1979)).

[158] Docket 123 at 17 (citing 419 U.S. at 379-80).

[159] *Fusari*, 419 U.S. at 379-80.

[160] *Id.* at 383-84.

Supreme Court heard the merits of the case, "the Connecticut Legislature enacted major revisions of the procedures by which unemployment compensation claims [were] determined."[161]  In light of these changes, the Supreme Court held that "[w]hile we can determine on this record that Connecticut's previous system often failed to deliver benefits in a timely manner, we can only speculate how the new system might operate"; the Court therefore vacated the district court's judgment and "remanded [the case] for reconsideration in light of the intervening changes in Connecticut law."[162]

Plaintiffs maintain that "*Fusari* therefore strongly suggests that 100 days of delay is too long for unemployment benefits" and, here, "the facts favor Plaintiffs even more" because "[t]he private interest in unemployment benefits, while high, is not as urgent as the private interest in food stamps" and "[t]he risk of erroneous deprivation is *far* higher in this case, as many of the Plaintiffs here were waiting for an *initial* decision on their applications, not an appeal of an initial denial."[163]

The Court finds that *Fusari* is distinguishable.  First, *Fusari* addressed a post-termination appeal delay, which is not at issue here.  Further, the length of time that unprocessed SNAP applications are pending—most recently 65 days for standard SNAP applications and 21 days for expedited SNAP applications—is

---

[161] *Id.* at 385 (citation omitted).

[162] *Id.* at 388, 390 (footnote omitted).

[163] Docket 123 at 17 (emphasis in original) (citing *Mathews*, 424 U.S. at 342).

significantly less than the 126-day average to process denial appeals in *Fusari*.[164] And the most recent average number of days for the processing of all SNAP applications was 47 days in March 2026.[165] This too is significantly shorter than the 126-day average in *Fusari*. Moreover, the Supreme Court in *Fusari* did not hold that a 126-day delay constituted a Due Process violation; rather, the Court observed that such a delay showed that benefits were not being "deliver[ed] in a timely manner."[166]

The third case that Plaintiffs rely on is *Holmes v. Knodell*, a case from the District Court for the Western District of Missouri.[167] In that case, the plaintiffs challenged a Missouri procedure pursuant to which the defendant automatically denied a SNAP application for failure to complete an interview when the interview had not been completed within 30 days, even if the applicant had made attempts to be interviewed.[168] The district court found that "applicants are being denied benefits not based on the merits of their application but on the failure to obtain an interview" and "the failure to interview is a direct result of Defendant's inability to provide an efficient and successful system that allows applicants to schedule and

---

[164] *Compare* Docket 116-10 (Average Age of Unacted Applications by Program) *with Fusari*, 419 U.S. at 384 ("The average delay during that period exceeded 126 days.").

[165] Docket 144-1 at 5; Docket 144-1 at 31.

[166] *Fusari*, 419 U.S. at 388.

[167] Docket 123 at 18-19 (citing 733 F. Supp. 3d 775, 796 (W.D. Mo. 2024), *appeal docketed*, Case No. 25-1987 (8th Cir. May 19, 2025)).

[168] *Holmes*, 733 F. Supp. 3d at 797.

complete an interview within the required time frame."[169]  The *Holmes* Court found that the "Defendant's wrongful denials of SNAP applications . . . violate the Due Process Clause."[170]

Unlike in *Holmes,* Plaintiffs here do not allege that their SNAP applications are automatically denied if they have been pending for 30 days and an interview has not been conducted.  Instead, here, Plaintiffs' alleged deprivation is based on the delay in the receipt of benefits.  *Holmes* therefore is not only out-of-circuit law, but is also inapposite to the issue before this Court.

The Court briefly addresses Plaintiffs' assertion that they have shown a Due Process violation under "an alternative due process framework to the *Mathews* test, in which courts have held that arbitrary governmental decision-making that results in the deprivation of a property interest, including subsistence benefits, violates due process."[171]  Plaintiffs argue that "[h]ere, Congress has established standards for uniformly and objectively determining SNAP eligibility. Defendant renders those standards meaningless by failing to consult the objective criteria for months on end while Plaintiffs and other class members wait for benefits to which they are legally entitled."[172]  Even though Plaintiffs attempt to frame this as an

---

[169] *Id.* at 796.

[170] *Id.* at 795.

[171] Docket 107-1 at 36 (citations omitted).

[172] Docket 107-1 at 37 (first citing 7 U.S.C. § 2020(e)(3), (4), (9); and then citing Docket 108 at 16-18, ¶¶ 76-84).

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 44 of 48

"alternative due process framework to the *Mathews* test," at its core, Plaintiffs'

assertion is a rephrased allegation that the delay in processing SNAP applications

past the statutory timeframes violates the Due Process Clause.[173]

Plaintiffs have failed to identify any controlling precedent to support their

assertion that any delay in Defendant's processing of SNAP applications past the

statutory timeframes is so egregious as to constitute an unconstitutional

deprivation under the  Due Process Clause of the Fourteenth Amendment.

Further, the Court finds that the average pending time for unprocessed,

unexpedited SNAP applications—98 days in May 2025 and 65 days in September

2025—is not so "egregious" that an unconstitutional deprivation has occurred.[174]

And they Court further finds that the average processing time for expedited

applications—26 days in May 2025 and 21 days in September 2025—does not

constitute an unconstitutional deprivation under the Due Process Clause.[175]

Therefore, Defendant is entitled to summary judgment on Plaintiffs' federal Due

Process claim.

---

[173] Docket 107-1 at 36; *see* Docket 107-1 at 38 (asserting in the arbitrary deprivation portion of their brief that "Defendant's failure to timely consult and apply SNAP eligibility criteria constitutes arbitrary agency action that deprives Plaintiffs and other class members of Due Process").

[174] Docket 108 at 19-20, ¶¶ 89-90; Docket 116-10.  Defendants take issue with the fact that "the plaintiffs point only to the average age of *untimely* applications, which fails to account for the bulk of applications that are processed within federal timeframes."  Docket 116 at 27 n.118 (emphasis in original).  However, applicants with delayed applications are the ones facing deprivation of their SNAP benefits due to unreasonable delay and so the length of time those unprocessed applications are pending is highly relevant to the Due Process inquiry.

[175] Docket 108 at 19-20, ¶¶ 89-90; Docket 116-10.

Case No. 3:23-cv-00044-SLG, *Andrew, et al. v. Hedberg*
Order on All Pending Motions
Page 45 of 48
Case 3:23-cv-00044-SLG     Document 147     Filed 05/21/26     Page 45 of 48

Based on the foregoing, Plaintiffs' Motion for Summary Judgment at Docket 107 is **DENIED** as to the federal Due Process claim and Defendant's Motion for Partial Summary Judgment Re: Constitutional Claims at Docket 110 is **GRANTED** as to the federal Due Process claim.

### c. State Due Process Claim

Plaintiffs maintain that "[s]ummary judgment is independently warranted upon evaluation of Plaintiffs' Due Process rights under the Alaska Constitution."[176] Plaintiffs' state Due Process claim is based on Article I, Section 7 of the Alaska Constitution, which states that "no person shall be deprived of life, liberty, or property, without due process of law."[177] The Alaska Supreme Court has held that "the Alaska Constitution's guarantee of due process is more protective than that of the federal constitution."[178]

In light of the Court's rulings on the federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' constitutional claim under Alaska's Due Process Clause. A "federal court has supplemental jurisdiction over state-law claims sharing a 'common nucleus of operative fact' with the federal-law ones"[179] pursuant to 28 U.S.C. §1367. However, subsection (c) of that statute

---

[176] Docket 107-1 at 31.

[177] Docket 1-1 at 41, ¶¶ 309-10.

[178] *Native Vill. of Kwinhagak v. Dep't of Health & Soc. Servs.*, 542 P.3d 1099, 1120 (Alaska 2024).

[179] *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

"explains that the supplemental jurisdiction just conferred is in some measure discretionary. That subsection provides that a district court 'may decline to exercise supplemental jurisdiction' in three specific situations: (1) if the supplemental claim 'raises a novel or complex issue of State law'; (2) if the supplemental claim 'substantially predominates' over the claims within the court's original jurisdiction; and (3) if the district court 'has dismissed all claims over which it has original jurisdiction.'"[180] "In all those contexts, federal law is not where the real action is. So although supplemental jurisdiction persists, the district court need not exercise it: Instead, the court may (and indeed, ordinarily should) kick the case to state court."[181]

Here, because the Court grants summary judgment to Defendant as to Plaintiffs' federal SNAP Act and Due Process claims, federal law is no longer "where the real action is."[182] As such the Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiffs' state Due Process claim.

## CONCLUSION

In light of the foregoing, it is hereby ordered:

- Mr. Rapp's Motion for Leave to File Amicus Curiae Brief at Docket 127 is **DENIED**;

---

[180] *Id.* at 31-32.

[181] *Id.* at 32 (citing *Gibbs*, 383 U.S. at 726-27).

[182] *Id.*

- Defendant's Motion for Summary Judgment at Docket 102 is **GRANTED;**

- Defendant's Motion for Summary Judgment at Docket 109 is **DENIED** as moot;

- Plaintiffs' Motion for Summary Judgment at Docket 107 is **DENIED**;

- Defendant's Motion for Summary Judgment at Docket 110 is **GRANTED** in part: Defendant is entitled to summary judgment on Plaintiffs' federal Due Process claim; and

- The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state Due Process claim. That claim is **DISMISSED without prejudice**.

Because the Court has found for Defendant as to Plaintiffs' federal claims, the Preliminary Injunction at Docket 77 is **VACATED**. The Clerk of Court is directed to enter a final judgment for Defendant.

DATED this 21st day of May, 2026.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE